EXHIBIT "H"

# 2022 ELECTION RECAP

Audit The Vote PA

01/18/2023

# RECONCILIATION



› Reconciliation is a mandatory process for counties to complete prior to certification

› The 2022 election appears to have actually been reconciled and this process was completed significantly quicker than prior elections

› It appears as though the December 19th export shows the largest block of voters, at 5,403,573 voting in the 2022 election

› Across all exports, there are approximately 5,416,425 registrations that were credited as voting in the 2022 election

› Even still, there are 6,433 registrations that were not fully credited – meaning of the three election columns (Last Vote Date, 2022 Election Party, 2022 Election Vote Method), at least one was not entered



# VOTING IN WRONG COUNTY

› ATVPA ran the voter rolls against the NCOA database in September of 2022, these numbers are derived from that list run

› 54,463 people show as having voted in their old county, despite the USPS NCOA database showing them as having moved permanently to a new county

› That's 82% of the moves to a new county identified by ATVPA prior to the election (66,414)



# VOTING IN WRONG STATE

- ATVPA ran the voter rolls against the NCOA database in September of 2022, these numbers are derived from that list run

- 8,177 people show as having voted in Pennsylvania, despite the USPS NCOA database showing them as having moved permanently to another state

# MISSING MAIL BALLOTS?

> The 11/08/2022 8PM DOS mail ballot list shows 6,356 people as having returned their ballot who do not show as having been credited as voting in the SURE system

> An additional 4,056 people as having completed their mail ballot, but were incorrectly credited in the SURE system as voting by another method

> There are 644 registrations that show as voting by mail or absentee, but are not on the 11/08/2022 8PM DOS mail ballot list

> There are an additional 138 people who voted by mail in the 11/16/2022 DOS mail ballot list that were not on the 11/08/2022 8PM DOS mail ballot list, meaning they had missed the deadline to request and submit a mail ballot

# MAGIC MAIL BALLOTS?

› There are 318 registrations that the DOS shows as having returned their completed ballot before the DOS sent them the ballot

› There were at least 69,832 mail ballots sent to an address unaffiliated with the voter's registration

› There are 5,914 people who requested a mail ballot, with 2,746 completing it, who do not exist on the PA voter rolls between 10/03/22 and 01/16/23

# MULTIPLE BALLOTS?

❯ At least 18,589 people requested multiple ballots be sent to multiple addresses, with some people requesting additional ballots to be sent to up to four separate addresses

❯ 2478 of those had their ballot destination address updated after a prior ballot was marked as being sent, without updating the ballot sent date to reflect the address change

❯ 280 had their ballot destination address updated after a prior ballot was marked as being returned, without updating the record to indicate their latest ballot was not received

❯ These record-keeping issues help to facilitate fraud, and in some cases those additional addresses that are unaffiliated with the voter may be used to harvest ballots without the voter being aware, given the record can be updated with their actual address without the ballot sent / returned dates being tied to their legitimate ballot request

# MULTIPLE VOTES?

> 5492 registrations show as having two votes on record in two separate counties, based on matching their IDNumber across the state

> Therefore there are 2,746 extra votes that were counted

> There are 1230 registrations that show as having voted more than once that are likely duplicates as they share the same first & last name, suffix, and date of birth. Some are on the rolls three times.

> These 1,230 registrations cast a total of 2467 votes, meaning there 1,237 extra votes that were counted




# Audit The Vote PA
# 2022 General Election
NCOA Report II

2022-10-17

https://AuditTheVotePA.com





# NCOALink®

NCOA is a system of record for all COA requests and is used to produce the NCOA<sup>Link</sup> product.

The NCOA<sup>Link</sup> Product is a secure dataset of approximately 160 million permanent change-of-address (COA) records constructed from names and addresses of individuals, families, and businesses who have filed a change-of-address with the Postal Service™. Developed with secure data store technology to increase security of postal customer data and protect the privacy of this information, the NCOA<sup>Link</sup> Product enables mailers to process mailing lists and update lists with new addresses prior to mailing. The NCOA<sup>Link</sup> data is provided on a regular basis to companies that have been licensed by the Postal Service.

https://postalpro.usps.com/mailing-and-shipping-services/NCOALink



# Background

Audit The Vote PA (ATVPA) ran the 09/05/2022 Pennsylvania Full Voter Export (FVE) through the United States Postal Service's (USPS) National Change of Address Service (NCOA) on 09/09/2022 in an effort to ascertain and identify whether Pennsylvania and its 67 counties have adequately completed their PA Title 25 § 1901 yearly required list maintenance, which is necessary to be in compliance with 52 U.S.C. § 20507.

On 09/09/2022, ATVPA submitted six separate files consisting of roughly 1.5 million registrations per file, grouping by county and ensuring no county's registrations were split between files. The list processor ATVPA used was BCC Software, LLC, the same full service provider that the Electronic Registration Information Center (ERIC) uses. A Full Service Provider (FSP) is the highest tier of NCOA list processor and offers four years of move data, which is the maximum provided by the USPS.



This is an example of the top half of one of ATVPA's Coding Accuracy Support System (CASS) Summary Reports

From the list processor, ATVPA received all expected NCOA output files including result files, NCOA Link reports, CASS Reports, and USPS Form 3553. These files act as reports indicating who it was that processed the list, what was done to the list, and a high level summary of findings.

