## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

———————————————————— :
:
UNITED SOVEREIGN AMERICANS, :
INC., *et al.*, :
: Case No. 1:24-cv-01003-DFB
Plaintiffs, :
: (Hon. Daryl F. Bloom)
v. :
:
COMMONWEALTH OF :
PENNSYLVANIA, *et al.*, :
:
Defendants. :
———————————————————— :

## BRIEF IN SUPPORT OF
## DEPARTMENT OF STATE DEFENDANTS'
## MOTION TO DISMISS

Date: August 5, 2024

JENNIFER C. SELBER
GENERAL COUNSEL

By: STEPHEN R. KOVATIS
Deputy General Counsel
Attorney ID No. 209495
Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA  17101
Phone: 717-602-0943
Email: skovatis@pa.gov

*Counsel for the Department of State Defendants*

# Table of Contents

I.    INTRODUCTION ................................................................................. 1

II.   PROCEDURAL HISTORY .................................................................. 3

III.  STATEMENT OF FACTS ..................................................................... 3

IV.   STATEMENT OF QUESTIONS INVOLVED ........................................ 5

V.    ARGUMENT ...................................................................................... 6

  A.   The Standard for a Motion to Dismiss ........................................ 6

  B.   Plaintiffs Lack Article III Standing ........................................... 8

  C.   The Complaint Is Barred by Eleventh Amendment Immunity ........... 12

  D.   Plaintiffs Lack a Cause of Action ............................................. 14

    1.  The All Writs Act Does Not Create a Private Right of Action .................. 14

    2.  The Department of State Defendants Are Not Federal Officials Subject to Jurisdiction Under the Mandamus Act ....................................... 16

    3.  There Is No Private Right of Action Under the Help America Vote Act ... 17

    4.  Plaintiffs Do Not Satisfy the Prerequisites for, and Expressly Disclaim, an Action Under the National Voter Registration Act .................... 17

  E.   Plaintiffs Have Not Plausibly Stated a Violation of Federal Law ........ 17

    1.  Plaintiffs Have Not Averred a Claim Under HAVA .................. 17

    2.  Plaintiffs Have Not Plausibly Alleged a Violation of the NVRA ............. 19

VI.   CONCLUSION ................................................................................... 21

## Table of Authorities

**Cases**

*Acosta v. Democratic City Comm.*, 288 F.Supp.3d 597 (E.D. Pa. 2018) ...............13

*Alden v. Maine*, 527 U.S. 706 (1999) ........................................................................13

*Am. Civil Rights Union v. Phila. City Commissioners*, 872 F.3d 175
   (3d Cir. 2017) ....................................................................................... 17, 19, 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .....................................................7

*Bennett v. Spear*, 520 U.S. 154 (1997) ...................................................................10

*Berg v. Obama*, 586 F.3d 234 (3d Cir. 2009) ..................................................... 9, 12

*Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690 (3d Cir. 1996)...........................6

*Church of Scientology of Georgia, Inc. v. City of Sandy Springs, Ga.*, 843
   F.Supp.2d 1328 (N.D. Ga. 2012)...............................................................16

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ...............................................12

*Clingman v. Beaver*, 544 U.S. 581 (2005)...............................................................16

*Downey v. Pa. Dep't of Corr.*, 968 F.3d 299 (3d Cir. 2020) ...................................13

*Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ...............9

*Gould Electronics Inc. v. United States*, 220 F.3d 169 (3d Cir. 2000).....................7

*Haggard v. State of Tenn.*, 421 F.2d 1384 (6th Cir. 1970).....................................15

*Hans v. Louisiana*, 134 U.S. 1 (1890) ....................................................................12

*James v. City of Wilkes-Barre*, 700 F.3d 675 (3d Cir. 2012) ...................................7

*Karns v. Shanahan*, 879 F.3d 504 (3d Cir. 2018).....................................................12

*Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190 (3d Cir. 2000).......................................13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ........11

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ..........................................9

*Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, 805 F.3d 98 (3d Cir. 2015).............................................................................................................11

*Maryland Election Integrity, LLC v. Maryland State Bd. of Elections*, No. 24-cv-672, 2024 WL 2053773 (D. Md. May 8, 2024)........................................8, 9

*Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892 (3d Cir. 2021) ..................................7

*Pa. Prison Soc. v. Cortes*, 508 F.3d 156 (3d Cir. 2007) ..........................................11