ATVPA ingested the NCOA result data into a database. In addition to the 09/05/2022 FVE NCOA results, ATVPA has prior NCOA result data from a limited subset of the 02/01/2021 FVE. For the purposes of the analysis, both datasets are included in this analysis. ATVPA's NCOA move data spans between August of 2017 and August of 2022.



## Methodology

Audit The Vote PA (ATVPA) followed the best practices and documentation available in order to generate the results featured in this report. Although the NCOA Link processing report summary includes high level summary statistics as far as moves go, ATVPA filtered those down further to ensure a higher degree of accuracy and confidence in this report.

To provide current and accurate numbers for the purposes of this report, ATVPA further filtered the data to require that the IDNumber of the voter registration exists within the current 10/17/2022 Pennsylvania FVE. This ensures that only the registrations that still exist on PA's rolls are included.

ATVPA makes specific efforts in this filtering process to eliminate all temporary moves and any moves connected to the military, as a means to avoid disenfranchising those voters with a legitimate reason to be out of state.

As with all submitted data, the USPS NCOA data can potentially include errors in the record, such as with cases where the mover failed to indicate it was a temporary move. In ATVPA's canvassing efforts, the NCOA data remains to be one of the most accurate methodologies to identify registrations that need updating when used in conjunction with canvassing.

For the entirety of this analysis, ATVPA has filtered out all records that do not have a Change of Address (COA) date. Additionally, ATVPA filters the data based on several return codes that have been identified through prior canvassing efforts as the strongest indicators of a move.

To identify out-of-state (OOS) moves, ATVPA filters the NCOA result data based on the moved state. ATVPA filters out the following states: Pennsylvania (PA), Armed Forces America (AA), Armed Forces (AE), & Armed Forces Pacific (AP).

ATVPA has a high degree of confidence that the majority of these registrations reflect a true out of state move. Under PA Title 25 § 1901, Pennsylvania law requires counties to perform regular voter roll maintenance by leveraging the USPS NCOA data at least once a year. Mandatory confirmation mailings should have already gone out to these registrations.



# Findings

## Out-of-State (OOS) Moves

As of the 10/17/2022 Pennsylvania FVE, Audit The Vote PA (ATVPA) has identified 241,677 registrations that are currently registered on the Pennsylvania voter rolls that are tied to a person whom the USPS NCOA has indicated as having changed their address and no longer living in Pennsylvania.

Of the 241,677 registrations, 113,323, or roughly 47%, are still "Active" on the 10/17/2022 FVE. Within these results, there are active registrations with move dates going back to August of 2017 that appear to be unaddressed. In Pennsylvania, when a voter registration status is marked as "Inactive", that elector must provide a residency affirmation to vote.

The data shows that 22,103 voters (9%) of the 241,677 registrations that have cast at least one vote in the Commonwealth of Pennsylvania *after* indicating to the USPS NCOA service that they've moved. Of these votes, 72% were cast more than a month after the individual left Pennsylvania and 24% cast a vote more than a year after leaving Pennsylvania.



This chart shows registrations on the 10/10/2022 Pennsylvania Voter Rolls that moved out of state, identified by the USPS NCOA. The line represents the number of moves by move date. The bars represent the cumulative total number of moves on the voter rolls by move date.



Analyzing the numbers of OOS moves by county illustrates that the majority of these moves originate from counties closely following their population rankings.

Philadelphia County alone makes up roughly one-fifth of all OOS registrations, with 44,173 OOS registrations. To put this into perspective, 29 counties in Pennsylvania have fewer registered voters than Philadelphia has OOS registrations on their rolls.

Following population ranking, Allegheny County comes in second with 28,826 OOS registrations, followed by Montgomery (14,917), Chester (13,562), and Delaware (12,780) counties.



The treemap above shows the total number of OOS registrations on each county's rolls. The boxes represent the relative proportion of these issues in comparison to the other counties.

Breaking up the Out of State (OOS) moves by county in the context of their total registrations illustrates which counties have a high percentage of OOS registrations, regardless of voter status, comprising their rolls.



Surprisingly, Pike County has the highest percentage of OOS registrations on its rolls compared to its total registration count, making up 4.79% of its voter roll, followed by Philadelphia (4.15%), Centre (3.73%), York (3.2%) and Chester (3.57%).

On the opposite end of the spectrum are Juniata (0.74%), Fulton (0.77%), Indiana (1.01%), and Sullivan (1.03%) counties. Thirty-five of Pennsylvania's 67 counties' voter rolls consist of 2% or fewer OOS registrations.