*Pennsylvania v. New Jersey*, 426 U.S. 660 (1976) .....................................................12

*Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993)..........................................................................................................13

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996)....................................... 13, 14

*United States v. Apple MacPro Computer*, 851 F.3d 238 (3d Cir. 2017)...............15

*United States v. Denedo*, 556 U.S. 904 (2009) ........................................................15

*United States v. N.Y. Tel. Co.*, 434 U.S. 159 (1977)................................................15

*W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85 (3d Cir. 2010) ...........8

*Weaver v. Wilcox*, 650 F.2d 22 (3d Cir. 1981) ........................................................16

*Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa.*, 103 F.3d 294 (3d Cir. 1996)..........................................................................................................4

**Statutes**

28 U.S.C. § 1361 ......................................................................................................16

28 U.S.C. § 1651 ......................................................................................................14

42 Pa. C.S. § 8521 ....................................................................................................13

52 U.S.C. § 20501 .......................................................................................... 11, 19, 20

52 U.S.C. § 20510 ....................................................................................................17

52 U.S.C. § 21081 ........................................................................................... 17, 18

**Other Authorities**

H.R. REP. No. 107-329 (2001)..................................................................................11

**Rules**

Fed. R. Civ. P. 11 ...............................................................................................3, 4

Fed. R. Civ. P. 12 ...............................................................................................6, 7

Fed. R. Civ. P. 8 ....................................................................................................7

Defendants Al Schmidt in his official capacity, the Pennsylvania Bureau of Elections, the Pennsylvania Bureau of Election Security and Technology,[1] and the Pennsylvania Department of State (collectively the "Department of State Defendants"), by counsel, respectfully submit this Brief in Support of their Motion to Dismiss.

## I.    INTRODUCTION

This case raises, once again, long debunked theories from 2020 and 2022 designed to undermine public confidence in the integrity of Pennsylvania's elections. Plaintiffs, who do not allege any personal harm to their own civil rights based on facts actually known to them, have instead filed this federal civil complaint containing a litany of believed (but false) problems with Pennsylvania's elections and Pennsylvania's voters. Plaintiffs do not say that there has been or will be any fraud in any Pennsylvania election—in fact, they expressly disclaim on multiple occasions that they have any actual evidence of fraud or even believe that there has been fraud. Instead, they base this action on hypothetical and speculative accusations that it is "possible" that there "could" or "might" be voter eligibility problems. In doing so, Plaintiffs attempt to substitute their limited knowledge and poor judgment for those who carefully monitor Pennsylvania's elections.

---

[1]    These bureaus, or something similarly named, are part of the Department of State. *See* https://www.oa.pa.gov/Policies/Documents/State.pdf.

Simply put, this is not a civil action; it is an attempt to subvert the regulatory process. This Court should not allow it to proceed.

Plaintiffs, a Missouri nonprofit and three individual Pennsylvania residents, seek a writ of mandamus under the All Writs Act and/or the Mandamus Act against the Pennsylvania Secretary of the Commonwealth, three other state entities, and other state and federal officials. The Petition for Relief in the Form of a Writ of Mandamus concludes, without any supporting nonspeculative facts, that Pennsylvania and the federal government operated elections unlawfully in 2020 and 2022 and will do so again in 2024. The Petition should be dismissed for multiple reasons.

*First*, Plaintiffs lack standing. This is not a lawsuit in which Plaintiffs allege that they have been personally harmed and seek to remedy that harm. Instead, they present a classic nonjusticiable general grievance. *Second*, Eleventh Amendment immunity bars the claims against state agencies, bureaus, and officials. There has been no waiver or abrogation of immunity, and this case does not fit into the narrow exception for forward-looking injunctive relief because Plaintiffs do not seek injunctive relief and because the statutes at issue have their own remedial provisions. *Third*, the All Writs Act plainly does not establish a federal cause of action. *Fourth*, the Department of State Defendants are not subject to the Mandamus Act because they are not federal agencies or officials. *Fifth*, even if

2

there were a justiciable claim, the Petition does not allege facts showing a violation of either the Help America Vote Act ("HAVA") or the National Voter Registration Act ("NVRA"). For any or all of these reasons, the Petition should be dismissed.

## II.   PROCEDURAL HISTORY

Plaintiffs commenced this civil action by filing a document entitled "Petition for Relief in the Form of a Writ of Mandamus". ECF No. 1 ("Petition"). On July 22, 2024, the Department of State Defendants moved to dismiss the Petition pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or 12(b)(1). ECF No. 6.