| | County | OOS Registrations | Active OOS Registrations | Total Registrations | OOS Percent of Total Registrations ▾ |
|---|---|---|---|---|---|
| 1. | PIKE | 2,131 | 694 | 44,463 | 4.79 |
| 2. | PHILADELPHIA | 44,173 | 27,938 | 1,063,990 | 4.15 |
| 3. | CENTRE | 3,975 | 2,542 | 106,437 | 3.73 |
| 4. | YORK | 11,240 | 3,381 | 310,540 | 3.62 |
| 5. | CHESTER | 13,562 | 3,545 | 379,722 | 3.57 |
| 6. | MONROE | 3,979 | 1,363 | 112,861 | 3.53 |
| 7. | DELAWARE | 12,780 | 4,959 | 413,354 | 3.09 |
| 8. | ALLEGHENY | 28,826 | 14,648 | 933,476 | 3.09 |
| 9. | NORTHAMPTON | 6,895 | 3,479 | 223,722 | 3.08 |
| 10. | MONTOUR | 348 | 243 | 11,708 | 2.97 |
| 11. | CUMBERLAND | 5,322 | 2,797 | 185,742 | 2.87 |
| 12. | DAUPHIN | 5,531 | 2,173 | 193,646 | 2.86 |
| 13. | ADAMS | 2,023 | 543 | 72,101 | 2.81 |
| 14. | BUCKS | 12,529 | 7,426 | 479,635 | 2.61 |
| 15. | BRADFORD | 955 | 297 | 37,500 | 2.55 |
| 16. | FRANKLIN | 2,530 | 795 | 99,509 | 2.54 |
| 17. | WAYNE | 898 | 300 | 35,406 | 2.54 |
| 18. | LEHIGH | 6,000 | 2,830 | 237,644 | 2.52 |
| 19. | MONTGOMERY | 14,917 | 5,332 | 604,044 | 2.47 |
| 20. | MERCER | 1,771 | 880 | 72,112 | 2.46 |
| 21. | BUTLER | 3,322 | 2,047 | 136,393 | 2.44 |
| 22. | SUSQUEHANNA | 651 | 418 | 26,881 | 2.42 |
| 23. | BERKS | 6,448 | 1,610 | 266,366 | 2.42 |
| 24. | LANCASTER | 8,324 | 3,993 | 349,889 | 2.38 |
| 25. | TIOGA | 615 | 247 | 26,131 | 2.35 |

The table above shows the top 25 counties ranked by the percentage of OOS registrations that make up their voter rolls.

Upon limiting the above analysis to just those OOS registrations that are still active, the data paints a slightly different picture which helps to highlight which counties are taking their yearly required list-maintenance activities more seriously than others. Pike sees their position drop to sixth, indicating that although their county's voter rolls have the highest ratio of identified OOS registrations, they've done better at addressing these moves than other counties such as Philadelphia.

Philadelphia, by contrast, has addressed less than half of their OOS moves, 16,235 of 44,173 total, meaning Philadelphia has only addressed roughly 36% of the Philadelphia County OOS moves identified by ATVPA.





The bar chart above shows the number of active OOS registrations in red next to the number of inactive OOS registrations in gray.





NCOA moves visualized on the map to show where they originated from



# County Responses

---

## How do Pennsylvania's counties treat List Maintenance?

After spending a week validating the NCOA data, ATVPA decided to notify all 67 counties in Pennsylvania of the total number of OOS registrations and the number of OOS registrations residing on their voter rolls.  Toni Shuppe, CEO of Audit The Vote PA, sent the following email on September 28, 2022:

Good afternoon Philadelphia County Commissioners,

We are reaching out to let you know about a recent analysis we've performed on the Pennsylvania voter rolls.  Thank you for taking the time to look at this.

Audit The Vote PA has identified over 242,000 registrations statewide who no longer live in the Commonwealth of Pennsylvania.

We identified these registrations by running the September 5, 2022 Pennsylvania Voter Rolls through the National Change of Address (NCOA) service, as required in Title 25 § 1901.  Audit The Vote PA used the same full-service provider that ERIC uses, which we are a member-state.

44,255 of the 242,000 are currently registered in Philadelphia county.  We would like to speak to you about a possible remedy to get these electors removed from the voter rolls in order to help instill confidence in our elections prior to the November 8th election.

Please let us know when your county would be able to meet with us to further discuss, or how your county will be proceeding.

Thank you,

Toni Shuppe
CEO
Audit The Vote PA

The email that ATVPA sent to Philadelphia County on 09/28/2022.  Philadelphia County chose to not respond, nor address these registrations adequately.  Each email was customized for the county it was being sent to, although the bulk of the body remained the same.

Almost immediately after sending the email out, responses began to roll in from across the Commonwealth of Pennsylvania.  Many counties were immediately curious, wanted to meet to discuss the findings and were willing to look into those registrations in question.  This is what one would expect of their county government, to be curious and willing to investigate registration issues and adhere to the law.

Snyder County serves as one of many counties that set an example for the Commonwealth of how a county should treat the accuracy and maintenance of their voter rolls.

Toni,
Thank you for reaching out to Snyder County.  We take our elections very seriously and pride ourselves in the accuracy of our election process.  We have a brand new Elections Director who is quickly getting educated in every aspect of the elections process.  Our Voter Registrar has been with our county for a number of years and does everything she can to keep our voter rolls up to date.  With that in mind, we would very much like to see a list of those persons who you have found to be living out of state so we can reconcile with our rolls.  Can you please send us that list so we can review?
Thank you,
Joe Kantz
Chairman, Snyder County Commissioners

Snyder County's response to being alerted of OOS registrations on their voter rolls



Counties should take their list maintenance activities as seriously as Snyder County. This list maintenance is not an option for counties to decide whether they'd like to participate, but rather State and Federal law.