In accordance with Local Rule 7.5, the Department of State Defendants now file this brief in support of their motion to dismiss.

## III.   STATEMENT OF FACTS

Reciting the facts in this case proves difficult because, despite its length, the Petition contains very few allegations of fact. Instead, it contains many (often erroneous) legal assertions, coupled with speculative beliefs about things that Petitioners think **might conceivably be** true but are unable to aver **are** true. *Cf.* Fed. R. Civ. P. 11(b)(3) (factual contentions in a pleading must either "have evidentiary support" or "will likely have evidentiary support" after discovery). For example, the Petition avers that "[i]t is *possible* for election officials . . . to commit election fraud," Pet. ¶ 153 (emphasis in original); that "[q]uestions" about "recorded vote totals . . . *could have* affected the awarding of electoral votes" which "*might have*

affected the determination of the 'winner'" of the presidential election," Pet. ¶ 100 (emphasis added); and that six current United States Representatives "*might* hold their seats owing to legally unreliable election results," Pet. ¶ 199 (emphasis in original).[2] Consequently, only a small number of averments constitute the core facts that are entitled to any presumption of truth.

*   *   *

After the 2020 election, Plaintiffs claim, there were "[d]iscussions and/or litigation" surrounding "[q]uestions" about whether reported vote totals were accurate. Pet. ¶¶ 98-100. However, no court found these questions credible and no court found any election to be unreliable. Pet. ¶ 101. Plaintiffs contend that these courts got the legal standard wrong, and instead seek to "posit a different question." Pet. ¶ 103.

Plaintiff United Sovereign Americans alleges that it has "performed a series of SQL database queries" on Pennsylvania voter registration data, which it

---

[2]    This approach to pleading in federal court would be rejected out of hand in any other context, because reliance on unsupportable speculation is antithetical to the pleading standard. *See, e.g.*, *Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa.*, 103 F.3d 294, 299 (3d Cir. 1996) (finding that a plaintiff violated Rule 11 by making an allegation with "no evidence whatsoever, other than conjecture"). A plaintiff cannot simply ask questions and then demand discovery to answer those questions—Rule 11 "stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule." Fed. R. Civ. P. 11, Notes of Advisory Committee on Rules – 1983 Amendment. That prefiling inquiry here appears woefully insufficient.

contends "revealed hundreds of thousands of voter registration apparent errors." Pet. ¶¶ 163-70. In fact, according to Petitioners' analysis, more than 3.1 million out of 8.7 million total voter registrations contain "apparent registration violations," with most (about 2.9 million) of these alleged errors concerning either the registration date or an unspecified issue with registration changes. Pet. ¶ 171, Ex. B. Plaintiffs argue that these "apparent" issues might violate federal law, particularly HAVA and the NVRA.

However, Petitioners do not aver facts with respect to even a single registration which is ***actually*** fraudulent. They also do not point to a single voter who voted illegally in 2020 or 2022 that has been unaddressed by the Department or law enforcement. Rather, they expressly note that they "do not accuse any person or entity of engaging in election fraud in 2022, nor propose any person or entity will engage in such fraud in 2024 or in subsequent federal elections in Pennsylvania." Pet. ¶ 148. Further, no Petitioner alleges that his or her individual right to vote has been infringed.

## IV.   STATEMENT OF QUESTIONS INVOLVED

1.   Do Plaintiffs who have alleged no harm to their right to vote have standing to pursue claims related to voter registration and election processes?

**SUGGESTED ANSWER**: No.

2.      Can Plaintiffs overcome Eleventh Amendment immunity in a suit against state agencies, bureaus, and officials arising out of the All Writs Act or Mandamus Act?

**SUGGESTED ANSWER**: No.

3.      Does the All Writs Act create a private right of action to seek a writ of mandamus against a state agency, bureau, or official?

**SUGGESTED ANSWER**: No.

4.      Are Department of State bureaus and officials considered federal agencies or officials subject to the Mandamus Act?