Every county that had asked for the underlying data has been provided the data requested as it related to their county. For those that have had questions or wanted to meet, ATVPA has been able to schedule time to discuss with those counties further. To date, ATVPA has met with over a dozen counties to discuss their list maintenance activities and the data identified in this report pertaining to their county.

Several counties went to the Pennsylvania Department of State (DOS) to ask for guidance on how to proceed. A small subset of those counties felt the need to respond to the ATVPA email and inject their own commentary, such as Delaware County.

Ms Shoup,

The following information was provided by the Pennsylvania Secretary of State today concerning changes to the voter rolls:

"First, section 8 of the National Voter Registration Act ("NVRA") requires states to complete any program for the systematic removal of ineligible voters from the official list of eligible voters **not later than 90 days prior to the date of a primary election or general election for federal office.** (Emphasis added.) 52 U.S.C. § 20507(c)(2)(A). This 90-day deadline applies to state list maintenance verification activities, such as general mailings and door to door canvasses. **Pennsylvania is in the 90-day quiet period (it began on August 10, 2022).** (Emphasis added.)

"The 90-day deadline does not preclude removal of voters based on the following situations: (a) the voter requests in writing to be removed from the voter registration rolls; (b) the voter responds to a previously sent list maintenance notice confirming he/she no longer lives in the county's jurisdiction; or (c) the voter dies, and the county confirms the voter's death. Outside of these exceptions, removals cannot occur before the November 8, 2022 election.

"Second, an NCOA mailing does not of itself provide authority to remove a voter. The NCOA is part of a statutorily required two-step mailing process; the passage of two federal general elections without an elector's voting must occur after the mailed second notice to voters (in cases where the voter did not respond to the initial NCOA notice, or where the initial NCOA was returned as undeliverable. 25 Pa.C.S. §§ 1901(d)(1) and (2). Therefore, even if list maintenance were possible at this juncture, the existence of a voter's name on an NCOA list suggesting the voter has moved is insufficient by itself for the legal removal of that voter from the voter rolls."

Delaware County complies with all applicable laws regarding the maintenance of its voter rolls. The County was the subject of a baseless lawsuit in 2020 which was withdrawn when the County presented the plaintiff, Judicial Watch, with evidence of its compliance. Going forward Delaware County can not accept assistance from your organization in maintaining its voter rolls. Doing so would violate a recently enacted state statute prohibiting Counties in Pennsylvania from accepting any assistance from third parties in conducting elections.

Christine Reuther
Delaware County Council
Office: 610-891-4268
Email: reutherc@co.delaware.pa.us

Sent by Outlook for Android
*Please forgive typos

Delaware County's response to being notified of concerns with their county's voter rolls, which they are tasked with adequately maintaining. You can see Christine Reuther even purposefully misspelled Toni Shuppe's last name.

Delaware County's response above reaffirms that they have no interest in fulfilling their duties and obligations under the law. Delaware County asserts that they comply with all applicable



laws regarding the maintenance of their voter rolls, however in this same email they misinterpret the actual federal law under 52 USC § 20507 as an excuse not to look into or perform list maintenance activities 90 days prior to the election. The law itself is clear in this regard, and makes no reference to, nor creates, a 90 day quiet period where counties are excused from maintaining their lists. The relevant section quoted is as follows -

**(2)**

    **(A)** A State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters.

    **(B)** Subparagraph (A) shall not be construed to preclude—

        **(i)** the removal of names from official lists of voters on a basis described in paragraph (3)(A) or (B) or (4)(A) of subsection (a); or

        **(ii)** correction of registration records pursuant to this chapter.

This is the section of 52 USC § 20507 that the PA DOS and several counties chose to assert creates a 90 day quiet period where they are excused from maintaining their voter rolls. Nowhere in the law referenced is verbiage around a "quiet period"

The law referenced is being misinterpreted. The text in it is plain and very easy to follow. This section in particular states that, "A State shall **complete,** not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters".

This federal law refers to Pennsylvania's PA Title 25 § 1901 which establishes a program and its requirements to comply with national law. Under PA Title 25 § 1901 the law requires counties to perform list maintenance activities leveraging USPS NCOA data at least once a year.

52 USC § 20507 conveys to States that their mandatory list maintenance, which puts them in compliance with NVRA/HAVA/Federal Law, must be **completed** no later than 90 days prior to a Federal election. Nowhere in Federal or State law does it bar the State/County from performing additional list maintenance at any point. PA Title 25 § 1901 even encourages counties to perform list maintenance activities multiple times throughout the year.

Even more concerning is the data ATVPA has presented above and alerted Pennsylvania's counties to, which shows what appears to be evidence that counties in Pennsylvania **have not completed** their State and Federally required list maintenance activities fully for the past several years. Since ATVPA has identified unaddressed moves going back to 2017, some of which ATVPA has confirmed as accurate through canvassing, it would imply that those counties in question failed to complete their 52 USC § 20507 within 90 days of multiple Federal Elections (2018: Primary & General; 2020: Primary & General; 2022: Primary). In counties such as Philadelphia, it is abundantly clear that they've not been completing list maintenance activities for many years now.


The guidance referenced in several counties' email responses originated from the PA DOS, which has continually issued guidance that conflicts with actual election law.

> Acting Secretary of State Leigh M. Chapman said county elections officials should count mail-in votes that arrive in exterior envelopes with inaccurate or nonexistent handwritten dates, despite a requirement in state law.