**SUGGESTED ANSWER**: No.

5.      Have Plaintiffs alleged facts showing a violation of either HAVA or the NVRA?

**SUGGESTED ANSWER**: No.

## V.      ARGUMENT

### A.      The Standard for a Motion to Dismiss

A defendant may move to dismiss a complaint under Rule 12(b)(1) where the district court lacks subject-matter jurisdiction over a claim. Fed. R. Civ. P. 12(b)(1). The assertion of immunity under the Eleventh Amendment challenges the court's subject matter jurisdiction, and thus is properly raised under Rule 12(b)(1). *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996). In a

6

facial challenge to subject-matter jurisdiction, in which the defendant attacks the sufficiency of a complaint, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

A defendant may also move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). While a complaint need only contain a "short and plain statement" of the facts, see Fed. R. Civ. P. 8(a), it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Analyzing the sufficiency of a complaint is a three-step process. First, the Court must "take note of the elements a plaintiff must plead to state a claim." *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)) (cleaned up). Second, the Court should "identify allegations that are not entitled to the assumption of truth because those allegations are no more than conclusions." *Id.* (cleaned up). That requires the Court to "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012). Third, assuming the veracity of "well-pleaded factual allegations" along with "all reasonable inferences that can be

drawn from those allegations" in the light most favorable to the nonmoving party, the Court determines "whether they plausibly give rise to an entitlement to relief." *Oakwood Labs.*, 999 F.3d at 904 (cleaned up). Assessing a complaint's sufficiency is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

**B.      Plaintiffs Lack Article III Standing**

Plaintiffs' standing argument is not a particularly close call. In fact, a federal district court in Maryland recently held that United Sovereign Americans, Inc. and one of its members lack standing to raise the same claims it asserts here. *Maryland Election Integrity, LLC v. Maryland State Bd. of Elections*, No. 24-cv-672, 2024 WL 2053773 (D. Md. May 8, 2024). The Petition here does not address this decision or its reasons, instead opting to shop the same allegations to a new court, seemingly hoping for a different outcome.

This Court should apply the well-established standing principles under Article III that have been repeatedly emphasized by the United States Supreme Court, including as recently as its latest term. In short, Plaintiffs have not suffered personal harm for which they seek redress.

"Article III of the Constitution confines the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Food & Drug Admin. v. All. for Hippocratic Med.*,

8

602 U.S. 367, 378 (2024). Constitutional standing requires a plaintiff to establish "(i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Id.* at 380. Moreover, a plaintiff lacks Article III standing when he or she raises "only a generally available grievance about government," which is a claim alleging "only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573-74 (1992).

As did the Maryland district court, this Court should "begin and end its analysis with Plaintiffs' standing." *Maryland Election Integrity,* 2024 WL 2053773, at *2. Both Plaintiff Dreibelbis and Plaintiff Houser raise nothing more than a generalized grievance, averring that they made complaints about the manner in which elections are conducted in Pennsylvania, and that those complaints were ignored. Pet. ¶¶ 80, 83. This theory, which does not assert any personalized injury, presents a straightforward type of generalized grievance that is not cognizable under Article III. *See Berg v. Obama*, 586 F.3d 234, 239-40 (3d Cir. 2009) (voter lacked standing to challenge Barack Obama's candidacy based on allegations related to his citizenship).

Additionally, Plaintiff Houser presents an alternative theory—she alleges that "her vote was not recorded in Pennsylvania's Statewide Uniform Registry of Electors ("SURE") system." Pet. ¶ 79. It is unclear, though, why this causes her harm. She admits that she was eligible to vote, registered to vote, and did vote in the 2020 and 2022 elections. Pet. ¶ 79. That means she suffered no harm—her vote was counted and her rights as a voter maintained, whether or not a record appears in the SURE system.[3]

Although the Petition alleges harm related to voting rights and the integrity of elections, Plaintiff Moton's standing theory has nothing to do with either. Instead, she sues because she was a candidate for state representative in 2018, 2020, and 2022 who allegedly spent a "lengthy number of hours . . . campaigning" but "could not be certain of the location and identity of the voters she was attempting to canvas." Pet. ¶ 82. But this logically inconsistent theory fails to establish causation or redressability, because there is no reason to believe that addressing the alleged "apparent registration violations" identified in Exhibit B of the Petition would help Plaintiff Moton as a candidate for future office. Any such belief is "merely speculative." *See Bennett v. Spear*, 520 U.S. 154, 167 (1997).

---

[3]    Although plausible allegations must be presumed true in a motion to dismiss, in reality the SURE system does reflect that Plaintiff Hauser voted in the primary and general elections in 2022.