After a recent USSC ruling overturned a lower court's decision on undated outer-envelopes for mail ballots, acting Secretary of State Leigh Chapman issued guidance in conflict with the law and against the USSC's recent action.
https://www.post-gazette.com/news/election2022/2022/10/11/supreme-court-pennsylvania-mail-in-ballots-ruling-undated-votes-election/stories/202210110099

Delaware County goes further by referencing portions the PA Title 25 § 1901 text to obfuscate what remedies are available, implying that ATVPA asked them to immediately cancel these registrations.  Under  PA Title 25 § 1901, counties are tasked with leveraging the USPS NCOA data to identify registrations that appear to have moved.

```
(b)   Voter removal program.--
    (1)  Each commission shall establish a program to identify
registered electors whose address may have changed by
establishing one of the following programs:
        (i)  National change of address. The secretary shall
    establish by regulation a program whereby information
    supplied by the United States Postal Service through its
    licensees is used on a periodic basis, but not less than
    once every calendar year, to identify registered electors
    who may have changed addresses. The information shall be
    incorporated in the SURE system and shall be forwarded to
    the commissions in a manner determined by the secretary by
    regulation.
```

The section of PA Title 25 § 1901 that tasks counties with leveraging a program established by the secretary to leverage the USPS NCOA data to identify potential moves.



The law states that upon identifying potential moves out of the county, that the county **shall** send a mandatory nonforwardable first class "return if undeliverable" address confirmation mailing.

> (B)  If it appears from the information provided through the United States Postal Service that a registered elector has moved to a different residence address outside the county, the commission shall use the notice procedure described in clause (A).
> (ii)  Confirmation mailing:
>     (A)  A commission may establish a program by sending a direct, nonforwardable first class "return if undeliverable - address correction requested" mailing to all registered electors in the county.
>     (B)  If this program is established, the commission shall use the notice procedure described in subparagraph (i)(A) for any registered elector whose mailing is returned undeliverable.

The section of <u>PA Title 25 § 1901</u> that instructs counties on how to proceed after identifying potential moves from the USPS NCOA service.

Upon receiving any result that does not confirm the voter's eligibility, the county shall change the voter registration in context to "Inactive".  An "Inactive" registration must provide affirmation of their eligibility before being allowed to vote in an election, which works as a deterrent to fraud.

> **(c)  Identification of inactive electors.--**A commission shall mark an "I" on the registration records of each registered elector who has been mailed a form under subsection (b)(1) or (3) and has failed to respond, which shall be included with all other registration records for that polling site and located at the elector's polling site on the day of the election. The commission shall promptly update the information contained in its registration records.

The section of <u>PA Title 25 § 1901</u> that instructs counties on how to proceed after the confirmation mailing has been sent out

Upon sending the confirmation mailing and setting a registration to inactive, counties have the option to physically canvas the address.  Upon confirmation that the registered elector is no longer residing at their place of registration, *then* the law provides a legal path for immediate cancellation of the record.

The only date constraints around elections that are outlined in this portion of the law set a deadline for canvassing to ensure it must occur not later than the 15th day preceding the election next ensuing - meaning even at the time of writing this report, counties are entirely within the law to use the tools at their disposal to verify and maintain their voter rolls.



> (2) In conjunction with and not as an alternative to a program established under paragraph (1), a commission may use a canvass as follows:
>
> (i) The commission may, by commissioners or by inspectors of registration, verify the registration in an election district by visiting the building from which an elector is registered and other buildings as the commission deems necessary.
>
> (ii) The commission shall make a record of the name and address of each registered elector who is found not to reside at the registered address or who for any other reason appears to be not qualified to vote in the registered election district.
>
> (iii) The commission shall leave at the address of each registered elector referred to in subparagraph (ii) a notice requiring him to communicate with the commission on or before a date which the commission shall designate, and which shall be not less than seven days and not more than 15 days from the date of the notice and in any case not later than the 15th day preceding the election next ensuing, and satisfy the commission of his qualifications as an elector. The commission shall cause a confirmation of each such notice to be sent by mail promptly to the registered elector at the address from which he is registered. The envelope containing such information is to be plainly marked that it is not to be forwarded. At the expiration of the time specified in the notice, the commission shall cancel the registration of the registered elector who has not communicated with the commission and proved his qualifications as a registered elector.
>
> (iv) To facilitate the canvass under this section, a commission may, when necessary, appoint special inspectors of registration in number not exceeding double the number of election districts being canvassed.
>
> (v) Special inspectors must be registered electors of the county. They shall be appointed without reference to residence in election districts or to political affiliations or beliefs. The commission shall instruct special inspectors in their duties. Special inspectors have the powers conferred by this part upon inspectors of registration.

This section of <u>PA Title 25 § 1901</u> outlines that once the confirmation mailing step has been satisfied, counties may optionally canvas the address in question and provides a path to cancel a registration instead of leaving it as inactive. This section further allows counties to appoint registered electors from the county as special inspectors to perform this canvassing.

Nothing identified by ATVPA under <u>PA Title 25 § 1901</u> or referenced by the PA DOS or its counties, prevent list maintenance activities 90 days prior to any election. Pennsylvania's election code sets many limits on when certain list maintenance activities must be performed and when the required programs must be completed by.