Plaintiff Moton's theory also fails the "zone of interest" test.[4] Congress has declared that the purpose of the NVRA is to "increase the number of eligible citizens who register to vote," "enhance[ ] the participation of eligible citizens as voters," "protect the integrity of the electoral process," and ensure "accurate and current voter registration rolls." 52 U.S.C. § 20501(b). Similarly, Congress declared that HAVA's intent following the 2000 election was "to improve our country's election system." H.R. REP. No. 107-329, at 31 (2001). In both cases, Congress clearly intended to protect **voting** and **elections**, not promote microtargeting in political campaigns. Thus, Plaintiff Moton's theory of standing falls outside the "zone of interest" protected by either the NVRA or HAVA.

Finally, Plaintiff United Sovereign Americans believes it has organizational standing because it analyzed Pennsylvania's voter registration records, Compl. ¶¶ 153-170, and because "is not seeking a distinct form of relief" compared to the other plaintiffs, Compl. ¶ 92. Neither theory supports a cognizable claim. *See Pa. Prison Soc. v. Cortes*, 508 F.3d 156, 162-63 (3d Cir. 2007) (describing the two possible bases for organizational standing: direct harm to the organization's

---

[4]     Although long considered in the context of the doctrine of prudential standing, a "zone of interest" challenge is more properly considered as a failure to state a statutory claim. *See Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, 805 F.3d 98, 105 (3d Cir. 2015) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). But whether considered as a jurisdictional issue or a statutory one, it supports dismissal of Moton's claims here.

11

interest and associational standing based on its members). Plaintiff United Sovereign Americans does not have standing merely because it chose to analyze voting records. *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976). The purported injury is not particularized to it as an organization, presenting a generalized grievance, *see Berg*, 586 F.3d at 239-40, and the organization's voluntary conduct is a type of self-inflicted harm that does not create standing, *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013). Finally, derivative standing based on other plaintiffs fails because those plaintiffs also lack standing. Moreover, even if one or more of these individual plaintiffs did have standing, the Petition does not allege that any of those individuals are actually members of United Sovereign Americans.

Because no plaintiff has standing, this claim should be dismissed on that basis alone.

### C.     The Complaint Is Barred by Eleventh Amendment Immunity

It has been long established that the Eleventh Amendment of the United States Constitution bars all private lawsuits against non-consenting states in federal court. *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). Eleventh Amendment immunity "is designed to preserve the delicate and 'proper balance between the supremacy of federal law and the separate sovereignty of the States.'" *Id.* (quoting *Alden v. Maine*, 527 U.S.

706, 757 (1999)). This immunity bars suits against the states and state agencies "regardless of the relief sought." *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

A plaintiff can overcome Eleventh Amendment immunity in three ways. First, a state may consent to be sued. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020). Pennsylvania, however, has generally withheld its consent to be sued. *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (citing 42 Pa. C.S. § 8521(b)). Second, Congress can, as part of the statute enabling a particular cause of action in certain circumstances, abrogate the states' immunity pursuant to Section 5 of the Fourteenth Amendment. *Downey*, 968 F.3d at 310. Any such abrogation must be done via a clear legislative statement from Congress, pursuant to a valid exercise of Congress's power over the states. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55, 58 (1996). Third, under the *Ex parte Young* doctrine, a plaintiff can pursue certain kinds of forward-looking injunctive relief against state officials. *Id.* This judicially created doctrine provides a "narrow exception" to a state's immunity. *Id.* at 76.

Here, Eleventh Amendment immunity plainly bars suit against the state entities: the Pennsylvania Department of State and its subordinate bureaus. *See Acosta v. Democratic City Comm.*, 288 F.Supp.3d 597, 626-27 (E.D. Pa. 2018)

13

(dismissing claim against Department of State pursuant to Eleventh Amendment immunity).

As to the claim against Secretary Schmidt in his official capacity, the claims here do not satisfy the criteria for a claim under *Ex parte Young* because, while *Ex parte Young* permits forward-looking injunctive relief, Plaintiffs here do not seek injunctive relief. *See* Pet. ¶ 215 ("Petitioners argue that injunctive and/or declaratory relief is inapplicable or inappropriate in this issue"). The particular type of relief that Plaintiffs seek—in the nature of mandamus—does not fit into the "narrow" *Ex parte Young* exception to Eleventh Amendment immunity. *See Seminole Tribe*, 517 U.S. at 76.

Because no exception to Eleventh Amendment immunity applies here, the claims against the Department of State Defendants should be dismissed.