> (4) A commission shall complete, not later than **90** days before each municipal or general election, at least once per year the voter removal programs under this section and shall promptly update information contained in its registration records. This paragraph shall not be construed to preclude any of the following:
>
> (i) Cancellation of an elector's registration as provided for under subsection (a)(1) or (2).
>
> (ii) Correction of registration records in accordance with this part.

This section of <u>PA Title 25 § 1901</u> reinforces that the 90 day deadline applies to the once-yearly required maintenance


Lastly, the DOS and Counties are conveying through these emails that citizens of the Commonwealth are no longer able to point out issues on the voter rolls due to changes under 2022 Act 88, stating that they are barred from doing so as it would "violate a recently enacted state statute prohibiting Counties in Pennsylvania from accepting any assistance from third parties in conducting elections."

> Section 1. The act of June 3, 1937 (P.L.1333, No.320), known as the Pennsylvania Election Code, is amended by adding a section to read:
> Section 107. Public Funding of Elections.--(a) The cost and expense to State and local governments relating to the registration of voters and the preparation, administration and conduct of elections in this Commonwealth shall be funded only upon lawful appropriation of the Federal, State and local governments, and the source of funding shall be limited to money derived from taxes, fees and other sources of public revenue.
> (b) State and local governments, including their public officers, public officials, employees and agents, acting in their official capacity, may not solicit, apply for, enter into a contract for or receive or expend gifts, donations, grants or funding from any individual, business, organization, trust, foundation, or any nongovernmental entity for the registration of voters or the preparation, administration or conducting of an election in this Commonwealth.
> (c) This section shall not be construed to apply to the collection of fees authorized by law or to the donation or use of:
> (1) a location for voting purposes;
> (2) services that are provided without remuneration; or
> (3) goods that have a nominal value of less than one hundred ($100) dollars.

2022 Act 88 outlines limits what State and Local Governments are barred from receiving and from who
https://www.legis.state.pa.us/cfdocs/legis/li/uconsCheck.cfm?yr=2022&sessInd=0&act=88

Again, the text in the Act is being stretched and skewed to fit the purposes of the County and DOS in a way to excuse themselves from needing to maintain their voter rolls or complete their mandatory list maintenance.

ATVPA does not offer gifts, donations, grants, funding, or any other of the outlined items under Act 88. As outlined under subsection (c) above, "This section shall not be construed to apply to the collection of fees authorized by law or to the donation or use of: (2) services that are provided without remuneration".

ATVPA has simply alerted the counties of identified OOS registrations without looking for remuneration.

If it's the DOS and counties' position that this action violates 2022 Act 88, then let's treat all third-parties identifying and requesting changes to the voter rolls the same. As of the last inquiry, ATVPA has received confirmation from the PA DOS that 87 third-party organizations have access to the SURE Web API which is used specifically for the registration of voters. The registration of voters is explicitly mentioned in 2022 Act 88, barring the State and its counties from receiving help from third parties.



Here are just a few of Pennsylvania's 87+ third-parties that have been and are currently registering voters on behalf of Pennsylvania and its counties.  The full list can be viewed here.













# Conclusion

Given the data presented above and the responses from counties, ATVPA concludes that most counties in Pennsylvania take their list maintenance and election activities very seriously and act professionally when presented with potential voter registration issues. These counties that follow the law and take their maintenance activities seriously, are currently being disenfranchised by those counties that choose to treat portions of the law as optional while reading into law text that isn't written. These counties make up the majority of the identified OOS registrations and have the largest share of those registrations that are still active.

These counties are the same counties that have fought all attempts over the last year+ to address or resolve registration issues brought to them by their constituents. The inability of these counties to demonstrate whether they had previously taken the required actions around these registrations shows they were either entirely unaware of the moves or lacked the required record-keeping around these maintenance activities. Their approach to performing the list maintenance activities required by law, seems wholly insufficient to satisfy the requirements of PA Title 25 § 1901 and other election laws.

The constituents in these counties feel that the county has failed to provide transparency or confidence around the way they maintain their voter rolls and administer their elections. This lack of confidence is amplified by the major issues many of these counties have had around their handling of elections over the last several years, which has lead to many stories that have made national news.

It is ATVPA's hope that this report serves as a needed wake up call to Pennsylvania's State & County Governments and its residents about the need to sufficiently adhere to election law, perform legally-required list maintenance activities, and to work with their constituents to create transparency and confidence in Pennsylvania elections.




# Audit The Vote PA
# 2022 General Election
Unverified MB Report

2022-10-31

https://AuditTheVotePA.com



## Background

Audit The Vote PA (ATVPA) reviewed existing available public data in light of the conflicting messaging coming from Pennsylvania's Department of State (DOS) around the numbers of unverified mail ballots and how these ballots are to be handled.

ATVPA reviewed both the Frank Ryan and Verity Vote reports, which indicated that between 240,000 and 255,000 mail ballots were sent to people whose provided identification did not match what was on record.

Since these reports were released, the DOS released further messaging attempting to discredit these numbers, such as the following graphic shared on their social channels. The DOS also put out a report discrediting the reports put out by the PA legislature and Verity Vote.