### D.   Plaintiffs Lack a Cause of Action

#### 1.   The All Writs Act Does Not Create a Private Right of Action

The All Writs Act grants this Court the power to "issue all writs necessary or appropriate ***in aid of their respective jurisdictions*** and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (emphasis added). As is evident from the text, the All Writs Act cannot alone establish a federal cause of action. Under the act, "a court's power to issue any form of relief—extraordinary or otherwise—is contingent on that court's subject-matter jurisdiction over the case or controversy."

*United States v. Denedo*, 556 U.S. 904, 911 (2009). In other words, "a court has subject matter jurisdiction over an application for an All Writs Act order ***only when*** it has subject matter jurisdiction over the underlying order that the All Writs Act order is intended to effectuate." *United States v. Apple MacPro Computer*, 851 F.3d 238, 244 (3d Cir. 2017) (emphasis added). Relatedly, "a federal court may only issue an All Writs Act order 'as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'" *Id.* (quoting *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977)).

Here, Petitioners contend that the All Writs Act creates a private cause of action where one would not otherwise exist. This interpretation is contrary to its text and law. The All Writs Act is not, and was not intended to be, a catch-all for otherwise nonjusticiable claims implicating federal law. It certainly does not give federal courts broad common law mandamus powers over the states. *See Haggard v. State of Tenn.*, 421 F.2d 1384, 1386 (6th Cir. 1970) ("[A] federal court has no general jurisdiction to issue writs of mandamus where that is the only relief sought," nor does a federal court have "authority to issue writs of mandamus to direct state courts or their judicial officers in the performance of their duties.")

> 2.   The Department of State Defendants Are Not Federal Officials
> Subject to Jurisdiction Under the Mandamus Act

A federal court's mandamus powers derive from the Mandamus Act, which

grants jurisdiction to district courts in "any action in the nature of mandamus to

compel an officer or employee of the United States or any agency thereof to

perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The statutory power to

issue writs under the Mandamus Act is limited to *federal* agencies and officials.

*Weaver v. Wilcox*, 650 F.2d 22, 25 (3d Cir. 1981); *see also Church of Scientology

of Georgia, Inc. v. City of Sandy Springs, Ga.*, 843 F.Supp.2d 1328, 1380 (N.D.

Ga. 2012) ("Federal district courts do not have the authority to issue writs of

mandamus to direct state officials in the performance of their duties.").

The Department of State Defendants are not federal agencies and officials

for the purpose of the Mandamus Act, in form or in function. The Constitution

grants states broad power over election processes. *Clingman v. Beaver*, 544 U.S.

581, 586 (2005) (citing U.S. Const. Art. I, § 4, cl. 1). The mere fact that federal law

limits states' authority does not convert state election agencies into federal

agencies. Being subject to federal law cannot alone convert a state agency into a

federal agency; if it did, then *every* state agency would be a federal agency.

3.      There Is No Private Right of Action Under the Help America Vote Act

Plaintiffs do not attempt to bring a claim directly under HAVA, because HAVA does not permit a direct, private cause of action in federal court. *Am. Civil Rights Union v. Phila. City Commissioners*, 872 F.3d 175, 184-85 (3d Cir. 2017). Thus, Plaintiffs cannot convert their claim under the All Writs Act or the Mandamus Act into a direct claim under HAVA itself.

4.      Plaintiffs Do Not Satisfy the Prerequisites for, and Expressly Disclaim, an Action Under the National Voter Registration Act

Although the NVRA does allow a private right of action, it requires notice to a state's election official prior to initiating suit. 52 U.S.C. § 20510(b). Although Plaintiffs acknowledge this prerequisite, the Petition expressly states that Plaintiffs have not provided that notice because they do not wish to pursue a claim directly under the NVRA. Pet. ¶¶ 115-16. Thus, Plaintiffs cannot convert their claim under the All Writs Act or the Mandamus Act into a direct claim under the NVRA itself.

**E.      Plaintiffs Have Not Plausibly Stated a Violation of Federal Law**

Even if Plaintiffs could overcome these many threshold deficiencies, the Petition should be dismissed because it does not plausibly allege a violation of any relevant law.

1.      Plaintiffs Have Not Averred a Claim Under HAVA

Plaintiffs' primary allegation is that Defendants have violated Section 301(a)(5) of HAVA, 52 U.S.C. § 21081(a)(5), which requires "voting systems"

17

used in federal elections to comply with standards previously issued by the Federal Election Commission (FEC). Pet. ¶¶ 125-33. However, this part of HAVA covers the operation of voting machines, not voter registration. Nothing in the Petition plausibly asserts that the Department of State Defendants do not comply with HAVA.