A graphic that the PA DOS created and put out on their social channels to try and "correct misinformation about 'unverified ballots'" as stated in their posts.
https://archive.ph/uZHXh



# Methodology

ATVPA has access to the weekday snapshots of the 2022 general election mail ballot list made available daily by the PA DOS. This data is public data and can be requested by any resident of Pennsylvania, Campaign, or Party. Within the data itself contains many fields that line up with the fields that exist in the PA Full Voter Export (FVE) and can be matched with a registration using the same IDNumber field available in both data sets.

For the purposes of this report, ATVPA has performed its analysis against the mail ballot snapshots without pulling in any FVE snapshots. ATVPA used the 10/28/2022 mail ballot snapshot for the majority of this report and the 09/02/2022 mail ballot snapshot, which is the first that was made available this general election cycle, for a portion of the analysis.

Pennsylvania has several types of MailApplicationCodes that are used to relay to both the counties and the public what type of voter is requesting what type of ballot. For this report, there are two MailApplicationTypes that indicate the applicant's identity has not been verified, "**OLMAILNV**" and "**OLREGNV**".

OLMAILV represents a *verified* mail ballot application that was submitted online. **OLMAILNV** represents an *unverified* mail ballot application that was submitted online.

OLREGV is a designation used for *verified* civilian absentee ballot applications that were submitted online. **OLREGNV** is the designation used for *unverified* civilian absentee ballot applications that were submitted online.

For this report, ATVPA filtered all records in the 10/28/2022 mail ballot snapshot to just those that the DOS has indicated are using the "OLMAILNV" or "OLREGNV" MailApplicationType.

Further, ATVPA filtered out all applicants that were not sent a ballot by filtering on the BallotSentDate column to ensure that only those that show a date are included in the report, unless otherwise stated.



# Findings

---

## Total Unverified PA Mail Ballots

As of the 10/28/2022 Pennsylvania Mail Ballot Snapshot provided by the PA DOS, Audit The Vote PA (ATVPA) has identified **251,815** mail ballots that were sent out to individuals whose identity is recorded as not verified. These numbers fall in line with the numbers presented by the PA Legislature and Verity Vote.

Allegheny County has more of these ballots in circulation than any other county, with 33,708 ballots being sent out to individuals whose identity has not been verified. Allegheny is followed by Philadelphia (31,248), Montgomery (28,626), Chester (21,182), Bucks (18,642), Delaware (11,822), Lancaster (9334) and York (8760) Counties.



A visual representation of the unverified ballots by county

It appears that the bulk of these ballots were sent out between September 21st and October 13th, with more having been sent since then. Given the time between the Legislative report and this report, it appears as though the original report's stated 240k identified unverified mail ballots falls in line with the historical data plotted graphically in the following chart.





The number of unverified ballots sent out by day shown in red, and shown cumulatively in blue



# Findings

## Verified Ballots

Audit The Vote PA wanted to determine whether these totals were representative of the current state of the applicant's verification process, given the PA DOS issued a report on 10/27/2022 where they asserted that only 7,600 applications still needed to be verified.

> "After the verification process occurs, only those voters whose identification could not be verified will be required to submit valid ID before the sixth day after the election. Currently, that number of voters stands at approximately 7,600."

ATVPA compared the first mail ballot snapshot made available to the public by the DOS (09/02/2022) against the snapshot used in this report (10/28/2022) to look for applicants that originally had an unverified MailApplicationType in the 09/02 snapshot but had a verified MailApplicationType in the 10/28 snapshot.

The 09/02/2022 mail ballot snapshot shows a total of 259,561 unverified applications.

ATVPA then sought to detect any applicants by IDNumber whose 09/02 MailApplicationType was unverified at the time, but changed to a verified status by the 10/28/2022 rolls. Doing so yields 7854 such changes across 58 counties, of which 7759 show as having been sent a ballot.

```sql
SELECT COUNT(*) FROM MB20221028
WHERE MailApplicationType NOT IN ("OLMAILNV", "OLREGNV")
AND IDNumber IN (
  SELECT IDNumber FROM MB20220902
  WHERE MailApplicationType IN ("OLMAILNV", "OLREGNV")
)
```

The SQL query used to calculate the 7854 updates

The results of this exercise appear to indicate that the Pennsylvania DOS incorrectly stated the total number of outstanding unverified ballots. In fact, it is ATVPA's suspicion that the PA DOS misattributed the number of verified applications to those that still required verification given how close their number (7600) is to these results (7759).

Given that all 67 counties in Pennsylvania have outstanding unverified ballots and only 58 show any updated records in the 10/28/2022 snapshot, ATVPA has concerns as to whether all counties are aware of the verification requirements or the process to update their record within the system.