Section 301(a)(5) requires "voting systems" to comply with standards that had been previously issued by the Federal Election Commission. The term "voting systems" is defined as "equipment" that is used for specific purposes relating to elections, including casting and counting votes, as well as related "practices" and "documentation." 52 U.S.C. § 21081(b). Under Section 301(a)(5), the "error rate of the voting system" includes "only those errors which are attributable to the voting system and not attributable to an act of the voter." 52 U.S.C. §§ 21081(a)(5). The relevant FEC standards that were incorporated by this provision further define "accuracy" of a voting system to mean "the ability of the system to capture, record, store, consolidate and report the specific selections and absence of selections, made by the voter for each ballot position without error." Federal Election Commission, Voting System Standards Volume I: Performance Standards § 3.2.1 (April 2002) (emphasis added).[5]

---

[5]      Available at https://www.eac.gov/sites/default/files/eac_assets/1/28/Voting_System_Standards_Volume_I.pdf, at 3-51 to 3-52

Plaintiffs purport to have performed an analysis of the Commonwealth's registration data and identified what they describe as "potential errors" with certain registrations. In addition to their conclusions being speculative and baseless, these "potential errors" in registrations have nothing to do with HAVA's requirements for accurate voting systems. HAVA's standards relate solely to the counting of ballots by machines that are manufactured for that express purpose and are subject to rigorous testing to ensure that they exhibit an exceptionally low error rate. The Petition, however, does not mention a single "voting system" used by any county in Pennsylvania, much less allege that any such voting system exceeds the error rates set by Section 301(a)(5) and the FEC guidelines. In fact, it does not allege a **single error** in the counting of votes by **any voting system** in use of Pennsylvania.

2.    Plaintiffs Have Not Plausibly Alleged a Violation of the NVRA

Although Plaintiffs claim that Defendants have violated the NVRA, they never explain how they have done so. The NVRA provides that a state must make a "reasonable effort" to remove from the voter registration rolls the names of voters who have died or who have changed residence. 52 U.S.C. § 20501(b)(4). A state may only remove a registration in "very limited circumstances." *Am. Civil Rights Union*, 872 F.3d at 182.

Plaintiffs do not rely on the actual text of the NVRA, instead asserting Pennsylvania fails to comply with the broad the purpose of the NVRA "to ensure

that accurate and current voter registration rolls are maintained." Pet. ¶ 177 (citing

52 U.S.C. § 20501(b)(4)). But Plaintiffs' vague and speculative conclusions about

"apparent errors" does not plausibly aver that the Department of State Defendants

fail to make reasonable efforts to removed voters who have died or moved. Their

questions about dates on paperwork, for example, are both factually baseless and

irrelevant to the NVRA. At bottom, they have alleged nothing to dispute that

Pennsylvania maintains its voter rolls consistent with the NVRA, a statute

"intended as a shield to protect the right to vote, not as a sword to pierce it." *Am.*

*Civil Rights Union*, 872 F.3d at 182.

## VI.   CONCLUSION

Wherefore, the Department of State Defendants respectfully request that the Court dismiss the Petition for Relief in the Form of a Writ of Mandamus for lack of subject matter jurisdiction and/or for failure to state a claim under Rule 12.

Date: August 5, 2024                    Respectfully submitted,

JENNIFER C. SELBER
GENERAL COUNSEL

By:  /s/ Stephen R. Kovatis_____
STEPHEN R. KOVATIS
Deputy General Counsel
Attorney ID No. 209495
Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA  17101
Phone: 717-602-0943
Email: skovatis@pa.gov

*Counsel for the Department of State Defendants*

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 7.8(b)(2)</u>

I, Stephen R. Kovatis, hereby certify that this brief does not exceed 5,000 words. Using the word count feature of Microsoft Word, this brief contains 4,620 words.


Date: August 5, 2024                    By:  /s/ Stephen R. Kovatis_____
                                        STEPHEN R. KOVATIS

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen R. Kovatis, hereby certify that I have caused all parties to be served on this day with the foregoing Brief via the Court's ECF system.

Date: August 5, 2024                    By: /s/ Stephen R. Kovatis_____
                                        STEPHEN R. KOVATIS