**Count of Applicants with updated Verified Ballot Status, by County**

| County | Count |
|---|---|
| MONTGOMERY | 1.2K |
| DELAWARE | 634 |
| NORTHAMPTON | 604 |
| ALLEGHENY | 544 |
| CUMBERLAND | 453 |
| PHILADELPHIA | 449 |
| LEHIGH | 447 |
| BUCKS | 330 |
| BEAVER | 238 |
| LANCASTER | 236 |
| ADAMS | 232 |
| SCHUYLKILL | 218 |
| YORK | 203 |
| FRANKLIN | 166 |
| CENTRE | 164 |
| PIKE | 157 |
| ERIE | 151 |
| CAMBRIA | 147 |
| LUZERNE | 138 |
| FAYETTE | 79 |
| WESTMORELAND | 75 |
| BUTLER | 72 |
| CHESTER | 68 |
| DAUPHIN | 62 |
| LEBANON | 60 |
| SOMERSET | 59 |
| COLUMBIA | 58 |
| UNION | 53 |
| BEDFORD | 52 |
| CLEARFIELD | 43 |
| LACKAWANNA | 37 |
| BRADFORD | 36 |
| BLAIR | 34 |
| WAYNE | 33 |
| HUNTINGDON | 30 |
| CLARION | 21 |
| LAWRENCE | 21 |
| TIOGA | 20 |
| NORTHUMBERLAND | 20 |
| CLINTON | 18 |
| JEFFERSON | 16 |
| WARREN | 16 |
| BERKS | 12 |
| MONTOUR | 11 |
| ARMSTRONG | 11 |
| LYCOMING | 11 |
| MONROE | 9 |
| SNYDER | 7 |
| GREENE | 6 |
| JUNIATA | 5 |
| ELK | 4 |
| WASHINGTON | 4 |
| CRAWFORD | 3 |
| FULTON | 2 |
| POTTER | 1 |
| FOREST | 1 |
| CARBON | 1 |
| PERRY | 1 |

*Count of Applicants with updated Verified Ballot Status, by County*



# Conclusion

Given the data presented above, it is Audit The Vote PA's conclusion that the numbers provided by the PA Legislature and Verity Vote are indeed accurate counts, and that the Pennsylvania Department of State's messaging referenced incorrect numbers and their messaging around this verification process has been contradictory .

The significance of the report presented by Frank Ryan on behalf of the PA Legislature in addition to the longer report put out by Verity Vote, is not the sheer number of such unverified ballots, but rather the conflicting guidance issued by the PA DOS. The guidance issued by the DOS creates ambiguity around how counties must handle the legally required verification process. Several counties appear to be unaware of the verification requirement.

Verity Vote <u>correctly documented comments</u> made by Deputy Secretary Jonathan Marks during a 09/14/2022 PA State Government Committee hearing. Marks is on record having said:

> "I want to make sure we're clear about the distinction between the two processes. Voter registration, there is no federal requirement or state requirement that those numbers match or that every voter has to have one of those two numbers. With mail-in balloting, it is a requirement. **If when you apply, your PennDOT ID cannot be verified or your last four of SSN cannot be verified, the county can still issue the ballot**, but the ballot doesn't count unless the voter provides a valid form of ID – either a PennDOT ID or the last four of SSN that can be verified or one of the other forms of identification provided for in the statute."

Verity Vote also correctly documented that <u>the directive sent out by the PA DOS on 09/26/2022</u> contradicts Deputy Secretary Jonathan Marks' official comments. The DOS directive states:

> "The Pennsylvania Election Code describes processes that a qualified voter follows to apply for, receive, complete, and timely return an absentee or mail-in ballot to their county board of election. These processes include multiple secure methods used by the voter's county board of election to verify that the qualified voter's absentee or mail-in application is complete and that the statutory requirements are satisfied. These include voter identification verification confirmed by either a valid driver's license number, the last four digits of the voter's social security number or other valid photo identification, and unique information on the application including the voter's residence and date of birth.
>
> **Before sending the ballot to the applicant**, the county board of elections confirms the qualifications of the applicant by verifying the proof of identification and comparing the information provided on the application with the information contained in the voter record. If the county is satisfied that the applicant is qualified, the application must be approved."

As shown above, the DOS described two conflicting sets of guidance prior to the Legislative report which directly contradict one another. The ambiguity created here caused confusion amongst Pennsylvania's 67 counties as to whether verification needed to occur before sending the ballot or before counting the ballot.

The Verity Vote report documents additional statements that would indicate counties are not handling the identity verification requirement uniformly. Their report reinforces their claim by quoting testimony from various legislative sessions that indicate some counties did not perform any verification, as they were unaware the requirement was being pushed onto the counties. This appears to be backed by the data in the verified ballot analysis above, as several counties



show no updates to their unverified ballots while 58 counties have updated their records to reflect those ballots that have been properly verified.

Verity Vote aptly summarized the situation that has been allowed to incubate with the following overview,

> This is an enormous task that the DoS has chosen to delegate to the county election offices for which the DoS has provided inaccurate guidance. This policy jeopardizes the counties' ability to verify the ID of these nearly quarter million individuals and creates a situation where counties have to go after this missing information to comply with the law, all while trying to carry out their other election responsibilities.

It is ATVPA's conclusion that the numbers presented are accurate as of 10/28/2022 and the DOS' own numbers do not match their own data. If there is some data the PA DOS is keeping that validates their numbers, ATVPA would request that they make that data available or update the publicly available records where this data is required to be maintained.

The often conflicting guidance issued by the PA DOS has created confusion amongst the counties and their constituents, and has identified that Pennsylvania's 67 counties to not have a shared perception of the verification requirement falling solely on their staff to perform.

The continued denials and misrepresentations of the information put out by the DOS is creating an atmosphere that breeds confusion and allows for laws to be unknowingly broken by counties during the upcoming midterm election.