**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED SOVEREIGN AMERICANS, INC.
167 Lamp and Lantern Village
Suite 194
Chesterfield, MO 63017                            CIVIL ACTION

    *And*

BERNARD "MARTY" SELKER, JR.              Case No.: 24-1003
875 Iron Bridge Rd.
Sigel, PA 15860

    *And*

DIANE HOUSER
205 Santillo Way
Downingtown, PA 19335

    *And*

RUTH MOTON
2250 Blue Ball Avenue
Upper Chichester, PA 19061

    *And*

DEAN DREIBELBIS
1295 Wakefield Court
Glen Mills, PA 19342

               *Petitioners,*

v.


AL SCHMIDT, IN HIS OFFICIAL
CAPACITY AS THE SECRETARY OF THE
COMMONWEALTH
410 North Street,
Harrisburg, PA 17120

    *And*

MICHELLE HENRY, IN HER
OFFICIAL CAPACITY AS THE
ATTORNEY GENERAL OF
PENNSYLVANIA
Strawberry Square
Harrisburg, PA 17120

  *And*

MERRICK GARLAND, IN HIS
OFFICIAL CAPACITY AS ATTORNEY
GENERAL OF THE UNITED STATES
950  Pennsylvania  Avenue
NW Washington DC 20530
      *Respondents.*

## **PETITION FOR RELIEF IN THE FORM OF AN AMENDED WRIT OF MANDAMUS [1]**

*TO: The Honorable, the Judges of Said Court:*

   United Sovereign Americans, Inc., a Missouri nonprofit corporation, Bernard "Marty"

Selker, Jr., individually, Diane Houser, individually, Ruth Moton, individually, and Dean

Dreibelbis, individually, Petitioners, by counsel, van der Veen, Hartshorn, Levin, & Lindheim,

through Bruce L. Castor, Jr., Esquire, and Michael T. van der Veen, Esquire, hereby submit this

Petition for Relief in the Form of a Writ of *Mandamus*, directed to Respondents, Al Schmidt in

his Official Capacity as the Secretary of the Commonwealth, Michelle Henry, in her Official

Capacity as Attorney General of Pennsylvania, , and Merrick Garland, in his Official Capacity

as Attorney General of the United States, and,

        *Respectfully Represents*:

---

[1] Petitioners are cognizant of Federal Rule of Civil Procedure 81(b) which abolished mandamus actions in United States District Court, but nonetheless authorizes "relief previously available through [writs of mandamus] by appropriate action or motion under these rules." F.R.C.P. 81(b). Petitioners herein are seeking relief via the All Writs Act (§ 1361) and an Action to Compel a United States Officer to Perform His/Her Duty (§ 1361).

**Summary of Petitioners' Argument and Examples of Relief Requested**

1.      The Congress of the United States has outlined the minimum standards which must be maintained by every state in order for a federal election to be considered reliable.  As outlined below, in Pennsylvania's 2022 federal election those minimum standards were not met by Commonwealth election officials rendering the certified election results that year unreliable. Respondents in their official capacities engaged in insufficient efforts to ensure that the 2022 performance is not repeated in subsequent federal elections beginning in 2024.

2.      If the 2022 election performance is repeated in 2024, Petitioners and all Pennsylvania voters will suffer damages.

3.      Apart from Court action in equity, no other mechanism exists in the law for Petitioners to require Respondents to perform their ministerial duties requiring that Pennsylvania's federal elections be conducted in conformity with the law as Congress has set forth.

4.      Only this Honorable Court has the power to require Respondents to act to bring the 2024 (and subsequent) federal elections supervised by Pennsylvania authorities into conformity with the minimum standards for reliability set down by Congress and outlined *infra*.

5.      Without the Court's action, Petitioners believe and therefore aver that the 2024 (and subsequent) Pennsylvania federal election results will be unreliable in the same way, and thus unreliable for the same reasons that the 2022 results are unreliable.

6.      Petitioners seek this Court's intervention to ensure that only properly registered voters cast votes in combined federal and state elections beginning in 2024.

7.      Petitioners seek this Court's intervention to ensure that only votes properly

cast are counted in combined federal and Pennsylvania elections beginning in 2024.

8.     Petitioners seek this Court's intervention to ensure that all votes properly cast are counted *correctly* in combined federal and Pennsylvania elections in even numbered years beginning in 2024.

9.     Petitioners seek this Court's intervention to ensure that only votes properly cast are counted in combined federal and Pennsylvania elections beginning in 2024.

10.     Petitioners seek this Court's intervention to ensure that all voting systems are compliant with all critical infrastructure requirements and risk assessments are completed within the actual use context, thereby assuring that every ballot is correctly and uniformly processed, as well as accurately tabulated and secured in combined federal and Pennsylvania elections beginning in 2024.

11.     Petitioners seek this Court's intervention to ensure that the authenticity of every ballot counted is proven by the maintenance of a comprehensive, unbroken chain of custody from the voter's hand to the final certified result, and the Commonwealth election officials maintain records of said chain of custody post-election, in compliance with all legally prescribed safeguards in combined federal and Pennsylvania elections beginning in 2024.

12.     Petitioners seek this Court's intervention to ensure that combined federal and Pennsylvania elections in even numbered years beginning in 2024 are conducted with the transparency required by law.

13.     Petitioners seek this Court's intervention to ensure that only votes properly cast are counted in combined federal and Pennsylvania elections beginning in 2024.

14.     Petitioners seek this Court's intervention clarifying and ordering that the currently accepted Federal definition "to certify" is to attest that an official measurement is

both accurate and the finding of accuracy was reaching in a fully compliant manner, thereby, directing that the "certification of elections" by Commonwealth election officials of combined federal and Pennsylvania elections from 2024 onward constitutes an "attestation," ostensibly under penalty of perjury, by the certifying official(s) that the vote counts are accurate and the cast and counted votes and the election itself were all conducted in compliance with applicable federal and state law.

15.     Petitioners, upon review of the statutes cited below, believe and therefore aver that federal and state law specify what Commonwealth officials must conform to, *at a minimum*, to properly conduct a combined federal and state election and prior certifying that election.

16.     Petitioners believe and therefore aver that based on the analysis below, combined with the various exhibits attached to this petition and incorporated by reference herein, that in the 2022 combined federal and state election, officials of the Commonwealth of Pennsylvania failed to ensure that **safeguards** were in place as mandated by various statutes designed to ensure the integrity of the elections.

17.     Petitioners believe and therefore aver the failure by Commonwealth election officials to know of and implement the safeguards required by law in 2022 allowed Commonwealth election officials to certify that election despite analysis showing the election results were *per se* unreliable on account of apparent error rates exceeding those the law permits before the results in *any* federal election become unreliable.

18.     Petitioners believe and therefore aver that apparent error rates that exceed the maximum error rate allowed by law destroyed the integrity of the 2022 election making full confidence in the accuracy of that election impossible.

19.    While Petitioners cannot state with certainty that the 2022 Pennsylvania General Election produced "winning" candidates who should not have won, Petitioners believe and therefore aver that the Commonwealth cannot state with certainty that all "winning" candidates received more votes than their "losing" candidates because the election itself was compromised by the Commonwealth's failure to conform to the requirements of federal law designed to ensure reliable election results.

20.    Petitioners believe and therefore aver that Congress mandated the maximum number of election errors which were permissible in the 2022 combined federal and state elections in the Commonwealth (and, indeed, in all states and voting territories).  An error rate above the maximum permissible rate set by Congress renders an election *uncertifiable* because the results are unreliable.  Nevertheless, Commonwealth officials certified the 2022 election.

21.    Petitioners do not seek relief in this Court in a challenge to the outcome of the 2022 federal election in Pennsylvania.  Petitioners agree that it is possible that in every federal contested election supervised and certified by the Commonwealth in 2022 the "winner" received more votes than the "loser."

22.    Petitioners believe and therefore aver, however, that the certification by Pennsylvania officials of the 2022 election was done despite the integrity of the election being suspect on account of *apparent* error rates occurring in that election that exceeded the error rate Congress permits before federal election results cannot be relied upon as accurate, and the Commonwealth did nothing to investigate those apparent errors before certifying the election.

23.    **Petitioners believe and therefore aver that it is reasonable to believe that**

**systemic issues which occurred in the 2022 combined Federal and state election in Pennsylvania will continue uncorrected in 2024, 2026, 2028, etc. absent intervention by this Court.**

24.     Petitioners aver they have called the various issues with the 2022 election to the attention of Commonwealth officials who failed to take sufficient action to ensure no further repeats of those issues cited here affecting the integrity of the 2022 election.

25.     The relief requested by Petitioners in the form of a Writ of *Mandamus* seeks, broadly speaking, this Court order Respondents to perform the *ministerial* functions their jobs require by taking actions to rectify reliability issues evident in the 2022 election.[2]

## 2022 Combined Federal and State Election in Pennsylvania Produced Unreliable Results and Should Not Have Been Certified

26.     In the Help America Vote Act ("HAVA") 52 US.C.A. § 21081, **Congress mandates as follows: HAVA - voting system error rate "…(5) Error RATES.—The error rate of the voting system in counting ballots (determined by taking into account only those errors which are attributable to the voting system and not attributable to an act of the voter) shall comply with the error rate standards established under section 3.2.1 of the voting systems standards issued by the Federal Election Commission ("FEC") which are in effect on the date of the enactment of this Act."**

27.     Congress enacted and President Bush signed HAVA into law in 2002 and it remains the law of the United States to date.

28.     The voting standards of the FEC in effect at the time Congress enacted HAVA

---

[2]  Petitioners do not request this Court order Respondents to exercise their *discretion* or make any decision at all apart from enforcing the specific, non-discretionary, requirements of the law outlined *inter alia* below.

in 2002 were the Voting Systems Standards Volume I: Performance Standards (2002).[3]

29.     **Those voting standards, in effect at the time HAVA became law, allowed for one error per 500,000 ballot *positions*.**

30.     Plaintiffs believe and therefore aver that a federal election that exceeded an error rate of one error per 500,000 ballot *positions* renders a federal election unreliable.

31.     As the HAVA provision enacted in 2002 cited above has not changed, the error rate of one error per 500,000 ballot *positions* is currently the law of the United States.

32.     A "ballot *position*" refers to the number of individual "choices" a voter could make on a single ballot.  For example, if a particular ballot has thirty little circles for the voter to fill-in or not fill-in, that single ballot would be said to contain thirty ballot positions.

33.     A voting system error occurs anytime the voting scanning machine should have discerned an error, not made by the voter, while counting one of those ballot positions on a scanned ballot.

34.     Experts working for the FEC estimated that 500,000 ballot *positions* equaled 125,000 *individual ballots*. (See Election Assistance Commission Voluntary Voting System Guidelines of 2015, *U.S. Election Assistance Commission*. United States [Web Archive] Retrieved from the Election Assistance Commission, https://www.eac.gov/sites/default/files/eac_assets/1/28/VVSG.1.1.VOL.1.FINAL1.pdf

35.     Petitioners believe and therefore aver that the EAC desired to clarify the meaning of 500,000 ballot *positions* in terms of how many individual ballots "make-up"

---

[3] As of 2021, there have been five iterations of national level voting system standards. The Federal Election Commission published the first two sets of federal standards in 1990 and 2002 (VSS1990 and VSS2002). The Election Assistance Commission then adopted Version 1.0 of the Voluntary Voting System Guidelines (VVSG 1.0, or VVSG2005) on December 13, 2005. On March 31, 2015, the EAC commissioners approved VVSG 1.1 (VVSG2015). On February 10, 2021, the EAC approved VVSG 2.0 (VVSG2021).

500,000 ballot *positions* in order to make easier understanding the election "error rates" permissible by HAVA.

36.     Petitioners believe and therefore aver (and will present expert testimony to so substantiate) that the calculation made by the FEC that 500,000 ballot positions represents 125,000 individual ballots is correct and represents the proper interpretation of federal law and Congressional intent under HAVA.

37.     In the 2022 Pennsylvania General Election, 5,410,022 individual ballots were recorded by election officials as cast.

38.     For the 2022 General Election if 5,410,022 (ballots cast) is divided by 125,000 (because the law allows for one error per 125,000 ballots), that leaves forty-four (44) (rounded up) as the maximum number of errors permitted under federal law for that election. Only upon a showing of 44 of fewer errors, then, would HAVA permit Commonwealth election officials to certify the 2022 election as valid.

39.     If there were more than forty-four (44) voting system errors in the entire ballot tabulation for all ballots cast in the 2022 election in Pennsylvania, the election results are unreliable.

40.     Pennsylvania exceeded this benchmark of forty-four (44) voting system errors in the 2022 General Election as outlined below.

41.     Petitioners believe and therefore aver that contributing to the unreliability of the Commonwealth's 2022 election is the fact that Pennsylvania's voter registration rolls, themselves, contained *hundreds of thousands* of potential errors at the time of the 2022 General Election.

42.     These potential errors were in the form of illegal duplicate registrations, voters

with invalid or illogical voter history, voters placed in inactive statuses on questionable authority, backdated registrations, registrations with a modified date prior to registration, invalid or illogical registration dates, age discrepant registrants, and registrants with questionable addresses.

43.     While Congress may not have specifically intended for these types of errors to be included in the one out of 500,000 error rate, Petitioners believe and therefore aver that this figure provides a general benchmark for what the Legislature considered an acceptable degree of error in our elections.

44.     Such errors jeopardize the validity of elections throughout the Commonwealth, bring doubt as to the accuracy and integrity of the Commonwealth's currently-in-place voting systems, undermine Pennsylvanian's collective voting rights, all in violation of existing state and federal election laws.

45.     Petitioners seek redress from these voter registration apparent errors, relief from blatantly inaccurate voter registration rolls, relief from discrepancies between votes cast and actual votes reported, and relief from extreme voting errors generally, which collectively and historically amount to violations of federal election laws, Pennsylvania election laws, and various voting rights encompassed by the United States Constitution.

46.     The aforesaid violations of federal and state law have in the past resulted in the certification of election results from provably flawed, inaccurate, and obscure processes outside the view of impartial witnesses or the public, and Respondents have refused collectively to maintain or enforce compliance with federal and state required transparency mandates.

47.     Petitioners have brought this issue to the attention of Respondents, who have

done absolutely nothing to address these errors ensuring future elections will suffer from the same deficiencies.

48.    Furthermore, rather than alarmed by these apparent errors pursuant to prevailing election laws, Respondents instead have collectively ignored the issue of the unreliable election results therefore produced.

49.    Petitioners believe and therefore aver Respondents have failed to adequately police and monitor problems with the voter rolls and failed to adequately fix voting registration errors within the Commonwealth, despite being in the best position to ensure the reliability, integrity, and accuracy of Pennsylvania's elections to ensure veracity of the Commonwealth's election results.

50.    Petitioners have repeatedly made good faith and sincere efforts to negotiate and get Respondents to respond to their legitimate concerns.

51.    Petitioners have repeatedly shown Respondents evidence of potential violations of election law, regarding the conduct of elections by local and state officials charged with administering elections, on behalf of all citizens in accordance with the law.

52.    The risk of election subversion is indisputable, but the Commonwealth has denied Petitioners denied a fair hearing, despite the serious nature of Petitioners' findings calling into question the reliability, integrity and accuracy of prior federal elections administered by the Commonwealth.

53.    The prayer for relief seeks the protection of Petitioner's rights, as well as those of every voting citizen of the Commonwealth, to have their vote fairly counted in an open and reliable election as such elections are defined according to law as outlined below.

54.    Respondents have denied Petitioners' their right to a fair vote.

55.    Furthermore, Respondents appear to have followed procedures that have

obscured the ability to audit the 2022 general election to render the outcomes factually unknowable, at the time of certification.

56.     Petitioners believe and therefore aver Respondents have violated multiple federal and state laws, or negligently allowed such violations to occur, while loudly proclaiming the infallibility of the Commonwealth's election results.

57.     Respondents insist that Petitioners have adequate voting rights, while simultaneously fighting from every conceivable angle to prevent Petitioners from attempting to protect those rights. Respondents' collective actions in refusing to address the problem extinguishes and undermines the very meaning of the right to vote in a fair democracy.

58.     Respondents can and should be compelled to address compliance with existing election law, specifically: compelled to adequately investigate the issue, prosecute anyone in violation of federal and/or state law, and actively work to bring the Commonwealth back into compliance with federal and state election law mandates so that Pennsylvania's constitutionally enshrined voting rights are upheld and preserved.

59.     The All-Writs Act, 28 U.S.C. § 1651 provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in the aid of their respective jurisdictions and agreeable to the usages and principles of law."

60.     District Courts of the United States have original jurisdiction of any action in the nature of *mandamus* to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff. 28 U.S.C. § 1361.

**Parties**

61.     United Sovereign Americans, Inc., is a nonprofit corporation incorporated in

the state of Missouri.

62.     Bernard "Marty" Selker, Jr. is an individual running for the United States Senate as the nominee of the Constitution Party and who resides at 875 Iron Bridge Road, Sigel, PA 15860.

63.     Diane Houser is an individual with the address of 205 Santillo Way, Downingtown, PA 19335.

64.     Ruth Moton is an individual with an address of 2250 Blue Ball Ave, Upper Chichester, PA 19061. Ruth Moton was a candidate for state representative in 2018, 2020, and 2022.

65.     Dean Dreibelbis is an individual with an address of 1295 Wakefield Court, Glen Mills, PA 19342.

66.     Al Schmidt, in his Official Capacity as the Secretary of the Commonwealth, was appointed by the governor to oversee the Department of State. He and his department are tasked with administering and ensuring the Commonwealth's compliance with Pennsylvania's Election Code, the Commonwealth's compliance with federal law – namely the Help America Vote Act, and the National Voter Registration Act.

67.     Michelle Henry, in her Official Capacity as the Attorney General of Pennsylvania, is responsible for overseeing and managing the Office of the Attorney General of Pennsylvania which is a government agency tasked with the enforcement and prosecution of state law in addition to ensuring that state actors, including those acting within the Pennsylvania Department of State, are complying with Pennsylvania law.

68.     Merrick Garland, in his Official Capacity as the Attorney General of the United States, is the chief law enforcement official in the United States, and is responsible

for overseeing and managing the Department of Justice of the United States which is a government agency tasked with the enforcement and prosecution of federal law in addition to ensuring that state and federal actors, including those acting in the various states within the United States, are complying with Federal law.

### Jurisdiction and Venue

69.     This Court has jurisdiction pursuant to 28 U.S.C. § 1651.

70.     This Court has jurisdiction pursuant to 28 U.S.C. § 1361.

71.     This Court additionally has subject matter jurisdiction over this complaint because the case presents substantial questions of federal law, and the state claims are so related to the federal claims that they form part of the same case or controversy. 28 U.S.C. §§ 1331 and 1367.

72.     This Court has personal jurisdiction as the Respondents are a collection of Commonwealth of Pennsylvania agencies and actors, and the Commonwealth of Pennsylvania is within the jurisdiction of the United States.

73.     "When a state exercises power wholly within the domain of state interest, it is insulated from federal judicial review. But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right." *Gray v. Sanders*, 372 U.S. 368, 372 (1963) (citing *Gomillion v. Lightfoot*, 364 U.S. 339, 347 (1960)).

74.     Venue is proper in this district under 28 U.S.C. § 1391(e)(1).

### Standing

75.     Bernard M. Selker is a citizen of Pennsylvania, Clarion County, and a candidate on the ballot for United States Senator for Pennsylvania in 2024.  Upon review of the allegations of the within petition, Mr. Selker has a reasonable belief that Respondents' failure to address and enforce state and federal election law in 2022 upon notice of voting and registration

irregularities occurring during that federal election in Pennsylvania will adversely affect the integrity of the 2024 Pennsylvania senatorial election.  As such, Mr. Selker has brought this petition for Writ of Mandamus seeking the Court to compel Respondents to perform their duties as state and federal election law requires.

76.     Petitioner Diane Houser is a citizen of Pennsylvania, Chester County, and voted in the 2020 and 2022 elections. In 2022, she discovered that her vote was not recorded in Pennsylvania's Statewide Uniform Registry of Electors ("SURE") system, even though she had voted in person.

77.     Petitioner Diane Houser also reported numerous issues to authorities and was ignored numerous times. She was furthermore not successful in obtaining information pursuant to a valid Right to Know Request. *See* Exhibit "A" for a document regarding Ms. Diane Houser's efforts to improve election security and complaints to authorities.

78.     Petitioner Ruth Moton is a citizen of Delaware County, Pennsylvania and was a candidate for Pennsylvania State Representative in the 2018, 2020, and 2022 election seasons.

79.     In addition to the lengthy number of hours spent campaigning, Petitioner Ruth Moton's campaign spent $10,775.15 during the 2018 election, $4,412.92 in the 2020 election, and $17,496.59 in the 2022 election. Due to Pennsylvania's inaccurate voting registration rolls, Petitioner Ruth Moton has injury in that she spent money on a campaign where she could not be certain of the location and identity of the voters she was attempting to canvas. *See* Exhibit "B" for a copy of Petitioner Ruth Moton's campaign finance expenses.

80.     Petitioner Dean Dreibelbis is a citizen of Pennsylvania, Delaware County, who observed and reported numerous election issues, apparent errors, loopholes, and discrepancies

to authorities and was, each time, ignored. *See* Exhibit "C" for Dean Dreibelbis's efforts to improve election security.

81.    A candidate for the Pennsylvania State Senate, Mr. Mike Miller, of Lancaster, Pennsylvania, though not a named Petitioner herein, also experienced and fell victim to numerous registration issues in the 2022 election season. These issues, included, but were not limited to:

   a.   On election day, Lancaster County announced that approximately 14,000 of the 22,000 ballots it received from 'mail-in' voters could not be counted by County's scanners because the ballots had been misprinted. (County's clerk testified that 8,000 ballots scanned without error);

   b.   Some ballots received from voters in Senate District 36 did not have Miller's contest printed on the ballot, therefore those voters were unable to vote for Miller;

   c.   On May 17, 2022, Lancaster County's board directed the County's employes to procure and mark 14,000 'replacement' mail-in ballots and to count these instead of the ballots returned by voters;

   d.   Lancaster County reported the count of the replacement ballots instead of the ballots completed by voters; and

   e.   Lancaster County repeatedly frustrated Mr. Miller from accessing the ballots as required by law.

82.    Audit The Vote PA, a non-partisan, non-profit organization organized in the Commonwealth of Pennsylvania, though not a named petitioner herein, also uncovered overwhelming evidence of registration issues in the 2020 and 2022 elections. In particular,

they discovered that for the 2022 election:

  a. 6,433 registrations were credited as voting, but no information was listed for vote date, 2022 election party, or 2022 election vote method;

  b. In Pennsylvania, 54,463 people voted in a county in which they were no longer living;

  c. In Pennsylvania, 8,177 people voted despite not actually living in Pennsylvania;

  d. 6,356 people were credited as submitting a mail-in ballot, but did not have any votes credited in Pennsylvania's SURE system;

  e. 644 people voted by mail or absentee ballot, but are not on the mail ballot list;

  f. 138 people voted by mail, but they had missed the deadline to vote by mail-in ballot;

  g. 69,832 mail ballots were sent to an address unaffiliated with the voter's registration;

  h. 5,914 people requested a mail ballot, who do not exist on the PA voter rolls between 10/3/2022 and 1/16/2023;

  i. 18,589 people requested multiple ballots be sent to multiple addresses, with some people requesting additional ballots to be sent to up to four (4) separate addresses; and

  j. 5,492 registrations show as having two votes on record in two separate counties.

*See* Exhibit "D" for documents from Audit The Vote PA regarding election integrity.

  83. There is active litigation in this Commonwealth concerning Pennsylvania's

compliance with the Help America Votes Act ("HAVA"), in that certain Commonwealth directives violate United States federal election law. *See* Exhibit "E" for a copy of the Complaint in the matter *McClinko v. Commonwealth of Pennsylvania, et al.*

84.     There is active litigation in the Third Circuit Court of Appeals concerning Pennsylvania's non-compliance with the National Voter Registration Act ("NVRA"), in that the Commonwealth has failed to satisfy the Commonwealth's disclosure obligations under the NVRA. *See* Exhibit "F" for a copy of the Appellee/Cross-Appellant Brief in the matter *Schmidt v. Public Interest Legal Foundation, Inc.*, United States Court of Appeals for the Third Circuit (Nos. 23-1590 and 23-1591).

85.     Petitioners have been and are currently harmed by the Commonwealth of Pennsylvania voting systems currently and formerly in use in the Commonwealth of Pennsylvania state and federal elections. Respondents have allowed, and continue to allow, violations of federal election laws, Pennsylvania election laws, the United States Constitution, and federal civil rights laws pertaining to voter rights.

86.     The violations of Commonwealth of Pennsylvania election laws, federal election laws, the U.S. Constitution, and federal civil rights laws pertaining to voter registration rolls, transparency, compliance, and certification of the voting systems, and the serious issues hereinafter discussed with the overall voting systems exemplify their injury.

87.     The injury to Petitioners and all Pennsylvania voters would cease to exist or be greatly relieved if the Court grants Petitioners' requested relief.

88.     The Supreme Court has indicated that if one party to a lawsuit has standing, other entities can join as parties without having to independently satisfy the demands of Article III, provided those parties do not seek a distinct form of relief from the party with standing.

*See,, Horne v. Flores*, 557 U.S. 433, 446-47 (2009).

89.     United Sovereign Americans is not seeking a distinct form of relief from the other Petitioners and therefore has standing.

## Background

### A. THE CONSTITUTIONALLY PROTECTED RIGHT TO VOTE

90.     The United States Constitution grants the people the right to choose representatives to the people of several states, according to the voting eligibility requirements of the state. U.S. Const. art. 1, § 2.

91.     The 14th Amendment of the United States Constitution, Section 1, defines a "citizen" as all people born or naturalized in the United States and subject to the jurisdiction thereof.

92.     The 14th Amendment of the United States Constitution, Section 2, protects eligible citizen voters against denial or abridgment of their vote.

93.     "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Marbury v. Madison*, 1 Cranch 137, 5 U.S., 137, 163 (1803).

94.     Federal courts regard the right to vote in a fairly conducted election as a constitutionally protected feature of United States citizenship. *Reynolds v. Sims*, 377 U.S. 533, 554-55 (1964).

95.     After the 2020 Presidential Election, pervasive discussion reported on by the media focused on the validity of the presidential election results within the Commonwealth

of Pennsylvania.

96.     Discussions and/or litigation in Pennsylvania, as well as in other states around the Nation, centered on whether raw vote totals were accurate, with particular attention focused on the question: if all ballots in dispute were decided, hypothetically, in the favor of one candidate for president over the other, would that have changed the *outcome* of the election in that state?

97.     Questions concerned whether the recorded vote totals, viewed in the light most favorable to the losing candidate in any given state, could have affected the awarding of electoral votes from said state, which, in turn, might have affected the determination of the "winner" of the elections for president and vice-president in the Electoral College.

98.     The media widely reported that no court ruled that, even if all disputed ballots were assumed to have been found to be favorable to the Republican Candidate during the 2020 presidential election, the outcome in any disputed state would not have been affected. Furthermore, there was insufficient evidence produced such that a court could find that the outcome of the election in any disputed state was unreliable.

99.     Petitioners do not seek to revisit the results of the 2020 presidential election, nor to re-examine the conclusions drawn by the various courts and media outlets as summarized above.

100.     Petitioners posit a different question than that noted in averment 99: ***How many disputed ballots found to be improperly cast in any given federal election may occur before the reliability and integrity of the entire election becomes suspect?*** Petitioners respectfully represent that Congress has answered this very question as outlined further below and Congress' answer to this question forms much of the basis of the instant Petition.

101.     In *In re: Coy*, 127 U.S. 731 (1888), the United States Supreme Court held that Congress had authority under the Constitution's Necessary and Proper Clause to regulate any activity during a mixed federal/state election that exposed the federal election to potential harm, whether that harm materialized or not. *Coy* is still good law. *See*, *United States v. Slone*, 411 F.3d 643, 647 (6th Cir. 2005); *United States v. Mason*, 673 F.2d 737, 739 (4th Cir. 1982); *United States v. Malmay*, 671 F.2d 869, 874–75 (5th Cir. 1982); *Ex parte Yarborough*, 110 U.S. 651 (1884); *Ex parte Siebold*, 100 U.S. 371 (1880).

102.    In *Oregon v. Mitchell*, the Supreme Court stated:

> The right to vote is, of course, different in one respect from the other rights in the economic, social, or political field which, as indicated in the Appendix to this opinion, are under the Equal Protection Clause. The right to vote is a civil right deeply embedded in the Constitution. Article I, § 2, provides that the House is composed of members 'chosen . . . by the People' and the electors 'shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature.' The Seventeenth Amendment states that Senators shall be 'elected by the people.' The Fifteenth Amendment speaks of the 'right of citizens of the United States to vote' -- not only in federal but in state elections.

> \* \* \*

> [T]he right to vote freely for the candidate of one's choice is of

the essence of a democratic society, and any restrictions on that

right strike at the heart of representative government. This 'right

to choose, secured by the Constitution,' *United States v. Classic*,

313 U.S. 299, is a civil right of the highest order. Voting concerns

'political' matters; but the right is not 'political' in the

constitutional sense. Interference with it has given rise to a long

and consistent line of decisions by the Court; and the claim has

always been upheld as justiciable.

400 U.S. 112, 138-39 (1970).

103.   Justice Harlan also stated the following in his concurring opinion:

[A]s the right in the people of each State to a republican

government and to choose their Representatives in Congress is

of the guarantees of the Constitution, by this amendment a

remedy might be given directly for a case supposed by

*Madison*, where treason might change a State government from

a republican to a despotic government, and thereby deny

suffrage to the people.

*Mitchell*, 400 U.S. at 185 (Harlan, J., concurring in part).

104.   The Supreme Court of the United States further stated: "we are cautioned about

the dangers of entering into political thickets and mathematical quagmires. Our answer is this:

a denial of constitutionally protected rights demands judicial protection; our oath and our

office require no less of us." *Reynolds v Sims*, 377 U.S. 533, 566 (1964).

105.    "Every voter in a federal . . . election . . . whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted, *without its being distorted by fraudulently cast votes*." *Anderson v. United States,* 417 U.S. 211, 227 (1974) (emphasis added).

### B.  NATIONAL VOTER REGISTRATION ACT ("NVRA")

106.    The National Voter Registration Act ("NVRA") was passed for the purpose of ensuring accurate and current voter registration rolls to enhance the integrity of elections.

107.    In so doing, Congress found that: (1) the right of citizens of the United States to vote is a fundamental right; (2) it is the duty of the Federal, State, and local governments to promote the exercise of that right; and (3) discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities. 52 US.C.A. § 20501.

108.    The NVRA exists in part to "protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 US.C.A. § 20501.

109.    The NVRA *requires* states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" by reason of death or change of address. 52 U.S.C. § 20507(a)(4).

110.    Similarly, the U.S. Election Assistance Commission ("EAC") is required by law to report to Congress its findings related to state voter registration practices. 52 U.S.C. § 20508(a)(3).

111.    Federal regulations require states to provide data to the EAC for use in their reports, including the numbers of active voters, and the numbers of registered voters removed from the rolls for any reason. 11 C.F.R. § 9428.7(b)(1), (2), (5).

112.    The NVRA requires the States to complete any program the purpose of which is to remove ineligible voters from the official lists of eligible voters not later than ninety (90) days prior to an election.

113.    NVRA has two (2) methods of enforcement. First, the Attorney General can petition the court for declaratory and injunctive relief. Second, a private citizen can pursue a cause of action with certain requirements as follows. In a private action, notice is required, in that a person must notify the chief election official of the State involved. If the violation is not corrected within 90 days of receipt of the notice or within 20 days after receipt of the notice, if the violation occurred within 120 days before the date of an election for office, the aggrieved person may bring a civil action in an appropriate district court seeking relief. In the alternative, if the violation occurs 30 days before the date of an election for federal office, no notice is required.

114.    Although the NVRA authorizes a private cause of action in the form of declaratory or injunctive relief, this "remedy" is largely toothless. Any Court in the United States would have great reluctance to formally order election officials to correct the NVRA error and/or decertify an election so close in time to an actual election or just after certification.

115.    Additionally, to what extent the NVRA requires a hypothetical plaintiff to have suffered injury is not clear – standing could be a troublesome burden to prove particularly if the harm, such as voter fraud and dilution, has been committed on a class people, the electors as a whole, rather than on an individual person.

116.    Furthermore, a Court could attempt to use the doctrine of laches to avoid the distasteful task of questioning election officials, inquiring into potentially fraudulent elections, and inaccurate voting rolls, despite a hypothetical plaintiff being in full compliance with the private NVRA notice requirements.

117.    Congress's power to pass the NVRA comes from Article I, Section 8, Clause 18 of the United States Constitution, the Necessary and Proper Clause, making accurate voter rolls a requirement to uphold the right of the people to choose their representatives.

### C.  HELP AMERICA VOTE ACT ("HAVA")

118.    The Help America Vote Act ("HAVA") exists in part to "establish minimum election administration standards for States and units of local government with responsibility for the administration of Federal elections, and other purposes." H.R. 3295 (2002).

119.    HAVA requires that voter roll databases contain only the registrations of qualified citizen voters residing in that state. 52 US.C.A. § 21083(a).

120.    HAVA defines a voting system as "the total combination of mechanical, electromechanical, or electronic equipment (including software, firmware, and documentation required to program, control, and support the equipment) that is used to define ballots; to cast and count votes; to report or display election results; and to maintain and produce any audit trail information." 52 US.C.A. § 21081(b).

121.    The purpose of any voting system is to accurately record, store, consolidate, and report the specific selections, and absence of selections, made by the voter as well as to accurately measure the intent of the total body of eligible voters that voted.

122.    Petitioners believe and therefore aver the ability to "cast and count votes" begins with establishing eligibility and registering only qualified citizens into voter registration databases, thus assuring that all ballots granted, cast, and counted, are lawful.

123.    Petitioners believe and therefore aver that inaccurate voter rolls have significant negative consequences in elections.

124.    Per HAVA, in any given state, each qualified voter is granted a unique statewide identifier in a database, which averts the risk of double-voting or extra ballots being cast in the name of one individual voter.

125.    HAVA furthermore requires that federal elections adhere to an accuracy standard established by the FEC through Section 3.2.1 of its Voting System Standards (2002), which states in relevant part that error rates are "…*set at a sufficiently stringent level such that the likelihood of voting system errors affecting the outcome of an election is exceptionally remote even in the closest of elections*." United States (2002) *U.S. Federal Election Commission FEC*. United States [Web Archive] Retrieved from the Election Assistance Commission,

https://www.eac.gov/sites/default/files/eac_assets/1/28/Voting_System_Standards_Volume_I.pdf (emphasis added).

126.    Accuracy in a voting system is defined as the ability of the system to capture the intent of voters without error. United States. (2002) *U.S. Federal Election Commission FEC*. United States [Web Archive] Retrieved from the Election Assistance Commission, https://www.eac.gov/sites/default/files/eac_assets/1/28/Voting_System_Standards_Volume_I.pdf.

127.    Section 301 of HAVA regarding "Voting System Standards," states that the "error rate of [a] voting system in counting ballots (determined by taking into account only those errors which are attributable to the voting system and not attributable to an act of the voter) shall comply with the error rate standards established under section 3.2.1 of the voting

systems standards issued by the Federal Election Commission." 52 US.C.A. § 21081(a)(5).

128.    Petitioners ask this Court to recall that, the FEC voting systems standards of section 3.2.1 establish that "the system shall achieve a target error rate of no more than **one in 10,000,000 ballot positions, with a maximum acceptable error rate in the test process of one in 500,000 ballot positions.**" *See*, *supra*. at 30 (emphasis added).

129.    The Voluntary Voting System Guidelines ("VVSG"), Version 1.1, Section 4.1.1 – Accuracy Requirements state, in part, **"[a]ll systems shall achieve a report total error rate of no more than one in 125,000."** Furthermore, "[t]he benchmark of one in 125,000 is derived from the 'maximum acceptable error rate' used as the lower test benchmark in the 2005 Voluntary Voting System Guidelines Version 1.0. That benchmark was defined as a ballot position error rate of one in 500,000. The benchmark of one in 125,000 is expressed in terms of votes, however, it is consistent with the previous benchmark that the estimated ratio of votes to ballot positions is ¼." United States (2015) *U.S. Election Assistance Commission.* United States [Web Archive] Retrieved from the Election Assistance Commission, https://www.eac.gov/sites/default/files/eac_assets/1/28/VVSG.1.1.VOL.1.FINAL1.pdf.[4]

130.    HAVA also requires that states who receive payments for the administration of elections must use the funds "in a manner consistent with each of the laws described in Section 21145 . . . and the proposed uses are not inconsistent with the requirements of Title III." 52 U.S.C. § 20971(c).

131.    A private cause of action may exist for HAVA through 42 U.S.C. § 1983.

---

[4] In the latest version of the VVSG, or VVSG 2.0, the EAC adopted the position that "the value of 10,000,000 ballot positions is taken from VVSG 1.0 [VVSG2005], however it is used here as the minimum number of ballot positions to test without error. *If a larger number of ballot positions is used, there still can be no error.*" (emphasis added).

*Colon-Marreror v. Velez*, 813 F.3d 1, 22 (1st Cir. 2016) (finding a private action under §1983 for HAVA violations because the provision provided enforceable voting rights and imposes binding obligations on state officials).

132.    Section 1983 provides a mechanism for enforcing individual rights secured elsewhere as in rights independently secured by the Constitution and laws of the United States. *Gonzaga University v. Doe*, 536 U.S. 273, 284-85 (2002). Importantly, a §1983 plaintiff must assert a violation of a federal right, not just a law. *Blessing v. Freestone,* 520 U.S. 329, 340 (1997).

133.    A private cause of action pursuant to §1983 can be found for violations of HAVA, which requires voting systems to provide the voter with the opportunity to change the ballot or correct any apparent error before the ballot is cast and counted. 52 USC 21081(a)(1)(A)(ii). The violation could be produced by a configuration of the voting machines.

134.    Section 1983 is currently the only mechanism where HAVA violations will receive any meaningful private review, yet it has proven thus far to be ineffectual at providing any real remedy for HAVA violations.

135.    Congress's power to pass the HAVA comes from Article I, Section 8, Clause 18 of the United States Constitution, the Necessary and Proper Clause, making accurate voting systems a requirement to uphold the right of the people to choose their representatives.

**PENNSYLVANIA ELECTION CODE**

136.    Pennsylvania law requires that the Department of State establish a Statewide Uniform Registry of Electors known as the "SURE" system. 25 PA. C.S. § 1222(a).

137.    Per 25 PA. C.S. § 1222(c), the SURE system, among other things, is required to do the following:

    a.   Contain a database of all registered electors;

    b.   Ensure the integrity and accuracy of all registration records in the system;

    c.   Assign a unique SURE registration number to each individual currently registered in Pennsylvania;

    d.   Permit auditing of each registered elector's registration record from the day of creation until the day of cancellation;

    e.   Permit the department to implement section 1901(b)(1) (relating to removal of electors);

    f.   Identify the election district to which an elector is assigned;

    g.   Identify duplicate voter registrations on a countywide and Statewide basis; and

    h.   Identify registered electors who vote in an election and the method by which their ballots were cast.

138.    As such, Pennsylvania voters, such as Diane Houser, should be able to reasonably rely upon the results produced by the SURE system as to whether her vote has been properly registered and counted.

139.    The Secretary of the Commonwealth is required to promulgate regulations necessary to establish, implement, and administer the SURE system. 25 PA. C.S. § 1222(f).

140.    The Secretary of the Commonwealth may promulgate reasonable regulations governing access to public information lists. 25 PA. C.S. § 1404(b).

141. The election code describes numerous criminal penalties for failing to adhere to basic code guidelines:

    a. Intentional False Statement on a Voter Application. 25 PA. C.S. § 1322(a) (prosecuted as Perjury (18 Pa. C.S. § 4902), False Swearing (§ 4903), or Unsworn Falsification (§ 4904)).

    b. Disobeying a Lawful Order of a Registration Commission. 25 PA. C.S. § 1701.

    c. Improper Registration. 25 PA. C.S. § 1702(a).

    d. Refusal to Register a Qualified Elector. 25 PA. C.S. § 1702(b).

    e. Applying for Registration With Knowledge That The Individual Is Not Entitled to Registration, Faulty Change of Address, or Intentionally Impersonating Another in an Application. 25 PA. C.S. § 1703(a).

    f. Altering a Registration. 25 PA. C.S. § 1704.

    g. Knowingly Refusing a Vote or Accepting a Fraudulent Vote. 25 PA. C.S. § 1705.

    h. Intentionally Refusing to Perform an Election Duty. 25 PA. C.S. § 1706.

    i. Intentionally Inserting, Altering, or Removing SURE System Data Not In Accordance with The Pennsylvania Election Code. 25 PA. C.S. § 1707.

    j. Withholding Information. 25 PA. C.S. § 1708.

    k. Failure of Law Enforcement To Assist Commissioners or the Secretary of the Commonwealth. 25 PA. C.S. § 1709.

      l.   Interference with Election Code Duties. 25 PA. C.S. § 1710.

      m.  Preventing Registration. 25 PA. C.S. § 1711.

      n.   Maliciously Fail to Register. 25 PA. C.S. § 1712.

      o.   Solicitation of Registration Based On Financial Incentive. 25 PA. C.S. § 1713.

142.    Importantly, the Pennsylvania Department of State has the authority to take "any actions" including the authority to audit registration records of a county commission. 25 PA. C.S. §1803.

143.    Pennsylvania law requires each county registration commission to institute a program to "protect the integrity of the electoral process," "ensure the maintenance of accurate and current registration records," and "identify registered electors whose address may have changed." 25 PA. C.S. § 1901(a), (b).

144.    Petitioners believe and therefore aver that the Commonwealth cannot demonstrate effective control over voter eligibility in conformity with federal or state requirements, and the Commonwealth has implemented a system that does not guarantee accuracy or compliance with legal mandates requiring the Commonwealth to ensure that only eligible voters may register and vote.

## D.  ELECTION FRAUD CONGRESS SOUGHT TO GUARD AGAINST

145.    Petitioners do not accuse any person or entity of engaging in election fraud in 2022, nor propose any person or entity will engage in such fraud in 2024 or in subsequent federal elections in Pennsylvania.  Petitioners' purpose in describing types of voter fraud is to set forth the harms Congress sought to avoid by implementation of HAVA and NVRA as well as the various statutes passed by the Pennsylvania General Assembly and cited above.

146.     Petitioners believe and therefore aver election fraud can occur in multiple diverse ways, not all of which are individualized to a specific actor.

147.     Petitioners believe and therefore aver over the past fifty years, Congress has enacted criminal laws with broad jurisdictional basis to combat false voter registrations, vote-buying, multiple-voting, and fraudulent voting in elections in which a federal candidate is on the ballot. *See,* 52 U.S.C. §§ 10307(c), 10307(e), 20511.

148.     The federal jurisdictional predicate underlying these statutes is satisfied as long as either the name of a federal candidate is on the ballot, or the fraud involves corruption of the voter registration process in a state where one registers to vote simultaneously for federal as well as other offices. *Slone*, 411 F.3d at 647–48; *United States v. McCranie*, 169 F.3d 723, 727 (11th Cir. 1999).

149.     Voting in federal elections for individuals who do not personally participate in, and assent to, the voting act attributed to them, or impersonating voters, or casting ballots in the names of voters who do not vote in federal elections, can constitute prosecutable election fraud. *See,* 52 U.S.C. §§ 10307(c); 10307(e); 20511(2).

150.     It is *possible* for election officials acting "under color of law" to commit election fraud by performing acts such as diluting ballots with invalid ones (ballot stuffing), rendering false tabulations of votes, or preventing valid voter registrations or votes from being given effect in any election, federal or non-federal (18 U.S.C. §§ 241, 242), as well as in elections in which federal candidates are on the ballot. *See* 52 U.S.C. §§ 10307(c), 10307(e), 20511(2).[5]

---

[5] For purposes of the present Petition, Petitioners do not suggest any Pennsylvania election officials engaged in election fraud.  Rather, Petitioners' point out the *possibility* of improper conduct by election officials as a harm against which Congress and the General Assembly have sought to guard by enacting the various statutes cited

151. An individual commits election fraud by submitting fictitious names to election officers for inclusion on voter registration rolls, thereby qualifying the fictious name to vote in federal elections. 52 U.S.C. §§ 10307(c), 20511(2).

152. An individual commits election fraud by knowingly procuring eligibility to vote for federal office by people who are not entitled to vote under applicable state law and/or people who are not United States Citizens. 52 U.S.C. §§ 10307(c), 20511(2); 18 U.S.C. §§ 1015(f).

153. An individual who makes a false claim of United States Citizenship to register to vote commits election fraud. 18 U.S.C. § 1015(f); 18 U.S.C. § 911.

154. A person who provides false information concerning a person's name, address, or period of residence in a voting district to establish voting eligibility commits election fraud. 52 U.S.C. §§ 10307(c), 20511(2).

155. Fraud can occur where an individual causes the production of voter registrations that qualify alleged voters to vote for federal candidates, where that individual knows the registrations are materially defective under applicable state law. 52 U.S.C. § 20511(2).

156. However, election fraud need not involve the participation of individual voters.

157. Election fraud can occur where an individual or organization places fictious names on voter rolls (allowing for fraudulent ballots which can later be used to stuff the ballot box, *supra.*), casting fake ballots in the names of people who did not vote, obtaining and marking absentee ballots without the input of the voter involved, and falsifying vote tallies.

---

here. A reason Congress, especially in HAVA, set forth standards that must be met before an election is considered reliable is to counter potential election fraud and to thus produce presumptively reliable election results.

158.    When the federal government seeks to maintain the integrity of elections, it does so for specific federal interests *inter alia*: (1) the protection of the voting rights of racial, ethnic, or language minorities, a specific constitutional right; (2) the registration of voters to vote in federal elections; (3) the standardization and procurement of voting equipment purchased with federal funds; (4) the protection of the federal election process against corruption; (5) the protection of the voting process from corruption accomplished under color of law; and (6) the oversight of non-citizen and other voting by persons ineligible to vote under applicable state law. Richard C. Pilger, *Federal Prosecution of Election Offenses*, p. 30, 8th Edition (2017).

159.    Congress has enacted a litany of specific crimes that can be prosecuted under a general definition as "election fraud":

    a.  Conspiracy Against Rights: 18 U.S.C. § 241. *See United States v. Saylor*, 322 U.S. 385 (1944) (stuffing a ballot box with forged ballots); *United States v. Classic*, 313 U.S. 299 (1941) (preventing the official count of ballots in primary elections); *United States v. Townsley*, 843 F.2d 1070, 1073–75 (8th Cir. 1988) (destroying ballots); *United States v. Morado*, 454 F.2d 167, 171 (5th Cir. 1972) (casting absentee ballots in elderly or handicapped peoples' names); *Crolich v. United States*, 196 F.2d 879, 879 (5th Cir. 1952) (impersonating qualified voters); *United States v. Colvin*, 353 F.3d 569, 576 (7th Cir. 2003) (conspiracy need not be successful nor need there be an overt act).

    b.  Deprivation of Rights under Color of Law: 18 U.S.C. § 242. *See United States v. Price*, 383 U.S. 787 (1966) (acted jointly with state agents); *Williams v.*

*United States*, 341 U.S. 97 (1951) (actions clothed under Color of State Law).

c.  False Information in, and Payments for, Registering and Voting: 52 U.S.C. § 10307(c).[6]

d.  Voting More than Once: 52 U.S.C. § 10307(e).

e.  Fraudulent Registration or Voting: 52 U.S.C. § 20511(2).

f.  False claims to Register or Vote: 18 U.S.C. § 1015(f).

g.  "Cost-of-Election" theory: 18 U.S.C. § 1341.

h.  Improper Retention of Federal Election Returns: 52 U.S.C. § 20701.

160.  In short, election fraud can constitute numerous different actions or inactions, and federal and state governments of the United States have an interest in guarding the integrity of elections, and ensuring election fraud is stopped, then prosecuted appropriately.

### Facts and Summary of the Issues

161.  Petitioner United Sovereign Americans received Pennsylvania's voter registration data from the 2022 general election – the data contained millions of entries of voter registration data.

162.  Thereafter, expert data analysts acting on behalf of Petitioner United Sovereign Americans performed a series of SQL database queries on the data to extrapolate and refine information about voter registrations in the Commonwealth. *See* Exhibit "G" for a copy of the SQL Database Queries.

163.  Thereafter, Petitioner United Sovereign Americans thoroughly reviewed the results.

---

[6] "Section 10307(c) protects two distinct aspects of a federal election: the actual results of the election, and the integrity of the process of electing federal officials." *United States v. Cole*, 41 F.3d 303, 307 (7th Cir. 1994).

164.     United Sovereign Americans' SQL database queries revealed hundreds of thousands of voter registration apparent errors in the Commonwealth of Pennsylvania. See *Infra.*

165.     The results from the SQL database queries allowed Petitioners' experts to produce a "Scorecard" reflecting Pennsylvania's voter registration data detailing the hundreds of thousands of apparent errors contained within that registration data. *See* Exhibit "H" for a copy of United Sovereign American's Pennsylvania 2022 General Election Validity Scorecard.

166.     In addition, the results from the SQL Database Queries of Pennsylvania's voter registration data allowed Petitioners' experts to compile a General Election Validity Reconciliation. *See* Exhibit "I" for a copy of United Sovereign American's Pennsylvania 2022 General Election Validity Reconciliation.

167.     The results from the SQL Database Queries of Pennsylvania's voter registration data also revealed that apparent errors were not uniform across Pennsylvania – some counties had far more registration apparent errors than others. *See* Exhibit "J" for a copy of United Sovereign American's Pennsylvania 2022 General Election county-by-county breakdown.

168.     According to the data provided to Petitioner United Sovereign America for the 2022 election, Pennsylvania had 8,755,458 voter registrations.

## A.  VOTER REGISTRATION ROLL INACCURACY

169.     Expert analysis by Petitioner United Sovereign Americans of the official Pennsylvania State Voter Registration Data for the 2022 election revealed that, out of 8,755,458 voter registrations, there was a total of **3,192,069** voter registration violations including:

20,097 Illegal duplicates, where the same voter has multiple registrations

43,083 Illegal or invalid vote history[7]

10,298 Questionable designations of "Inactive Status"

194 Votes while inactive

28,256 Backdated registrations

268,493 Registrations where the period of active registration conflicts with the registration participation

448,335 Invalid or illogical registration dates[8]

633,508 Illegal or invalid registration changes

4,142 Age discrepant registrants[9]

154,913 Registrants with questionable address

1,580,750 Registrations with Records Altered After Certification

*See*, Exhibit "H" for a copy of United Sovereign American's Pennsylvania 2022 General Election Validity Scorecard.

170.     This data shows that in 2022 the voter rolls in Pennsylvania were not accurate and current as required by NVRA, HAVA, nor in conformity with specific Pennsylvania laws pertaining to voter registration. 52 U.S.C.A. § 20501(b)(4); 52 US.C.A. § 21081; and 25 PA. C.S. § 1222.

171.     Thus far, Petitioners have exhausted every remedy known to them in advance

---

[7] Voter history exists prior to the voter's birth or prior to the voter attaining the age of eighteen (18) years.
[8] Registrations on a federal holiday, before eligibility, etc.

[9] Registrants before the age of eighteen (18) or older than the age of one hundred fifteen (115).

of the 2024 general election to have these issues corrected. Petitioners continued in 2024 to seek redress and repair for these egregious violations through democratic means.

172.    Respondents have dismissed, and continue to dismiss, Petitioners' concerns and, based on information and belief, did so without any meaningful review, action, or response.

173.    Petitioners believe and therefore aver Respondents intend to administer and ultimately certify Pennsylvania's 2024 general election (involving both state and federal contests) using the same inaccurate and flawed data and conditions.

## B. VOTES FROM INELIGIBLE VOTERS

174.    Expert analysis on behalf of Petitioner United Sovereign Americans of the official Pennsylvania State Voter Registration Data for the 2022 election revealed that, out of the votes cast in the 2022 general election, there were a total of **1,198,598** evident voting violations, and **1,089,750** *unique* votes impacted by apparent voting violations.[10] These violations were in the form of:

8,026 Illegal Duplicates, where the same voter has multiple registrations.

15,674 Vote History Invalid or Illogical[11]

1,996 Questionable moving the voter to Inactive

Status 118 Voted While Inactive

196 Registrations where the period of active registration conflicts with

the registration participation

---

[10] Some registered voters have more than one violation. The number of unique voters indicates how many individual registrations have apparent errors – whether it be one or multiple apparent errors.

[11] Voter history exists prior to the voter's birth or prior to the voter attaining the age of eighteen (18) years.

340,266 Invalid or Illogical Registration

Dates 632,215 Illegal or Invalid Registration

Changes 2,207 Age Discrepant Registrants[12]

59,609 Registrants With Questionable Addresses

138,291 Registrants With Altered Votes after Certification

*See*, Exhibit "H" for a copy of Petitioner United Sovereign American's Pennsylvania 2022 General Election Validity Scorecard.

175.    Petitioners believe and therefore aver this data shows that in 2022 the voter rolls in Pennsylvania are not accurate and current as required by the NVRA, HAVA, and specific Pennsylvania laws pertaining to voter registration. 52 U.S.C.A. § 20501(b)(4); 52 US.C.A. § 21081; and 25 PA. C.S. § 1222.

176.    Thus far, Petitioners have exhausted every remedy known to them in advance of the 2024 general election to have these issues, and all issues raised below, addressed and remedied. Petitioners continued in 2024 to seek redress and repair for these egregious violations through democratic means.

177.    Respondents have ignored or dismissed, and continue to ignore or dismiss, these concerns without apparent meaningful review, action, or response, and furthermore Petitioners believe and therefore aver Respondents intend to administer and certify Pennsylvania's 2024 general election (involving both state and federal contests) under the same inaccurate and flawed conditions as that have utilized previously in conducting Pennsylvania's combined federal and state elections.

## C.  ERROR RATES IN 2022 COMPARED TO RATES PERMITTED BY

---

[12] Registrants younger than the age of eighteen (18) or older than the age of one hundred fifteen (115).

**FEDERAL LAW**

178.     Pennsylvania's voting systems are subject to the permissible error rates set forth by Congress in HAVA and further elucidated in FEC Voting System Standards 3.2.1 and explained in the EAC's VVSG. *Supra*.

179.     The *maximum* number of apparent voting system errors permissible in counting votes in the 2022 Pennsylvania General Election using the calculations set forth by the Federal Election Commission upon mandate by Congress was forty-four (44) errors at most allowed. The total number of Unique Ballots impacted by voting system errors in the Pennsylvania General Election, however, was 1,089,706 apparent errors. *See* Exhibit "H."

180.     Even accounting for the possibility that of the 1,089,706 apparent errors, many were not true errors, Petitioners believe and therefore aver, the Commonwealth cannot reduce that number to forty-four (44) or less.

181.     Under HAVA, an error rate of no more than one in 125,000 is permissible before the results of the *entire election* becomes suspect, and the integrity and reliability of the election compromised.   As mentioned above, this figure is calculated by dividing the total number of Pennsylvania votes in a given election by 125,000, to arrive at the number of permissible errors in any given election in order to create the error rate of no more than one in 125,000 mandated by the VVSG.

182.     For the 2022 General Election this is 5,410,022 (votes cast) divided by 125,000 leaves forty-four 44 (rounded up) as the maximum errors permitted, meaning that in order for the election to be considered valid, there cannot have been more than 44 voting system apparent errors in the entire ballot tabulation for all ballots cast in that election in Pennsylvania.

183.     However, in the 2022 Pennsylvania General Election, the number of voting

system apparent errors in counting ballots for the 2022 general election was 1,089,750, a figure dramatically exceeding the maximum allowable apparent error rate of forty-four (44).

184.    Because the voting system apparent error rate for the 2022 Pennsylvania General Election was far above the maximum allowable error rates, Petitioners believe and therefore aver the reliability and credibility of the 2022 results are cast into doubt as a matter of law.

## VOTER-TO-VOTE DEFICIT

185.    The official canvas for the 2022 Pennsylvania Election was 5,410,022 ballots cast yet the data shows there exist 5,400,869 total votes cast – a discrepancy of 9,153 votes. *See* Exhibit "H."

186.    This discrepancy can best be defined as a Voter-to-Vote deficit.

187.    Additionally, the official canvas for the 2022 Pennsylvania Election was 5,410,022 votes (ballots counted) yet there exist only 5,400,869 *voters who actually voted* according to the data provided – a discrepancy of 9,153 votes that are completely unaccounted for and cannot be explained—a number far in excess of forty-four (44) and indisputably each constitution an "error."

188.    Petitioners believe and therefore aver that the **9,153 more votes counted than voters who voted** means that either tabulators overcounted votes statewide, or there is an alternative source of the data discrepancy.[13]

---

[13] Petitioners accuse no one of engaging in fraud or deceit. Petitioners merely point out the discrepancy, which could be due to unintentional tabulator error, some fraud of unknown origin, a combination of both, or even fraud by the tabulators themselves. The discrepancy occurred in 2022 for an unknown reason. It is the deficit *itself*, regardless of the cause, that demonstrates an error rate in excess of that permitted by HAVA calling into question the integrity of the election. Petitioners propose to ask this Court to order Respondents to ascertain why the deficit occurred in 2022, ensure that a similar deficit does not re-occur in 2024, and in all federal elections thereafter in the future.

### D.  PENNSYLVANIA'S 2022 GENERAL ELECTION VALIDITY

189.    For Pennsylvania's 2022 General Election, out of the 8,755,458 total registrations, of which Petitioners believe and therefore aver, there were 4,739,544 *valid* registrations, 1,370,573 uncertain/illogical/invalid registrations, 1,440,667 registrations which violated election laws, and 1,204,674 "Deadwood" registrations.[14] *See* Exhibit "I."

190.    Petitioners believe and therefore avers that of the people holding the 4,739,544 valid registrations, 4,311,119 votes were counted in the 2022 General Election.

191.    Petitioners believe and therefore avers that of the identified 1,370,573 uncertain/illogical/invalid registrations, 132,897 people voted and had their votes counted in the 2022 General Election.

192.    Petitioners believe and therefore avers that of the 1,440,674 registrations that violated election laws, **956,853** people holding such registrations *cast votes that were counted* in the 2022 General Election.

193.    Petitioners believes and therefore avers that while none of the 1,204,674 "Deadwood" registrations, or fake name registrations, are listed as having voted in the 2022 General Election, those registrations exist and thus *could* be utilized fraudulently in future elections.

194.    Petitioners believe and therefore avers that the *registration* error rate in Pennsylvania for the 2022 General Election was **thirty-two percent (32%)** of the total registrations on the Commonwealth's voter rolls.  This figure is arrived at by taking 1,370,573 uncertain/illogical/invalid registrations, plus 1,440,667 registrations which

---

[14] "Deadwood" is a concept dealing with election fraud and is defined as a fake voter registration record. These registrations could include a voter who is deceased, ineligible, moved, etc.

violated election laws, as a percentage of 8,755,458 total registrations.

195.     Petitioners believe and therefore avers that the *vote*r system error rate in Pennsylvania for the 2022 General Election was **twenty percent (20%)**, arrived at by taking 132,897 votes counted from uncertain/illogical/invalid registrations, plus 956,853 votes counted from illegal registrations, as a percentage of 5,400,869 votes cast.

196.     For example, the margin of victory in PA Congressional District 7 in 2022 was two percent (2%), or 151,364 votes to the winner and 145,527 votes to the loser. The apparent error rate statewide in the 2022 federal election when applied to the Congressional Election in PA District 7 exceeds the margin of victory for this particular congressional district, meaning that if the apparent error rate in the Commonwealth is evenly distributed by Congressional District (which *ordinarily might* be a reasonable assumption given that such districts must contain roughly the same number of people under the Constitution), the Congressional Election results in District 7 election would be considered unreliable.[15]  That is not to say that the eventual "winner" there did not receive more votes than the eventual "loser."  It simply means if the apparent error rate is assumed to be evenly distributed throughout Pennsylvania, the winner in the 7th cannot be *confident* in his/her election, and the loser cannot be *confident* in his/her defeat *because the election itself* would not have produced results according to law that are reliable, meaning the integrity of the entire election process is called into question.

197.     To expand on the above, Pennsylvania's 2022 voter system error rate of 20% *exceeded* the margin of victory in six of the Commonwealth's 17 Congressional Districts: 1, 6, 7,

---

[15] This is merely a simplified example for illustrative purposes as Petitioners are aware that the apparent error rates are not evenly distributed county-by-county and thus cannot be evenly distributed by congressional district. For a county-by-county breakdown from highest to lowest apparent error rate by total numbers please see Exhibit "D" demonstrating which Pennsylvania counties account for the greatest number of errors by total number.

8, 12, and 17. Thus, 35% of Pennsylvania's *current* members of the United States House of Representatives *might* hold their seats owing to legally unreliable election results.

198.     Per HAVA and the FEC, the legal standard of allowable registration errors for a federal election is 0.0008% (or 1 out of 125,000) yet the voter system error rate in Pennsylvania's 2022 combined state and Federal General Election was 20%.

**Requested Relief**

**ALL WRITS ACT RELIEF – 28 U.S.C. § 1651**

199.     Petitioners incorporate the previous paragraphs by reference as if set forth at length here.

200.     Petitioners are not seeking to undermine official elections results previously certified. Petitioners have cited issues in prior Pennsylvania federal elections to add weight to Petitioners' belief that absent intervention by this Honorable Court, Respondents will permit the same apparent errors to occur in the 2024 General Election in Pennsylvania, and in all following federal elections in the Commonwealth.

201.     Petitioners seek redress from the constitutional harm brought upon them, and the Pennsylvania electorate at large, by Respondents failure to comply with federal and state election law.

202.     Petitioners believe and therefore aver that Respondents have done nothing or an inadequate job at addressing the issues presented in this Petition – particularly to address the inaccurate and likely fraudulent voter rolls and voter systems used in federal elections conducted by state authorities.

203.     Respondents' inaction and/or failure to act compels Petitioners to ask that the Court to issue a Writ of *Mandamus* requiring Respondents to comply with the two federal statutes at issue (the NVRA and the HAVA) along with the Pennsylvania Election Code, 25

PA. C.S. § 1222(c), while giving Respondents a reasonable time within which to bring Pennsylvania into compliance in time for the 2024 General Election and all federal elections conducted by the Commonwealth going forward while providing relief to 2024 voters if bringing the Commonwealth into compliance in time is impossible upon showing by Respondents.

204.    Specifically, Petitioners respectfully seek that the Court order Respondents take steps, both short term and long term, to ensure the apparent errors made during the 2022 elections do not recur and to bring the Commonwealth into compliance with HAVA's specific mandate of no greater than 1 voting error out of 125,000 votes.

205.    This Honorable Court is authorized to issue a writ of *mandamus* under "The All-Writs Act," 28 U.S.C. § 1651 granting the power to United States Federal Courts to "issue all writs necessary or appropriate in the aid of their respective jurisdictions and agreeable to the usages and principles of law."

206.    A writ of *mandamus* under 28 USC § 1651 is typically used to fill gaps in the law, and the Supreme Court has stated that The All-Writs Act is a "legislatively approved source of procedural instruments designed to achieve 'the rational ends of the law.'" *Harris v. Nelson*, 394 U.S. 286 (1969) (All Writs Act *mandamus* properly used to conduct factual inquiries).

207.    A writ of *mandamus* is warranted where "(1) no other adequate means exist to attain the relief, (2) the party's right to issuance of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (*quoting Cheney v. United States Dist. Ct.*, 542 U.S. 367, 380–81 (2004) (stay granted where district court likely did not follow federal law)).

208.    A writ of *mandamus* is appropriate and necessary to vindicate the rights of citizens when a governmental agency or official has refused to perform a ministerial duty that the petitioner has established has a clear legal right to have the governmental agency or official, in this case Respondents, perform.

209.    A federal court may use all auxiliary writs as aids when it is "calculated in [the court's] sound judgment to achieve the ends of justice entrusted to it." *Adams v. United States*, 317 U.S. 269, 273 (1942) (writ of *habeas corpus* is available to the circuit courts of appeals).

210.    A "ministerial action" is a duty in a particular situation so plainly prescribed as to be free from doubt and equivalent to a positive command. *Wilbur v. United States*, 281 U.S. 206, 218 (1930); *see also Will v. United States*, 389 U.S. 90 (1967).

211.    "Mandamus is employed to compel the performance, when refused, of a ministerial duty . . . [i]t also is employed to compel action, when refused, in matters involving judgment and discretion, but not to direct the exercise of judgment or discretion in a particular way nor to direct the retraction or reversal of action already taken in the exercise of either." *Wilbur v. United States*, 281 U.S. 206, 218 (1930). *See also Decatur v. Paulding*, 39 U.S. 497, 514-17 (1840) (Secretary of the Navy's duty to approve of pensions was discretionary, and therefore, not ministerial); *Kendall v. United States*, 37 U.S. 524 (1838) (Postmaster General had a ministerial duty to make entries); *Work v. Rives*, 267 U.S. 175, 177 (1925).

212.    Instantly, Petitioners have no other remedy than a writ of *mandamus*.

213.    Petitioners argue that injunctive and/or declaratory relief is inapplicable or inappropriate in this issue because the harm from the 2024 election is not yet realized and

Petitioners are seeking to have Pennsylvania election officials and/or federal officials bring the Commonwealth into compliance with federal and state law, specifically HAVA, NVRA, and the Pennsylvania Election Code, 25 PA. C.S. § 1222(c), absent a specific existing private cause of action Petitioners could assert that affords Petitioners relief.

214.    Petitioners believe and therefore aver Respondents have allowed, and continue to allow, violations of federal election laws, Commonwealth election laws, the United States Constitution, and federal civil rights laws pertaining to voter rights, which include mandating accurate registration rolls, transparency, compliance, and proper certification of the voting systems. 52 US.C.A. § 20501; 52 US.C.A. § 21083.

215.    Petitioners believe and therefore aver that the voter rolls within the Commonwealth of Pennsylvania are inaccurate, in violation of NVRA and HAVA. These are not list maintenance failures. The inaccuracies represent a failure to control the process of validating and registering only qualified citizen voters. These apparently invalid and/or illegal registrations voted in large numbers in Pennsylvania's 2022 General Election.

216.    Petitioners believe and therefore aver the Respondents have lost control of voter registration, leading to the distribution of ballots to what appear to be false registrants which results in a diluted vote and further harm to petitioners and the electorate at large. The voter-to- vote deficit is illustrative here in that the official canvas for the 2022 Pennsylvania Election was 5,410,022 votes yet there exist 5,400,869 total votes in the data – a discrepancy of 9,153 votes. Upholding HAVA includes the risk assessments and proper certification of all system elements individually, and as a system as a whole.

217.    Petitioners believe and therefore aver an election official's job is fidelity to the law in administering the electoral process, thereby protecting the integrity of an election, and

the citizens from corruption in the election process.

218.    Petitioners believe and therefore aver that Commonwealth officials' failure to follow the law has resulted in election outcomes that are untrustworthy. The voting system in its present form cannot be used to produce trustworthy reliable results without the requested judicial intervention.

219.    Petitioners believe and therefore aver a writ of *mandamus* is appropriate in this case. Respondents have failed, and continue to fail, in complying with federal and state laws regarding voting – including voting accuracy and accountability. It is clear from the Respondents conduct before, during, and after, the 2022 elections that, absent judicial action, Respondents will do nothing to repair the deficiencies noted above to ensure the integrity of Pennsylvania elections are conducted in compliance with federal and state law.

220.    The scope of Petitioners' *mandamus* request is narrow: Petitioners seek this Court to order Respondents follow existing federal and state law designed by Congress and the Pennsylvania General Assembly to ensure that Pennsylvania's 2024 and subsequent combined federal and state general elections produce reliable results within the margin of error rate allowed.

221.    Petitioners hold up the mathematically unreliable (according to, *inter alia*, HAVA) 2022 Pennsylvania combined federal and state General Election as evidence that, should the writ not issue, the apparent error rate in the 2024 and subsequent combined general elections will continue to exceed the law's mandated maximum error rate permitted before an election is unreliable.

222.    Petitioners seek that the requested writ direct Respondents to investigate and remedy the issues exposed in the 2022 elections to avoid repeating the same mistakes in future combined federal and state general elections which are constitutionally administered by

Pennsylvania pursuant to Article I, Section 4 (delegating to the state legislatures the power to regulate federal elections for members of the House of Representatives, with Congress reserving the power to "…alter such Regulations [made by the various state legislatures]…"),[16] and, generally, Article II, Section 1 (granting state legislatures the power to determine how presidential electors are chosen) of the United States Constitution.[17]

223.    Petitioners believe and therefore aver that since the Constitution reserves to Congress the *ultimate* (as opposed to the *presumptive*) power to regulate the means by which Congress' own members are chosen, while the Constitution simultaneously delegates the presumptive power to regulate such elections to, in this case, the General Assembly of the Commonwealth of Pennsylvania to further delegate as it sees fit to do so by law, the Respondents who are not federal officers *per se*, become federal officers by agency requiring them to carry out not only Pennsylvania election law, but additionally to carry out federal election statutes passed by Congress and duly signed into law by the President under Congress' ultimate authority laid out in Article I, Section 4.

224.    Petitioners believe and therefore aver that delegations of authority by the General Assembly of powers to supervise federal elections to any Respondent Commonwealth officials

---

[16] Petitioners aver that NVRA and HAVA are examples of Congress' exercising its power under Article I, Section 4 to "alter" Pennsylvania's (and all other state's) otherwise absolute constitutional authority to regulate federal elections to the House of Representatives and, by application of the 17th Amendment to the U.S. Constitution providing for the direct election of two senators from each state, Congress may exercise its authority "…from time to time by Law make or alter such Regulations…" [of the various states…] to regulate the election of United States Senators as well the election of members of the House of Representatives.

[17] Petitioners include citation to Article II and the choosing of electors for president and vice-president, (later modified by the 12th Amendment), to again demonstrate the Framers' intent that the various states shall have presumptive authority to regulate and administer the election of all federal officers on the ballot for consideration in a federal election. Article 1, Section 4 (as later amended) and Article II, Section (as later amended) are examples of where the Framers intentionally intertwined the powers of the various states with those of Congress, while making certain Congress maintained the *ultimate* power to regulate the election of its members, the then-prevailing concepts of *Federalism* and *Dual Sovereignty* notwithstanding.

pursuant to the General Assembly's power to regulate federal elections granted by Article I, Section 4, makes said Commonwealth Respondents into federal officers by agency or quasi-federal officials in the carrying out of their duties to regulate federal elections.

225.     Petitioners believe and therefore aver that ordinary principles of federalism and dual sovereignty where a Federal District Court Judge would be reluctant to issue an order to a Commonwealth official pertaining to how that state official may perform his/her official functions are inapplicable because the Respondent Commonwealth official is acting in his/her hybrid role as a quasi-federal officer as required by Article I, Section 4.

226.     Petitioners believe and therefore aver, then, that this Honorable Court has authority to issue the requested writ of *mandamus* to compel, not just the Respondent Federal officers to ensure that federal election law is carried out in Pennsylvania's 2024 and subsequent general elections, this Court also has the authority to compel Respondent Commonwealth officials because said officials are charged by the U.S. Constitution in the carrying out of federal law where Congress has asserted its power to "alter" existing Pennsylvania federal election procedures as it did in enacting NVRA and HAVA.

227.     Petitioners believe and therefore aver that any delegation from the Pennsylvania General Assembly to the Executive Branch of Pennsylvania government (e.g., to the Governor who in turn delegates power to the Secretary of State, or any delegation of the General Assembly's power to regulate federal elections to the Attorney General) still falls under this Court's authority which is derived through Article I, Section 4's grant to the various state legislatures of the power to supervise federal elections.

228.     Petitioners believe and therefore aver that simply because the General Assembly may have chosen to delegate some of its authority to supervise federal elections to

Respondent members of the Commonwealth's Executive Branch of government, such delegation does not insulate such officials from the power of this Court, since this Court's power comes from its authority over the delegating entity, in this case the Pennsylvania General Assembly.

## ACTION TO COMPEL AN OFFICER OF THE UNITED STATES TO PERFORM HIS DUTY – 28 U.S.C. § 1361

229.     Petitioners incorporate the previous paragraphs as if set forth at length here.

230.     District Courts are empowered with the ability to compel an officer or employee of the United States or any agency thereof to perform a duty owed to a plaintiff. 28 U.S.C. § 1361.

231.     Respondents Merrick Garland, in his Official Capacity as Attorney General of the United States, and the United States Department of Justice are parties responsible for the enforcement of federal election laws, specifically HAVA and NVRA.

232.     Respondents Merrick Garland, in his Official Capacity as Attorney General of the United States, and the United States Department of Justice are officers, employees, or an agency of the United States.

233.     Petitioners believe and therefore aver that Respondents Merrick Garland, in his Official Capacity as Attorney General of the United States, and the United States Department of Justice, have done nothing, or, at best, an inadequate job at addressing the issues presented above – namely, the inaccurate and likely fraudulent voter rolls and systems within Pennsylvania.

234.     The inaction and/or failure to act is harming Petitioners and the Pennsylvania electorate at large warranting that the Court issue a Writ of *Mandamus* compelling Respondents Merrick Garland, in his Official Capacity as Attorney General of the United

States, and the United States Department of Justice to enforce and police the two federal statutes at issue (NVRA and HAVA) for implementation in the Pennsylvania 2024 General Election and subsequent combined federal and state elections administered by Commonwealth officials and giving Respondents a reasonable period of time in which to do so.

235.    Specifically, the Court should order Respondents to take preventative measures to see the apparent errors evident the 2022 elections are not repeated in the 2024 and subsequent elections and bring the Commonwealth into compliance with HAVA's specific mandate of no greater than 1 voting error out of 125,000 votes to ensure reliable election results as HAVA intended.

236.    A writ of *mandamus* is warranted where "(1) no other adequate means exist to attain the relief, (2) the party's right to issuance of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010)(quoting *Cheney v. United States* Dist. Ct., 542 U.S. 367, 380–81 (2004) (stay granted where district court likely did not follow federal law).

237.    A writ of *mandamus* is appropriate and necessary to vindicate the rights of citizens when a governmental agency or official has refused to perform a ministerial duty that the petitioner has established has a clear legal right to have the governmental agency or official, in this case Respondents, perform.

238.    A "ministerial action" is a duty in a particular situation so plainly prescribed as to be free from doubt and equivalent to a positive command. *Wilbur v. United States*, 281 U.S. 206, 218 (1930); *see also Will v. United States*, 389 U.S. 90 (1967).

239.    Relief contemplated under statute providing that federal district courts shall

have original jurisdiction of any action in nature of mandamus to compel an officer or employee of United States or any agency thereof to perform a duty owed to plaintiff is at least as broad as under common-law writ of mandamus. *Carey v. Local Bd. No. 2, Hartford, Conn.*, 297 F.Supp. 252 (D. Conn. 1969), aff'd, 412 F.2d 71 (2d Cir. 1969).

240.    Petitioners believe and therefore aver they have no other remedy than a writ of *mandamus* and to compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff/petitioner.

241.    Petitioners argue that an injunctive and/or declaratory relief is inapplicable or inappropriate in this issue because the harm from the 2024 election is not yet realized and Petitioners are seeking to have Pennsylvania election officials and/or federal officials bring the Commonwealth into compliance with federal and state law, specifically HAVA, NVRA, and the Election Code, absent a specific private cause of action that affords Petitioners relief.

242.    Petitioners believe and therefore aver Respondents Merrick Garland, in his Official Capacity as Attorney General of the United States, and the United States Department of Justice have allowed, and continue to allow, violations of federal election laws, the United States Constitution, and federal civil rights laws pertaining to voter rights, which include mandating accurate registration rolls, transparency, compliance, and proper certification of the voting systems.

243.    Petitioners believe and therefore aver the voter rolls within the Commonwealth of Pennsylvania are inaccurate, in violation of NVRA and HAVA. That these are not list maintenance failures. Instead, the inaccuracies represent a failure to control the process of validating and registering only qualified citizen voters. Persons voted in the Pennsylvania 2022 General Election in significant numbers who held apparently invalid and/or illegal

registrations.

244.    Petitioners believe and therefore aver that Respondents' failure to follow the law, or enforce the law, has resulted in election outcomes that are untrustworthy and unreliable. The Commonwealth's voting system in its present form cannot be trusted to produce reliable results under HAVA, because Respondents will not follow the dictates of the Act necessitating judicial intervention.

245.    A writ of *mandamus* against Respondents Merrick Garland, in his Official Capacity as Attorney General of the United States, and the United States Department of Justice is appropriate in this case. Respondents Merrick Garland, in his Official Capacity as Attorney General of the United States, and the United States Department of Justice have failed, and continue to fail, in forcing the Commonwealth of Pennsylvania to comply with federal laws regarding voting – including voting accuracy and accountability as is clear from how the 2022 Pennsylvania General Election was conducted.

246.    Petitioners believe and therefore aver that without judicial action, Respondents will do nothing to comply with HAVA and other federal and state statutes to ensure the integrity of Pennsylvania's elections and the same issues evident from the 2022 General Election will call into question the validity of Pennsylvania's 2024 General Election results.

247.    The scope of this request for a writ of *mandamus* is narrow: Petitioners seek a judicial order requiring Respondents both federal and state to follow the laws cited herein in conducting the 2024 and subsequent federal elections, and adequately investigate and remedy the problems exposed in and 2022 elections and detailed above.

## PRAYER FOR RELIEF

**WHEREFORE**,  Petitioners respectfully request Your Honorable Court formally

recognize Pennsylvania's' voter registration rolls contained hundreds of thousands of apparent errors in the 2022 General Election. Further, that these apparent errors took the form of illegal duplicate registrations, incomplete or unknown addresses, registrations on or before the registrant's date of birth, age discrepant registrants, registrations on a federal holiday, registrations on Sunday, registrations with modified dates of birth, registrants whose voter history inexplicably changed, registrants with registration dates altered backwards, and registrants with altered "unique" state voter identification numbers. Petitioner asks this Court to enter an order in *mandamus* compelling Respondents to ministerially correct the apparent errors evident from the 2022 elections data, ascertain to the Court's satisfaction the reasons why the 2022 errors occurred, and prevent those same or similar ministerial errors from recurring during the Pennsylvania 2024 General Election and all subsequent federal general elections to ensure the integrity of Pennsylvania's combined federal and state elections going forward for years to come.  Petitioners, additionally, seek pursuant to permissible causes of action under NVRA and HAVA, this Court order that the State of Pennsylvania's may not certify the 2024 General Election unless and until the relevant Respondents have demonstrated to the Court that the 2024 General Election and subsequent elections were conducted in conformity with federal and state law and with fewer than the maximum errors permissible. **Petitioners further request this Honorable Court order the state, and any subdivision thereof responsible for voter registrations, submit voter registration requests (and any existing registrations reasonably in question) to the Department of Homeland Security to verify the citizenship or immigration status of persons seeking registration to vote or who are presently on the state's voter rolls whenever there exist any reliable indicators that an applicant or registered voter may not be a U.S. citizen. (*see*: 8 U.S.C. secs.1644 & 1373(c)).** Lastly,

Petitioners seek and order in *mandamus* requiring all public officials named as Respondents perform their duties as the law intended whether it be conducting federal elections in conformity with the law or investigating, and where warranted in their discretion, prosecuting persons or entities for failing to perform their duties in conformity to the law after being given timely notice to do so.

Respectfully Submitted,

**van der Veen, Hartshorn, Levin, & Lindheim**

Date: August 26, 2024    By:    */s/ Bruce L. Castor, Jr.*
Bruce L. Castor, Jr.
PA I.D. No. 46370
Michael T. van der Veen
PA I.D. No. 75616
*Attorneys for Petitioners*
1219 Spruce Street
Philadelphia, PA 19107
Main: (215) 546-1000
Fax: (215) 546-8529
Email: bcastor@mtvlaw.com
Email: mtv@mtvlaw.com

EXHIBIT "A"

Efforts to Improve Election Integrity in Pennsylvania

Purpose: This document lists a few of the thousands of efforts made by citizens in Eastern Pennsylvania to urge our government to improve the accuracy, transparency, and integrity of our elections.

| Docu-menter | Type | Description | Submitted to | Date submitted | Narrative | Final Status | Docket Number/ID Number | NAME OF COUNTY | Why it matters |
|---|---|---|---|---|---|---|---|---|---|
| Houser | Civil Action | PETITION TO OPEN BALLOT : BOX PURSUANT TO 25 P.S. §3261 (A) : AND FOR A CORRECT ACCOUNT OF : THE GENERAL ELECTION FOR THE GOVERNOR AND LIEUTENANT GOVERNOR OF PENNSYLVANIA | Court of Common Pleas, Chester County Courthouse | 12/9/22 | ORDERED that the Petitions are DENIED and DISMISSED WITH PREJUDICE | Appeal-ed | NO.2022-09186 -EL to NO. 2022-09195-EL | Chester | Court of Common Pleas Judge ruled against the plaintiffs using a different statute than the one that the petitions were filed under. The Board of Elections did not want to hand count the ballots and provide transparency in our election. Used lawfare to make a ruling. |
| Houser | Plan-tiffs Appeal | Petition to Open Ballot Box : Pursuant to 25 P.S. §3261(a) : and for a correct account of the : General Election for the Governor and Lieutenant Governor of Pennsylvania | THE COMMON-WEALTH COURT OF PENNSYL-VANIA | February 10, 2023 | AND NOW, this 10th day of February, 2023, Trial Court Decision and Order dated December 9, 2022, is VACATED and the matter is REMANDED for further proceedings. Jurisdiction relinquished. | Plan-tiff's favor | No. 1489 C.D. 2022 - No. 1494 C.D. 2022 CASES CONSOLIDATED | Chester | The Chester County Board of Elections improperly certified the election results while the Petitions to open a ballot box remained outstanding. |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Houser | Board of Elections Appeal | Petition to Open Ballot Box : Pursuant to 25 P.S. §3261(a) : and for a correct account of the : General Election for the Governor and Lieutenant Governor of Pennsylvania | SUPREME COURT OF PENNSYL-VANIA | May 12, 2023 | I disagree with the majority's decision to dispose of the merits summarily through a *per curiam* order vacating the Commonwealth Court's decision below based solely on the contents of the Board's Petition. | Board of Elections favor | No. 80 MAL 2023 - No. 85 MAL 2023 | Chester | Ruled under different statutes than what the petitions were filed under. Petitioners followed the PA Statute and filed their petitions according to the law. The funds had to be raised to fight this battle all the way to the PA Supreme Court. The judge at the Commonwealth Court ruled appropriately. |
| Houser | Civil Action | Sued Commissioners Marion Moskowitz and Josh Maxwell for improperly certifying the election results while the Petitions to open a ballot box remained outstanding. | Court of Common Pleas, Chester County Courthouse | Oct. 3, 2023 | Mr. Borton failed to state a claim for relief against the Commissioners' participation in their personal capacities. | Ruled against plaintiff William Borton | NO. 2023 – 06772-MJ | Chester | William Borton's case was dismissed. PA Election Code 25 P.S. Section 3154f states that an election cannot be certified while there are pending recount petitions. 25 P.S. Section 3551 dictates that Moskowiitz and Maxwell should be barred from holding public office due to this violation. |
| Houser | Right to Know Request | Requested the Cast Vote Records for the Nov 3, 2020 election | Chester County Open Records | August 29, 2022 | Your request is denied pursuant to Section 308 of the Pennsylvania Election Code. The cast vote record (CVR) is the digital equivalent of the | denied | 20220829 Houser RTK Response | Chester | Cast Vote Records are not the contents of the ballot box. This is a total lack of |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | contents of ballot boxes, and the Election Code states that the contents of ballot boxes are not public records. | | | | transparency into our elections. |
| Houser | Right to Know Request | After Heather Honey won her appeal, I again requested the CVR's for the 11/3/2020 election | Chester County Open Records | Feb 1, 2023 | Your request is denied pursuant to Article VII, Section 4 of the Pennsylvania Constitution, as the release of the requested record would jeopardize secrecy in voting and the Election Code states that the contents of ballot boxes are not public records. | denied | 20230201 Houser RTK Response | Chester | Cast Vote Records are not the contents of the ballot box. This is a total lack of transparency into our elections. |

| Documenter | Type | Description | Submitted to | Date submited | Narrative | Final Status | Docket Number/ID Number | NAME OF COUNTY | Why it matters |
|---|---|---|---|---|---|---|---|---|---|
| Houser | Right to Know Request for CVR's | Appealed | PA Office of Open Records | March 14, 2023 | The CVR is the digital equivalent of inspecting the contents of a ballot box, one ballot at a time. | denied | Docket No: AP 2023-0337 | Chester | CVR's should be a public record in the interest of transparency. |
| Houser | RTK for HAVV | All records of Help America Vote Verification, HAVV, requests to the social security administration from 1/1/2020 to present. Keyword HAVV. Including number of requests made per week, and | PA DOS | July 3, 2023 | The remainder of your request is denied because the Department of State has determined that it does not have the records that you request in its possession, under its custody or its control based on the information that you provided. | Mostly redacted | Right-to-Know Law Request No. 2023-290 | Chester | Mostly redacted, only received HAVV guidelines. The State should have these records. |

| | | the breakdown of responses.

2. All written paper or digital documentation and communication within or without the county/state regarding HAVV requests and the Social Security Administration. | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Houser | Right to Know Request | On May 25, 2023, the Department of State Right-To-Know Office received your request for information pursuant to the Pennsylvania Right-to-Know Law, 65 P.S. §§ 67.101, et seq. (RTKL), wherein you requested: (1) "all communications between the office of the Pennsylvania Secretary of State and the | PA DOS | Sept. 11, 2023 | Communications from CISA, CIS and ISAC to and from The PA DOS and OOA. | Your request is granted in part, denied in part | Right-to-Know Law Request No. 2023-292 | Chester | It took 3 ½ months to receive this response. Had to continually ask the PA DOS for these records. However, the information that I received was quite telling. Worth the wait. |

| | | Department of Homeland Security between the period beginning January 1, 2020 through the present."; and (2) "all communications between the office of the Pennsylvania Secretary of State and the Center for Internet Security between the period beginning January 1, 2020 through the present. Include any reports that may have been delivered by the Center for Internet Security to the office of the Pa. Secretary of State." | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Houser | RTK Request | 1. Please provide all Memorandums of Agreement between the Pennsylvania Secretary of State and the Center for Internet Security for the | PA DOS | July 3, 2023 | The remainder of your request is denied. In regards to requested item (2), your request is denied because it seeks records regarding computer hardware, software and networks, including administrative or technical records, which, if disclosed, | Your request is granted in part, denied in part | RE: Right-to-Know Law Request No. 2023-298 | Chester | Most informative on Albert Sensors in PA |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | installation of Albert Sensors.<br><br>2. Please provide a list of counties in Pennsylvania which currently have Albert Sensors installed.<br><br>3. Please provide documentation of Waiver of Expectation of Privacy for all computer users on networks that have Albert Sensors installed as required under the terms of the Memorandum of Understanding with the Center for Internet Security. | | | would be reasonably likely to jeopardize computer security and critical election infrastructure, are therefore exempt from disclosure under §§ 708(b)(3)(i)-(iii) & 708(b)(4). | | | | |
| Houser | Right to Know Request | 1. Please provide all communications between the office of the Pennsylvania Secretary of State and any of these | Chester County Open Records | June 30, 2023 | The records have been partially redacted pursuant to Sections 708(b)(4) and (6) of the RTKL because the records contain information, which, if disclosed, would be reasonably likely to jeopardize computer | Partial-ly redact-ed | 20230602 Houser 7 RTK | Chester | A communication showed that BPro/KnowInk can flip data. A person's registration was changed. |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | companies, KnowlNK/BPro/Tenex, between the period beginning January 1, 2020 through the present.

2. Please provide all contracts between the Pennsylvania Secretary of State.and any of these companies, KnowlNK/BPro/Tenex.

3. Please provide any internal training documents provided to the Counties of Pennsylvania by the Pennsylvania Secretary of State.with instructions on how to set up, run, and process elections. This includes instructions on operating the tabulators and instructions on | | | security; and personal identification information which are exempt from public access under the RTKL. | | | | | |

| | | the use of any of these companies: KnowINK/BPro/ Tenex. | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Houser | Right to Know Request | I am requesting the following records related to the November 3, 2020 General Election. I prefer electronic documents:<br><br>All contracts, purchase orders, packing slips, delivery slips, and invoices from every vendor for ballot creation that printed all forms of Mail-in-Ballots and envelopes for the 2020 General Election.<br><br>All contracts, purchase orders, packing slips, delivery slips, and invoices from every vendor for ballot creation that printed the election day ballots for the | Chester County Open Records | July 28, 2023 | I feel that there were records that were hidden and not made public. | Re-quest Grant-ed | 20230724 Houser 9 RTK | Chester | This RTK was an effort to try to find possible information regarding the Jesse Morgan case where completed ballots were transferred from Bethpage New York to Pennsylvania. Those ballots ended up in Chester County and Philadelphia.<br><br>Jesse Morgan: In total I saw 24 gaylords, or large cardboard containers of ballots, loaded into my trailer. These gaylords contained plastic trays, I call them totes or trays of ballots stacked on top of each other. All the envelopes were the same size. I saw the envelopes had return addresses... They were complete ballots." Jesse went |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | 2020 General Election.<br><br>The Procurement Policy Statement for Phoenix Graphics, Rochester, New York.<br><br>In each category, the total number of AP Ballots, MIB's, AB's, Military Ballots, and Provisional Ballots that were ordered for the 2020 General Election.<br><br>In each category, the total number of AP Ballots, MIB's, AB's, Military Ballots, and Provisional Ballots that were counted for the 2020 General Election.<br><br>In each category, the total number of AP Ballots, MIB's, AB's, Military Ballots, and Provisional Ballots that were rejected for the 2020 General Election. | | | | | | | on to say that he sat in Harrisburg for hours, and when he was told to leave, the supervisor at the post office would not give him a slip or an overtime slip so he could get paid. Jesse said the manager-supervisor was "kinda rude." Jesse's testimony revealed that United States Post Office employees were in on the conspiracy to steal the votes. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | If applicable, for each category, the number of AP and MIB ballots printed at voter services for the 2020 General Election.<br><br>The total number of MIB's that were received by mail.<br><br>The total number of MIB's that were received through drop boxes and a copy of the Chain of Custody Tracking Form for pick up of executed ballots from secure ballot sites.<br><br>The total number of MIB's and emergency ballots that were received through all satellite offices as well as from Voter Services and a copy of the Chain of Custody Tracking Form for pick up of executed ballots from secure ballot sites. | | | | | | |

| | | Please provide all communications regarding election ballots, from January 2019 – January 2021, between Phoenix Graphics Inc. of Rochester, New York and the County including, but not limited to, the following County employees and their respective departments: | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|

Efforts to Improve Election Integrity in Pennsylvania **Part 2**

Purpose:  This document lists a few of the thousands of efforts made by citizens in Eastern Pennsylvania to urge our government to improve the accuracy, transparency, and integrity of our elections.

| Docu-menter | Type | Description | Submitted to | Date submit-ed | Narrative | Final Status | Docket Number/ID Number | NAME OF COUNTY | Why it matters |
|---|---|---|---|---|---|---|---|---|---|
| Houser | Right to Know Request | I am requesting videos from inside all Voter Services offices, satellite offices, temporary office spaces, or any other place used by Voter Services where cast ballots are handled starting with the day that these locations began receiving cast ballots from the USPS, from individuals who walked into these locations to leave the cast ballots with a member of staff, and/or from individuals who filled out a cast ballot at Voter Services or any of the other locations that received or handled cast ballots. | Chester County Open Records | Nov 23, 2022 | Your request is denied pursuant to Sections 708(b)(1)(i) and (b)(3) of the RTKL because the disclosure of the requested records would result in the loss of State funds by an agency and would create a reasonable likelihood of endangering the safety or the physical security of a building or infrastructure (65 P.S. § 67.708). | Denied | 20221123 Houser 6 RTK Response | Chester | It is believed that there we have chain of custody issues also a lack of transparency in the election process. |
| Houser | Right to Know Request | I want to know who oversees each step, procedure, | Chester County Open Records | Nov. 9, 2022 | The County does not possess records as described in your request. Pursuant to | Denied in part | 20221109 Houser RTK Response 1 | Chester | Voter Services Policies and Procedures Manual was provided. |

| | | process, and control from the point that a paper ballot is scanned at the polling location to the point where the vote is reported to the state. | | | Section 705 of the RTKL, the County is not required to create a record that does not currently exist or to compile a record in a manner in which the County does not currently compile, maintain, format or organize a record. See 65 P.S. § 67.705. However, the County has enclosed records which may be responsive to your request. | | | | This response did not provide the information that I was looking for. My vote and my husband's vote was not recorded in the 2020 election. I was hoping to find some answers at Voter Services as to why this happened. |
| Houser | Right to Know Request | In regards to the 2022 General Election: 1. I am requesting Chester County's written policy or procedure for counting mail-in and absentee ballots without a date or a verifiable signature. 2. I am requesting Chester County's written policy or procedure for the curing of mail-in and absentee ballots | Chester County Open Records | Dec 6, 2022 | The County has granted your request and enclosed records responsive to your request. See documents attached hereto as Exhibit A In regard to parts 3 and 4 of your request, the County does not possess records responsive to your request. | | | Chester | Received a Pre-Canvass of Outer Envelope Document. Was hoping for more specific information. So, it appears that Voter Services might just do as they please regardless of what the Supreme Court directed. |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | without a date or a verifiable signature. 3. I am requesting any written directives, communications, or responses between Acting Secretary of State Leigh Chapman to the Chester County Board of Elections: Commissioner Marion Moskowitz, Commissioner Josh Maxwell, Commissioner Michelle Kichline, and Karen Barsoum the Director of Voter Services between the dates October 21, 2022 to November 10, 2022 regarding the counting of mail-in and absentee ballots without a date or a verifiable signature. 4. I am requesting any written communications or responses | | | | | | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | between the Chester County Board of Elections: Commissioner Marion Moskowitz, Commissioner Josh Maxwell, Commissioner Michelle Kichline, and Karen Barsoum the Director of Voter Services to the Acting Secretary of State Leigh Chapman between the dates of October 21, 2022 to November 10, 2022 regarding the counting of mail-in and absentee ballots without a date or a verifiable signature. | | | | | | | |
| Houser | | On November 3, 2020, I voted in person at my precinct, Uwchlan 7. I turned in my mail-in ballot fully intact and was given a paper ballot. I saw my ballot go into the voting machine to be scanned. I have | PA DOS | Nov. 9, 2022 | In regard to part 1 of your request, the responsive records have been provided to you for a previous request. The County has enclosed these records in response to this request and they are attached hereto as Exhibit A. The records have been partially redacted pursuant to Section 708(b)(6) of the RTKL because the records | Your re-quest is granted in part, denied in part | 20221109 Houser RTK Response 2 | Chester | I had previously received my Signature Page and Numbered List of Voters page proving that I had voted in the 2020 election even though my vote was not recorded. This was once again provided. I was told that this proves that my vote counted. I wanted proof that it |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | the poll book signature and the ballot assignment that proves that I voted in person on November 3, 2020. I acquired these through a Right to Know Request in July. However, the SURE system has no record of my voting on November 3, 2020 even though I voted in person at my precinct, Uwchlan 7.<br><br>I am requesting three documents which are to be certified copies:<br>1.   I want visual proof that my vote counted. I will not accept the excuse that it was scanned by the voting machine so that is the proof.<br>2.   I want a full accounting and explanation | | | contain personal identification information which is exempt from public access under the RTKL. The records have also been partially redacted under the constitutional right to privacy (Pa. Const. art. I, § 1) and the Voter Registration Act (25 Pa.C.S.A. §1404(a)(3)). In regard to parts 2 and 3 of your request, a request must seek records, rather than answers to questions, in order to comply with the requirements of 65 P.S. § 67.703. See *Simoni v. Brentwood Borough*, AP 2017-2260. Therefore, as it relates to parts 2 and 3 of your request, your request is denied pursuant to Section 703 of the RTKL. *See* 65 P.S. § 67.703. If you have questions regarding the Statewide Uniform Registry of Electors ("SURE") system, you may direct these questions to the Pennsylvania Department of State. | | | | counted. Did not receive that proof. I was also denied the CVR's in other RTK's. |

| | | of why the SURE system has no record of my voting on November 3, 2020. I want to know precisely how this could have happened.<br>3.   I want to know what improvements and assurances that Voter Services will put in place so that this occurrence will not happen to voters again.<br><br>What I know as fact is that my ballot went into the voting machine to be scanned and my vote was not recorded by the SURE system. When eligible citizens take the time and effort to go to the polls and cast a vote, | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |

| | | only to find that their vote is not registered in the Commonwealth System of Record, that is a grave injustice. | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Houser | Right to Know Request | On February 15, 2023, I filed a Right to Know in Chester County requesting the list of names and accompanying addresses from all of the Mail in Ballots that were returned as undeliverable for the November 8, 2022 General Election between the dates of September 1, 2022 to December 31, 2022. I also requested the list of names and accompanying addresses from all of the returned Mail-in-Ballot applications for all of 2022.

On March 27, 2023, Lauren Remaley the Open Records Officer of | Chester County Open Records

Appealed to Pennsylvania Office of Open Records | Appeal on April 4, 2023 | The County cannot redact such information pursuant to the constitutional right to privacy. | The appeal is granted, and the County is required to provide the requested addresses within thirty days | Docket No.: AP 2023-0773 | Chester | Chester County has also denied access to addresses using the PA Constitution as an excuse for privacy in other RTK's that I submitted. It is an ongoing battle for its citizens to acquire transparency in our elections. |

| | | Chester County informed me that "The County has granted your request and enclosed records responsive to your request. The excel spreadsheet file named "2022General_Mail-In_Ballots_Undeliverable_Redacted" is responsive to #1 of your request. The excel spreadsheet file named "2022GENERAL_MAILIN_APPLICATIONS_Redacted" is responsive to #2 of your request. Both records have been partially redacted under the constitutional right to privacy (Pa. Const. art. I, § 1)." However, according to Title 25 §1404, the accompanying addresses to the lists of names that I requested are public information. | | | | | | |
|---|---|---|---|---|---|---|---|---|

| Houser | Right to Know Request | I am requesting the following public records. Please send electronic copies.<br>The printed summary reports of the election results by precinct from the memory sticks of each of the DS450 and DS850 tabulators and any other tabulators that were used to scan mail-in, absentee, provisional, military, adjudicated, and any other ballot tabulated at central scan for the:<br>• June 2, 2020 Primary Election<br>• November 3, 2020 General Election<br>• May 18, 2021 Primary Election<br>• November 2, 2021 General Election<br>• May 17, 2022 Primary Election<br>• November 8, 2022 General Election<br>• May 16, 2023 | Chester County Open Records | August 10, 2023 | The County does not have printed out election results from specific voting machines at central scan that are saved separately for each machine, results are accumulated from each scanner into the ElectionWare software for county wide results. The memory sticks that are used to get election result files from the ballot scanners into ElectionWare are reformatted and reused from election to election in the same way voting machines are. Therefore, there are no memory sticks that still contain the data that you have requested.<br><br>To the extent that you construe this response as a denial, you may file an appeal in accordance with Section 1101 for the RTKL, 65 P.S. § 67.1101. If you wish to appeal, you must do so within 15 business days of this response by filing an appeal with the Pennsylvania Office of Open Records, 333 Market St., 16th Floor, Harrisburg, PA 17101-2234. The County reserves the right to | No Records | Reference # R000069-081023 | Chester | "The memory sticks that are used to get election result files from the ballot scanners into ElectionWare are reformatted and reused from election to election in the same way voting machines are."<br>This information is beyond disturbing. Chester County is a well-off county and can well afford new memory sticks. This is a blatant effort to hide data. |

| | | Primary Election | | | amend this response as permitted by Levy v. Senate of Pennsylvania, 65 A.3d 361, 363–64 (Pa. 2013). Please be advised that this correspondence will serve to close this record with our office as permitted by law. | | | | |
|---|---|---|---|---|---|---|---|---|---|

| Docu-menter | Type | Description | Submitted to | Date submit-ed | Narrative | Final Status | Docket Number/ID Number | NAME OF COUNTY | Why it matters |
|---|---|---|---|---|---|---|---|---|---|
| Houser | Right to Know Request | (1) all invoices and payment history for the Service Agreement (Soc. No. 2020-LOA-002); (2) Albert Network Monitoring Pre-Installation Questionnaire for Chester County; (3) all invoices and payment history for the Service Agreement (Doc. No. 2020-LOA-002A); and (4) Albert Network Monitoring Pre-Installation Questionnaire for Chester County." After further discussion and | COMMON-WEALTH OF PENNSYL-VANIA DEPART-MENT OF STATE | August 14, 2023 | Department of State has determined that it does not have the records that you request in its possession | No records | Right-to-Know Law Request No. 2023-360 | Chester | I have not been able to get evidence that Chester County has Albert Sensors despite the fact that Albert was being shoved on PA Counties by the PA DOS. |

| | | clarification of your request you requested: "(1) only the invoices and payment history regarding Chester County related to both the Service Agreement 2020-LOA-002 and Amendment to the Service Agreement 2020-LOA-002A. However, if such invoices were all inclusive and reflected payment for all of the counties and there is no specific record of the invoices and payment history for only Chester County, then [you] will accept that record, but prefer records specifically for Chester County; and (2) the completed Albert Network Monitoring Pre-Installation Questionnaire for Chester County." | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Houser | Right to Know Request | I am requesting the following public records | Chester County | Oct. 12, 2023 | Chester County Open Records has reviewed its files and has located | granted | R000104-090123 | Chester | Under the HAVA Grant and the Election Integrity |

| | | pertaining to grants awarded to Chester County between the dates of January 1, 2020 to present. I prefer electronic documents. For each awarded grant, I am requesting:<br>A copy of the grant<br>A breakdown of the project resources into specific budget categories and the amount allocated to each category<br>The terms and conditions of the grant<br>Grants awarded to Chester County:<br><br>Help America Vote Act (HAVA) 2020 Election Security Grant for $291,921.95.<br><br>Coronavirus Aid, Relief, and Economic Security Act Grant (CARES) 2020 for $250,151.69.<br><br>Commonwealth of Pennsylvania | Open Records | | responsive records to your request. The records have been partially redacted pursuant to Section 708(b)(6) of the RTKL because the records contain personal identification information which is exempt from public access under the RTKL. The records have also been partially redacted pursuant to the Internal Revenue Code (26 U.S.C. §§ 6103(a)-(b)). Please log in to the Right to Know Request at the following link to retrieve the responsive records. | | | | Grant, the Commissioners pledged to do voter roll maintenance. Cleaning the voter rolls in Chester County has been lacking as proven by canvassers who bring this data to their attention. They took these funds under false claims. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | Help America Vote Act (HAVA) Election Security Grant 2022 for $47,003.67 for the term of 03/16/2022 to 09/30/2023. Awarded to Voter Services. See July 14, 2022 Chester County Commissioners' Agenda.<br><br>Election Integrity Grant Program created under Act 88 for $1,930,264.27 in 2022 and an estimated amount of $1,958,278.47 for 2023.<br><br>CISA and FEMA: Fiscal Year 2023 State and Local Cybersecurity Grant Program, DHS-23-GPD-137-00-01, posted August 7, 2023 – October 6, 2023<br><br>All Grants from the County Commissioners Association of Pennsylvania | | | | | | |

| Houser | Right to Know Request | I am requesting a copy of the following contracts as well as any previous contracts with those vendors between the dates of January 1, 2020 to present. I prefer electronic documents. Contracts should itemize the goods and services purchased or provided. | Chester County Open Records | Oct. 12, 2023 | Chester County Open Records has reviewed its files and has located responsive records to your request. The records have been partially redacted pursuant to Sections 708(b)(6) and (11) of the RTKL because they contain personal identification information and confidential proprietary information which are exempt from public access under the RTKL. The records have also been partially redacted under the constitutional right to privacy (Pa. Const. art. I, § 1) | granted | Reference # R000106-090123 | Chester | Looking for Cyber-Security contracts<br><br>Still using the PA Constitution as an excuse to not provide records.<br><br>I was fishing for this: Any contract with the County Commissioners Association of Pennsylvania between the dates of January 1, 2020 to present. |
| Houser | RTK Request | I am requesting communications between Chester County and Michael Sage, Chief Information Officer of the County Commissioners Association of PA between the dates of January 1, 2020 to present. I prefer electronic documents. Records requested may | Chester County Open Records | Feb. 5, 2024 | Chester County Open Records has reviewed its files and has located responsive records to your request. | granted | R000307-121423 | Chester | Hit the jackpot with this one. Found evidence of every PA County that has Albert Sensors and how the PA DOS and the County Commissioners Association (Left Leaning) went to great lengths to push Albert Sensors on every county. |

| | | be located with, but not limited to the following departments: | | | | | | |
|---|---|---|---|---|---|---|---|---|

EXHIBIT "B"

# Moton campaign Finance

| YEAR UNPAID | EXPENDITURES | IN – KIND |
|---|---|---|
| 2018 | 4,275.37 | 6,499.78 |
| 2019 | 760.82 | 0 |
| 2020 2,246.36 | 2,166.56 | |
| 2022 | 12.785.64 | 4,710.95 |

This does not include the time campaigning nor the 125.00 hourly rate to create campaign items.

The In-Kind is t-shirts, hats, masks, and banners that I created under my company's name, Legacy4tography, LLC. The unpaid stands for my credit cards used to buy campaign items during the Pandemic. My campaign never had enough funds for me to be repaid.

Ruth Moton

6/10/2024

EXHIBIT "C"

Efforts to Improve Election Integrity in Pennsylvania

Purpose:  This document lists a few of the thousands of efforts made by citizens in Eastern Pennsylvania to urge our government to improve the accuracy, transparency, and integrity of our elections.

| Documenter | Type | Description | Submitted to | Date submitted | Narrative | Final Status | Docket Number/ID Number | NAME OF COUNTY | Why it matters |
|---|---|---|---|---|---|---|---|---|---|
| Dreibelbis (elector) | Petition | 2022 General Election appeal for a recount of several specific precincts' in-person ballots | County of Delaware, PA | 11/18/2022 and 11/21/2022 | In this "red wave" election, it was apparent that 10-20% of Republican votes went to Democrats. The County stalled until certification, then agreed to recount one precinct if we withdrew the petition. | Then, they didn't schedule the recount until late January and arrived with the ballot box unsealed and some ballots not printed by the election's designated printer. | 2022-09182-EL 2022-09186-EL 2022-09187-EL 2022-09188-EL 2022-09189-EL 2022-09190-EL 2022-09191 -EL 2022-09192-EL 2022-09193-EL | Delaware | Unable to verity the accuracy of the scanner tabulator due to ample time allowed to replace the precinct's ballots. |
| Dreibelbis (candidate for School Director) | Petition | 2023 General Election appeal for a recount of several specific precincts' in-person ballots | County of Delaware, PA | 12/5/2023 | 25 P.S. §3261-3263 request for recount with affidavit from 3 electors in each district | Every district must petition for a recount in order to recount any of them. | CV-2023-009774, CV-2023-009776, CV-2023-009777, CV-2023-009778, CV-2023-009779, CV-2023-009781, CV-2023-009782, CV-2023-009783, CV-2023-009785, CV-2023-009787, CV-2023-009794, CV-2023-009795, CV-2023-009796, CV-2023-009797 | Delaware | PA is refusing to permit petitioned recounts which is permitted by several Election Code sections. |
| Dreibelbis | RTK | Request for Cast Vote Records | County of Delaware, PA | 8/21/2022 | | Denied – request must be made pursuant to the PA Election Code, not under RTKL. | No. 2022-322 | Delaware | CVRs are public records and county officials block access to them. |
| Dreibelbis | RTK | Request for communications, methods, costs, and results of the recount and recanvass of the | County of Delaware, PA | 09/25/2022 | Suspected that recounting was not done according to statute – by hand-counting or with different election tabulation machinery. | Denied – request must be made pursuant to the PA Election | No. 2022-389 | Delaware | Not much – an RTK was also filed with the PA Department of State, which did provide the materials requested.  These |

| Documenter | Type | Description | Submitted to | Date submitted | Narrative | Final Status | Docket Number/ID Number | NAME OF COUNTY | Why it matters |
|---|---|---|---|---|---|---|---|---|---|
| | | mandatory statewide recount of the narrow margin of victory of the 2022 Primary Election for US Senator. | | | | Code, not under RTKL. | | | revealed that the same Hart Intercivic Verity Voting system devices were used to re-scan and tabulate the ballots. |
| Dreibelbis | RTK | Requested the variety of election machinery models used for the 2022 General Election, the software versions used for each model (where applicable), the number of each election machinery models used, the costs of the election machinery by model, and the personnel role responsible for setting up the machinery for each district's ballots and how many persons were engaged for this | County of Delaware, PA | 11/5/2022 | | Ignored – not replied to | (none) | Delaware | Access to information regarding election machinery should be available to the public. |

| Documenter | Type | Description | Submitted to | Date submitted | Narrative | Final Status | Docket Number/ID Number | NAME OF COUNTY | Why it matters |
|---|---|---|---|---|---|---|---|---|---|
| | | election's setup and testing. | | | | | | | |
| Dreibelbis | RTK | Requested 2022 General Election Return Sheet and Numbered List of Voters for a specified precinct, Haverford 2-3. | County of Delaware, PA | 1/3/2023 | | Ignored – not replied to | (none) | Delaware | Access to election materials is permitted |
| Dreibelbis | RTK | Requested inventory of election system devices, software versions used, cost of each model, and number of each device used in the 2023 General election. | County of Delaware, PA | 3/6/2024 | Trying to determine costs of the Delco Hart Intercivic Verity Voting 2.7 system and the currency of its implemented software. | Provided a list of devices by type and a manufacturer (Hart Intercivic's) serial number, and the Master Agreement. No information was provided regarding costs or software versions. | (none) | Delaware | Access to election materials and costs is permitted |
| Dreibelbis | RTK | Requested inventory of election system devices, software versions used, cost of each model, and number of each device used in the 2023 General election. | PA DOS | 3/6/2024 | Trying to determine costs of the Delco Hart Intercivic Verity Voting 2.7 system and the currency of its implemented software. | Denied – PA does not maintain an inventory of election management system devices. | 2024-175 | Delaware | Access to election materials and costs is permitted |

| Documenter | Type | Description | Submitted to | Date submitted | Narrative | Final Status | Docket Number/ID Number | NAME OF COUNTY | Why it matters |
|---|---|---|---|---|---|---|---|---|---|
| Dreibelbis | RTK | Requested documents regarding EMS provider's "proposed response" to monitored cybersecurity emerging threats. | PA DOS | 4/4/2024 | EAC Voluntary Voting System Guidelines 1.0, section 7.5.3 states that vendors must monitor and respond to emerging cybersecurity threats by developing responsive updates to their system and submitting "proposed updates to the test labs and appropriate states for approval." | Diverted and not provided – instructed to look at EAC.gov for Engineering Change Orders for the Hart Intercivic Verity Voting 2.7 product (there were no cybersecurity mitigation proposals in any of the 14 EOs). | 2024-246 | Delaware | There is, apparently, no adherence by any EMS providers to the EAC certification requirement to continually monitor and mitigate cybersecurity alerts and advisories from CISA and CERT. |

EXHIBIT "D"

# 2022 ELECTION RECAP

Audit The Vote PA

# RECONCILIATION

> **Reconciliation is a mandatory process for counties to complete prior to certification**

> **The 2022 election appears to have actually been reconciled and this process was completed significantly quicker than prior elections**

> **It appears as though the December 19th export shows the largest block of voters, at <u>5,403,573</u> voting in the 2022 election**

> **Across all exports, there are approximately <u>5,416,425</u> registrations that were credited as voting in the 2022 election**

> **Even still, there are <u>6,433</u> registrations that were not fully credited - meaning of the three election columns (Last Vote Date, 2022 Election Party, 2022 Election Vote Method), at least one was not entered**



# VOTING IN WRONG COUNTY

> ATVPA ran the voter rolls against the NCOA database in September of 2022, these numbers are derived from that list run

> 54,463 people show as having voted in their old county, despite the USPS NCOA database showing them as having moved permanently to a new county

>> That's 82% of the moves to a new county identified by ATVPA prior to the election (66,414)



# VOTING IN WRONG STATE

› **ATVPA ran the voter rolls against the NCOA database in September of 2022, these numbers are derived from that list run**

› **8,177 people show as having voted in Pennsylvania, despite the USPS NCOA database showing them as having moved permanently to another state**



# MISSING MAIL BALLOTS?

❯ **The 11/08/2022 8PM DOS mail ballot list shows <u>6,356</u> people as having returned their ballot who do not show as having been credited as voting in the SURE system**

> ❯ **An additional <u>4,056</u> people as having completed their mail ballot, but were incorrectly credited in the SURE system as voting by another method**

❯ **There are <u>644</u> registrations that show as voting by mail or absentee, but are not on the 11/08/2022 8PM DOS mail ballot list**

❯ **There are an additional <u>138</u> people who voted by mail in the <u>11/16/2022</u> DOS mail ballot list that were not on the <u>11/08/2022</u> 8PM DOS mail ballot list, meaning they had missed the deadline to request and submit a mail ballot**

# MAGIC MAIL BALLOTS?

❯ There are <u>318</u> registrations that the DOS shows as having returned their completed ballot before the DOS sent them the ballot

❯ There were at least <u>69,832</u> mail ballots sent to an address unaffiliated with the voter's registration

❯ There are <u>5,914</u> people who requested a mail ballot, with <u>2,746</u> completing it, who do not exist on the PA voter rolls between 10/03/22 and 01/16/23

# MULTIPLE BALLOTS?

> At least <u>18,589</u> people requested multiple ballots be sent to multiple addresses, with some people requesting additional ballots to be sent to up to four separate addresses

>> <u>2478</u> of those had their ballot destination address updated after a prior ballot was marked as being sent, without updating the ballot sent date to reflect the address change

>> <u>280</u> had their ballot destination address updated after a prior ballot was marked as being returned, without updating the record to indicate their latest ballot was not received

>> These record-keeping issues help to facilitate fraud, and in some cases those additional addresses that are unaffiliated with the voter may be used to harvest ballots without the voter being aware, given the record can be updated with their actual address without the ballot sent / returned dates being tied to their legitimate ballot request

# MULTIPLE VOTES?

> **5492** registrations show as having two votes on record in two separate counties, based on matching their IDNumber across the state

>> Therefore there are **2,746** extra votes that were counted

> There are **1230** registrations that show as having voted more than once that are likely duplicates as they share the same first & last name, suffix, and date of birth.  Some are on the rolls three times.

>> These **1,230** registrations cast a total of **2467** votes, meaning there **1,237** extra votes that were counted





# Audit The Vote PA
# 2022 General Election
## NCOA Report II

2022-10-17

https://AuditTheVotePA.com





# NCOALink®

NCOA is a system of record for all COA requests and is used to produce the NCOA<sup>Link</sup> product.

The NCOA<sup>Link</sup> Product is a secure dataset of approximately 160 million permanent change-of-address (COA) records constructed from names and addresses of individuals, families, and businesses who have filed a change-of-address with the Postal Service™. Developed with secure data store technology to increase security of postal customer data and protect the privacy of this information, the NCOA<sup>Link</sup> Product enables mailers to process mailing lists and update lists with new addresses prior to mailing. The NCOA<sup>Link</sup> data is provided on a regular basis to companies that have been licensed by the Postal Service.

https://postalpro.usps.com/mailing-and-shipping-services/NCOALink



# Background

Audit The Vote PA (ATVPA) ran the 09/05/2022 Pennsylvania Full Voter Export (FVE) through the United States Postal Service's (USPS) National Change of Address Service (NCOA) on 09/09/2022 in an effort to ascertain and identify whether Pennsylvania and its 67 counties have adequately completed their PA Title 25 § 1901 yearly required list maintenance, which is necessary to be in compliance with 52 U.S.C. § 20507.

On 09/09/2022, ATVPA submitted six separate files consisting of roughly 1.5 million registrations per file, grouping by county and ensuring no county's registrations were split between files.  The list processor ATVPA used was BCC Software, LLC, the same full service provider that the Electronic Registration Information Center (ERIC) uses.  A Full Service Provider (FSP) is the highest tier of NCOA list processor and offers four years of move data, which is the maximum provided by the USPS.



This is an example of the top half of one of ATVPA's Coding Accuracy Support System (CASS) Summary Reports

From the list processor, ATVPA received all expected NCOA output files including result files, NCOA Link reports, CASS Reports, and USPS Form 3553.  These files act as reports indicating who it was that processed the list, what was done to the list, and a high level summary of findings.

ATVPA ingested the NCOA result data into a database.  In addition to the 09/05/2022 FVE NCOA results, ATVPA has prior NCOA result data from a limited subset of the 02/01/2021 FVE. For the purposes of the analysis, both datasets are included in this analysis.  ATVPA's NCOA move data spans between August of 2017 and August of 2022.



# Methodology

Audit The Vote PA (ATVPA) followed the best practices and documentation available in order to generate the results featured in this report.  Although the NCOA Link processing report summary includes high level summary statistics as far as moves go, ATVPA filtered those down further to ensure a higher degree of accuracy and confidence in this report.

To provide current and accurate numbers for the purposes of this report, ATVPA further filtered the data to require that the IDNumber of the voter registration exists within the current 10/17/2022 Pennsylvania FVE.  This ensures that only the registrations that still exist on PA's rolls are included.

ATVPA makes specific efforts in this filtering process to eliminate all temporary moves and any moves connected to the military, as a means to avoid disenfranchising those voters with a legitimate reason to be out of state.

As with all submitted data, the USPS NCOA data can potentially include errors in the record, such as with cases where the mover failed to indicate it was a temporary move.  In ATVPA's canvassing efforts, the NCOA data remains to be one of the most accurate methodologies to identify registrations that need updating when used in conjunction with canvassing.

For the entirety of this analysis, ATVPA has filtered out all records that do not have a Change of Address (COA) date.  Additionally, ATVPA filters the data based on several return codes that have been identified through prior canvassing efforts as the strongest indicators of a move.

To identify out-of-state (OOS) moves, ATVPA filters the NCOA result data based on the moved state. ATVPA filters out the following states: Pennsylvania (PA), Armed Forces America (AA), Armed Forces (AE), & Armed Forces Pacific (AP).

ATVPA has a high degree of confidence that the majority of these registrations reflect a true out of state move.  Under PA Title 25 § 1901, Pennsylvania law requires counties to perform regular voter roll maintenance by leveraging the USPS NCOA data at least once a year.  Mandatory confirmation mailings should have already gone out to these registrations.



# Findings

## Out-of-State (OOS) Moves

As of the 10/17/2022 Pennsylvania FVE, Audit The Vote PA (ATVPA) has identified 241,677 registrations that are currently registered on the Pennsylvania voter rolls that are tied to a person whom the USPS NCOA has indicated as having changed their address and no longer living in Pennsylvania.

Of the 241,677 registrations, 113,323, or roughly 47%, are still "Active" on the 10/17/2022 FVE. Within these results, there are active registrations with move dates going back to August of 2017 that appear to be unaddressed.  In Pennsylvania, when a voter registration status is marked as "Inactive", that elector must provide a residency affirmation to vote.

The data shows that 22,103 voters (9%) of the 241,677 registrations that have cast at least one vote in the Commonwealth of Pennsylvania *after* indicating to the USPS NCOA service that they've moved.  Of these votes, 72% were cast more than a month after the individual left Pennsylvania and 24% cast a vote more than a year after leaving Pennsylvania.



This chart shows registrations on the 10/10/2022 Pennsylvania Voter Rolls that moved out of state, identified by the USPS NCOA.  The line represents the number of moves by move date.  The bars represent the cumulative total number of moves on the voter rolls by move date.



Analyzing the numbers of OOS moves by county illustrates that the majority of these moves originate from counties closely following their population rankings.

Philadelphia County alone makes up roughly one-fifth of all OOS registrations, with 44,173 OOS registrations.  To put this into perspective, 29 counties in Pennsylvania have fewer registered voters than Philadelphia has OOS registrations on their rolls.

Following population ranking, Allegheny County comes in second with 28,826 OOS registrations, followed by Montgomery (14,917), Chester (13,562), and Delaware (12,780) counties.



The treemap above shows the total number of OOS registrations on each county's rolls.  The boxes represent the relative proportion of these issues in comparison to the other counties.

Breaking up the Out of State (OOS) moves by county in the context of their total registrations illustrates which counties have a high percentage of OOS registrations, regardless of voter status, comprising their rolls.



Surprisingly, Pike County has the highest percentage of OOS registrations on its rolls compared to its total registration count, making up 4.79% of its voter roll, followed by Philadelphia (4.15%), Centre (3.73%), York (3.2%) and Chester (3.57%).

On the opposite end of the spectrum are Juniata (0.74%), Fulton (0.77%), Indiana (1.01%), and Sullivan (1.03%) counties.  Thirty-five of Pennsylvania's 67 counties' voter rolls consist of 2% or fewer OOS registrations.



| | County | OOS Registrations | Active OOS Registrations | Total Registrations | OOS Percent of Total Registrations ▾ |
|---|---|---|---|---|---|
| 1. | PIKE | 2,131 | 694 | 44,463 | 4.79 |
| 2. | PHILADELPHIA | 44,173 | 27,938 | 1,063,990 | 4.15 |
| 3. | CENTRE | 3,975 | 2,542 | 106,437 | 3.73 |
| 4. | YORK | 11,240 | 3,381 | 310,540 | 3.62 |
| 5. | CHESTER | 13,562 | 3,545 | 379,722 | 3.57 |
| 6. | MONROE | 3,979 | 1,363 | 112,861 | 3.53 |
| 7. | DELAWARE | 12,780 | 4,959 | 413,354 | 3.09 |
| 8. | ALLEGHENY | 28,826 | 14,648 | 933,476 | 3.09 |
| 9. | NORTHAMPTON | 6,895 | 3,479 | 223,722 | 3.08 |
| 10. | MONTOUR | 348 | 243 | 11,708 | 2.97 |
| 11. | CUMBERLAND | 5,322 | 2,797 | 185,742 | 2.87 |
| 12. | DAUPHIN | 5,531 | 2,173 | 193,646 | 2.86 |
| 13. | ADAMS | 2,023 | 543 | 72,101 | 2.81 |
| 14. | BUCKS | 12,529 | 7,426 | 479,635 | 2.61 |
| 15. | BRADFORD | 955 | 297 | 37,500 | 2.55 |
| 16. | FRANKLIN | 2,530 | 795 | 99,509 | 2.54 |
| 17. | WAYNE | 898 | 300 | 35,406 | 2.54 |
| 18. | LEHIGH | 6,000 | 2,830 | 237,644 | 2.52 |
| 19. | MONTGOMERY | 14,917 | 5,332 | 604,444 | 2.47 |
| 20. | MERCER | 1,771 | 880 | 72,112 | 2.46 |
| 21. | BUTLER | 3,322 | 2,047 | 136,393 | 2.44 |
| 22. | SUSQUEHANNA | 651 | 418 | 26,881 | 2.42 |
| 23. | BERKS | 6,448 | 1,610 | 266,366 | 2.42 |
| 24. | LANCASTER | 8,324 | 3,993 | 349,889 | 2.38 |
| 25. | TIOGA | 615 | 247 | 26,131 | 2.35 |

The table above shows the top 25 counties ranked by the percentage of OOS registrations that make up their voter rolls.

Upon limiting the above analysis to just those OOS registrations that are still active, the data paints a slightly different picture which helps to highlight which counties are taking their yearly required list-maintenance activities more seriously than others.  Pike sees their position drop to sixth, indicating that although their county's voter rolls have the highest ratio of identified OOS registrations, they've done better at addressing these moves than other counties such as Philadelphia.

Philadelphia, by contrast, has addressed less than half of their OOS moves, 16,235 of 44,173 total, meaning Philadelphia has only addressed roughly 36% of the Philadelphia County OOS moves identified by ATVPA.





The bar chart above shows the number of active OOS registrations in red next to the number of inactive OOS registrations in gray.





NCOA moves visualized on the map to show where they originated from



# County Responses

## How do Pennsylvania's counties treat List Maintenance?

After spending a week validating the NCOA data, ATVPA decided to notify all 67 counties in Pennsylvania of the total number of OOS registrations and the number of OOS registrations residing on their voter rolls.  Toni Shuppe, CEO of Audit The Vote PA, sent the following email on September 28, 2022:

> Good afternoon Philadelphia County Commissioners,
>
> We are reaching out to let you know about a recent analysis we've performed on the Pennsylvania voter rolls.  Thank you for taking the time to look at this.
>
> Audit The Vote PA has identified over 242,000 registrations statewide who no longer live in the Commonwealth of Pennsylvania.
>
> We identified these registrations by running the September 5, 2022 Pennsylvania Voter Rolls through the National Change of Address (NCOA) service, as required in Title 25 § 1901.  Audit The Vote PA used the same full-service provider that ERIC uses, which we are a member-state.
>
> 44,255 of the 242,000 are currently registered in Philadelphia county.  We would like to speak to you about a possible remedy to get these electors removed from the voter rolls in order to help instill confidence in our elections prior to the November 8th election.
>
> Please let us know when your county would be able to meet with us to further discuss, or how your county will be proceeding.
>
> Thank you,
>
> Toni Shuppe
> CEO
> Audit The Vote PA

The email that ATVPA sent to Philadelphia County on 09/28/2022.  Philadelphia County chose to not respond, nor address these registrations adequately.  Each email was customized for the county it was being sent to, although the bulk of the body remained the same.

Almost immediately after sending the email out, responses began to roll in from across the Commonwealth of Pennsylvania.  Many counties were immediately curious, wanted to meet to discuss the findings and were willing to look into those registrations in question.  This is what one would expect of their county government, to be curious and willing to investigate registration issues and adhere to the law.

Snyder County serves as one of many counties that set an example for the Commonwealth of how a county should treat the accuracy and maintenance of their voter rolls.

> Toni,
> Thank you for reaching out to Snyder County.  We take our elections very seriously and pride ourselves in the accuracy of our election process.  We have a brand new Elections Director who is quickly getting educated in every aspect of the elections process.  Our Voter Registrar has been with our county for a number of years and does everything she can to keep our voter rolls up to date.  With that in mind, we would very much like to see a list of those persons who you have found to be living out of state so we can reconcile with our rolls.  Can you please send us that list so we can review?
> Thank you,
> Joe Kantz
> Chairman, Snyder County Commissioners

Snyder County's response to being alerted of OOS registrations on their voter rolls



Counties should take their list maintenance activities as seriously as Snyder County.  This list maintenance is not an option for counties to decide whether they'd like to participate, but rather State and Federal law.

Every county that had asked for the underlying data has been provided the data requested as it related to their county.  For those that have had questions or wanted to meet, ATVPA has been able to schedule time to discuss with those counties further.  To date, ATVPA has met with over a dozen counties to discuss their list maintenance activities and the data identified in this report pertaining to their county.

Several counties went to the Pennsylvania Department of State (DOS) to ask for guidance on how to proceed.  A small subset of those counties felt the need to respond to the ATVPA email and inject their own commentary, such as Delaware County.

Ms Shoup,

The following information was provided by the Pennsylvania Secretary of State today concerning changes to the voter rolls:

"First, section 8 of the National Voter Registration Act ("NVRA") requires states to complete any program for the systematic removal of ineligible voters from the official list of eligible voters **not later than 90 days prior to the date of a primary election or general election for federal office.**  (Emphasis added.)  52 U.S.C. § 20507(c)(2)(A).  This 90-day deadline applies to state list maintenance verification activities, such as general mailings and door to door canvasses.  **Pennsylvania is in the 90-day quiet period (it began on August 10, 2022.)**  (Emphasis added.)

"The 90-day deadline does not preclude removal of voters based on the following situations: (a) the voter requests in writing to be removed from the voter registration rolls; (b) the voter responds to a previously sent list maintenance notice confirming he/she no longer lives in the county's jurisdiction; or (c) the voter dies, and the county confirms the voter's death.  Outside of these exceptions, removals cannot occur before the November 8, 2022 election.

"Second, an NCOA mailing does not of itself provide authority to remove a voter.  The NCOA is part of a statutorily required two-step mailing process; the passage of two federal general elections without an elector's voting must occur after the mailed second notice to voters (in cases where the voter did not respond to the initial NCOA notice, or where the initial NCOA was returned as undeliverable.  25 Pa.C.S. §§ 1901(d)(1) and (2).  Therefore, even if list maintenance were possible at this juncture, the existence of a voter's name on an NCOA list suggesting the voter has moved is insufficient by itself for the legal removal of that voter from the voter rolls."

Delaware County complies with all applicable laws regarding the maintenance of its voter rolls.  The County was the subject of a baseless lawsuit in 2020 which was withdrawn when the County presented the plaintiff, Judicial Watch, with evidence of its compliance.  Going forward Delaware County can not accept assistance from your organization in maintaining its voter rolls.   Doing so would violate a recently enacted state statute prohibiting Counties in Pennsylvania from accepting any assistance from third parties in conducting elections.

Christine Reuther
Delaware County Council
Office: 610-891-4268
Email: reutherc@co.delaware.pa.us

Sent by Outlook for Android
*Please forgive typos

Delaware County's response to being notified of concerns with their county's voter rolls, which they are tasked with adequately maintaining.  You can see Christine Reuther even purposefully misspelled Toni Shuppe's last name.

Delaware County's response above reaffirms that they have no interest in fulfilling their duties and obligations under the law.  Delaware County asserts that they comply with all applicable



laws regarding the maintenance of their voter rolls, however in this same email they misinterpret the actual federal law under 52 USC § 20507 as an excuse not to look into or perform list maintenance activities 90 days prior to the election.  The law itself is clear in this regard, and makes no reference to, nor creates, a 90 day quiet period where counties are excused from maintaining their lists.  The relevant section quoted is as follows -

---

**(2)**

    **(A)** A State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters.

    **(B)** Subparagraph (A) shall not be construed to preclude—

        **(i)** the removal of names from official lists of voters on a basis described in paragraph (3)(A) or (B) or (4)(A) of subsection (a); or

        **(ii)** correction of registration records pursuant to this chapter.

---

This is the section of 52 USC § 20507 that the PA DOS and several counties chose to assert creates a 90 day quiet period where they are excused from maintaining their voter rolls.  Nowhere in the law referenced is verbiage around a "quiet period"

The law referenced is being misinterpreted.  The text in it is plain and very easy to follow.  This section in particular states that, "A State shall **complete,** not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters".

This federal law refers to Pennsylvania's PA Title 25 § 1901 which establishes a program and its requirements to comply with national law.  Under PA Title 25 § 1901 the law requires counties to perform list maintenance activities leveraging USPS NCOA data at least once a year.

52 USC § 20507 conveys to States that their mandatory list maintenance, which puts them in compliance with NVRA/HAVA/Federal Law, must be *completed* no later than 90 days prior to a Federal election.  Nowhere in Federal or State law does it bar the State/County from performing additional list maintenance at any point.  PA Title 25 § 1901 even encourages counties to perform list maintenance activities multiple times throughout the year.

Even more concerning is the data ATVPA has presented above and alerted Pennsylvania's counties to, which shows what appears to be evidence that counties in Pennsylvania **have not completed** their State and Federally required list maintenance activities fully for the past several years.  Since ATVPA has identified unaddressed moves going back to 2017, some of which ATVPA has confirmed as accurate through canvassing, it would imply that those counties in question failed to complete their 52 USC § 20507 within 90 days of multiple Federal Elections (2018: Primary & General; 2020: Primary & General; 2022: Primary).  In counties such as Philadelphia, it is abundantly clear that they've not been completing list maintenance activities for many years now.



The guidance referenced in several counties' email responses originated from the PA DOS, which has continually issued guidance that conflicts with actual election law.

> Acting Secretary of State Leigh M. Chapman said county elections officials should count mail-in votes that arrive in exterior envelopes with inaccurate or nonexistent handwritten dates, despite a requirement in state law.

After a recent USSC ruling overturned a lower court's decision on undated outer-envelopes for mail ballots, acting Secretary of State Leigh Chapman issued guidance in conflict with the law and against the USSC's recent action.
https://www.post-gazette.com/news/election2022/2022/10/11/supreme-court-pennsylvania-mail-in-ballots-ruling-undated-votes-election/stories/202210110099

Delaware County goes further by referencing portions the PA Title 25 § 1901 text to obfuscate what remedies are available, implying that ATVPA asked them to immediately cancel these registrations.  Under PA Title 25 § 1901, counties are tasked with leveraging the USPS NCOA data to identify registrations that appear to have moved.

> **(b)   Voter removal program.--**
>    (1)   Each commission shall establish a program to identify registered electors whose address may have changed by establishing one of the following programs:
>       (i)   National change of address. The secretary shall establish by regulation a program whereby information supplied by the United States Postal Service through its licensees is used on a periodic basis, but not less than once every calendar year, to identify registered electors who may have changed addresses. The information shall be incorporated in the SURE system and shall be forwarded to the commissions in a manner determined by the secretary by regulation.

The section of PA Title 25 § 1901 that tasks counties with leveraging a program established by the secretary to leverage the USPS NCOA data to identify potential moves.



The law states that upon identifying potential moves out of the county, that the county **shall** send a mandatory nonforwardable first class "return if undeliverable" address confirmation mailing.

> (B)  If it appears from the information provided through the United States Postal Service that a registered elector has moved to a different residence address outside the county, the commission shall use the notice procedure described in clause (A).
> (ii)  Confirmation mailing:
>     (A)  A commission may establish a program by sending a direct, nonforwardable first class "return if undeliverable - address correction requested" mailing to all registered electors in the county.
>     (B)  If this program is established, the commission shall use the notice procedure described in subparagraph (i)(A) for any registered elector whose mailing is returned undeliverable.

The section of <u>PA Title 25 § 1901</u> that instructs counties on how to proceed after identifying potential moves from the USPS NCOA service.

Upon receiving any result that does not confirm the voter's eligibility, the county shall change the voter registration in context to "Inactive".  An "Inactive" registration must provide affirmation of their eligibility before being allowed to vote in an election, which works as a deterrent to fraud.

> (c)  **Identification of inactive electors.**--A commission shall mark an "I" on the registration records of each registered elector who has been mailed a form under subsection (b)(1) or (3) and has failed to respond, which shall be included with all other registration records for that polling site and located at the elector's polling site on the day of the election. The commission shall promptly update the information contained in its registration records.

The section of <u>PA Title 25 § 1901</u> that instructs counties on how to proceed after the confirmation mailing has been sent out

Upon sending the confirmation mailing and setting a registration to inactive, counties have the option to physically canvas the address.  Upon confirmation that the registered elector is no longer residing at their place of registration, *then* the law provides a legal path for immediate cancellation of the record.

The only date constraints around elections that are outlined in this portion of the law set a deadline for canvassing to ensure it must occur not later than the 15th day preceding the election next ensuing - meaning even at the time of writing this report, counties are entirely within the law to use the tools at their disposal to verify and maintain their voter rolls.



```
     (2)  In conjunction with and not as an alternative to a
program established under paragraph (1), a commission may use a
canvass as follows:
     (i)  The commission may, by commissioners or by
inspectors of registration, verify the registration in an
election district by visiting the building from which an
elector is registered and other buildings as the commission
deems necessary.
     (ii)  The commission shall make a record of the name
and address of each registered elector who is found not to
reside at the registered address or who for any other
reason appears to be not qualified to vote in the
registered election district.
     (iii)  The commission shall leave at the address of
each registered elector referred to in subparagraph (ii) a
notice requiring him to communicate with the commission on
or before a date which the commission shall designate, and
which shall be not less than seven days and not more than
15 days from the date of the notice and in any case not
later than the 15th day preceding the election next
ensuing, and satisfy the commission of his qualifications
as an elector. The commission shall cause a confirmation of
each such notice to be sent by mail promptly to the
registered elector at the address from which he is
registered. The envelope containing such information is to
be plainly marked that it is not to be forwarded. At the
expiration of the time specified in the notice, the
commission shall cancel the registration of the registered
elector who has not communicated with the commission and
proved his qualifications as a registered elector.
     (iv)  To facilitate the canvass under this section, a
commission may, when necessary, appoint special inspectors
of registration in number not exceeding double the number
of election districts being canvassed.
     (v)  Special inspectors must be registered electors of
the county. They shall be appointed without reference to
residence in election districts or to political
affiliations or beliefs. The commission shall instruct
special inspectors in their duties. Special inspectors have
the powers conferred by this part upon inspectors of
registration.
```

This section of PA Title 25 § 1901 outlines that once the confirmation mailing
step has been satisfied, counties may optionally canvas the address in question
and provides a path to cancel a registration instead of leaving it as inactive.
This section further allows counties to appoint registered electors from the
county as special inspectors to perform this canvassing.

Nothing identified by ATVPA under PA Title 25 § 1901 or referenced by the PA DOS or its
counties, prevent list maintenance activities 90 days prior to any election.  Pennsylvania's
election code sets many limits on when certain list maintenance activities must be performed
and when the required programs must be completed by.

```
     (4)  A commission shall complete, not later than 90 days
before each municipal or general election, at least once per
year the voter removal programs under this section and shall
promptly update information contained in its registration
records. This paragraph shall not be construed to preclude any
of the following:
     (i)  Cancellation of an elector's registration as
provided for under subsection (a)(1) or (2).
     (ii)  Correction of registration records in accordance
with this part.
```

This section of PA Title 25 § 1901 reinforces that the 90 day deadline applies to
the once-yearly required maintenance



Lastly, the DOS and Counties are conveying through these emails that citizens of the Commonwealth are no longer able to point out issues on the voter rolls due to changes under 2022 Act 88, stating that they are barred from doing so as it would "violate a recently enacted state statute prohibiting Counties in Pennsylvania from accepting any assistance from third parties in conducting elections."

> Section 1.  The act of June 3, 1937 (P.L.1333, No.320), known as the Pennsylvania Election Code, is amended by adding a section to read:
>     Section 107.  Public Funding of Elections.--(a)  The cost and expense to State and local governments relating to the registration of voters and the preparation, administration and conduct of elections in this Commonwealth shall be funded only upon lawful appropriation of the Federal, State and local governments, and the source of funding shall be limited to money derived from taxes, fees and other sources of public revenue.
>     (b)  State and local governments, including their public officers, public officials, employees and agents, acting in their official capacity, may not solicit, apply for, enter into a contract for or receive or expend gifts, donations, grants or funding from any individual, business, organization, trust, foundation, or any nongovernmental entity for the registration of voters or the preparation, administration or conducting of an election in this Commonwealth.
>     (c)  This section shall not be construed to apply to the collection of fees authorized by law or to the donation or use of:
>     (1)  a location for voting purposes;
>     (2)  services that are provided without remuneration; or
>     (3)  goods that have a nominal value of less than one hundred ($100) dollars.

2022 Act 88 outlines limits what State and Local Governments are barred from receiving and from who
https://www.legis.state.pa.us/cfdocs/legis/li/uconsCheck.cfm?yr=2022&sessInd=0&act=88

Again, the text in the Act is being stretched and skewed to fit the purposes of the County and DOS in a way to excuse themselves from needing to maintain their voter rolls or complete their mandatory list maintenance.

ATVPA does not offer gifts, donations, grants, funding, or any other of the outlined items under Act 88.  As outlined under subsection (c) above, "This section shall not be construed to apply to the collection of fees authorized by law or to the donation or use of: (2) services that are provided without remuneration".

ATVPA has simply alerted the counties of identified OOS registrations without looking for remuneration.

If it's the DOS and counties' position that this action violates 2022 Act 88, then let's treat all third-parties identifying and requesting changes to the voter rolls the same.  As of the last inquiry, ATVPA has received confirmation from the PA DOS that 87 third-party organizations have access to the SURE Web API which is used specifically for the registration of voters.  The registration of voters is explicitly mentioned in 2022 Act 88, barring the State and its counties from receiving help from third parties.



Here are just a few of Pennsylvania's 87+ third-parties that have been and are currently registering voters on behalf of Pennsylvania and its counties.  The full list can be viewed <u>here</u>.













# Conclusion

Given the data presented above and the responses from counties, ATVPA concludes that most counties in Pennsylvania take their list maintenance and election activities very seriously and act professionally when presented with potential voter registration issues.  These counties that follow the law and take their maintenance activities seriously, are currently being disenfranchised by those counties that choose to treat portions of the law as optional while reading into law text that isn't written.  These counties make up the majority of the identified OOS registrations and have the largest share of those registrations that are still active.

These counties are the same counties that have fought all attempts over the last year+ to address or resolve registration issues brought to them by their constituents.  The inability of these counties to demonstrate whether they had previously taken the required actions around these registrations shows they were either entirely unaware of the moves or lacked the required record-keeping around these maintenance activities.  Their approach to performing the list maintenance activities required by law, seems wholly insufficient to satisfy the requirements of PA Title 25 § 1901 and other election laws.

The constituents in these counties feel that the county has failed to provide transparency or confidence around the way they maintain their voter rolls and administer their elections.  This lack of confidence is amplified by the major issues many of these counties have had around their handling of elections over the last several years, which has lead to many stories that have made national news.

It is ATVPA's hope that this report serves as a needed wake up call to Pennsylvania's State & County Governments and its residents about the need to sufficiently adhere to election law, perform legally-required list maintenance activities, and to work with their constituents to create transparency and confidence in Pennsylvania elections.





# Audit The Vote PA
# 2022 General Election
Unverified MB Report

2022-10-31

https://AuditTheVotePA.com



# Background

Audit The Vote PA (ATVPA) reviewed existing available public data in light of the conflicting messaging coming from Pennsylvania's Department of State (DOS) around the numbers of unverified mail ballots and how these ballots are to be handled.

ATVPA reviewed both the Frank Ryan and Verity Vote reports, which indicated that between 240,000 and 255,000 mail ballots were sent to people whose provided identification did not match what was on record.

Since these reports were released, the DOS released further messaging attempting to discredit these numbers, such as the following graphic shared on their social channels.  The DOS also put out a report discrediting the reports put out by the PA legislature and Verity Vote.



A graphic that the PA DOS created and put out on their social channels to try and
"correct misinformation about 'unverified ballots'" as stated in their posts.
https://archive.ph/uZHXh



# Methodology

ATVPA has access to the weekday snapshots of the 2022 general election mail ballot list made available daily by the PA DOS. This data is public data and can be requested by any resident of Pennsylvania, Campaign, or Party.  Within the data itself contains many fields that line up with the fields that exist in the PA Full Voter Export (FVE) and can be matched with a registration using the same IDNumber field available in both data sets.

For the purposes of this report, ATVPA has performed its analysis against the mail ballot snapshots without pulling in any FVE snapshots.  ATVPA used the 10/28/2022 mail ballot snapshot for the majority of this report and the 09/02/2022 mail ballot snapshot, which is the first that was made available this general election cycle, for a portion of the analysis.

Pennsylvania has several types of MailApplicationCodes that are used to relay to both the counties and the public what type of voter is requesting what type of ballot.  For this report, there are two MailApplicationTypes that indicate the applicant's identity has not been verified, "**OLMAILNV**" and "**OLREGNV**".

OLMAILV represents a *verified* mail ballot application that was submitted online.  **OLMAILNV** represents an *unverified* mail ballot application that was submitted online.

OLREGV is a designation used for *verified* civilian absentee ballot applications that were submitted online.  **OLREGNV** is the designation used for *unverified* civilian absentee ballot applications that were submitted online.

For this report, ATVPA filtered all records in the 10/28/2022 mail ballot snapshot to just those that the DOS has indicated are using the "OLMAILNV" or "OLREGNV" MailApplicationType.

Further, ATVPA filtered out all applicants that were not sent a ballot by filtering on the BallotSentDate column to ensure that only those that show a date are included in the report, unless otherwise stated.



# Findings

## Total Unverified PA Mail Ballots

As of the 10/28/2022 Pennsylvania Mail Ballot Snapshot provided by the PA DOS, Audit The Vote PA (ATVPA) has identified **251,815** mail ballots that were sent out to individuals whose identity is recorded as not verified.  These numbers fall in line with the numbers presented by the PA Legislature and Verity Vote.

Allegheny County has more of these ballots in circulation than any other county, with 33,708 ballots being sent out to individuals whose identity has not been verified.  Allegheny is followed by Philadelphia (31,248), Montgomery (28,626), Chester (21,182), Bucks (18,642), Delaware (11,822), Lancaster (9334) and York (8760) Counties.



A visual representation of the unverified ballots by county

It appears that the bulk of these ballots were sent out between September 21st and October 13th, with more having been sent since then.  Given the time between the Legislative report and this report, it appears as though the original report's stated 240k identified unverified mail ballots falls in line with the historical data plotted graphically in the following chart.





The number of unverified ballots sent out by day shown in red, and shown cumulatively in blue



# Findings

## Verified Ballots

Audit The Vote PA wanted to determine whether these totals were representative of the current state of the applicant's verification process, given the PA DOS issued a report on 10/27/2022 where they asserted that only 7,600 applications still needed to be verified.

> "After the verification process occurs, only those voters whose identification could not be verified will be required to submit valid ID before the sixth day after the election. Currently, that number of voters stands at approximately 7,600."

ATVPA compared the first mail ballot snapshot made available to the public by the DOS (09/02/2022) against the snapshot used in this report (10/28/2022) to look for applicants that originally had an unverified MailApplicationType in the 09/02 snapshot but had a verified MailApplicationType in the 10/28 snapshot.

The 09/02/2022 mail ballot snapshot shows a total of 259,561 unverified applications.

ATVPA then sought to detect any applicants by IDNumber whose 09/02 MailApplicationType was unverified at the time, but changed to a verified status by the 10/28/2022 rolls.  Doing so yields 7854 such changes across 58 counties, of which 7759 show as having been sent a ballot.

```
SELECT COUNT(*) FROM MB20221028
WHERE MailApplicationType NOT IN ("OLMAILNV", "OLREGNV")
AND IDNumber IN (
  SELECT IDNumber FROM MB20220902
  WHERE MailApplicationType IN ("OLMAILNV", "OLREGNV")
)
```

The SQL query used to calculate the 7854 updates

The results of this exercise appear to indicate that the Pennsylvania DOS incorrectly stated the total number of outstanding unverified ballots.  In fact, it is ATVPA's suspicion that the PA DOS misattributed the number of verified applications to those that still required verification given how close their number (7600) is to these results (7759).

Given that all 67 counties in Pennsylvania have outstanding unverified ballots and only 58 show any updated records in the 10/28/2022 snapshot, ATVPA has concerns as to whether all counties are aware of the verification requirements or the process to update their record within the system.





Count of Applicants with updated Verified Ballot Status, by County

| County | Count |
|---|---|
| MONTGOMERY | 1.2K |
| DELAWARE | 634 |
| NORTHAMPTON | 604 |
| ALLEGHENY | 544 |
| CUMBERLAND | 453 |
| PHILADELPHIA | 449 |
| LEHIGH | 447 |
| BUCKS | 330 |
| BEAVER | 238 |
| LANCASTER | 236 |
| ADAMS | 232 |
| SCHUYLKILL | 218 |
| YORK | 203 |
| FRANKLIN | 166 |
| CENTRE | 164 |
| PIKE | 157 |
| ERIE | 151 |
| CAMBRIA | 147 |
| LUZERNE | 138 |
| FAYETTE | 79 |
| WESTMORELAND | 75 |
| BUTLER | 72 |
| CHESTER | 68 |
| DAUPHIN | 62 |
| LEBANON | 60 |
| SOMERSET | 59 |
| COLUMBIA | 58 |
| UNION | 53 |
| BEDFORD | 52 |
| CLEARFIELD | 43 |
| LACKAWANNA | 37 |
| BRADFORD | 36 |
| BLAIR | 34 |
| WAYNE | 33 |
| HUNTINGDON | 30 |
| CLARION | 21 |
| LAWRENCE | 21 |
| TIOGA | 20 |
| NORTHUMBERLAND | 20 |
| CLINTON | 18 |
| JEFFERSON | 16 |
| WARREN | 16 |
| BERKS | 12 |
| MONTOUR | 11 |
| ARMSTRONG | 11 |
| LYCOMING | 11 |
| MONROE | 9 |
| SNYDER | 7 |
| GREENE | 6 |
| JUNIATA | 5 |
| ELK | 4 |
| WASHINGTON | 4 |
| CRAWFORD | 3 |
| FULTON | 2 |
| POTTER | 1 |
| FOREST | 1 |
| CARBON | 1 |
| PERRY | 1 |

Count of Applicants with updated Verified Ballot Status, by County



# Conclusion

Given the data presented above, it is Audit The Vote PA's conclusion that the numbers provided by the PA Legislature and Verity Vote are indeed accurate counts, and that the Pennsylvania Department of State's messaging referenced incorrect numbers and their messaging around this verification process has been contradictory .

The significance of the report presented by Frank Ryan on behalf of the PA Legislature in addition to the longer report put out by Verity Vote, is not the sheer number of such unverified ballots, but rather the conflicting guidance issued by the PA DOS.  The guidance issued by the DOS creates ambiguity around how counties must handle the legally required verification process.  Several counties appear to be unaware of the verification requirement.

Verity Vote <u>correctly documented comments</u> made by Deputy Secretary Jonathan Marks during a 09/14/2022 PA State Government Committee hearing.  Marks is on record having said:

> "I want to make sure we're clear about the distinction between the two processes. Voter registration, there is no federal requirement or state requirement that those numbers match or that every voter has to have one of those two numbers. With mail-in balloting, it is a requirement. **If when you apply, your PennDOT ID cannot be verified or your last four of SSN cannot be verified, the county can still issue the ballot**, but the ballot doesn't count unless the voter provides a valid form of ID – either a PennDOT ID or the last four of SSN that can be verified or one of the other forms of identification provided for in the statute."

Verity Vote also correctly documented that <u>the directive sent out by the PA DOS on 09/26/2022</u> contradicts Deputy Secretary Jonathan Marks' official comments.  The DOS directive states:

> "The Pennsylvania Election Code describes processes that a qualified voter follows to apply for, receive, complete, and timely return an absentee or mail-in ballot to their county board of election. These processes include multiple secure methods used by the voter's county board of election to verify that the qualified voter's absentee or mail-in application is complete and that the statutory requirements are satisfied. These include voter identification verification confirmed by either a valid driver's license number, the last four digits of the voter's social security number or other valid photo identification, and unique information on the application including the voter's residence and date of birth.
>
> **Before sending the ballot to the applicant**, the county board of elections confirms the qualifications of the applicant by verifying the proof of identification and comparing the information provided on the application with the information contained in the voter record. If the county is satisfied that the applicant is qualified, the application must be approved."

As shown above, the DOS described two conflicting sets of guidance prior to the Legislative report which directly contradict one another.  The ambiguity created here caused confusion amongst Pennsylvania's 67 counties as to whether verification needed to occur before sending the ballot or before counting the ballot.

The Verity Vote report documents additional statements that would indicate counties are not handling the identity verification requirement uniformly.  Their report reinforces their claim by quoting testimony from various legislative sessions that indicate some counties did not perform any verification, as they were unaware the requirement was being pushed onto the counties. This appears to be backed by the data in the verified ballot analysis above, as several counties



show no updates to their unverified ballots while 58 counties have updated their records to reflect those ballots that have been properly verified.

Verity Vote aptly summarized the situation that has been allowed to incubate with the following overview,

> This is an enormous task that the DoS has chosen to delegate to the county election offices for which the DoS has provided inaccurate guidance. This policy jeopardizes the counties' ability to verify the ID of these nearly quarter million individuals and creates a situation where counties have to go after this missing information to comply with the law, all while trying to carry out their other election responsibilities.

It is ATVPA's conclusion that the numbers presented are accurate as of 10/28/2022 and the DOS' own numbers do not match their own data.  If there is some data the PA DOS is keeping that validates their numbers, ATVPA would request that they make that data available or update the publicly available records where this data is required to be maintained.

The often conflicting guidance issued by the PA DOS has created confusion amongst the counties and their constituents, and has identified that Pennsylvania's 67 counties to not have a shared perception of the verification requirement falling solely on their staff to perform.

The continued denials and misrepresentations of the information put out by the DOS is creating an atmosphere that breeds confusion and allows for laws to be unknowingly broken by counties during the upcoming midterm election.

EXHIBIT "E"

## COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF STATE

| | |
|---|---|
| DOUG MCLINKO | : |
| | : |
| Complainant, | : |
| v. | : |
| | : |
| COMMONWEALTH OF | : |
| PENNSYLVANIA, DEPARTMENT OF | : |
| STATE AND AL SCHMIDT, | : |
| SECRETARY OF STATE OF THE | : |
| COMMONWEALTH OF | : |
| PENNSYLVANIA, IN HIS OFFICIAL | : |
| CAPACITY | : |
| | : |
| | : |
| Respondents | : |
| | : |
| | : |

## STATEMENT OF STATE-BASED ADMINISTRATIVE COMPLAINT VIOLATIONS OF THE HELP AMERICA VOTE ACT OF 2002 (PUBLIC LAW 107-252, 52 U.S.C. § 20901, et seq.)

Under Section 402 of the Help America Vote Act of 2002, 52 U.S.C. § 21112(a)(2) and section 1206.2(a) of the Pennsylvania Election Code, 25 P.S. § 3046.2(a), complainant, Doug McLinko, brings this complaint against the Commonwealth of Pennsylvania, Department of State, for

violations of Title III of the Help American Vote Act, 52 U.S.C §§ 21081-21102) and avers as follows:

## INTRODUCTION

Under the Help America Vote Act, Pub. L. No. 107-252, 116 Stat. 1666 (2002) ("HAVA"), an individual applying to vote must supply a *current* and *valid* driver's license number or the last four digits of *his* social security number on the registration form. In turn, HAVA requires local election officials to confirm whether these numbers are current and valid by using available databases.

However, the Commonwealth of Pennsylvania maintains a voter registration system that blatantly violates this federal law. The Secretary of the Commonwealth has directed all 67 county boards of election to ignore HAVA's verification mandate and to register *any* applicant to vote regardless of whether an applicant's driver's license or social security number can be verified. This lawless directive does not just violate federal law; it creates a regime where an untold number of ineligible voters, including non-citizens, can register to vote in all state and federal elections in the Commonwealth. The Department of State should immediately repeal the unlawful directive.

**The Help America Vote Act (HAVA)**

1.     In 2002, Congress passed the Help America Vote Act ("HAVA"), Pub.L. No. 107-252, Oct. 29, 2022, 116 Stat. 1666.

2.     Among other things, HAVA was designed to "establish minimum standards for States and units of local governments with responsibility for the administration of Federal elections." *Id.*

3.     Under HAVA, a State may not accept or process an application for voter registration unless the application includes either a valid driver's license number or the last 4 digits of the applicant's social security number. 52 U.S.C. § 21083(a)(5)(A)(i)(I) and (II).

4.     HAVA then requires that local election officials verify the requisite identifying information against state and federal databases. 52 U.S.C. § 21083(a)(5).

**The HAVA Matching Directive.**

5.     In 2018, the Secretary of the Commonwealth issued a directive entitled, "Directive Concerning HAVA-Matching Drivers' Licenses or Social Security Numbers for Voter Registration Applications" (the "HAVA Matching Directive.") A copy of the HAVA Matching Directive is attached as Exhibit A.

3

6.    The Commonwealth has never repealed or replaced the HAVA Matching Directive.

7.    The HAVA Matching Directive violates HAVA and ignores the commands of Congress.

8.    Contrary to HAVA's express language, the HAVA Matching Directive states that a voter registration application "may not be rejected based solely on a non-match between the applicant's identifying numbers on their application and the comparison database numbers." *Id*.

9.    The HAVA Matching Directive directs county boards of election not to reject any registration application where the driver's license or social security numbers do not match the databases.

10.    The HAVA Matching Directive states the application "must be processed like all other applications." *Id*. (emphasis original)

11.    The HAVA Matching Directive concludes by stating the applications "**MUST** be accepted." *Id*. (emphasis original).

12.    The purpose of HAVA is to "establish election administration standards."

13.    HAVA has set clear and unambiguous "election administration standards" by requiring State officials to match an applicant's

4

driver's license or social security number against databases before processing the application.

14.   52 U.S.C. § 21083(a)(5) is titled "Verification of voter registration information." *Id.* (emphasis added).

15.   Titles and headings in statutes matter. *INS v. National Center for Immigration Rights, Inc.*, 502 U.S. 183, 189 (1991).

16.   HAVA compels local election officials to verify the identifying information submitted by an applicant seeking to register to vote and further explains that "an individual who desires to vote in person [or by mail ballot], but who does not meet the requirements of subparagraph (A)(i), may cast a provisional ballot under section 21082(a) of this title." 52 U.S.C.A. § 21083(b)(2)(B)(i-ii)

17.   But the HAVA Matching Directive tells counties not to verify anything and, therefore, to ignore federal law.

18.   It erroneously concludes that an application must be accepted if it contains *any* driver's license or social security number rather than a *valid* one *belonging* to an applicant that can be verified against databases.

5

19.    Furthermore, the HAVA Directive seems to require county board's to accept driver's licenses from other states.

20.    HAVA, however, requires that an applicant supply "a *current and valid* driver's license number" or "the last 4 digits of the *applicant's* social security number." 52 U.S.C. § 21083(a)(5)(A)(i).

21.    Moreover, HAVA requires that States shall determine the validity of those numbers. 52 U.S.C. § 21083(a)(5)(A)(iii) ("The State shall determine whether the information provided by an individual is sufficient to meet the requirements of this subparagraph, in accordance with State law.")

22.    HAVA further requires a process that sets forth "[a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." 52 U.S.C. § 21083(a)(4)(A).

## REQUESTED RELIEF

23.    The Department of State should repeal its unlawful HAVA Matching Directive.

24.    The Department of State should replace it with a directive that complies with HAVA.

6

25.     The Department of State should issue a directive in compliance with federal law, which requires the State to verify voter information, including driver's licenses and social security numbers, before approving a voter registration application. It should also require counties to reject applications that supply a driver's license or social security number that does not match state databases in accordance with HAVA.

26.     Grant any other relief as is just and proper.

                                                Respectfully submitted,

Date: May 21, 2024                     */s/ Walter S. Zimolong, Esquire*
                                        Walter S. Zimolong, Esq.
                                        ZIMOLONG, LLC
                                        wally@zimolonglaw.com
                                        PO Box 552
                                        Villanova, PA 19085
                                        P: (215) 665-0842

                                        Gene P. Hamilton
                                        America First Legal Foundation
                                        611 Pennsylvania Avenue, SE #231
                                        Washington, DC 20003
                                        (202) 964-3721
                                        Gene.Hamilton@aflegal.org

                                        `

*Counsel for Doug McLinko*

7



### DIRECTIVE CONCERNING HAVA-MATCHING
### DRIVERS' LICENSES OR SOCIAL SECURITY NUMBERS
### FOR VOTER REGISTRATION APPLICATIONS

Pursuant to Section 1803(a) of Act 3 of 2002, 25 Pa.C.S. § 1803(a), the following Directive is issued by the Department of State to clarify and specify legal processes relating to HAVA-matching of drivers' license numbers (or PennDOT ID card numbers) and Social Security numbers when voters submit new voter registration applications or an application to reactivate a cancelled record.

**This Directive underscores that Pennsylvania and federal law are clear that voter registrations may *not* be rejected based solely on a non-match between the applicant's identifying numbers on their application and the comparison database numbers.**

As stated in the Department of State's August 9, 2006 *Alert Re: Driver's License and Social Security Data Comparison Processes Required by The Help America Vote Act (HAVA),* HAVA requires only the following:

> (1) that all applications for new voter registration include a current and valid PA driver's license number, the last four digits of the applicant's social security number, or a statement indicating that the applicant has neither a valid and current PA driver's license or social security number; and

> (2) that voter registration commissions compare the information provided by an applicant with the Department of Transportation's driver's license database or the database of the Social Security Administration.

HAVA's data comparison process "was intended as an administrative safeguard for 'storing and managing the official list of registered voters,' and not as a restriction on voter eligibility." *Washington Ass'n of Churches v. Reed*, 492 F.Supp.2d 1264, 1268 (W.D. Wash. 2006).

**Counties must ensure their procedures comply with state and federal law, which means that if there are no independent grounds to reject a voter registration application other than a non-match, the application may *not* be rejected and must be processed like all other applications.**

It is important to remember that any application placed in 'Pending' status while a county is doing follow-up with an applicant whose driver's license or last four of SSN could not be matched **MUST** be accepted, unless the county has identified another reason to decline the application. Leaving an application in Pending status due to a non-match is effectively the same as declining the application while denying the applicant access to the statutory administrative appeals process, and as described above is **not** permitted under state and federal law.



EXHIBIT "F"

Nos. 23-1590 and 23-1591

IN THE

# United States Court of Appeals
## for the Third Circuit

---

AL SCHMIDT, in his official capacity as Acting Secretary of the Commonwealth of Pennsylvania, and JONATHAN M. MARKS, in his official capacity as Deputy Secretary for Elections and Commissions

*Defendants-Appellants/Cross-Appellees*,

v.

PUBLIC INTEREST LEGAL FOUNDATION, INC.,

*Plaintiff-Appellee/Cross-Appellant*,

**On Appeal from the United States District Court for the Middle District of Pennsylvania, Case No. 1:19-cv-00622 (Hon. Christopher C. Conner)**

---

### APPELLEE/CROSS-APPELLANT
### PUBLIC INTEREST LEGAL FOUNDATION'S
### <u>SECOND STEP BRIEF</u>

Noel H. Johnson
Kaylan L. Phillips
Public Interest Legal Foundation, Inc.
107 S. West Street, Ste 700
Alexandria, VA 22314
(703) 745-5870
njohnson@PublicInterestLegal.org
kphillips@PublicInterestLegal.org

Linda A. Kerns, Esquire
LAW OFFICES OF LINDA A.
KERNS, LLC
1420 Locust Street – Suite 200
Philadelphia, PA 19102
PA Atty ID 84495
Tel: (215) 731-1400
Fax: (215) 701-4154
linda@lindakernslaw.com

# CORPORATE DISCLOSURE STATEMENT

The Public Interest Legal Foundation is a non-profit, 501(c)(3) organization. It is not a publicly held corporation and no corporation or other publicly held entity owns more than 10% of its stock.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................................iii

JURISDICTIONAL STATEMENT ............................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .......................... 2

STATEMENT OF RELATED CASES.................................... 4

STATEMENT OF THE CASE............................................ 5

   *Introduction*.................................................................. 5

   *Statement of Facts*....................................................... 7

   *Procedural History* ..................................................... 13

STANDARD OF REVIEW ........................................... 15

SUMMARY OF THE ARGUMENT ..................................... 16

ARGUMENT ..................................................................... 20

   I.    The Foundation Has Standing .................................... 20

       A. The Informational Injury Doctrine Applies ............................ 20

       B. *TransUnion LLC v. Ramirez* Did Not Change the Informational Injury Doctrine ................................. 22

       C. The Foundation Has Been Deprived of Information and Suffered Adverse Effects Contrary to the Intent of Congress ............... 25

       D. The Foundation Has Standing Under the Fifth Circuit's Decision in *Campaign Legal Center. v. Scott* ......................... 30

   II.   The District Court Correctly Held that the Requested Records are Within the Public Disclosure Provision's Scope.................... 33

       A. The Commonwealth Has Waived Any Challenge to the District Court's Plain-Meaning Analysis ............................... 34

       B. Neither the Language, Context, nor Intent of the NVRA Supports the Commonwealth's View that the Public Disclosure Provision is Limited to Records Concerning Death and Relocation ............................................. 35

           i.     The NVRA's Words Unambiguously Encompass the Commonwealth's Activities........................................... 35

    ii.   The District Court Correctly Declined to Read Additional Limitations into the NVRA's Text ................................ 40

    iii.   Section 8's Other Provisions Do Not Support the Commonwealth's Narrow Interpretation ...................... 42

    iv.   The Commonwealth's Narrow Interpretation Would Frustrate Congress's Intent ............................................ 45

    v.   The United States Rejects the Commonwealth's Narrow Interpretation ...................................................... 46

    vi.   The Commonwealth's Response to the PennDOT Error Included Statutory Programs .......................................... 48

III.   The District Court Correctly Held that The Commonwealth Must Disclose Records Concerning Registrants Who Did Not Affirm Their Citizenship .......................................................... 49

   A. A Request to Cancel a Registration Record Is Not A "Declination to Register to Vote" under 52 U.S.C. § 20507(i)(1) ................... 50

   B. The District Court Appropriately Balanced the NVRA Public Disclosure Provision with the DPPA ...................................... 53

   C. The Commonwealth's Baseless Speculation Cannot Veto Federal Law .................................................................... 56

   D. Congress Intended for Disclosure of Names and Addresses ... 60

IV.   The District Court Erred When It Held that the Commonwealth's Voter List Maintenance Records Qualify as Attorney Work Product ................................................. 62

   A. The Attorney Work Product Doctrine ...................................... 63

   B. The Commonwealth Was Motivated by the Need to Remedy a Long-Standing List Maintenance Mistake .............. 65

   C. Due to the Passage of Time, the Absence of Litigation, and the Compelling Need for Transparency, the Attorney Work Product Doctrine Should Yield to Congress's Goals in These Circumstances ............................................................ 72

CONCLUSION ............................................................ 74

# TABLE OF AUTHORITIES

*Cases*

*Bellitto v. Snipes*,
No. 16-cv-61474 (S.D. Fla. Mar. 30, 2018)........................... 17, 29, 32, 45

*Blunt v. Lower Merion Sch. Dist.*,
767 F.3d 247 (3d Cir. 2014).................................................... 24

*Brown v. Socialist Workers '74 Campaign Comm.*,
459 U.S. 87 (1982)...................................................................... 58

*Campaign Legal Center. v. Scott*,
49 F.4th 931 (5th Cir. 2022) ..............................................30-33

*Citizens United v. FEC*,
558 U.S. 310 (2010)..................................................................... 58

*Conn. Nat'l Bank v. Germain*,
503 U.S. 249 (1992)...................................................................34-35

*Doe v. Reed*,
561 U.S. 186 (2010)...................................................................... 57

*Doe v. Reed*,
823 F. Supp. 2d 1195 (W.D. Wash. 2011) ............................. 58

*Encompass Ins. Co. v. Stone Mansion Rest. Inc.*,
902 F.3d 147 (3d Cir. 2018)........................................................ 45

*FDIC v. Deglau*,
207 F.3d 153 (3d Cir. 2000)........................................................ 35

*FEC v. Akins*,
524 U.S. 11 (1998).....................................................................21-24

*Fox v. Lackawanna Cty.*,
No. 3:16-CV-1511 (M.D. Pa. Aug. 27, 2018) ......................... 64

*Graden v. Conexant Sys. Inc.*,
496 F.3d 291 (3d Cir. 2007)........................................................ 34

*Greater Birmingham Ministries v. Secretary of State for the State of Alabama*,
Case No. 22-13708 (11th Cir.).................................................47-48

*Gross v. FBL Fin. Servs.*,
557 U.S. 167 (2009).................................................................... 34

*Heinzl v. Cracker Barrel Old Country Store, Inc.*,
 No. 2:14-cv-1455 (W.D. Pa. Oct. 29, 2015) ................................. 64, 68, 70

*Holmes v. Pension Plan of Bethlehem Steel Corp.*,
 213 F.3d 124 (3d Cir. 2000) ......................................................... 67, 70-72

*Huber v. Simons Agency, Inc.*,
 No. 22-2483 (3d Cir. Oct. 12, 2023) ................................................. 23, 25

*In re Cendant Corp. Sec. Litig.*,
 343 F.3d 658 (3d Cir. 2003) ..................................................................... 74

*Judicial Watch, Inc. v. King*,
 993 F.Supp.2d 919 (S.D. Ind. 2012) ........................................................ 22

*Kelly v. Realpage Inc.*,
 47 F.4th 202 (3d Cir. 2022) .............................................. 19, 23-25, 29

*Lamie v. United States Tr.*,
 540 U.S. 526 (2004) ................................................................................. 34

*Lujan v. Defs. Of Wildlife*,
 504 U.S. 555 (1992) ................................................................................. 24

*Maint. Enters. v. Dyno Nobel, Inc.*,
 No. 08-CV-170-B (D. Wyo. Nov. 13, 2009) ........................................... 67

*Martin v. Bally's Park Place Hotel & Casino*,
 983 F.2d 1252 (3d Cir.1993) ................................................................... 64

*Mercy Catholic Med. Ctr. v. Thompson*,
 380 F.3d 142 (3d Cir. 2004) .................................................................... 42

*Montone v. City of Jersey City*,
 709 F.3d 181 (3d Cir. 2013) .................................................................... 15

*Morton v. Mancari*,
 417 U.S. 535 (1974) ........................................................................... 53, 56

*NAACP v. Ala. ex rel. Patterson*,
 357 U.S. 449 (1958) ............................................................................ 57-58

*Pa. Coal Ass'n v. Babbitt*,
 63 F.3d 231 (3d Cir. 1995) ...................................................................... 15

*Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*,
 507 U.S. 380 (1993) ................................................................................. 34

*Project Vote/Voting for Am., Inc. v. Long*,
   682 F.3d 331 (4th Cir. 2012) ................................16, 18, 29, 38-40, 56, 60

*Project Vote/Voting for Am., Inc. v. Long*,
   752 F. Supp. 2d 697 (E.D. Va. 2010) .......................................................21

*Protectmarriage.com v. Bowen*,
   830 F. Supp. 2d 914 (E.D. Cal. 2011) .....................................................58

*Public Citizen v. United States Department of Justice*,
   491 U.S. 440 (1989)..................................................................20-24, 26

*Public Interest Legal Foundation v. Bellows*,
   Case No. 23-1361 (1st Cir.) ..............................................................47-48

*Pub. Interest Legal Found. v. Bennett*,
   No. H-18-0981 (S.D. Tex. Feb. 6, 2019)....................................22, 39 n.8

*Pub. Interest Legal Found., Inc. v. Bennett*,
   No. 4:18-CV-00981 (S.D. Tex. Mar. 11, 2019) ......................................22

*Pub. Int. Legal Found. v. Boockvar*,
   370 F. Supp. 3d 449 (M.D. Pa. 2019)...............................4, 13, 28, 28 n.6

*Public Interest Legal Foundation v. Boockvar*,
   No. 1:20-cv-1905 (M.D. Pa., filed Oct. 15, 2020).....................................8

*Pub. Interest Legal Found., Inc. v. N.C. State Bd. of Elections*,
   996 F.3d 257 (4th Cir. 2021) ..................................................33, 39, 59-60

*Public Interest Legal Foundation v. Torres*,
   No. 1:18-cv-00463 (M.D. Pa., filed Feb. 2, 2018) ..................................13

*Public Interest Legal Foundation v. Voye*,
   No. 2:20-cv-00279 (W.D. Pa., filed Feb. 24, 2020) ..................................8

*Russello v. United States*,
   464 U.S. 16 (1983)..............................................................................36, 51

*Sierra Club v. Morton*,
   405 U.S. 727 (1972)..................................................................................24

*Smithkline Beecham Corp. v. Apotex Corp.*,
   193 F.R.D. 530 (N.D. Ill. 2000)..............................................................67

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021)....................................................19, 22-24, 31, 33

*True the Vote v. Hosemann*,
43 F. Supp. 3d 693 (S.D. Miss. 2014) ..................................................... 45

*United States v. Ernstoff*,
183 F.R.D. 148 (D.N.J. 1998) ........................................................ 64, 69

*United States v. Gonzales*,
520 U.S. 1 (1997) .......................................................................... 33

*United States v. Joseph*,
730 F.3d 336 (3d Cir. 2013) ............................................................. 50

*United States v. Moreno*,
727 F.3d 255 (3d Cir. 2013) ............................................................. 33

*United States v. Rockwell Int'l*,
897 F.2d 1255 (3d Cir. 1990) .................................................. 64, 70, 72

*Volkswagenwerk Aktiengesellschaft v. Fed. Mar. Comm'n*,
390 U.S. 261 (1968) ....................................................................... 41

*Yick Wo v. Hopkins*,
118 U.S. 356 (1886) ....................................................................... 16

## Statutes and Rules

Fed. R. Civ. P. 26(b)(3)(A) ................................................................. 63

18 U.S.C. § 2721(a)(1) ...................................................................... 53

18 U.S.C. § 2725(3) ......................................................................... 53

52 U.S.C. § 20501(b)(1)-(4) ................................................................. 5

52 U.S.C. § 20501(b)(3)-(4) ............................................................ 28, 45

52 U.S.C. § 20504(c)(2)(D)(ii) ............................................................. 52

52 U.S.C. § 20506(a)(6)(B) ................................................................. 52

52 U.S.C. § 20507(a)(3)(A) ............................................................ 49, 51

52 U.S.C. § 20507(a)(4) ..................................................................... 42

52 U.S.C. § 20507(d)(1)-(2) ................................................................ 61

52 U.S.C. § 20507(i)(1) ............................................................... *passim*

52 U.S.C. § 20507(i)(2) ................................................................ 44, 61

52 U.S.C. § 20508(b)(4)(ii) ................................................................. 52

52 U.S.C. § 20510(b) ........................................................................... 1

25 Pa.C.S. § 1301(a)-(b) .................................................................... 39

25 Pa.C.S. § 1323(a)(1) ..................................................................... 49

25 Pa.C.S. § 1901(a)(1)...................................................................... 49

28 U.S.C. § 1331 ................................................................................. 1

28 U.S.C. § 1291 ................................................................................. 1

## *Other Sources*

FEC, Implementing the National Voter Registration Act of 1993: Requirements, Issues, Approaches, and Examples ......................................................... 41 n.9

Pennsylvania Department of State, Administration of Voter Registration in Pennsylvania: 2022 Annual Report to the Pennsylvania General Assembly, June 30, 2023 ................................................................................. 30 n.7

https://publicinterestlegal.org/contact/ ...................................................... 7 n.2

Public Interest Legal Foundation, *Steeling The Vote: Allegheny County Reveals How Citizenship Verification Protects Citizens and Immigrants Alike*, July 12, 2018 ........................................................................................ 27 n.5

# JURISDICTIONAL STATEMENT

Plaintiff-Appellee/Cross-Appellant Public Interest Legal Foundation ("Foundation") brought a one-count complaint alleging a violation of Section (8)(i) of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507(i)(1). ECF 1.[1] The district court had jurisdiction pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States, and 52 U.S.C. § 20510(b), because the action seeks declaratory and injunctive relief under the NVRA. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

---

[1] District Court docket numbers are preceded by "ECF."

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1.      **Whether the District Court correctly held that the Foundation has standing.**

The Commonwealth contested the Foundation's standing in the District Court. *See* ECF 14 at 14-16. The District Court held that the Foundation has standing. *See* Appx020.

2.      **Whether the District Court correctly held that the NVRA's Public Disclosure Provision, 52 U.S.C. § 20507(i)(1), is not limited to records concerning registrant death or changes in residence, but covers all voter list maintenance records, including records concerning eligibility evaluations based on citizenship.**

The Commonwealth contested the NVRA's scope in the District Court. *See* ECF 14 at 6-11. The District Court rejected the Commonwealth's arguments. *See* Appx007-014.

3.      **Whether the District Court correctly determined that the Commonwealth's voter list maintenance activities were motivated solely by an objectively reasonable anticipation of litigation, as required to invoke the attorney work product doctrine.**

The Foundation raised and contested this issue in the District Court. *See* ECF 67 at 18-23; ECF 71 at 8-12; ECF 75 at 8-12. The District Court ruled on this issue in its summary judgment memorandum. *See* Appx038-043.

## STATEMENT OF RELATED CASES

This case has not been before this Court previously.

The Foundation filed an identical action prior to this action, which was dismissed. *See Pub. Int. Legal Found. v. Boockvar*, 370 F. Supp. 3d 449 (M.D. Pa. 2019).

The Foundation is not aware of any other case related to this action.

<u>**STATEMENT OF THE CASE**</u>

*Introduction*

With the NVRA, Congress intended to increase and enhance registration and voting by "eligible citizens," "protect the integrity of the electoral process," and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(1)-(4). To accomplish these goals, Congress created the NVRA's Public Disclosure Provision, 52 U.S.C. § 20507(i)(1), a broad and powerful federal open records law, and a private right of action, 52 U.S.C. 20510(b). These two components serve vital oversight and enforcement functions, which ultimately promote *all* the NVRA's purposes. In short, Congress intended maintenance of state voter rolls to be transparent, because oversight and accountability safeguard the right to vote.

The NVRA's Public Disclosure Provision requires public disclosure of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. 20507(i)(1). As a threshold question, this case asks whether Congress meant what it said. Consistent with the overwhelming weight of authority, the District Court answered that question "yes," finding that the Public Disclosure Provision "contemplates an *indefinite* number of programs *and*

5

activities," Appx012 (emphasis in original), including the Commonwealth's "effort
to identify noncitizen registrants," Appx014. The District Court's holding should
be affirmed because it was compelled by the NVRA's plain language and comports
with Congress's intent. In the simplest terms, the Secretary engaged in "programs
and activities" designed to make the Commonwealth's voter roll more accurate.
Records concerning those activities thus fall squarely within the Public Disclosure
Provision's unambiguous and broad scope.

Congress specifically identified the two types of records that are not open to
inspection, 52 U.S.C. § 20507(i)(1), and the District Court correctly declined to
"read unexpressed limitations into an unambiguous statute's terms," Appx011.
With rare exceptions, largely not applicable here, "the balance between privacy
and transparency must be struck by the legislature, not the courts." Appx037.
Where appropriate, the District Court applied the Driver's Privacy Protection Act
according to its text, so that the NVRA and the DPPA both remain effective. The
Commonwealth offers no compelling reason to disturb the District Court's
reasoned judgment.

This case also asks whether election officials may veto Congress's
transparency goals by abdicating voter list maintenance decisions to outside legal
counsel. Here, the Commonwealth seeks to hide its mistakes behind the attorney

work product privilege, by simply claiming its actions were motivated by an abstract fear of litigation—rather than the manifest need to remedy a decades-long problem that allowed foreign nationals to register and vote. The answer to these questions will impact the state of election transparency here and in election offices throughout the country.

***Statement of Facts***

1.  The Foundation is a non-partisan, public interest organization that was headquartered in Indianapolis, Indiana when this action was filed.[2] The Foundation promotes the integrity of elections nationwide as part of its mission. Appx025; ECF 67-1 ¶ 3. The Foundation does this, in part, by using state and federal open records laws (*e.g.*, the NVRA Public Disclosure Provision) to study and analyze the voter list maintenance activities of state and local governments. ECF 67-1 ¶ 3. Where necessary, the Foundation also takes legal action to compel compliance with state and federal voter list maintenance laws. *Id*. The Foundation has dedicated significant time and resources to ensure that voter rolls in the Commonwealth of Pennsylvania, and other jurisdictions throughout the United States, are free from ineligible registrants, including deceased individuals, foreign

---

[2] The Foundation has since moved its headquarters to Alexandria, Virginia. *See* https://publicinterestlegal.org/contact/ (last accessed Oct. 26, 2023).

nationals, individuals who are no longer residents, and individuals who are simultaneously registered in more than one jurisdiction. *Id*.

2.    The Foundation has filed multiple lawsuits in the Commonwealth of Pennsylvania concerning voter list maintenance. *See*, *e.g.*, *Public Interest Legal Foundation v. Boockvar*, Civ. No. 1:20-cv-1905 (M.D. Pa., filed Oct. 15, 2020) and *Public Interest Legal Foundation v. Voye*, Civ. No. 2:20-cv-00279 (W.D. Pa., filed Feb. 24, 2020). ECF 67-1 ¶ 3.

3.    In late 2017, the Commonwealth publicly admitted that non-United States citizens had registered to vote at Pennsylvania Department of Motor Vehicle offices ("PennDOT") for the last several decades (hereafter, the "PennDOT Error")[3]. Appx025; ECF 66 ¶ 6.

4.    The Commonwealth acknowledged the PennDOT Error in written and oral testimony before the Pennsylvania General Assembly. Appx025; ECF 66 ¶ 6.

---

[3] The Commonwealth describes the cause of noncitizen registration as a "software error." Doc. 25 at 4. The term "software error" suggests that PennDOT's registration software did not function correctly or as designed. That is not the case here. The software functioned exactly as designed. If there was any "error" involved, it was an error in judgment—namely, the decision to offer the opportunity to register to vote to applicants *before* verifying each applicant's citizenship. *See* ECF 66-2 at 2. The Foundation uses the term "PennDOT Error" in this brief to refer to the subject of noncitizen registration at PennDOT offices.

5.      The Commonwealth engaged in a three-stage remedial program in response to the PennDOT Error.

6.      The first stage—referred to by the District Court as the "Initial Analysis"—began in September 2017. Appx026; ECF 66 ¶¶ 47-49. During the Initial Analysis, the Commonwealth collaborated with PennDOT to compare voter registration records with PennDOT records containing INS indicators, which signify "that the license holder was, at some point in their life, something other than a United States citizen." Appx027; *see also* ECF 66 ¶¶ 49-50. The Initial Analysis "identified approximately 100,000 registered voters 'who may potentially be non-citizens or may have been non-citizens at some point in time.'" Appx027 (quoting ECF 64-1 ¶ 13; ECF 66 ¶ 51); *see also* ECF 66 ¶ 51.

7.      The second stage—referred to by the District Court as the "Statewide Analysis"—also began in or around September 2017. Appx027; ECF 66 ¶ 55. During the Statewide Analysis, the Commonwealth searched the statewide voter registration database (formally known as the SURE[4] database) "for records related to any voter registrations cancelled by a county simply because the registrant was not a citizen[.]" Appx027; *see also* ECF 66 ¶ 55.

The [S]tatewide [A]nalysis produced voting registration records for 1,160 individuals. (*See* [ECF 66] ¶¶ 55, 59). However, the 1,160

---

[4] SURE means Statewide Uniform Registry of Electors.

9

records reflected only those registrants who self-reported their status as noncitizens and voluntarily requested their voter registration be cancelled. (See id. ¶ 58). Of the 1,160 noncitizen registrants, 248 voted in at least one election prior to cancelling their registration. (See id. ¶¶ 60-61).

Appx027; ECF 66 ¶¶ 55, 58, 61. "In conjunction with the [S]tatewide [A]nalysis, the Commonwealth asked counties to provide copies of any cancellation requests received by the county from noncitizens seeking to cancel their voter registration." Appx027 (citing ECF 64-1 ¶ 11). However, "[o]nly Allegheny, Philadelphia, and Dauphin Counties provided records in response to the request." *Id*.

8.    The third stage—referred to by the District Court as the "Noncitizen Matching Analysis"—began after the Statewide Analysis. Appx028.

9.    During the Noncitizen Matching Analysis, the Commonwealth "engaged with an expert to do an analysis of voter registration records and motor vehicle records to determine the, the [sic] universe of potential individuals that required more – had more scrutiny in terms of their, their qualifications specifically related to citizenship[.]" ECF 66 ¶ 62; *see also* Appx028 ("The expert analyzed the Commonwealth's voting records, including the SURE database, to identify registrants whose eligibility to vote required additional scrutiny in terms of citizenship.").

10

10.     The Commonwealth explained and summarized the Noncitizen

Matching Analysis in a July 2018 statement prepared by its communications office

entitled "Voter Registration & Election Integrity" (hereafter, the "Expert Analysis

Statement"). ECF 66 ¶ 63.

11.     The Expert Analysis Statement provides, in part:

> The Department also undertook the following steps to investigate and
> address the concern that some ineligible individuals registered to vote:
>
> - The Department retained an expert to conduct a full analysis of
>   registration data by comparing the voter rolls with other available state
>   databases. The initial analysis yielded a responsible list of individuals
>   for whom voter registration status required further confirmation.
>
> - Prior to the May 2018 primary, the department mailed letters to 7,702
>   of those registrants whose registration status was active. Because the
>   data analysis was ongoing, the immediate goal was to remind the
>   individuals of voter eligibility requirements before the primary.
>
> - Based on further expert analysis, the Department mailed letters to
>   11,198 registrants on June 12, including those with active and inactive
>   status, asking the recipients to affirm their eligibility to vote or to
>   submit a request to cancel their registration.
>
> - After the responsive affirmations and requests for cancellation were
>   taken into account, on June 29 another round of letters with a similar
>   message was mailed to those who had not responded.

ECF 66 ¶ 64.

12.     The 7,702 registrants who received the letter referenced in bullet point

2 of paragraph 11 "required additional scrutiny regarding their qualifications" to

register to vote. ECF 66 ¶ 66. Each of these registrants received a letter "reminding

them of the eligibility requirements for voting." Appx028.

11

13.     The 7,702 registrants who received the letter referenced in bullet point 2 of paragraph 11 were separate from the 1,160 voter registration records analyzed in the Statewide Analysis. ECF 66 ¶ 67.

14.     The 11,198 registrants referenced in bullet point 3 of paragraph 11 received a letter asking them to affirm or cancel their registration (hereafter, the "Affirm or Cancel Letter"). ECF 66 ¶ 68; Appx028; *see also* ECF 66-11.

15.     The Commonwealth kept a list of responses to the Affirm or Cancel Letter. ECF 66 ¶ 69; *see also* Appx028.

16.     Of the recipients of the Affirm or Cancel Letter, 1,915 mailed back the Letter to the Department of State with an affirmative response indicating they were citizens and qualified to be registered. ECF 66 ¶ 70.

17.     Of the recipients of the Affirm or Cancel letter, 215 mailed back to county offices requesting cancellation of their voter registration record. ECF 66 ¶ 72.

18.     Of the recipients of the Affirm or Cancel letter, 8,698 either did not respond or had undeliverable addresses. ECF 66 ¶ 73. The Commonwealth has not provided all records concerning these letter recipients. *See, e.g.*, Doc. 25 at 14-15.

19.     The Department of State provided information on those 8,698 letter recipients to county offices with instructions to "handle the registrants according to

12

their normal processes employed to verify addresses and confirm eligibility." ECF 66 ¶ 74.

20.     In October 2017, pursuant to NVRA's Public Disclosure Provision, the Foundation requested from the Commonwealth four (4) categories of records. *See* Appx028-029; ECF 66 ¶ 9.

21.     The Commonwealth denied the Foundation's request. Appx030; ECF 66 ¶¶ 17, 21.

***Procedural History***

The Foundation requested the Commonwealth's records more than six years ago, on October 23, 2017. *See* ECF 1-9. The Secretary denied the request, and on February 26, 2018, the Foundation filed an action to enforce the NVRA, alleging that the Secretary violated the NVRA by denying the Foundation access to the requested records. ECF 1, *Public Interest Legal Foundation v. Torres*, No. 1:18-cv-00463 (M.D. Pa., filed Feb. 2, 2018). That action was dismissed for failure to provide proper notice under the NVRA. *Boockvar*, 370 F. Supp. 3d at 458.

The Foundation cured the statutory notice deficiency and filed the present action on April 10, 2019. ECF 1. On December 12, 2019, the District Court granted in part and denied in part the Secretary's motion to dismiss. Appx022-023.

On March 31, 2022, the District Court granted in part and denied in part both parties' motions for summary judgment. Appx050-051. In an order dated February 27, 2023, upon Motion of the Commonwealth, the District Court clarified its judgment, but denied the Secretary's motions for reconsideration and to amend or alter the judgment. Appx053-058.

The Secretary filed a notice of appeal on March 29, 2023. Appx059. The Foundation filed a notice of cross appeal on March 30, 2023. Appx061.

## STANDARD OF REVIEW

This Court "employ[s] a *de novo* standard of review to grants of summary judgment, 'applying the same standard as the District Court.'" *Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013) (quoting *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995)).

## SUMMARY OF THE ARGUMENT

Thirty years ago, Congress decided that decisions about who is and is not eligible to vote should be transparent and publicly accessible. That decision is embodied in the NVRA's Public Disclosure Provision, which mandates that "all records" related to the implementation of voter list maintenance activities are subject to public inspection. 52 U.S.C. § 20507(i)(1).

The NVRA's Public Disclosure Provision is no ordinary transparency law. Its unique and expansive scope is deliberate because it is designed to protect the right that is "preservative of all rights"—the right to vote. *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). The Public Disclosure Provision "embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334-35 (4th Cir. 2012) ("*Project Vote*"). To that end, Congress designed the Public Disclosure Provision to shed light on *all* activities that determine who belongs and who does not belong on the voter rolls. As one federal district court put it, the Public Disclosure Provision "convey[s] Congress's intention that the public should be monitoring the state of the voter rolls and the adequacy of election officials' list maintenance programs. Accordingly, election

16

officials must provide full public access to all records related to their list maintenance activities, including their voter rolls." *Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *12-13 (S.D. Fla. Mar. 30, 2018).

The Commonwealth seeks reversal upon an incorrect interpretation of the NVRA that strays far from the plain-meaning analysis this Court must conduct. The Commonwealth's view finds no support in the NVRA's text or in any court opinion to date. It is also contrary to the United States's interpretation.

The NVRA's Public Disclosure Provision unambiguously requires public inspection of "all records concerning the implementation" of voter list maintenance activities. 52 U.S.C. § 20507(i)(1). Congress identified the records that are exempt from this disclosure mandate, *id.*, and beyond those records, Congress made no exceptions. Records concerning the Commonwealth's efforts to identify registrants who may lack citizenship fall within the NVRA's scope because those records "concern[]" activities that were conducted to maintain an accurate voter roll. The District Court did not err when it so concluded.

The Commonwealth's interpretation would cause absurd and damaging results, chief among them the concealment of records showing who is and who is not eligible to vote and how government officials make eligibility determinations. Such an outcome would erode transparency and undermine the NVRA's purposes,

17

because "[w]ithout such transparency, public confidence in the essential workings of democracy will suffer." *Project Vote*, 682 F.3d at 339. Congress did not limit the NVRA's sweeping inspection provision to a subset of activities, as the Commonwealth claims. Instead, Congress drafted the NVRA broadly, and that choice has enormous significance and must be given effect, as it has by other courts.

The District Court correctly applied the plain language of the Driver's Privacy Protection Act ("DPPA") to find that DPPA shields only personal information derived exclusively from DMV records. Appx036-037. In other words, the DPPA "does not protect information derived from non-DMV sources even when that information is included in a record containing personal information obtained from DMV records." *Id*. To find otherwise, as the Commonwealth urges, would expand the DPPA beyond its text, elevate one law over another, and result in the concealment of records showing why a registrant lost her right to vote or was not eligible in the first place.

The District Court did not, however, correctly apply the attorney work product doctrine to the facts of this case. The Noncitizen Matching Analysis was not the product of the Commonwealth's objectively reasonable anticipation of litigation. Rather, it was the final step of a multi-stage investigation into a decades-

18

old failure in conducting ordinary list maintenance. The Commonwealth knew of the problem as early as 2015 and openly acknowledged its efforts to find and implement a remedy. It defies logic—and the record—to conclude that the last stage of the Commonwealth's remedial plan—and only that stage—had no other purpose than litigation readiness, especially when the analysis had a clearly identifiable goal: identifying who should receive an eligibility letter. What is logical, and what is supported by the record, is this: the Secretary's actions would have taken place whether or not litigation was expected to ensue. The work product doctrine therefore does not apply.

Last, the Commonwealth's standing arguments are meritless. This Circuit has already addressed the impact of *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) and found that "the [Supreme] Court did not amend the informational injury doctrine in *TransUnion*; rather, it simply applied its prior precedent[.]" *Kelly v. Realpage Inc.*, 47 F.4th 202, 213 (3d Cir. 2022). In any event, the Foundation has standing because it has demonstrated an informational injury and the adverse effects of that injury—namely, the inability to evaluate and scrutinize the Secretary's voter list maintenance activities and the inability to educate the public and election officials about same. Congress sought to promote precisely these types of activities when it passed the NVRA Public Disclosure Provision.

19

**ARGUMENT**

**I.    The Foundation Has Standing.**

The District Court correctly held that the Foundation has standing because the Foundation suffered an informational injury that caused downstream consequences—namely, the inability to do the very things Congress envisioned when it crafted the NVRA Public Disclosure Provision. The Commonwealth's arguments to the contrary misconstrue precedent and rely on the mistaken belief that the informational injury doctrine has changed. It has not. If the Commonwealth's erroneous view of standing is adopted, not even the Press will have standing to gather information about the most egregious voter list maintenance errors. This Court should decline the Commonwealth's invitation to dismantle a vital oversight mechanism designed to safeguard the right to vote.

**A. The Informational Injury Doctrine Applies.**

The Informational Injury Doctrine is decades old. In *Public Citizen v. United States Department of Justice*, 491 U.S. 440, 449 (1989), the Supreme Court explained that to establish standing in public-records cases, the plaintiff does not "need [to] show more than that they sought and were denied specific agency records." There, the plaintiff sought records pursuant to the Federal Advisory Committee Act ("FACA"). The Supreme Court held that FACA created a public

20

right to information by requiring advisory committees to the executive branch of

the federal government to make available to the public its minutes and records,

with some exceptions. 491 U.S. at 446-47. The defendant asserted that the plaintiff

did not "allege[] [an] injury sufficiently concrete and specific to confer standing."

*Id*. at 448. The Supreme Court "reject[ed] these arguments." *Id*. at 449.

> As when an agency denies requests for information under the Freedom
> of Information Act, refusal to permit appellants to scrutinize the ABA
> Committee's activities to the extent FACA allows constitutes a
> sufficiently distinct injury to provide standing to sue.

*Id*. In other words, the inability to "scrutinize" the activities of government

"constitutes a sufficiently distinct injury." *Id*. The Court reaffirmed the holding of

*Public Citizen* in *FEC v. Akins*, 524 U.S. 11 (1998), explaining, "a plaintiff suffers

an 'injury in fact' when the plaintiff fails to obtain information which must be

publicly disclosed pursuant to a statute." *Id*. at 21.

Citing *Public Citizen* and *Akins*, the Eastern District of Virginia rejected a

similar attack on standing under the NVRA, explaining that "[f]or a plaintiff to

sufficiently allege an informational injury, it must first allege that the statute

confers upon it an individual right to information, and then that the defendant

caused a concrete injury to the plaintiff in violation of that right." *Project

Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 702 (E.D. Va. 2010). The

court first recognized that "the NVRA provides a public right to information." *Id*.

21

at 703. Where there is "no dispute that the plaintiff has been unable to obtain the [r]equested [r]ecords," "the plaintiff's alleged informational injury is sufficient to survive a motion to dismiss for lack of standing." *Id*. at 703-04.

For similar reasons, the Southern District of Texas ruled that the Foundation had standing to compel citizenship-related list maintenance records under the NVRA. *Pub. Interest Legal Found. v. Bennett*, No. H-18-0981, 2019 U.S. Dist. LEXIS 39723, at *8-*10 (S.D. Tex., Feb. 6, 2019) (denying motion to dismiss), *adopted by Pub. Interest Legal Found., Inc. v. Bennett*, No. 4:18-CV-00981, 2019 U.S. Dist. LEXIS 38686 (S.D. Tex., Mar. 11, 2019). The Southern District of Indiana accords. *See Judicial Watch, Inc. v. King*, 993 F.Supp.2d 919, 923 (S.D. Ind. 2012) (citing *Akins*, 524 U.S. at 24-25) ("As noted above, the Plaintiffs assert two distinct violations of the NVRA. With regard to the Records Claim, the Defendants do not—and cannot—assert that the Plaintiffs lack standing.").

## B. *TransUnion LLC v. Ramirez* Did Not Change the Informational Injury Doctrine.

The Commonwealth suggests that in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), the Supreme Court revised the Informational Injury Doctrine to require more from plaintiffs than what was required under *Public Citizens* and *Akins*. (Doc. 25 at 26.) Not so. This Circuit has already addressed the impact of *TransUnion* and found that "the [Supreme] Court did not amend the informational

22

injury doctrine in *TransUnion*; rather, it simply applied its prior precedent[.]" *Kelly v. Realpage Inc.*, 47 F.4th 202, 213 (3d Cir. 2022). By "prior precedent," the Third Circuit was referring to *Public Citizens* and *Akins*, as well as *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). "*TransUnion* did not cast doubt on the broader import of those decisions. In fact, the Court cited *Public Citizen* and *Akins* with approval, reaffirming their continued viability and putting *TransUnion* in context." *Realpage Inc.*, 47 F.4th at 212. The Third Circuit confirmed this view just weeks ago in *Huber v. Simons Agency, Inc.*, No. 22-2483, 2023 U.S. App. LEXIS 27069, at *12 (3d Cir. Oct. 12, 2023), in which the Court explains, "In short, entitlement to the information allegedly withheld is the *sine qua non* of the informational injury doctrine."

The Informational Injury Doctrine thus remains the same after *TransUnion*.

> [T]o state a cognizable informational injury a plaintiff must allege that "they failed to receive … required information," and that the omission led to "adverse effects" or other "downstream consequences," *TransUnion*, 141 S. Ct. at 2214 (internal quotation omitted), and such consequences have a nexus to the interest Congress sought to protect, *Spokeo*, 578 U.S. at 342.

*Realpage Inc.*, 47 F.4th at 214.

This issue warrants a few more points of clarification. First, the Commonwealth is flat wrong when it states the District Court issued its decision on standing "without the benefit of *TransUnion*." (Doc. 25 at 17.) *TransUnion* was

decided on June 25, 2021. The District Court issued its summary judgment order more than *nine months later*, on March 31, 2022. Appx050. In fact, *TransUnion* was decided before the Commonwealth filed its summary judgment reply memorandum. *See* ECF 74 (filed June 28, 2021). The Commonwealth then had more than nine months to file a notice of supplemental authority to notify the District Court about *TransUnion*. The Commonwealth chose not to. None of this ultimately matters because *TransUnion* did not change the standard articulated in *Public Citizen* and *Akins*, *see Realpage Inc.*, 47 F.4th at 213, the decisions on which the District Court decided the standing question.

Second, the Commonwealth is wrong again when it suggests that any alleged "adverse effects" and "downstream consequences" must *independently* satisfy the Article III standard. Doc. 25 at 21-24. If that were the case, the Supreme Court would have simply required plaintiffs to plead a deprivation of information and a separate "injury in fact." The Supreme Court does not require a separate and independent Article III "injury in fact" to establish a cognizable informational injury. The Court simply requires "(1) the denial of information and (2) *some consequence* caused by that omission." *Realpage Inc.*, 47 F.4th at 213 (emphasis added). *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992), *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972), and *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d

247, 288 (3d Cir. 2014) are not informational injury cases, and the
Commonwealth's reliance on them is therefore misplaced.

*Huber* confirms that the Informational Injury Doctrine is a separate inquiry
from traditional standing analysis. 2023 U.S. App. LEXIS 27069, at *9-*23
(finding that the plaintiff did not have standing under the Information Injury
Doctrine but did have standing under traditional standing principles). The Third
Circuit explained that in *Realpage Inc.*, the Court "deemed [the Informational
Injury] doctrine an exception to the usual concreteness requirement that a plaintiff
identify a close historical or common-law analogue to her cause of action." *Id*. at
*12 (citing *Realpage Inc.*, 47 F.3d at 212 n.8).

### C. The Foundation Has Been Deprived of Information and Suffered Adverse Effects Contrary to the Intent of Congress.

To have standing, the Foundation must show (1) it failed to receive required
information; (2) it suffered "adverse effects" or other "downstream consequences";
and, (3) such consequences have a nexus to the interest Congress sought to protect.
*Realpage Inc.*, 47 F.4th at 214.

**<u>First</u>**, the Commonwealth does not dispute that the Foundation requested
information pursuant to the NVRA and did not receive that information. Indeed,
the Commonwealth's appeal continues to prevent the Foundation from receiving

the voter list maintenance records requested many years ago, which the District

Court ordered the Commonwealth to produce.

**Second**, the Foundation has suffered three primary "adverse effects" or

"downstream consequences" resulting from the Commonwealth's refusal to

provide the required information. First, the Foundation cannot "study and analyze

the [Commonwealth's] voter list maintenance activities," ECF 66 ¶ 3, because the

Commonwealth failed to provide those voter list maintenance records. The

Commonwealth's denial of the Foundation's request is a "refusal to permit [the

Foundation] to scrutinize the [Commonwealth's] activities to the extent [NVRA]

allows." *Public Citizen*, 491 U.S. at 499. The NVRA Public Disclosure Provision

was designed to allow scrutiny of voter list maintenance activities, and therefore

denying the Foundation the ability to "scrutinize" those activities in the

Commonwealth "constitutes a sufficiently distinct injury to provide standing to

sue." *Id*.

Because it cannot effectively analyze and scrutinize the Commonwealth's

activities, the Foundation also cannot effectively "take action to promote election

integrity and compliance with federal and state statutes," including voter list

maintenance statutes. *Id*. ("Where necessary, the Foundation also takes legal action

to compel compliance with state and federal voter list maintenance laws."); *see*

26

*also* ECF 1 ¶ 135 ("A central activity of the Foundation is to promote election integrity and compliance with federal and state statutes which promote the integrity of elections."). Second, the Commonwealth's actions frustrate the educational aspect of the Foundation's mission. The Foundation regularly produces and disseminates educational materials concerning the accuracy of voter registration records and the adequacy of voter list maintenance programs, including "the inadequacies of state election systems in preventing noncitizens from registering and voting." ECF 1 ¶ 134. "Using records and data compiled through use of the NVRA's public inspection provision, the Foundation has produced written reports concerning the registration and voting activity of noncitizens." ECF 1 ¶ 133. For example, the Foundation published a report focused on noncitizen registration and voting in Allegheny County, Pennsylvania,[5] which was made possible only because Allegheny County complied with the NVRA. Third, the Foundation expended considerable time and financial resources attempting to obtain the

---

[5] Public Interest Legal Foundation, *Steeling The Vote: Allegheny County Reveals How Citizenship Verification Protects Citizens and Immigrants Alike*, July 12, 2018, available at https://publicinterestlegal.org/pilf-files/Steeling-the-Vote-7.11.18.pdf (last accessed Oct. 27, 2023).

requested records so that it could engage in the activities just described. *See Boockvar*, 370 F. Supp. 3d at 456.[6]

The Commonwealth does not dispute *any* of the facts concerning the Foundation's mission, the Foundation's intended activities, the Foundation's inability to engage in those activities, or the resources the Foundation expended attempting to obtain the requested records. In other words, these facts were and are undisputed for purposes of the District Court's summary judgment ruling.

**Third**, the adverse effects described above have a strong nexus to the exact interests Congress sought to protect. Congress told us exactly what interests the NVRA was designed to protect. As the District Court recognized, "Congress identified several purposes of the NVRA within the statute itself. These include, *inter alia*, 'to protect the integrity of the electoral process' and 'to ensure that accurate and current voter registration rolls are maintained.'" *Boockvar*, 370 F. Supp. 3d at 455 (quoting 52 U.S.C. § 20501(b)(3)-(4)). The NVRA's Public Disclosure Provision furthers Congress's purposes by allowing the public to monitor, analyze, assess, and critique the work of election officials. Transparency fosters accountability.

---

[6] The District Court correctly rejected the argument—repeated here, Doc. 25 at 22-23—that the resources the Foundation expended in pursuit of the requested records were litigation expenses. *Boockvar*, 370 F. Supp. 3d at 456 n.4.

In the words of another federal court, the NVRA's Public Disclosure Provision is "available to any member of the public … and convey[s] Congress's intention that the public should be monitoring the state of the voter rolls and the adequacy of election officials' list maintenance programs." *Bellitto*, 2018 U.S. Dist. LEXIS 103617, at *12-13. Indeed, Congress made all list maintenance records subject to public inspection precisely so that the public can enjoy a transparent election process and assess compliance with federal laws. "Public disclosure promotes transparency in the voting process, and courts should be loath to reject a legislative effort so germane to the integrity of federal elections." *Project Vote*, 682 F.3d at 339-40.

The Foundation's intended activities—namely, analysis, education, and remedial action concerning voter list maintenance—are precisely the activities Congress envisioned when it passed the Public Disclosure Provision. There is a nexus between the adverse effects the Foundation faces and the interests Congress sought to protect via the NVRA. *See Realpage Inc.*, 47 F.4th at 214.

The Commonwealth's narrow view of standing under the NVRA effectively dismantles Congress's design for the Public Disclosure Provision. Consider the following: the Commonwealth reported that in 2022 it cancelled more than 185,000 inactive voter registration records pursuant to what the Commonwealth

calls its "Voter Removal Program."[7] Imagine the Philadelphia Inquirer wanted to investigate those removals to determine whether they were lawful. According to the Commonwealth, it could deny the Inquirer's request and the Inquirer would not have standing to contest the denial in federal court. Congress did not intend such a result. Congress intended effective and robust oversight of the sort that the Inquirer and other media provide.

It is no less absurd for the Commonwealth to argue that the Foundation—a public interest organization dedicated to studying and improving voter list maintenance activities—does not have standing to compel production of voter list maintenance records under a federal law designed to make voter list maintenance transparent. The Commonwealth's view of standing under the NVRA is contrary to the intent of Congress and would thwart rather than promote the NVRA's goals.

### D. The Foundation Has Standing Under the Fifth Circuit's Decision in *Campaign Legal Center. v. Scott*.

The "downstream consequences" the Foundation has demonstrated distinguish it from the plaintiffs in *Campaign Legal Center. v. Scott*, 49 F.4th 931

---

[7] Pennsylvania Department of State, Administration of Voter Registration in Pennsylvania: 2022 Annual Report to the Pennsylvania General Assembly, June 30, 2023, *available at* https://www.dos.pa.gov/VotingElections/OtherServicesEvents/VotingElectionStatistics/Documents/Annual%20Reports%20on%20Voter%20Registration/DOS_Voter_Registration_Report_2022_FINAL.pdf (last accessed Oct. 27, 2023).

(5th Cir. 2022). *Scott* likewise arose from a records request under NVRA's Public Disclosure Provision. *Id*. at 933. The plaintiffs sought "information including the names and voter identification numbers of persons suspected of being noncitizens though registered to vote." *Id*. at 932. Plaintiffs "obtained an injunction from the district court requiring the State of Texas to provide [this] information." *Id*.

On appeal, the Fifth Circuit reversed and remanded with instructions to dismiss, holding that the plaintiffs did not adequately allege an injury sufficient to establish standing. *Id*. at 939. The Fifth Circuit interpreted the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) to mean that "even in public disclosure-based cases, plaintiffs must and can assert 'downstream consequences,' which is another way of identifying concrete harm from governmental failures to disclose." *Scott*, 49 F.4th at 938. Plaintiffs failed to meet this standard because they made only a "freestanding informational injury claim" that "lack[ed] downstream consequences." *Id*. 938-39.

The Court explained:

On appeal, Plaintiffs attempt to establish standing by asserting three theories of informational injury standing. First, Plaintiffs contend that as "civic engagement organizations . . . [they] have standing to request records under the NVRA[]" and therefore have a right to the requested registrant records. Second, they maintain that "there is [a] downstream injury with respect to the public not having visibility into how Texas is keeping its voter lists[.]" Third, Plaintiffs assert that "there is [a] downstream injury with respect to the public not having visibility into

31

… properly registered Texans being discriminated against and burdened in their right to vote." The first theory was rejected by this court only a few weeks ago, and the other two theories encompass no more than alleged injuries to *the public* and *affected Texas voters writ large*.

*Scott*, 49 F.4th at 936 (emphasis added).

The Court noted further that plaintiffs "do not allege that identification of voter names and identification numbers will directly lead to action relevant to the NVRA or any other statute, nor that their direct participation in the electoral process will be hindered." *Id*. at 938.

Whereas the plaintiffs in *Scott* alleged speculative injuries to others not before the court, *Scott*, 49 F.4th 936 ("*the public* and *affected Texas voters writ large*) (emphasis added), the Foundation alleges injuries to *itself* that are directly traceable to the Commonwealth's refusal to disclose information under the NVRA. For example, the Foundation cannot effectively evaluate the accuracy of the Commonwealth's voter rolls nor the effectiveness of investigation and remedies undertaken by the Commonwealth in response to the PennDOT Error, activities that Congress intended when it passed the NVRA, *see Bellitto*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *12 ("To ensure that election officials are fulfilling their list maintenance duties, the NVRA contains public inspection provisions.").

32

The "downstream consequences" the Foundation identifies are consistent with the examples articulated by the *Scott* concurrence, including the need "to engage in public advocacy about a pressing matter of policy." *Scott*, 49 F.4th at 940 (Ho, J., concurring in the judgment).

Even assuming *Scott* correctly applied *TransUnion* and other Informational Injury cases, the Foundation has satisfied the *Scott* standard.

## II. The District Court Correctly Held that the Requested Records are Within the Public Disclosure Provision's Scope.

The uniform weight of authority supports the District Court's interpretation of the NVRA, including *Pub. Interest Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 267 (4th Cir. 2021), in which the Fourth Circuit held that a state election "Board's efforts in the present case to identify noncitizen registrants qualify as a 'program' or 'activity' to ensure an accurate list of eligible voters." The Commonwealth's efforts similarly qualify and therefore fall squarely within the Public Disclosure Provision's broad reach. The District Court did not err when it read the NVRA's text to mean what it says.

"In any case involving statutory interpretation, we must begin with the statutory text," *United States v. Moreno*, 727 F.3d 255, 259 (3d Cir. 2013) (citing *United States v. Gonzales*, 520 U. S. 1, 4 (1997), "and the assumption that the ordinary meaning of that language accurately expresses the legislative

purpose," *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 175 (2009) (citations and quotations omitted). "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) (citations and quotations omitted); *See also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) ("When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'") (citations omitted). "Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) (citations and quotations omitted).

### A. The Commonwealth Has Waived Any Challenge to the District Court's Plain-Meaning Analysis.

The Commonwealth pays lip service to the rules of statutory construction, Doc. 25 at 26, but does not faithfully apply them. The Commonwealth does not examine the common meaning of *any* word or phrase nor explain why the District Court plain-meaning analysis was wrong. The Commonwealth has therefore waived any challenge to the District Court's definitional analysis. *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 296 n.7 (3d Cir. 2007) ("Absent compelling

circumstances … failing to raise an argument in one's opening brief waives it.");
*see also FDIC v. Deglau*, 207 F.3d 153, 169 (3d Cir. 2000) ("The Deglaus did not
raise this issue in their opening brief on appeal. They have therefore waived it, and
we will not address it.").

### B. Neither the Language, Context, nor Intent of the NVRA Supports the Commonwealth's View that the Public Disclosure Provision is Limited to Records Concerning Death and Relocation.

Despite the Commonwealth's waiver, it nevertheless argues that the Public
Disclosure Provision's scope is limited to records concerning "voters who died or
moved." Doc. 25 at 31. The District Court correctly rejected this interpretation.

### i. The NVRA's Words Unambiguously Encompass the Commonwealth's Activities.

Fundamentally, the Commonwealth's interpretation violates principles of
statutory construction. The Supreme Court instructs that "courts must presume that
a legislature says in a statute what it means and means in a statute what it says
there." *Germain*, 503 U.S. at 253-254. The language of the Public Disclosure
Provision is unambiguous: "Each state … shall make available for public
inspection … *all records* concerning the implementation of *programs and
activities* conducted for the purpose of ensuring the *accuracy and currency* of
official lists of eligible voters." 52 U.S.C. § 20507(i)(1) (emphasis added).

35

Congress did not limit these words to subsets of records. Rather, Congress made all list maintenance records subject to inspection, period.

Neither the word "death" nor the phrase "change in residency" appears in the Public Disclosure Provision. "[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). Had Congress intended to limit the Public Disclosure Provision as the Commonwealth believes, it would have done so. However, "Congress did not write the statute that way." *Id*.

Relying on the words Congress wrote, the District Court concluded that the Commonwealth's activities plainly qualify as a "program" or "activity" under the NVRA. Appx014. A "'program' is 'a schedule or system under which action may be taken towards a desired goal,'" and "[a]n 'activity' is 'a natural or normal function or operation.'" Appx010 (citations omitted). "Applying these definitional terms," the District Court earlier concluded that "the [Public] Disclosure Provision requires states to disclose 'all records concerning the implementation' of a schedule or system designed to serve a specific end, or a particular function or

36

operation, 'conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.'" *Id*. (quoting 52 U.S.C. § 20507(i)(1)).

The Commonwealth does not dispute that its investigation, analysis, and remedial activities concerning the PennDOT Error were "conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *Id*. Indeed, the Commonwealth clearly outlined the purpose of the analysis: "to investigate and address the concern that some ineligible individuals registered to vote[.]" ECF Doc. 66-4 at 1. The Commonwealth confirms its list-maintenance purpose at length in its First Step Brief. Doc. 25 at 4-5, 7-8. The District Court therefore logically concluded that "[t]he records requested by PILF were created pursuant to a system designed to identify ineligible voters based on their noncitizen status," and "[t]hus the Commonwealth's effort to identify noncitizen registrants is a 'program' or 'activity' designed to identify noncitizens and ensure an accurate and current list of eligible voters." Appx014. Any argument to the contrary is waived, undisputed, self-contradictory, and meritless.

The District Court's interprets the NVRA's scope consistently with two Fourth Circuit cases. In *Project Vote v. Long*, the district court held that "a program or activity covered by the Public Disclosure Provision is one conducted to ensure that the state is keeping a 'most recent' and errorless account of which

persons are qualified or entitled to vote within the state." 752 F.Supp.2d at 706. In

that case, the plaintiff sought voter registration applications completed by students

at a Historically Black University, and which were rejected by the local election

official. The district court explained, "The process by which the Commonwealth

determines whether a person is eligible to vote certainly falls within the purview of

the federal statute, as such a process, by its very nature, is designed to ensure that

the Commonwealth's lists are current and accurate." *Id*. The Public Disclosure

Provision thus broadly requires public access to *all records* related to

determinations of eligibility, like those requested by the Foundation. *E.g.*, ECF.

No. 1-9 (describing requests). Notably, the Commonwealth seeks to shrink the

covered categories under the NVRA to records related to death or change of

residence, and the voter registration forms deemed subject to Public Disclosure by

the court in *Project Vote* fall outside those limits.

Affirming the holding on appeal, the Fourth Circuit found citizenship

verification on a voter registration form to be an indispensable part of the

eligibility and list maintenance process.

> Without verification of an applicant's *citizenship*, age, and other
> necessary information provided by registration applications, state
> officials would be unable to determine whether that applicant meets the
> statutory requirements for inclusion in official voting lists."

*Project Vote*, 682 F.3d at 336 (emphasis added).

38

Later, in *Pub. Interest Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 267 (4th Cir. 2021) ("*NCSBE*"), the Fourth Circuit directly held what it had suggested in *Project Vote*—that efforts to determine the eligibility of registered noncitizens qualify as programs and activities under the NVRA. *Id*. at 267 (holding that the "Board's efforts in the present case to identify noncitizen registrants qualify as a 'program' or 'activity' to ensure an accurate list of eligible voters.").

Pennsylvania law makes United States citizenship a requirement for eligibility to vote, 25 Pa.C.S. § 1301(a)-(b), which is precisely what made the PennDOT Error at the root of this case so problematic. Thus, Pennsylvania election officials regularly use citizenship as one criterion used to "evaluate[] whether persons belong on the list of eligible voters, thus ensuring the accuracy of those lists." *Project Vote*, 752 F.Supp.2d at 707. Whether citizenship is evaluated regularly, or in response to a decades-long "error," the "process of review is a 'program' because it is carried out in the service of a specified end—maintenance of voter rolls—and it is an 'activity' because it is a particular task and deed of election employees." *Project Vote*, 682 F.3d at 335.[8]

---

[8] *See also Bennett*, No. H-18-0981, 2019 U.S. Dist. LEXIS 39723, at *10 ("PILF has alleged a plausible claim under the public disclosure provisions of § 20507(i).").

39

Evaluating the eligibility of voters based on citizenship status (or for any reason whatsoever)—and affirming or canceling registrations as necessary—falls squarely within the Public Disclosures Provision's mandate. That is exactly what the Commonwealth did. "All records" of the Commonwealth's actions are subject to disclosure. 52 U.S.C. § 20507(i)(1).

### ii. The District Court Correctly Declined to Read Additional Limitations into the NVRA's Text.

The Commonwealth's interpretation would also require this Court to insert words into the NVRA where Congress chose not to. The NVRA's text expressly "identifies the information which Congress specifically wished to keep confidential." *Project Vote*, 752 F.Supp.2d at 710. Such confidential information is limited to "records relate[d] to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered." 52 U.S.C. § 20507(i)(1). Congress included no other exceptions. *See Project Vote*, 682 F.3d at 336. The Foundation does not seek textually exempted information and thus no textual exemption applies here.

The District Court observed that "[t]he Disclosure Provision's two exceptions are narrow and specific," Appx011 (citing 52 U.S.C. § 20507(i)(1)). "The contrast between the broad mandate to disclose 'all' records and the tailored protection of two types of records implies that Congress crafted this provision

40

carefully. We will not (and indeed, must not) read unexpressed limitations into an unambiguous statute's terms." *Id*. (citations and quotations omitted).

The Commonwealth's reliance on the Federal Election Commission's guide, Doc. 25 at 38 n.7, suffers from multiple fatal defects. First, Congress did not authorize the FEC, or its successor, the Election Assistance Commission (EAC), to implement the NVRA. The FEC affirmatively disavowed having any such authority in the FEC guide's "Preface," which the Commonwealth omits from its brief. *See* FEC guide at P-1[9] ("It is very important to note, however, that the Federal Election Commission does *not* have legal authority either to interpret the Act or to determine whether this or that procedure meets the requirements of the Act."). This alone counsels against giving the FEC Guide any weight.

Next, "the courts are the final authorities on issues of statutory construction, and are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *Volkswagenwerk Aktiengesellschaft v. Fed. Mar. Comm'n*, 390 U.S. 261, 272 (1968) (citations and

---

[9] *Available at*
https://www.eac.gov/sites/default/files/eac_assets/1/1/Implementing%20the%20NVRA%20of%201993%20Requirements%20Issues%20Approaches%20and%20Examples%20Jan%201%201994.pdf (last accessed Nov. 1, 2023).

41

quotations omitted). The FEC was squarely wrong about what the NVRA requires

in terms of disclosure. The NVRA's plain text requires disclosure of "all records"

concerning list maintenance activities, not just those included in Section 8(i)(2).

*See Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 152 (3d Cir. 2004)

(explaining that courts "owe no deference to an agency interpretation plainly

inconsistent with the relevant statute ").

### iii. Section 8's Other Provisions Do Not Support the Commonwealth's Narrow Interpretation.

Even if the Commonwealth could overcome threshold definitional and plain-

meaning matters—which it cannot—its narrow interpretation would still fail for

want of contextual support. Citing approximately fifteen of Section 8's other

subsections, the Commonwealth ultimately reasons that because the Public

Disclosure Provisions "appears in the same section of the NVRA" as the

requirement to remove deceased and relocated registrants, *see* 52 U.S.C. §

20507(a)(4), the word "programs" in the Public Disclosure Provision "must

necessarily refer to the 'programs' to purge voters who died or moved, which are

required by Section 20507(a)(4)." (Doc. 25 at 31.) The District Court correctly

concluded that "[t]he Disclosure Provision's text and its neighboring subsections

do not support this narrow interpretation." Appx010.

For starters, Section 20507(a)(4) is not the only list maintenance obligation that appears in Section 8, nor is it the only other subsection that uses the words "program" or "activity." Sections 20507(b) and (c) also appear alongside the Public Disclosure Provision. Those subsections are expansive, referring, respectively, to "*any* state *program or activity* to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office" and "*any program* the purpose of which is to systematically remove the names of *ineligible voters* from the official lists of eligible voters." (Emphases added). Under the Secretary's own proximity-based theory then, the Public Disclosure Provision would encompass *any* program or activity conducted for list maintenance purposes—including activities concerning cancellations based on citizenship. *See Arcia v. Sec'y of Fla.*, 772 F.3d 1335, 1344 (11th Cir. 2014) (interpreting NVRA Section 8(c)(2)(A) to govern programs to remove noncitizen registrants). Observing the "obvious" similarities between the Public Disclosure Provision and Subsection 20507(b), the District Court correctly concluded that "[i]t is more likely Congress's use of 'programs and activities' in the Disclosure Provision is a reference to subsection 20507(b), not the Mandatory Removal Provision," *i.e.*, Section 20507(a)(4).

43

Logic dictates that Congress intended each use of the word "program" or "activity" to stand alone, modified only by the preceding or succeeding language, unless explicitly modified by another subsection of the NVRA. Indeed, on at least 27 occasions in Section 8, Congress expressly refers to another section of the NVRA, another subsection of Section 8, or another statute. The District Court prudently recognized that "Congress knew how to refer to other subsections in drafting the NVRA," and "could have identified the Mandatory Removal Provision by section" if it intended to limit its reach. Appx011; *see also, e.g.*, 52 U.S.C. § 20507(i)(2) (requiring disclosure of the names and addresses of "all persons to whom notices described in *subsection (d)(2)* are sent") (emphasis added). Yet Congress chose not to limit the Public Disclosure Provision by reference to any other provision of the law. Instead, it designed the law for maximum transparency, requiring disclosure of "all records" concerning list maintenance activities.

The explicit exceptions Congress drafted also critically undermine the Commonwealth's argument. Neither a "declination to register to vote" nor the "agency" through which a registrant registered has anything to do with programs to remove deceased and relocated registrants. It would have made no sense for Congress to exclude these records by name, if the Public Disclosure Provision never included them at the outset. The Commonwealth's interpretation renders

44

these exceptions superfluous, and such a result should be avoided. *See Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018) ("An absurd interpretation is one that defies rationality or renders the statute nonsensical and superfluous.") (citations and quotations omitted).

The Foundation maintains that there is no need to look to the Public Disclosure Provision's neighboring provisions because the relevant text is clear, unambiguous, and susceptible of only one meaning on its face. To the extent those neighboring provisions provide interpretive help, they support the District Court's conclusion, for the reasons articulated above.

### iv. The Commonwealth's Narrow Interpretation Would Frustrate Congress's Intent.

The District Court also correctly concluded that its reading of the NVRA would "also further[] the NVRA's purposes." Appx013. Congress designed the NVRA to "protect the integrity of the electoral process" and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(3)-(4). To further these goals, Congress made the voter list maintenance records subject to public inspection. *Bellitto*, 2018 U.S. Dist. LEXIS 103617, at *12-13 (explaining that the Public Disclosure Provision "convey[s] Congress's intention that the public should be monitoring the state of the voter rolls and the adequacy of election officials' list maintenance programs."); *True the Vote v. Hosemann*, 43 F.

45

Supp. 3d 693, 721 (S.D. Miss. 2014) ("The NVRA Public Disclosure Provision is one means of ensuring compliance with the NVRA's stated goals. By opening up voter registration records for inspection, the Public Disclosure Provision shines a light on States' voter registration activities and practices.").

The Secretary's interpretation would allow election officials to conceal records concerning every facet of eligibility not related to death or residency. A Commonwealth registrant who did not die, did not move, yet was improperly canceled by election officials would be barred from reviewing the list maintenance records that led to her illegal cancellation. Despite Congress's intent to make such decisions transparent, the Commonwealth stubbornly insists on concealment. In the commonsense and error free words of the District Court, "a broad reading promotes the integrity of the voting process and ensures a public vehicle for ensuring accurate and current voter rolls." Appx013.

### v. The United States Rejects the Commonwealth's Narrow Interpretation.

The United States recently addressed the Public Disclosure Provision's scope in *amicus curiae* briefs filed in the First and Eleventh Circuits. In each brief, the United States rejects the Commonwealth's view that the Public Disclosure Provision is limited to records concerning registrant death and relocation.

46

In *Public Interest Legal Foundation v. Bellows*, the United States explained that the Public Disclosure Provision "applies to voter registration databases" like Maine's official list of eligible voters, *i.e.*, the voter roll. Doc. 00118033423 at 7, *Public Interest Legal Foundation v. Bellows*, Case No. 23-1361 (1st Cir., filed July 25, 2023). This is because the Public Disclosure Provision "regulates registration as well as list-maintenance activities." *Id*. at 12.

The United States rebutted the argument the Commonwealth makes here—namely, that "Section 8(i) reaches only the purposeful, periodic list-maintenance programs authorized and regulated by the remainder of § 8." *Id*. at 15 (citations and quotations omitted).

> Section 8(i)'s text cannot be read to tether disclosure to those programs alone. "If Congress had wanted the provision to have that effect, it could have said so in words far simpler than those that it wrote." *Biden* v. *Texas*, 142 S. Ct. 2528, 2539 (2022). It could have limited disclosure to records of "list-maintenance programs described in this section." Or it could have employed language like that in other provisions of Section 8, which limit themselves to the removal of names or other particular list-maintenance processes. *E.g.*, 52 U.S.C. 20507(a)(4), (c)(2), (d) and (f). But Section 8(i) uses general language, applying to *all* records concerning implementation of programs "conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. 20507(i)(1).

*Id*. at 15 (emphasis in original).

In *Greater Birmingham Ministries v. Secretary of State for the State of Alabama*, the United States explained that the Public Disclosure Provision covers

47

list maintenance records related to felony convictions: "The district court correctly held that Section 8(i) applies both to lists of those denied registration generally, and to lists of those denied registration or removed from the voting rolls due to felony convictions specifically." Doc. 32 at 6, *Greater Birmingham Ministries v. Secretary of State for the State of Alabama*, Case No. 22-13708 (11th Cir., filed March 20, 2023).

In both cases, the United States based its position on the statute's text and the nature of the activities—that they concerned the accuracy of the voter roll—rather than limiting the statute's scope to activities mandated by law. *See* Doc. 00118033423 at 7-11, *Bellows*, Case No. 23-1361.; Doc. 32 at 6-10, *Greater Birmingham Ministries*, Case No. 22-13708.

The United States also confirms that "the FEC's rulemaking authority never extended to the NVRA's public disclosure provision." Doc. 00118033423 at 17, *Bellows*, Case No. 23-1361 (citing Pub. L. No. 103-31, § 9(a), 107 Stat. 87 (as amended 52 U.S.C. 20508(a)).) "[I]t is the statute's clear language that ultimately controls." *Id*.

### vi. The Commonwealth's Response to the PennDOT Error Included Statutory Programs.

The imaginary wall the Commonwealth builds between its so-called "special investigation" of the PennDOT Error, Doc. 25 at 2, and "programs and activities

mandated by statute" ultimately does not help the Commonwealth. Most, if not all, registrants connected to the PennDOT Error were registered through a process mandated by the NVRA and Commonwealth law—namely, mandatory registration at state motor vehicle offices. *See* 52 U.S.C. § 20504(a)(1); 25 Pa.C.S. § 1323(a)(1). Records related to those registrations fall squarely within the NVRA's scope, even under the Commonwealth's interpretation.

Moreover, the Commonwealth explains that as part of response to the PennDOT Error, it initiated cancellations at the request of the registrant. Doc. 25 at 17. Again, these requests fall within the NVRA, 52 U.S.C. § 20507(a)(3)(A), and Commonwealth law, 25 Pa.C.S. § 1901(a)(1). Even if Congress limited the Public Disclosure Provision to statutory programs—which it did not—the Commonwealth would still be required to disclose the names and addresses of registrants who were sent the Affirm or Cancel Letter because such records "concern" the Commonwealth's statutory "programs."

### III. The District Court Correctly Held that The Commonwealth Must Disclose Records Concerning Registrants Who Did Not Affirm Their Citizenship.

The Commonwealth sent 11,198 registrants a letter that asked each recipient to affirm or cancel her registration, *i.e.*, the Affirm or Cancel Letter. ECF 66 ¶ 68; Appx028; *see also* ECF 66-11. The District Court allowed the Commonwealth to

redact the names and addresses of letter recipients who "affirmed their eligibility to vote." Appx056 n.6. The District Court ordered them to produce the names and addresses of recipients "who responded to the letter by cancelling their registration, or who failed to reply to the letter or have not been confirmed to be citizens." *Id*.

The Commonwealth will not accept the balance the District Court struck, demanding the right to conceal even more of its response to an egregious, decades-long blunder. Enough is enough. The District Court properly balanced competing interests, while giving the NVRA effect. The decision below was correct.

### A. A Request to Cancel a Registration Record Is Not A "Declination to Register to Vote" under 52 U.S.C. § 20507(i)(1).

As explained earlier, the Public Disclosure Provision exempts two specific records, one of which is records that "relate to a declination to register to vote." 52 U.S.C. § 20507(i)(1). The Commonwealth asserts, for the first time on appeal, that anyone who responded to the Affirm or Cancel Letter by requesting *cancellation* of their voter registration record should be treated as *declining* registration under Section 20507(i)(1). (Doc. 25 at 38.)

This argument fails for at least two reasons. First, the Commonwealth waived it by not raising it before the District Court. *United States v. Joseph*, 730 F.3d 336, 337 (3d Cir. 2013) ("We hold that for parties to preserve an argument for

50

appeal, they must have raised the same *argument* in the District Court—merely raising an *issue* that encompasses the appellate argument is not enough.").

Second, cancellation and declination are two distinct acts, performed by two distinct persons (election officials and applicants, respectively), and Congress treated these actions differently in the NVRA.

Context and consistent usage cannons further support this view. Where Congress referred to canceling a voter registration record, it used the word "remove." For example, in Section 20507, Congress mentioned removing a registrant form the official list of eligible voters seven times, including removal "at the request of the registrant," 52 U.S.C. § 20507(a)(3)(A), the type of cancellation the Commonwealth contests. Naturally, for removal to occur, the registrant must already be registered. Thus, when Congress spoke of cancellation or removal, it referred to maintenance of *existing* voter registration records.

Where Congress referred to a "declination to register," it used a different word: "declination." Congress's use of a different word indicates that "declination" does not mean "remove" or cancel. *See Russello*, 464 U.S. at 23. ("[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). Where

51

Congress used the word "declination" it was referring to an *applicant's* act of declining the opportunity to register in the first instance. For example, in Section 20504, Congress required applications provided at motor vehicle offices to include a statement explaining that "if an **applicant** declines to register to vote, the fact that the **applicant** has declined to register will remain confidential and will be used only for voter registration purposes." 52 U.S.C. § 20504(c)(2)(D)(ii). Section 20504's reference to confidentiality is also a clear reference the NVRA Public Disclosure exception for declination data, 52 U.S.C. 20507(i)(1).

In Sections 20506 and 20508, Congress further addressed "declination" in terms of the application process. 52 U.S.C. § 20506(a)(6)(B) (addressing requirements for applications provided by public assistance offices); 52 U.S.C. § 20508(b)(4)(ii) (addressing the requirements for the mail voter registration form). Like Section 20504, Section 20508 also refers to the confidentiality of declination data, 52 U.S.C. § 20508(b)(4)(ii), which is another clear reference to the NVRA Public Disclosure Provision's exception for the same data.

Considering that Congress designed the NVRA to shed light on the work of election officials, it makes sense to treat cancellations differently than declinations. Cancellation—even when performed at the request of a registrant—is an act of maintenance performed by election officials. Transparency reveals whether

52

officials acted appropriately and lawfully. A declination of registration, on the other hand, is an act performed by an individual person and requires no action by officials.

### B. The District Court Appropriately Balanced the NVRA Public Disclosure Provision with the DPPA.

The Commonwealth raised the Driver's Privacy Protection Act ("DPPA") below as a defense to disclosure under the NVRA. The DPPA regulates the use of driver's license records—not voter list maintenance records. The DPPA prohibits disclosure of "personal information … about any individual obtained by the department in connection with a motor vehicle record[.]" 18 U.S.C. § 2721(a)(1). "Personal information" includes names and addresses contained in motor vehicle records. 18 U.S.C. § 2725(3). The DPPA is implicated here only because the Commonwealth chose to compare voter registration records to PennDOT records as part of its response to the PennDOT Error. *See, e.g.*, Appx093 ¶ 12; Appx094 ¶ 17.

The District Court read the DPPA to mean what it says and applied it so that the NVRA and the DPPA both remain effective because "courts are not at liberty to pick and choose among congressional enactments." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). "[W]hen two statutes are capable of co-existence, it is the

duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Id.*

In its order denying the Commonwealth's motion to dismiss, the District Court explained, "The glitch-related records and derivative lists created during the Commonwealth's investigation are protected by the DPPA **to the extent they include** personal information obtained by the DMV in connection with a motor vehicle record." Appx017 (emphasis added). In its order disposing of the parties' summary judgment motions, the District Court unpacked its prior holding, explaining,

> The Commonwealth's interpretation of our ruling is overbroad. As indicated by our use of the phrase "to the extent they include," our holding applies only to the personal information obtained from DMV motor vehicle records and information derived from that personal information. (See Doc. 23 at 17). Our holding does not protect information derived from non-DMV sources even when that information is included in a record containing personal information obtained from DMV records.

> When the entirety of the information in a document or other record is derived from personal information obtained from DMV records, the whole of the record may be withheld. Nevertheless, when only some of the information is or derives from personal information obtained from DMV records, the record or document must be disclosed with only personal information or derived information redacted.

Appx036-037.

54

The District Court's correctly concluded that the DPPA "does not protect information derived from non-DMV sources even when that information is included in a record containing personal information obtained from DMV records" because the DPPA protects only personal information "obtained by the department in connection with a motor vehicle record." 18 U.S.C. § 2721. As the District Court recognized, "[p]ersonal information is 'from' a motor vehicle record when it derives from state DMV sources." Appx016.

The narrow scope of the DPPA exemption also reveals what is *not* exempt from disclosure: information that was *not* derived from DMV sources. The immense scope of non-exempt information includes *any* information obtained in connection with a voter registration record or list maintenance activity.

Other than the INS indicator and perhaps driver's license number, all registrant data used to mail letters to registrants —including the registrant's name and address—was already in the Commonwealth's possession throughout the entire review of the PennDOT Error and well before any comparison with PennDOT records. That the Commonwealth chose to look at discrete and isolated data in motor vehicle records to help verify citizenship status does not transmogrify *all* voter registration records held by the election officials into data that is confidential under *other* federal laws—particularly information provided on

a registration application, like name and address. *See Project Vote*, 682 F.3d 331 (applications subject to disclosure under NVRA). As a matter of well-established law, the Commonwealth's argument holds no merit.

To find as the Commonwealth urges would elevate the DPPA over the NVRA in contravention of the Supreme Court's instruction to harmonize federal laws and apply them so that "each [i]s effective." *Mancari*, 417 U.S. at 551. The District Court followed those instructions and applied the DPPA so that only information derived *exclusively* from motor vehicle records would remain confidential, and so that voter list maintenance records would be transparent, as Congress intended. That correct decision should not be disturbed.

### C. The Commonwealth's Baseless Speculation Cannot Veto Federal Law.

The Commonwealth strays even further from the relevant inquiry when it conjures up imaginary threats as a last resort to conceal its activities. In this fiction, the Commonwealth includes "expos[ing] eligible voters on the list to the threat of unwarranted criminal prosecution and the risk of other harassment and abuse," discouraging "eligible citizens from registering to vote," and "discrimination, especially toward minority groups." Doc. 25 at 40-41. The Foundation never had an intention to engage in these activities, and the Commonwealth's musings should not be treated as relevant facts of record.

56

More problematic for the Commonwealth, the Elections Clause does not tolerate restrictions on Congressional powers based on an upside down strict-scrutiny style analysis. Congress decides what must be disclosed, not state officials imagining scenarios where they invent compelling reasons in order to replace the laws Congress passed.

The Commonwealth even resorts to personal attacks on the Foundation, imagining that if this Court affirms the judgment it will result in threats, harassment, and abuse. (Doc. 25 at 40.) Nonsense. The Commonwealth also inaccurately references unfounded and unproven accusations made against the Foundation by ideological opponents. (Doc. 25 at 41 n.41.) If the Commonwealth suggests that the Foundation, specifically, should be denied the benefit of federal rights, the Foundation *may have a claim against the Commonwealth for viewpoint discrimination.* America is a country where government officials are not allowed to disregard the law when the law benefits those with whom government officials disagree. Regardless, federal laws against voter intimidation already address the Commonwealth's proffered concerns, all of which will survive this case. *See Doe v. Reed*, 561 U.S. 186, 228 (2010) (Scalia, J., concurring).

Courts have granted exemptions from facially valid disclosure laws in rare, specific, and extreme cases. In *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462

(1958), petitioners "made an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." The plaintiffs in *Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87, 99 (1982) likewise "introduced proof of specific incidents of private and government hostility" including "the firing of shots at an SWP office." In contrast, courts deny exemptions where a plaintiff presented "anecdotal evidence … that offers merely a speculative possibility of threats, harassment, or reprisals." *Doe v. Reed*, 823 F. Supp. 2d 1195, 1204 (W.D. Wash. 2011); *see also Protectmarriage.com v. Bowen*, 830 F. Supp. 2d 914, 933 (E.D. Cal. 2011) (requiring "evidence of thousands of acts of reprisals, threats or harassment" to obtain disclosure exemption). Here, "no evidence" of threats or harassment exist so, no exemption is warranted. *Citizens United v. FEC*, 558 U.S. 310, 370 (2010) (discussing disclosure of campaign contributions).

The Commonwealth's defense rests entirely on speculation —that if the Foundation learns how Commonwealth officials created and responded to a decades-long blunder, the public at-large will refuse to participate in the electoral process. The Commonwealth explains that it already produced the names and voting histories of registrants whose voter registrations were canceled and the

"reason for the cancelation by a county is listed in the SURE system as non-citizen[.]" (Doc. 25 at 13.) Yet the Commonwealth fails to offer a single instance where voter participation was discouraged, or where a cancelled registrant experienced any type of harassment or threat.

The District Court properly considered privacy issues and prudently "adopted the redaction scheme employed by the Court of Appeals for the Fourth Circuit in a similar case," *NCSBE*, 996 F.3d at 267. This redaction scheme allows the Commonwealth to redact the identities of any letter recipients who was "'initially identified as potentially failing to meet the citizenship requirement for voter registration but ultimately exonerated.'" Appx038 n.7 (quoting *N.C. State Bd. of Elections*, 996 F.3d at 267).

Of the 11,198 individuals who received the Affirm of Cancel Letter, 1,915 "affirmed their registration." (ECF 66-4 at (1)(a)(i)(1).) Those 1,915 registrants are the only registrants who can be characterized as "exonerated" because "exonerated" means "to clear from accusation or blame." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/exonerate. Registrants who cancelled their registrations or did not return the Affirm or Cancel Letter were not "exonerated," as the District Court recognized. Appx056 n.7 ("Neither category of individuals was "exonerated.").

59

This redaction scheme is logical because, as the Fourth Circuit observed, it is "[b]eing *improperly* identified as a noncitizen" that raises privacy concerns, not merely being subjected to scrutiny. *NCSBE*", 996 F.3d at 267. Voter list maintenance naturally involves scrutiny. If scrutiny were enough, the exception would swallow the rule, and erode the transparency Congress intended.

The District Court prudently chose tailored redactions over complete withholding, recogniz[ing] [that] such disclosures affect the privacy of these individuals, but Congress prioritized transparency over privacy in crafting the NVRA's broad disclosure requirements." Appx056. To be sure, Congress, not the Commonwealth, determines federal policy. On that point, the Fourth Circuit's reasoning is also particular apt:

> It is not the province of this court, however, to strike the proper balance between transparency and voter privacy. That is a policy question properly decided by the legislature, not the courts, and Congress has already answered the question by enacting NVRA Section 8(i)(1), which plainly requires disclosure of completed voter registration applications.

*Project Vote*, 682 F.3d at 339-40.

## D. Congress Intended for Disclosure of Names and Addresses.

The Commonwealth's request to conceal names and addresses is also inconsistent with Congress's view that disclosure of such information is necessary to achieve the NVRA's purposes. In Section 20507(i)(2) Congress made personally

identifying information public—specifically, "names and addresses." 52 U.S.C. §

20507(i)(2). Without personally identifying information one registrant cannot be

distinguished from another. In other words, the public cannot effectively evaluate

the efficacy and lawfulness of officials' actions unless the public can accurately

identify the subject of a particular list maintenance action, such as

disenfranchisement via cancellation.

The mandatory disclosures described in Section 20507(i)(2) are the "names

and addresses of all persons to whom notices described in subsection (d)(2) are

sent, and information concerning whether or not each such person has responded to

the notice as of the date that inspection of the records is made." The notices

"described in subsection (d)(2)" are address confirmation notices. *See* 52 U.S.C. §

20507(d)(1)-(2). In other words, Section 20507(i)(2) requires disclosure of the

names and addresses of registrants whose eligibility to vote requires more scrutiny

in terms of residency.

Compare the mandatory disclosures to the records the Commonwealth asks

to conceal: the names and addresses of "registrants whose eligibility to vote

required additional scrutiny in terms of citizenship." Appx028. In each case, the

registrants in question received a letter concerning their eligibility. The records are

essentially the same. It is unreasonable, if not absurd, to think that Congress would

61

require the public disclosure of voter's names and addresses with respect to one criterion for eligibility (residency), while tolerating the Commonwealth's concealment of the same information with respect to a different criterion for eligibility (citizenship).

The District Court did not err when it simply treated similar records the same. The Commonwealth's demand for additional, extra-textual exemptions is meritless. What is reasonable—and what is consistent with the NVRA's purposes—is to conclude, as the District Court did, that Congress believed public disclosure of names and addresses is required and necessary to achieve the statute's goals of making election officials' work transparent.

## IV.    The District Court Erred When It Held that the Commonwealth's Voter List Maintenance Records Qualify as Attorney Work Product.

According to the Commonwealth, at some point in "late-2017," it hired outside counsel, who then hired a so-called "expert," who performed the Noncitizen Matching Analysis—the analysis that ultimately determined which registrants should receive letters concerning their eligibility, including the Affirm or Cancel letter. (*See* Doc. 25 at 7-8.)

The District Court held that "the work-product doctrine shields the records produced in conjunction with the noncitizen matching analysis from disclosure." The District Court noted:

> Our holding on this point should not be construed as stating that the work-product doctrine applies to: (1) the analysis done by the Commonwealth before retention of the expert, (2) records used by the expert to conduct their analysis, or (3) the thousands of letters sent to potential noncitizen registrants based upon the results of the noncitizen matching analysis. The work-product doctrine applies solely to the documents and records produced by the expert at the request of counsel in anticipation of litigation.

Appx043 n.11. The District Court clarified its holding further in a subsequent order:

> The intention of our footnote was to make clear that records otherwise subject to disclosure do not receive work-product protection merely because the expert viewed them. That is, records *created specifically* for the expert to review are protected by the work-product doctrine, (see Doc. 83 at 18-20), but the work-product doctrine does not protect records otherwise subject to disclosure created in the ordinary course of business or for purposes other than litigation[.]

Appx055 n.4. Relying on these rulings, the Commonwealth appears to have withheld *all records* sent to, considered, or used by its "expert" as part of the Noncitizen Matching Analysis.

The District Court erred when it held that the attorney work product doctrine applied to these records in these circumstances.

### A. The Attorney Work Product Doctrine.

The attorney work product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]" Fed. R. Civ. P. 26(b)(3)(A). Third Circuit considers "the

63

nature of the document[s] and the factual situation" to determine whether "the document[s] can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990) (citations and quotations omitted). Fundamentally, "[t]he preparer's anticipation of litigation must be objectively reasonable." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir.1993). "This requires proof of 'an identifiable specific claim or impending litigation when the materials were prepared.'" *Fox v. Lackawanna Cty.*, No. 3:16-CV-1511, 2018 U.S. Dist. LEXIS 145073, at *8 (M.D. Pa. Aug. 27, 2018) (citations omitted). The "rule of thumb" is that "'if the document would have been created regardless of whether litigation was expected to ensue, the document is deemed to have been created in the ordinary course of business and not in anticipation of litigation.'" *Heinzl v. Cracker Barrel Old Country Store, Inc.*, No. 2:14-cv-1455, 2015 U.S. Dist. LEXIS 146825, at *17 (W.D. Pa. Oct. 29, 2015) (citations omitted). In addition, "'the material must have been produced because of the prospect of litigation and for *no other purpose*.'" *United States v. Ernstoff*, 183 F.R.D. 148, 156 (D.N.J. 1998) (citations omitted). Business documents' mere "'potential use in pending litigation does not turn these documents into work product or confidential communications between client and attorney.'" *Id*. (citations omitted).

64

## A. The Commonwealth Was Motivated by the Need to Remedy a Long-Standing List Maintenance Mistake.

The Commonwealth's need and desire to fix its egregious voter list maintenance blunder due to the PennDOT Error motivated its actions. The Commonwealth response to the PennDOT Error stretches back to at least September 2015, more than *two years* before the Foundation's records request, and more than *two years* before outside counsel hired the "expert." *See* ECF 70-6 at 3 (September 2015 entry); ECF 66-1 at 115:2-7.

The Commonwealth conducted the Initial Analysis using PennDOT records in the Summer of 2017, months before the Foundation's records request. *See* ECF 70-6 at 3 (August 2017 entry); (ECF 66 ¶¶ 47-52 (describing analysis)). More than one month before the Foundation's records request, the Commonwealth conducted the Statewide Analysis, which included a review of SURE system records "that were cancelled for the reason 'Not a Citizen.'" ECF 70-6 at 3 (September 2017 entry); ECF 64-1 ¶¶ 9-10; ECF 66 ¶¶ 55-61. Why did the Initial Analysis and Statewide Analysis happen? The Commonwealth explains that it "wanted to understand both the scope of the issue and, and also the potential causes of it, *so that any additional enhancements that [it] made would be effective*." ECF 66-1 at 115:12-21; *see also* ECF 66-2 at 1 ("The Department undertook an analysis of the statewide voter registration database to determine whether ineligible residents were

65

registering and voting. We are using this analysis as a starting point to examine every part of the voter registration process."). In other words, the Commonwealth aimed to understand its problem and find a remedy that would improve its list maintenance process.

At that point, the Commonwealth had not yet contacted any registrants to notify them of the PennDOT Error or to ask them to confirm their eligibility. This was a logical next step in the process, and shortly after the Statewide Analysis concluded, the Commonwealth conducted yet another analysis, ECF 66 ¶¶ 62-74—the Noncitizen Matching Analysis. The Commonwealth stated the purpose of the Noncitizen Matching Analysis in a July 2018 written statement: "to investigate and address the concern that some ineligible individuals registered to vote[.]" ECF 66-4 at 1. The Commonwealth explained further that the "goal in this process was to protect the integrity of elections in Pennsylvania." *Id*. Defendants even revealed that it "knew that it was imperative to address the problem" "*when [it] learned* that ineligible residents may have registered to vote…." *Id*. (emphasis added). In other words, the Noncitizen Matching Analysis was part and parcel of the Commonwealth's holistic list maintenance response to the PennDOT Error, a response that began as early as 2015. If there remains any doubt, consider the Commonwealth's conclusion in its July 2018 statement: "We remain confident that

66

this careful, deliberate approach was the most responsible way **to remedy a**

**decades-old problem** while ensuring that no eligible voter is disenfranchised." *Id.*

(emphasis added).

The Commonwealth bears the burden of showing that the documents in

question were prepared in anticipation of litigation. *Holmes v. Pension Plan of*

*Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000). On the Commonwealth's

side of the ledger is a single paragraph in a conclusory, self-serving affidavit from

Defendant Jonathan M. Marks. Appx094 ¶ 17. Defendant Marks states, "The work

performed by the consulting expert was at the request of counsel, was in

anticipation of litigation from any number of sources arising from the PennDOT

software glitch and was for the purpose of providing legal advice." *Id*. Privilege

claims based on similarly thin, self-serving support have been rejected. *See*

*Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 540 (N.D. Ill. 2000)

(rejected claim based on "self-serving statement"); *Maint. Enters. v. Dyno Nobel,*

*Inc.*, No. 08-CV-170-B, 2009 U.S. Dist. LEXIS 139793, at *19 (D. Wyo. Nov. 13,

2009) (rejecting claim based on "single statement in [an] affidavit").

The Commonwealth's proffered concern about "litigation from any number

of sources" does not establish "objectively reasonable" anticipation, *Martin*, 983

F.2d at 1260, nor "proof of an identifiable specific claim," *Fox*, 2018 U.S. Dist.

LEXIS 145073, at *8 (quotations omitted). In fact, it shows the opposite—that the Commonwealth now claims to have believed the threat of litigation might simply be in the air. The Commonwealth must show more than a retroactive claim to a nervous disposition to invoke the attorney work product doctrine.

The Commonwealth does not state the potential cause of action or litigation theory it feared, even in general terms. No action would lie under the NVRA because as the Commonwealth often repeats, the statute requires removal of only deceased and relocated registrants. *See* 52 U.S.C. 20507(a)(4). Nor could an action lie under Commonwealth law because as the Commonwealth explains, "Pennsylvania does not have a program for systemically targeting and removing suspected non-citizens from the voter rolls." Doc. 25 at 32. Furthermore, the record lacks even a scintilla of evidence that noncitizens impacted by the PennDOT Error considered legal action.

Nor would it make any sense to fear litigation based on the Foundation's records request. The work-product privilege protects documents, not facts within those documents. *Heinzl*, 2015 U.S. Dist. LEXIS 146825, at *13-14. It is circular and nonsensical to conclude that that responsive records were created because, and only because, the Commonwealth allegedly feared litigation aimed at obtaining those same records. Zero record evidence supports the Commonwealth's belief that

68

litigation seeking any other type of relief was likely or possible. The last thing a reasonable official would do if she feared public-records litigation is create more public records—unless, of course, the creation of those records had an entirely different purpose—such as remedying a longstanding list maintenance problem—which is plainly the case here.

To find that the Noncitizen Matching Analysis had "no other purpose" than litigation readiness, *Ernstoff*, 183 F.R.D. at 156, requires the Court to also find that the requested records would *not* have been created absent litigation fears. In other words, this Court must accept that the Commonwealth would not have contacted registrants about their eligibility if it did not believe it would be sued. Such a finding cannot be sustained on the record. The Commonwealth set out to remedy the PennDOT Error when it learned of the problem in 2015. It engaged in preliminary analyses to assess the problem from a high level ("Initial Analysis"). The Commonwealth then investigated how many registrants had *already* been removed from the voter roll for citizenship defects ("Statewide Analysis"). One thing was missing—the Commonwealth had yet to implement a remedy to address potential noncitizens who were *currently* registered to vote.

Enter the Noncitizen Matching Analysis. This final stage of the process was about completing the remedy—not litigation. "[T]he factual situation in th[is]

particular case" demonstrates that the allegedly privileged analysis was conducted "in the ordinary course of business" *Rockwell Int'l*, 897 F.2d at 1265-66, and would have proceeded as planned "regardless" of whether the Foundation had asked to inspect records. *Heinzl*, 2015 U.S. Dist. LEXIS 146825, at *17.

*Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124 (3d Cir. 2000) is instructive. *Holmes* involved claims for interest payments on pension benefits under the Employment Retirement Income Security Act. *Id*. at 128. Before seeking relief in federal court, one of the appellants "pursued his interest claim through administrative channels. His original claim to interest prompted a Plan attorney to prepare a legal memorandum analyzing the merits of the claim. Once judicial action had been initiated, Appellants moved to compel production of that memorandum during discovery." *Id*. at 138. The Magistrate Judge "concluded that 'it is apparent the [memorandum] was prepared in anticipation of possible future litigation. In addition, it is reasonable to conclude that the document would not have been prepared but for the prospect of litigation.'" *Id*. at 138. The District Court affirmed. *Id*. The Third Circuit disagreed.

> The Magistrate Judge's conclusions may be reasonable, but they are based on nothing more than assumptions. There is nothing in the record indicating that the Defendants have carried their burden of showing that the memorandum was, in fact, prepared in anticipation of possible litigation. Indeed, the Defendants appear to have claimed nothing more than that "the memorandum was written in connection with the claim

70

by Plaintiff Holmes . . . and . . . is, therefore, privileged and immune from discovery under . . . the work product doctrine." … The mere fact that the memorandum was prepared "in connection with" Plaintiff Holmes' administrative claim to interest on his delayed benefits hardly establishes that it was prepared in anticipation of litigation. The Magistrate Judge abused his discretion in assuming otherwise. Therefore, we will reverse the order denying Appellants' request for production.

*Id.* at 139.

The District Court similarly based its ruling on assumptions.

The risk of litigation in the wake of a public scandal involving the possibility of illegal voting, coupled with an atmosphere of anxiety about election security, is obvious. In the instant matter, despite the absence of a specific notice of intent to file suit, the general threat of litigation in the wake of such a resonant scandal is sufficient to invoke the work-product doctrine. It is clear to the court that, in light of the hue and cry over the glitch, the Commonwealth developed the noncitizen matching analysis with the assistance of its expert as a means of responding to heightened scrutiny of the kind that would be imposed through the civil justice system.

Appx040-041. None of these sentences are supported by a citation to the record. "Anxiety," "scandal," and generic "heightened scrutiny" are amorphous concepts that do not naturally create an objectively reasonable "risk of litigation." The District Court faulted the Foundation for not overcoming the assumed risk factors described above. That is not the Foundation's burden. The work product doctrine requires the Commonwealth to prove an objective risk of litigation exists. *Holmes*, 213 F.3d at 138. The Commonwealth has not done so. It has "claimed

71

nothing more" than the work of its expert was done in anticipation of litigation.

Appx094 ¶ 17, the same conclusory, self-serving claim that was rejected in

*Holmes*, 213 F.3d at 139.

Even if some documents qualify as attorney work product, the judgment on

this issue should be reversed because the Commonwealth did not justify the

attorney work product privilege on a document-by-document basis, provide a

privilege log, or produce records with privileged material redacted. *See Rockwell

Int'l*, 897 F.2d at 1265 (explaining that "claims of attorney-client privilege must be

asserted document by document, rather than as a single, blanket assertion").

### B. Due to the Passage of Time, the Absence of Litigation, and the Compelling Need for Transparency, the Attorney Work Product Doctrine Should Yield to Congress's Goals in These Circumstances.

Six years have passed since the Commonwealth believed litigation was

likely to ensue. Yet no litigation has ensued. The "hue and cry," Appx041, over the

PennDOT Error disappeared years ago. Interested legislative committees have

moved on to other matters. The Commonwealth cannot seriously maintain that it

presently fears litigation. Yet the Foundation and the public remain in the dark.

The impact of the District Court's ruling cannot be understated: as applied

here, the attorney work product doctrine would obliterate a federal law Congress

passed to protect the right to vote. Because the Commonwealth abdicated its voter

72

list maintenance responsibilities to outside counsel, the public is unable to answer

vital questions about how its government identified ineligible registrants in the

Commonwealth. Which questions cannot be answered? Here's a few:

1. Who was the expert hired to make eligibility determinations?
2. What made him or her an "expert" in determining whether a registrant is potentially a foreign national?
3. How did the expert determine which registrants "required additional scrutiny in terms of citizenship?" Appx028.
4. What were the steps in the expert's methodology, *e.g.*, which databases did the expert use or not use?
5. How did the expert decide that only 11,198 registrants should receive eligibility letters, when the Commonwealth's prior analysis revealed more than 100,000 registrants with INS indicators in their motor vehicle records? *See* Statement of Facts ¶ 6, *supra*.
6. How did the expert or the Commonwealth determine the recipient's address for the Affirm or Cancel letter (recall: more than 1,900 letters were sent to outdated addresses (*see* ECF 66-4 at 3)).
7. Did the Commonwealth scrutinize each registrant with cause or without cause?

Congress designed the NVRA Public Disclosure Provision so the public could

answer these questions. But the public cannot answer these questions because the

Commonwealth is hiding behind the attorney work product doctrine, thereby

frustrating the intent of Congress.

Attorney work product protection is not absolute and can be overcome by a

showing that the opposing part has a "substantial need" for the requested

documents. This dispute primarily involves documents prepared by a non-attorney

"expert," which would qualify as "ordinary work product." *See In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003). Such documents ordinarily do not receive enhanced protection in the discovery process and can be obtained by showing "need and hardship." *Id.*

This is not a discovery dispute. Yet the unique circumstances of this case, the paramount importance of transparency in the electoral process, the countervailing interests rooted in the NVRA, and the low-level of protection ordinarily afforded work product of the type at issue, warrant similar considerations. The Foundation and the public need the records to further Congress's goals. The Foundation and the public will face hardship if the Commonwealth's list maintenance records remain shielded for all time. On the other hand, the Commonwealth will remain similarly situated. In these circumstances, the attorney work product doctrine should not stand as an obstacle to Congress's objectives.

## CONCLUSION

For these reasons, this Court should affirm the judgment in the Foundation's favor and reverse the District Court's finding that the Commonwealth's voter list maintenance records qualify as attorney work product.

74

Dated: November 3, 2023.

Respectfully submitted,

For the Plaintiff Public Interest Legal Foundation:

Linda A. Kerns, Esquire
LAW OFFICES OF LINDA A. KERNS, LLC
1420 Locust Street – Suite 200
Philadelphia, PA 19102
PA Atty ID 84495
Tel: (215) 731-1400
Fax: (215) 701-4154
linda@lindakernslaw.com

  /s/ Noel H. Johnson
Noel H. Johnson
Kaylan L. Phillips
Attorneys for Public Interest Legal Foundation, Inc.
107 S. West Street, Ste. 700
Alexandria, VA 22314
(703) 745-5870
njohnson@PublicInterestLegal.org
kphillips@PublicInterestLegal.org

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

Pursuant to Circuit Rule 46.1(e), I certify that I am a member in good

standing of the bar of the United States Court of Appeals for the Third Circuit.


      /s/ Noel H. Johnson
      Noel H. Johnson
      Counsel for Public Interest Legal Foundation

Dated: November 3, 2023.

## CERTIFICATE OF COMPLIANCE AND
## VIRUS SCAN CERTIFICATION

I, Noel H. Johnson, certify the following:

1.     This brief complies with the type-volume limits of Fed R. App. P. 28(e)(2)(B)(i) because, excluding the parts of the brief exempted by Rule 32(f), this brief contains 15,299 words.

2.     This brief also complies with the typeface requirements Fed. R. App. P 32(a)(5)(A) because this brief has been prepared in a proportionally space type face using Microsoft Word in 14-point Times New Roman.

3.     The text of the electronic and hard copies of this brief are identical; and,

4.     A virus scan was run on the electronic version of this brief using Avast Business Antivirus, which detected no viruses.


  /s/ Noel H. Johnson
Noel H. Johnson
Counsel for Public Interest Legal Foundation

Dated: November 3, 2023.

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2023, I electronically filed the

foregoing using the Court's ECF system, which will serve notice on all parties.

 /s/ Noel. H Johnson
Noel H. Johnson
njohnson@publicinterestlegal.org

EXHIBIT "G"

Section 1 Scorecard Queries

```
/*
*******************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
*******************************************************************
USA-PA1-01-01-DUP-Voter_with_multiple_PAID

Illegal Duplicate Registrations - Exact Duplicates
Same person with more than one PAID
*****************************************************/
WITH CTE1 AS (SELECT [last_name]
      ,[first_name]
      ,ISNULL([middle_name], '') AS [middle_name]
      ,ISNULL([name_suffix_lbl], '') AS [name_suffix_lbl]
      ,ISNULL([gender], '') AS [gender]
      ,ISNULL([dob], '') AS [dob]
  FROM [dbo].[pavoter_221226]
  GROUP BY [last_name]
      ,[first_name]
      ,[middle_name]
      ,[name_suffix_lbl]
      ,[gender]
      ,[dob]
HAVING COUNT(*) > 1
)
SELECT '01 Illegal Duplicate Registrations' AS [ScorecardLabel],'01 Full duplicate' AS
[Subcategory], b.paid, b.last_name, b.first_name, b.middle_name, b.name_suffix_lbl,
b.status_cd, b.county
FROM CTE1 a
JOIN [dbo].[pavoter_221226] b
ON b.[last_name] = a.[last_name]
AND b.[first_name] = a.[first_name]
AND ISNULL(b.[middle_name], '') = a.[middle_name]
AND ISNULL(b.[name_suffix_lbl], '') = a.[name_suffix_lbl]
AND ISNULL(b.[gender], '') = a.[gender]
AND ISNULL(b.[dob], '') = a.[dob]
ORDER BY b.[last_name]
      ,b.[first_name]
      ,b.[middle_name]
      ,b.[name_suffix_lbl]
      ,b.[gender]
      ,b.[dob]; -- 4,486 records
```

```
/*
*********************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
*********************************************************************
USA-PA1-01-02-DUP-Duplicate_PAID

Illegal Duplicate Registrations - Multiple instances of
base PAID
*******************************************************/
;WITH CTE1 AS (
SELECT LEFT(paid, LEN(paid)-3) AS PAID
FROM [dbo].[pavoter_221226])
,CTE2 AS (
SELECT paid,
COUNT(*) AS Amt
FROM CTE1
GROUP BY paid
HAVING COUNT(*) > 1)
SELECT '01 Illegal Duplicate Registrations','02 Duplicate Paid', b.paid, b.last_name,
b.first_name, b.middle_name, b.name_suffix_lbl, b.status_cd, b.county
FROM CTE2 a
JOIN [dbo].[pavoter_221226] b
ON a.paid = LEFT(b.paid, LEN(b.paid)-3);  -- 2,316 records
```

```
/*
*******************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
*******************************************************************
USA-PA1-01-03-DUP-Same_Person_new_PAID

Illegal Duplicate Registrations - Same Person new Paid
******************************************************/
SELECT '01 Illegal Duplicate Registrations','03 Same Person new Paid', a.paid,
a.last_name, a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavoter_240115] b
ON b.[last_name] = a.[last_name]
AND b.[first_name] = a.[first_name]
AND ISNULL(b.[middle_name], '') = ISNULL(a.[middle_name], '')
AND ISNULL(b.[name_suffix_lbl], '') = ISNULL(a.[name_suffix_lbl], '')
AND ISNULL(b.[gender], '') = ISNULL(a.[gender], '')
AND ISNULL(b.[dob], '') = ISNULL(a.[dob], '')
WHERE LEFT(a.paid, LEN(a.paid)-3) <> LEFT(b.paid, LEN(b.paid)-3); -- 5,630 records
```

```
/*
********************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
********************************************************
USA-PA1-01-06-DUP-Voter_with_same_Firstname_and_Lastname

Illegal Duplicate Registrations - Double names
Same first and last name
********************************************************/
SELECT '01 Illegal Duplicate Registrations' as [ScorecardLabel],'06 Duplicate names -
same first and last name' as [Subcategory], a.paid, a.last_name, a.first_name,
a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
WHERE a.first_name = a.last_name;  -- 608 records
```

```
/*
****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
****************************************************************
USA-PA1-01-07-DUP-Voter_with_changed_first_name

Illegal Duplicate Registrations - Changed first name
****************************************************/
SELECT '01 Illegal Duplicate Registrations','07 Changed first name', a.paid, a.last_name,
a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavoter_240115] b
ON b.[paid] = a.[paid]
WHERE b.[first_name] <> a.[first_name]; -- 7,057 records
```

```
/*
****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
****************************************************************
USA-PA1-02-01-VHI-Votes_prior_to_registration_date

Voted prior to Registration Date
Registration with some or all votes prior to registration date
***************************************************/
;WITH CTE1 AS (SELECT a.paid,
MAX(b.ElectionDate) AS MaxDate,
MIN(b.ElectionDate) AS MinDate
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavotehistory_221226] b
ON b.paid = a.paid
GROUP BY a.paid)
SELECT '02 Vote History Invalid or Illogical' as [ScorecardLabel], '01 Votes before
registration date' as [Subcategory], d.paid, d.last_name, d.first_name, d.middle_name,
d.name_suffix_lbl, d.status_cd, d.county
FROM CTE1 c
JOIN [dbo].[pavoter_221226] d
ON c.paid = d.paid
WHERE c.MinDate < [registr_dt];  -- 16,545 records
```

```
/*
********************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
********************************************************************
USA-PA1-02-02-VHI-Vote_History_Last_Vote_Date_mismatch

Vote History Last Vote Date mismatch
Last Vote Date value does not match most recent vote in Vote history
**************************************************/
;WITH CTE1 AS (SELECT a.paid,
MAX(b.ElectionDate) AS MaxDate,
MIN(b.ElectionDate) AS MinDate
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavotehistory_221226] b
ON b.paid = a.paid
GROUP BY a.paid)
SELECT '02 Vote History Invalid or Illogical' as [ScorecardLabel], '02 Vote History and
Last Vote Date Mismatch' as [Subcategory], d.paid, d.last_name, d.first_name,
d.middle_name, d.name_suffix_lbl, d.status_cd, d.county
FROM CTE1 c
JOIN [dbo].[pavoter_221226] d
ON c.paid = d.paid
WHERE c.MaxDate <> d.last_vote_date;  -- 18,510 records
```

```
/*
********************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
********************************************************************
USA-PA1-02-05-VHI-Voted_in_2022GE_not_in_declared_party

Voter History Invalid or Illogical - Voted in the 2022 GE but
not in declared party
****************************************************/
SELECT '02 Vote History Invalid or Illogical' as [ScorecardLabel], '05 Voted in 2022 GE
but not in declared party' as [Subcategory], a.paid, a.last_name, a.first_name,
a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavotehistory_221226] b
ON b.PAID = a.PAID
WHERE b.ElectionDate = '11/8/2022'
AND a.party_cd <> b.Party
ORDER BY a.registr_dt; -- 8,028 records
```

```
/*
*******************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
*******************************************************************
USA-PA1-03-01-QIR-Active_voter_set_inactive

Questionable inactive registrations - Active voter set inactive
Set to Inactive while still meeting definition of active voter
*******************************************************/
WITH CTE1 AS (SELECT MAX(b.electiondate) AS MaxDate, a.paid, a.[status_cd]
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavotehistory_221226] b
ON a.paid = b.paid
GROUP BY a.paid, a.[status_cd]),
CTE2 AS (
SELECT b.MaxDate, a.*
FROM [dbo].[pavoter_221226] a
JOIN CTE1 b
ON a.paid = b.paid
WHERE a.[status_cd] = 'I'
AND Datediff(Month,b.MaxDate,'12/26/2022' ) < 25)
SELECT '03 Questionable inactive status' as [ScorecardLabel], '01 Active voter set
inactive' as [Subcategory], a.paid, a.last_name, a.first_name, a.middle_name,
a.name_suffix_lbl, a.status_cd, a.county
FROM CTE2 a;  -- 10,298 records
```

```
/*
*****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
*****************************************************************
USA-PA1-04-01-VWI-Voted_while_Inactive

Voted while Inactive
Inactive registration with votes after registration date
and modified date
*****************************************************/
;WITH CTE1 AS (SELECT a.paid,
MAX(b.ElectionDate) AS MaxDate
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavotehistory_221226] b
ON b.paid = a.paid
GROUP BY a.paid)
SELECT '04 Voted while Inactive' as [ScorecardLabel], '-' as [Subcategory], d.paid,
d.last_name, d.first_name, d.middle_name, d.name_suffix_lbl, d.status_cd, d.county
FROM CTE1 c
JOIN [dbo].[pavoter_221226] d
ON c.paid = d.paid
WHERE d.status_cd = 'I'
AND c.MaxDate > d.status_change_dt;  -- 194 records
```

```
/*
********************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
********************************************************************
USA-PA1-05-01-IRD-Backdated_Registrations

Invalid Registration Date - Backdated Registrations
Registration exists now but did not in previous snapshot,
but registration date is prior to previous snapshot
*****************************************************/
SELECT '05 Backdated Registrations' as [ScorecardLabel], '-' as [Subcategory], a.paid,
a.last_name, a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_240115] a
FULL OUTER JOIN [dbo].[pavoter_221226] b
ON LEFT(a.paid, LEN(a.paid)-3) = LEFT(b.paid, LEN(b.paid)-3)
WHERE b.paid is NULL
AND a.registr_dt < '12/26/2022';  -- 28,256 records
```

```
/*
*****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
*****************************************************************
USA-PA1-06-01-IDR-Modified_Date_Prior_to_Registration_Date

Invalid Date Record - Modified Date Prior to Registration Date
Registration Record Modified Date Prior to Registration Date
******************************************************/
Select '06 Modified Date Prior to Registration Date' as [ScorecardLabel], '-' as
[Subcategory], a.paid, a.last_name, a.first_name, a.middle_name, a.name_suffix_lbl,
a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
WHERE a.date_last_changed < a.registr_dt;  -- 268,493 records
```

```
/*
****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
****************************************************************
USA-PA1-07-01-IIR-Blank_Registration_Date

Invalid or Illogical Registration Date
Registration with blank Registration Date
****************************************************/
SELECT '07 Invalid or Illogical Registration Date', '01 Registration with NO Date',
a.paid, a.last_name, a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd,
a.county
FROM [dbo].[pavoter_221226] a
WHERE a.registr_dt = ''
OR a.registr_dt IS NULL;  -- 105 records
```

```
/*
****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
****************************************************************
USA-PA1-07-02-IIR-Registration_Date_and_Age_do_not_Match

Invalid or Illogical Registration Date
Registration Date and age do not match
****************************************************************/
SELECT '07 Invalid or Illogical Registration Date' as [ScorecardLabel], '02 Registration
Date and Age do not Match' as [Subcategory], b.paid, b.last_name, b.first_name,
b.middle_name, b.name_suffix_lbl, b.status_cd, b.county
FROM (SELECT * FROM [dbo].[pavoter_221226] a
WHERE a.registr_dt <> ''
OR a.registr_dt IS NOT NULL) b
WHERE DATEDIFF(YEAR, b.dob, b.registr_dt) < 17; -- 35,801 records
```

```
/*
******************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
******************************************************************
USA-PA1-07-03-IIR-Registration_Date_on_Jan_1

Registrations with discrepant Registration Date
Registration Date on Jan 1, 1801 through 2022
*************************************************/
WITH CTE1 AS (SELECT
MONTH(registr_dt) AS RegMonth,
DAY(registr_dt) AS RegDay,
YEAR(registr_dt) AS RegYear,
paid
FROM [dbo].[pavoter_221226]
WHERE registr_dt <> ''
OR registr_dt IS NOT NULL)
SELECT '07 Invalid or Illogical Registration Date' as [ScorecardLabel], '03 Registration
Date on Jan 1 1801 through 2022' as [Subcategory], b.paid, b.last_name, b.first_name,
b.middle_name, b.name_suffix_lbl, b.status_cd, b.county
FROM CTE1 a
JOIN [dbo].[pavoter_221226] b
ON a.paid = b.paid
WHERE a.RegMonth = 1
AND a.RegDay = 1
AND a.RegYear Between 1799 and 2022
ORDER BY a.RegYear ASC; -- 294,353 Records
```

```
/*
****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
****************************************************************
USA-PA1-07-04-IIR-Registered_on_Federal_Holiday_other_than_January_1

Registrations with discrepant Registration Date
Registration Date on Federal or Observed Holiday but not New Years
****************************************************************/
SELECT '07 Invalid or Illogical Registration Date' as [ScorecardLabel], '04 Registration
Date on Federal Holiday not Jan 01' as [Subcategory], a.paid, a.last_name, a.first_name,
a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN (SELECT * FROM [dbo].[FederalHolidays]
WHERE [DATE OBSERVED] NOT IN (SELECT [DATE OBSERVED]
FROM [dbo].[FederalHolidays]
WHERE MONTH([DATE OBSERVED]) = 1
AND DAY([DATE OBSERVED]) = 1)) b
ON a.registr_dt = b.[DATE OBSERVED]; -- 109,845 records
```

```
/*
******************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
******************************************************************
USA-PA1-07-05-IIR-Voted_in_2022GE_registered_after_cutoff_date

Registrations with discrepant Registration Date
Voted in 2022 GE but registered after the cut-off date of 10/24/2022
******************************************************************/
SELECT '07 Invalid or Illogical Registration Date' as [ScorecardLabel], '05 Voted in 2022
GE but registered after the cut-off date' as [Subcategory], a.paid, a.last_name,
a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavotehistory_221226] b
ON b.PAID = a.PAID
WHERE b.ElectionDate = '11/8/2022'
AND a.registr_dt > '10/24/2022'
ORDER BY a.registr_dt   -- 8,231 records
```

```
/*
********************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
********************************************************************
USA-PA1-08-01-IRC-Registration_Changed_during_cutoff_period

Illegal or Invalid Registration Changes
Voted in 2022 GE and changed registration during the cut-off
period between 10/24/22 and 11/9/22
****************************************************/
SELECT '08 Illegal or Invalid Registration Changes' as [ScorecardLabel], '01 Registration
Changed during cut-off period' as [Subcategory], a.paid, a.last_name, a.first_name,
a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavotehistory_221226] b
ON b.PAID = a.PAID
WHERE b.ElectionDate = '11/8/2022'
AND a.date_last_changed > '10/24/2022'
AND a.date_last_changed < '11/9/2022'
ORDER BY a.registr_dt  -- 631,533 records
```

```
/*
****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
****************************************************************
USA-PA1-08-02-IRC-Changed_party_no_date_last_changed_update

Illegal or Invalid Registration Changes
Changed party but no 'date last changed' update
****************************************************/
SELECT '08 Illegal or Invalid Registration Changes' as [ScorecardLabel], '02 Changed
party but no date last changed update' as [Subcategory], a.paid, a.last_name,
a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavoter_240115] b
ON b.PAID = a.PAID
WHERE a.party_cd <> b.party_cd
AND a.date_last_changed = b.date_last_changed  -- 1,121 records
```

```
/*
*****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
*****************************************************************
USA-PA1-08-03-IRC-Changed_Address_no_date_last_changed_update

Illegal or Invalid Registration Changes
Changed Address but no 'date last changed' update
***************************************************/
SELECT '08 Illegal or Invalid Registration Changes' as [ScorecardLabel], '03 Changed
Address but no date last changed update' as [Subcategory], a.paid, a.last_name,
a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavoter_240115] b
ON b.PAID = a.PAID
WHERE a.house_num <> b.house_num
AND a.date_last_changed = b.date_last_changed  -- 854 records
```

```
/*
****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
****************************************************************
USA-PA1-09-01-ADR-Registrations_with_no_Age

Age discrepant Registrants - Registrations with no Age
Registration with blank Age
****************************************************/
SELECT '09 Age Discrepant Registrants', '01 Registrations with No Age', a.paid,
a.last_name, a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
WHERE a.dob = ''
OR a.dob IS NULL;  -- 77 records
```

```
/*
****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
****************************************************************
USA-PA1-09-02-ADR-Younger_than_17_or_Older_than_115

Age discrepant Registrants
Registrants younger than 17 or older than 115
(https://gerontology.fandom.com/wiki/List_of_supercentenarians_from_the_United_States)
****************************************************************/
SELECT '09 Age Discrepant Registrants', '02 Younger than 17 or Older than 115', b.paid,
b.last_name, b.first_name, b.middle_name, b.name_suffix_lbl, b.status_cd, b.county
FROM [dbo].[pavoter_221226] b
WHERE DATEDIFF(YEAR, b.dob, '12/26/2022') < 17 or DATEDIFF(YEAR, b.dob, '12/26/2022') >
115; -- 630 records
```

```
/*
****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
****************************************************************
USA-PA1-09-03-ADR-Registrations_with_changed_DOB

Age discrepant Registrants
Registrations with changed DOB
****************************************************/
SELECT '09 Age Discrepant Registrants','03 Changed DOB', a.paid, a.last_name,
a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavoter_240115] b
ON LEFT(a.paid, LEN(a.paid)-3) = LEFT(b.paid, LEN(b.paid)-3)
WHERE a.dob <> b.dob; -- 3,435 records
```

```
/*
****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
****************************************************************
USA-PA1-10-01-RIA-Address_in_multi-unit_buildings_no_unit_number

Registrants with Invalid Address
Addresses in multi-unit buildings with no unit number
****************************************************/
WITH CTE1 AS (SELECT [house_num]
      ,[house_num_suffix]
      ,[street_name]
      ,[address_line2]
      ,[city]
      ,[state]
      ,[zip]
FROM [dbo].[pavoter_221226]
Where apt_num IS NOT NULL
GROUP BY [house_num]
      ,[house_num_suffix]
      ,[street_name]
      ,[address_line2]
      ,[city]
      ,[state]
      ,[zip]
HAVING COUNT(*) > 2)
SELECT '10 Registrants with questionable address', '01 Address in multi-unit building No
unit number', a.paid, a.last_name, a.first_name, a.middle_name,  a.name_suffix_lbl,
a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN CTE1 b
ON ISNULL(a.[house_num], '') = ISNULL(b.[house_num], '')
AND ISNULL(a.[house_num_suffix], '') = ISNULL(b.[house_num_suffix], '')
AND ISNULL(a.[street_name], '') = ISNULL(b.[street_name], '')
AND ISNULL(a.[address_line2], '') = ISNULL(b.[address_line2], '')
AND ISNULL(a.[city], '') = ISNULL(b.[city], '')
AND ISNULL(a.[state], '') = ISNULL(b.[state], '')
AND ISNULL(a.[zip], '') = ISNULL(b.[zip], '')
WHERE a.apt_num IS NULL;  -- 95,065 records
```

```
/*
******************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
******************************************************************
USA-PA1-10-02-RIA-Registrations_with_Missing_or_Incomplete_Address

Registrants with Invalid Address
Missing or Incomplete Address
*****************************************************/
SELECT '10 Registrants with questionable address', '02 Missing or incomplete address',
a.paid, a.last_name, a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd,
a.county
FROM [dbo].[pavoter_221226] a
WHERE a.house_num IS NULL
AND a.mail_addr1 IS NULL;  -- 11,386 records
```

```
/*
****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
****************************************************************
USA-PA1-10-03-RIA-Different_Street-Same_City_and_House_Number

Registrants with Invalid Address
Only street name changed (city and house number did not)
****************************************************************/
SELECT '10 Registrants with questionable address','03 Different Street - Same City and
House number', a.paid, a.last_name, a.first_name, a.middle_name, a.name_suffix_lbl,
a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavoter_240115] b
on b.paid = a.paid
WHERE ISNULL(a.[house_num], '') = ISNULL(b.[house_num], '')
AND ISNULL(a.[house_num_suffix], '') = ISNULL(b.[house_num_suffix], '')
AND ISNULL(a.[street_name], '') <> ISNULL(b.[street_name], '')
AND ISNULL(a.[address_line2], '') = ISNULL(b.[address_line2], '')
AND ISNULL(a.[city], '') = ISNULL(b.[city], '')
AND ISNULL(a.[state], '') = ISNULL(b.[state], '')
AND ISNULL(a.[zip], '') = ISNULL(b.[zip], '');  -- 33,918 records
```

```
/*
*********************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
*********************************************************************
USA-PA1-10-04-RIA-Different_House_Number-Same_City_and_Street


Registrants with Invalid Address
Only house number changed (city and street name did not)
*****************************************************/
SELECT '10 Registrants with questionable address','04 Different house number - Same City
and Street', a.paid, a.last_name, a.first_name, a.middle_name, a.name_suffix_lbl,
a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavoter_240115] b
on b.paid = a.paid
WHERE ISNULL(a.[house_num], '') <> ISNULL(b.[house_num], '')
AND ISNULL(a.[house_num_suffix], '') = ISNULL(b.[house_num_suffix], '')
AND ISNULL(a.[street_name], '') = ISNULL(b.[street_name], '')
AND ISNULL(a.[address_line2], '') = ISNULL(b.[address_line2], '')
AND ISNULL(a.[city], '') = ISNULL(b.[city], '')
AND ISNULL(a.[state], '') = ISNULL(b.[state], '')
AND ISNULL(a.[zip], '') = ISNULL(b.[zip], '');  -- 14,544 records
```

```
/*
******************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
******************************************************************
USA-PA1-11-01-RAV-Registrations_with_Votes_Removed

Registrants with Altered Votes
Registrations with Votes Removed
****************************************************/
WITH CTE1a AS (SELECT *
FROM [dbo].[pavotehistory_221226])
, CTE1b AS (SELECT *
FROM [dbo].[pavotehistory_240115]
WHERE ElectionDate < '2022-12-26')
, CTE1 AS (SELECT a.PAID, a.ElectionDate, b.PAID as PreviousregID, b.ElectionDate as
PreviousElecDate
FROM CTE1a a
FULL OUTER JOIN CTE1b b
ON a.PAID = b.PAID
AND a.ElectionDate = b.ElectionDate)
, CTE2 AS (
SELECT PAID,
CASE WHEN PreviousRegID IS NULL THEN 1
WHEN PreviousRegID IS NOT NULL THEN 2 END AS PreviousRegScore
FROM CTE1
WHERE PAID IS NOT NULL
GROUP BY PAID,
PreviousRegID)
, CTE3 AS (
SELECT PAID,
SUM(PreviousRegScore) AS ScoreSum
FROM CTE2
GROUP BY PAID)
SELECT '11 Registrations with Altered Votes','01 Registrants with Votes Removed', a.paid,
a.last_name, a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN CTE3 b
ON a.PAID = b.PAID
AND b.ScoreSum = 3; -- 1,580,750 records
```

Section 2 Scorecard Queries

```
/*
**********************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 6 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
**********************************************************************
USA-PA2-01-01-DUP-Voter_with_multiple_PAID

Illegal Duplicate Registrations - Exact Duplicates
Same person with more than one PAID
*********************************************************/
WITH CTE1 AS (SELECT [last_name]
      ,[first_name]
      ,ISNULL([middle_name], '') AS [middle_name]
      ,ISNULL([name_suffix_lbl], '') AS [name_suffix_lbl]
      ,ISNULL([gender], '') AS [gender]
      ,ISNULL([dob], '') AS [dob]
  FROM [dbo].[pavoter_221226]
  GROUP BY [last_name]
      ,[first_name]
      ,[middle_name]
      ,[name_suffix_lbl]
      ,[gender]
      ,[dob]
HAVING COUNT(*) > 1
)
, CTE2 AS (SELECT b.paid, b.last_name, b.first_name, b.middle_name, b.name_suffix_lbl,
b.status_cd, b.county
FROM CTE1 a
JOIN [dbo].[pavoter_221226] b
ON b.[last_name] = a.[last_name]
AND b.[first_name] = a.[first_name]
AND ISNULL(b.[middle_name], '') = a.[middle_name]
AND ISNULL(b.[name_suffix_lbl], '') = a.[name_suffix_lbl]
AND ISNULL(b.[gender], '') = a.[gender]
AND ISNULL(b.[dob], '') = a.[dob])
SELECT '01 Illegal Duplicate Registrations' AS [ScorecardLabel],'01 Full duplicate' AS
[Subcategory], a.paid, a.last_name, a.first_name, a.middle_name, a.name_suffix_lbl,
a.status_cd, a.county
FROM CTE2 a
JOIN [dbo].[pavotehistory_221226] b
ON a.paid = b.paid
WHERE b.ElectionDate = '11/8/2022'
ORDER BY a.[last_name]
      ,a.[first_name]
      ,a.[middle_name]
      ,a.[name_suffix_lbl]; -- 1,139 records
```

```
/*
******************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
******************************************************************
USA-PA2-01-02-DUP-Duplicate_PAID

Illegal Duplicate Registrations - Multiple instances of
base PAID
******************************************************/
;WITH CTE1 AS (
SELECT LEFT(paid, LEN(paid)-3) AS PAID
FROM [dbo].[pavoter_221226])
,CTE2 AS (
SELECT paid,
COUNT(*) AS Amt
FROM CTE1
GROUP BY paid
HAVING COUNT(*) > 1)
SELECT '01 Illegal Duplicate Registrations','02 Duplicate Paid', b.paid, b.last_name,
b.first_name, b.middle_name, b.name_suffix_lbl, b.status_cd, b.county
FROM CTE2 a
JOIN [dbo].[pavoter_221226] b
ON a.paid = LEFT(b.paid, LEN(b.paid)-3)
JOIN [dbo].[pavotehistory_221226] c
ON b.paid = c.paid
WHERE c.ElectionDate = '11/8/2022';  -- 867 records
```

```
/*
********************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
********************************************************************
USA-PA2-01-03-DUP-Same_Person_new_PAID

Illegal Duplicate Registrations - Same Person new Paid
********************************************************/
SELECT '01 Illegal Duplicate Registrations','03 Same Person new Paid', a.paid,
a.last_name, a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavoter_240115] b
ON b.[last_name] = a.[last_name]
AND b.[first_name] = a.[first_name]
AND ISNULL(b.[middle_name], '') = ISNULL(a.[middle_name], '')
AND ISNULL(b.[name_suffix_lbl], '') = ISNULL(a.[name_suffix_lbl], '')
AND ISNULL(b.[gender], '') = ISNULL(a.[gender], '')
AND ISNULL(b.[dob], '') = ISNULL(a.[dob], '')
JOIN [dbo].[pavotehistory_221226] c
ON a.paid = c.paid
WHERE LEFT(a.paid, LEN(a.paid)-3) <> LEFT(b.paid, LEN(b.paid)-3)
AND c.ElectionDate = '11/8/2022'; -- 1,740 records
```

```
/*
********************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
********************************************************************
USA-PA2-01-06-DUP-Voter_with_same_Firstname_and_Lastname

Illegal Duplicate Registrations - Double names
Same first and last name
*****************************************************************/
SELECT '01 Illegal Duplicate Registrations' as [ScorecardLabel],'06 Duplicate names -
same first and last name' as [Subcategory], a.paid, a.last_name, a.first_name,
a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavotehistory_221226] c
ON a.paid = c.paid
WHERE c.ElectionDate = '11/8/2022'
AND a.first_name = a.last_name;  -- 305 records
```

```
/*
*****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
*****************************************************************
USA-PA2-01-07-DUP-Voter_with_changed_first_name

Illegal Duplicate Registrations - Changed first name
*****************************************************/
SELECT '01 Illegal Duplicate Registrations','07 Changed first name', a.paid, a.last_name,
a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavoter_240115] b
ON b.[paid] = a.[paid]
JOIN [dbo].[pavotehistory_221226] c
ON a.paid = c.paid
WHERE c.ElectionDate = '11/8/2022'
AND b.[first_name] <> a.[first_name]; -- 3,975 records
```

```
/*
*******************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
*******************************************************************
USA-PA2-02-01-VHI-Votes_prior_to_registration_date

Voted prior to Registration Date
Registration with some or all votes prior to registration date
***************************************************/
;WITH CTE1 AS (SELECT a.paid,
MAX(b.ElectionDate) AS MaxDate,
MIN(b.ElectionDate) AS MinDate
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavotehistory_221226] b
ON b.paid = a.paid
GROUP BY a.paid)
SELECT '02 Vote History Invalid or Illogical' as [ScorecardLabel], '01 Votes before
registration date' as [Subcategory], d.paid, d.last_name, d.first_name, d.middle_name,
d.name_suffix_lbl, d.status_cd, d.county
FROM CTE1 c
JOIN [dbo].[pavoter_221226] d
ON c.paid = d.paid
JOIN [dbo].[pavotehistory_221226] e
ON d.paid = e.paid
WHERE e.ElectionDate = '11/8/2022'
AND c.MinDate < [registr_dt];  -- 7,575 records
```

```
/*
******************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
******************************************************************
USA-PA2-02-02-VHI-Vote_History_Last_Vote_Date_mismatch

Vote History Last Vote Date mismatch
Last Vote Date value does not match most recent vote in Vote history
*************************************************/
;WITH CTE1 AS (SELECT a.paid,
MAX(b.ElectionDate) AS MaxDate,
MIN(b.ElectionDate) AS MinDate
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavotehistory_221226] b
ON b.paid = a.paid
GROUP BY a.paid)
SELECT '02 Vote History Invalid or Illogical' as [ScorecardLabel], '02 Vote History and
Last Vote Date Mismatch' as [Subcategory], d.paid, d.last_name, d.first_name,
d.middle_name, d.name_suffix_lbl, d.status_cd, d.county
FROM CTE1 c
JOIN [dbo].[pavoter_221226] d
ON c.paid = d.paid
JOIN [dbo].[pavotehistory_221226] e
ON d.paid = e.paid
WHERE e.ElectionDate = '11/8/2022'
AND c.MaxDate <> d.last_vote_date;  -- 71 records
```

```
/*
*****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
*****************************************************************
USA-PA2-02-05-VHI-Voted_in_2022GE_not_in_declared_party

Voter History Invalid or Illogical - Voted in the 2022 GE but
not in declared party
*****************************************************************/
SELECT '02 Vote History Invalid or Illogical' as [ScorecardLabel], '05 Voted in 2022 GE
but not in declared party' as [Subcategory], a.paid, a.last_name, a.first_name,
a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavotehistory_221226] b
ON b.PAID = a.PAID
WHERE b.ElectionDate = '11/8/2022'
AND a.party_cd <> b.Party
ORDER BY a.registr_dt; -- 8,028 records - This is the same as Section 1 because it is
already looking at 2022 GE votes
```

```
/*
********************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
********************************************************************
USA-PA2-03-01-QIR-Active_voter_set_inactive

Questionable inactive registrations - Active voter set inactive
Set to Inactive while still meeting definition of active voter
********************************************************/
WITH CTE1 AS (SELECT MAX(b.electiondate) AS MaxDate, a.paid, a.[status_cd]
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavotehistory_221226] b
ON a.paid = b.paid
GROUP BY a.paid, a.[status_cd]),
CTE2 AS (
SELECT b.MaxDate, a.*
FROM [dbo].[pavoter_221226] a
JOIN CTE1 b
ON a.paid = b.paid
WHERE a.[status_cd] = 'I'
AND Datediff(Month,b.MaxDate,'12/26/2022' ) < 25)
SELECT '03 Questionable inactive status' as [ScorecardLabel], '01 Active voter set
inactive' as [Subcategory], a.paid, a.last_name, a.first_name, a.middle_name,
a.name_suffix_lbl, a.status_cd, a.county
FROM CTE2 a
JOIN [dbo].[pavotehistory_221226] e
ON a.paid = e.paid
WHERE e.ElectionDate = '11/8/2022';  -- 1,996 records
```

```
/*
********************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
********************************************************************
USA-PA2-04-01-VWI-Voted_while_Inactive

Voted while Inactive
Inactive registration with votes after registration date
and modified date
*****************************************************/
;WITH CTE1 AS (SELECT a.paid,
MAX(b.ElectionDate) AS MaxDate
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavotehistory_221226] b
ON b.paid = a.paid
GROUP BY a.paid)
SELECT '04 Voted while Inactive' as [ScorecardLabel], '-' as [Subcategory], d.paid,
d.last_name, d.first_name, d.middle_name, d.name_suffix_lbl, d.status_cd, d.county
FROM CTE1 c
JOIN [dbo].[pavoter_221226] d
ON c.paid = d.paid
JOIN [dbo].[pavotehistory_221226] e
ON d.paid = e.paid
WHERE e.ElectionDate = '11/8/2022'
AND d.status_cd = 'I'
AND c.MaxDate > d.status_change_dt;  -- 118 records
```

```
/*
*****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
*****************************************************************
USA-PA2-06-01-IDR-Modified_Date_Prior_to_Registration_Date


Invalid Date Record - Modified Date Prior to Registration Date
Registration Record Modified Date Prior to Registration Date
*************************************************************/
Select '06 Modified Date Prior to Registration Date' as [ScorecardLabel], '-' as
[Subcategory], a.paid, a.last_name, a.first_name, a.middle_name, a.name_suffix_lbl,
a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavotehistory_221226] e
ON a.paid = e.paid
WHERE e.ElectionDate = '11/8/2022'
AND a.date_last_changed < a.registr_dt;  -- 196 records
```

```
/*
*********************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
*********************************************************************
USA-PA2-07-01-IIR-Blank_Registration_Date

Invalid or Illogical Registration Date
Registration with blank Registration Date
****************************************************/
SELECT '07 Invalid or Illogical Registration Date', '01 Registration with NO Date',
a.paid, a.last_name, a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd,
a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavotehistory_221226] e
ON a.paid = e.paid
WHERE e.ElectionDate = '11/8/2022'
AND (a.registr_dt = ''
OR a.registr_dt IS NULL);  -- 69 records
```

```
/*
*******************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
*******************************************************************
USA-PA2-07-02-IIR-Registration_Date_and_Age_do_not_Match

Invalid or Illogical Registration Date
Registration Date and age do not match
*****************************************************/
SELECT '07 Invalid or Illogical Registration Date' as [ScorecardLabel], '02 Registration
Date and Age do not Match' as [Subcategory], b.paid, b.last_name, b.first_name,
b.middle_name, b.name_suffix_lbl, b.status_cd, b.county
FROM (SELECT * FROM [dbo].[pavoter_221226] a
WHERE a.registr_dt <> ''
OR a.registr_dt IS NOT NULL) b
JOIN [dbo].[pavotehistory_221226] e
ON b.paid = e.paid
WHERE e.ElectionDate = '11/8/2022'
AND DATEDIFF(YEAR, b.dob, b.registr_dt) < 17; -- 28,791 records
```

```
/*
**********************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
**********************************************************
USA-PA2-07-03-IIR-Registration_Date_on_Jan_1

Registrations with discrepant Registration Date
Registration Date on Jan 1, 1801 through 2022
**********************************************************/
WITH CTE1 AS (SELECT
MONTH(registr_dt) AS RegMonth,
DAY(registr_dt) AS RegDay,
YEAR(registr_dt) AS RegYear,
paid
FROM [dbo].[pavoter_221226]
WHERE registr_dt <> ''
OR registr_dt IS NOT NULL)
SELECT '07 Invalid or Illogical Registration Date' as [ScorecardLabel], '03 Registration
Date on Jan 1 1801 through 2022' as [Subcategory], b.paid, b.last_name, b.first_name,
b.middle_name, b.name_suffix_lbl, b.status_cd, b.county
FROM CTE1 a
JOIN [dbo].[pavoter_221226] b
ON a.paid = b.paid
JOIN [dbo].[pavotehistory_221226] e
ON b.paid = e.paid
WHERE e.ElectionDate = '11/8/2022'
AND a.RegMonth = 1
AND a.RegDay = 1
AND a.RegYear Between 1799 and 2022
ORDER BY a.RegYear ASC; -- 234,726 records
```

```
/*
****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
****************************************************************
USA-PA2-07-04-IIR-Registered_on_Federal_Holiday_other_than_January_1


Registrations with discrepant Registration Date
Registration Date on Federal or Observed Holiday but not New Years
****************************************************************/
SELECT '07 Invalid or Illogical Registration Date' as [ScorecardLabel], '04 Registration
Date on Federal Holiday not Jan 01' as [Subcategory], a.paid, a.last_name, a.first_name,
a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN (SELECT * FROM [dbo].[FederalHolidays]
WHERE [DATE OBSERVED] NOT IN (SELECT [DATE OBSERVED]
FROM [dbo].[FederalHolidays]
WHERE MONTH([DATE OBSERVED]) = 1
AND DAY([DATE OBSERVED]) = 1)) b
ON a.registr_dt = b.[DATE OBSERVED]
JOIN [dbo].[pavotehistory_221226] e
ON a.paid = e.paid
WHERE e.ElectionDate = '11/8/2022'; -- 68,449 records
```

```
/*
******************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
******************************************************************
USA-PA2-07-05-IIR-Voted_in_2022GE_registered_after_cutoff_date

Registrations with discrepant Registration Date
Voted in 2022 GE but registered after the cut-off date of 10/24/2022
******************************************************************/
SELECT '07 Invalid or Illogical Registration Date' as [ScorecardLabel], '05 Voted in 2022
GE but registered after the cut-off date' as [Subcategory], a.paid, a.last_name,
a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavotehistory_221226] b
ON b.PAID = a.PAID
WHERE b.ElectionDate = '11/8/2022'
AND a.registr_dt > '10/24/2022'
ORDER BY a.registr_dt  --8,231 records - This matched same number from Section 1 since it
already is looking at 2022 voters
```

```
/*
*******************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
*******************************************************
USA-PA2-08-01-IRC-Registration_Changed_during_cutoff_period

Illegal or Invalid Registration Changes
Voted in 2022 GE and changed registration during the cut-off
period between 10/24/22 and 11/9/22
*******************************************************/
SELECT '08 Illegal or Invalid Registration Changes' as [ScorecardLabel], '01 Registration
Changed during cut-off period' as [Subcategory], a.paid, a.last_name, a.first_name,
a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavotehistory_221226] b
ON b.PAID = a.PAID
WHERE b.ElectionDate = '11/8/2022'
AND a.date_last_changed > '10/24/2022'
AND a.date_last_changed < '11/9/2022'
ORDER BY a.registr_dt  -- 631,533 records Same as Section 1 - All voted in 2022 GE
```

```
/*
****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
****************************************************************
USA-PA2-08-02-IRC-Changed_party_no_date_last_changed_update

Illegal or Invalid Registration Changes
Changed party but no 'date last changed' update
****************************************************/
SELECT '08 Illegal or Invalid Registration Changes' as [ScorecardLabel], '02 Changed
party but no date last changed update' as [Subcategory], a.paid, a.last_name,
a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavoter_240115] b
ON b.PAID = a.PAID
JOIN [dbo].[pavotehistory_221226] c
ON c.PAID = a.PAID
WHERE a.party_cd <> b.party_cd
AND a.date_last_changed = b.date_last_changed
AND c.ElectionDate = '11/8/2022'; -- 292 records
```

```
/*
****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
****************************************************************
USA-PA2-08-03-IRC-Changed_Address_no_date_last_changed_update

Illegal or Invalid Registration Changes
Changed Address but no 'date last changed' update
****************************************************/
SELECT '08 Illegal or Invalid Registration Changes' as [ScorecardLabel], '03 Changed
Address but no date last changed update' as [Subcategory], a.paid, a.last_name,
a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavoter_240115] b
ON b.PAID = a.PAID
JOIN [dbo].[pavotehistory_221226] c
ON c.PAID = a.PAID
WHERE a.house_num <> b.house_num
AND a.date_last_changed = b.date_last_changed
AND c.ElectionDate = '11/8/2022'; --390 records
```

```
/*
****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
****************************************************************
USA-PA2-09-01-ADR-Registrations_with_no_Age

Age discrepant Registrants - Registrations with no Age
Registration with blank Age
****************************************************/
SELECT '09 Age Discrepant Registrants', '01 Registrations with No Age', a.paid,
a.last_name, a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavotehistory_221226] e
ON a.paid = e.paid
WHERE e.ElectionDate = '11/8/2022'
AND (a.dob = ''
OR a.dob IS NULL);  -- 20 records
```

```
/*
********************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
********************************************************************
USA-PA2-09-02-ADR-Younger_than_17_or_Older_than_115

Age discrepant Registrants
Registrants younger than 17 or older than 115
(https://gerontology.fandom.com/wiki/List_of_supercentenarians_from_the_United_States)
********************************************************************/
SELECT '09 Age Discrepant Registrants', '02 Younger than 17 or Older than 115', b.paid,
b.last_name, b.first_name, b.middle_name, b.name_suffix_lbl, b.status_cd, b.county
FROM [dbo].[pavoter_221226] b
JOIN [dbo].[pavotehistory_221226] e
ON b.paid = e.paid
WHERE e.ElectionDate = '11/8/2022'
AND (DATEDIFF(YEAR, b.dob, '12/26/2022') < 17 or DATEDIFF(YEAR, b.dob, '12/26/2022') >
115); -- 186 records
```

```
/*
******************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
******************************************************************
USA-PA2-09-03-ADR-Registrations_with_changed_DOB

Age discrepant Registrants
Registrations with changed DOB
*****************************************************/
SELECT '09 Age Discrepant Registrants','03 Changed DOB', a.paid, a.last_name,
a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavoter_240115] b
ON LEFT(a.paid, LEN(a.paid)-3) = LEFT(b.paid, LEN(b.paid)-3)
JOIN [dbo].[pavotehistory_221226] e
ON a.paid = e.paid
WHERE e.ElectionDate = '11/8/2022'
AND a.dob <> b.dob; -- 2,001 records
```

```
/*
********************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
********************************************************************
USA-PA2-10-01-RIA-Address_in_multi-unit_buildings_no_unit_number

Registrants with Invalid Address
Addresses in multi-unit buildings with no unit number
****************************************************/
WITH CTE1 AS (SELECT [house_num]
      ,[house_num_suffix]
      ,[street_name]
      ,[address_line2]
      ,[city]
      ,[state]
      ,[zip]
FROM [dbo].[pavoter_221226]
Where apt_num IS NOT NULL
GROUP BY [house_num]
      ,[house_num_suffix]
      ,[street_name]
      ,[address_line2]
      ,[city]
      ,[state]
      ,[zip]
HAVING COUNT(*) > 2)
SELECT '10 Registrants with questionable address', '01 Address in multi-unit building No
unit number', a.paid, a.last_name, a.first_name, a.middle_name, a.name_suffix_lbl,
a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN CTE1 b
ON ISNULL(a.[house_num], '') = ISNULL(b.[house_num], '')
AND ISNULL(a.[house_num_suffix], '') = ISNULL(b.[house_num_suffix], '')
AND ISNULL(a.[street_name], '') = ISNULL(b.[street_name], '')
AND ISNULL(a.[address_line2], '') = ISNULL(b.[address_line2], '')
AND ISNULL(a.[city], '') = ISNULL(b.[city], '')
AND ISNULL(a.[state], '') = ISNULL(b.[state], '')
AND ISNULL(a.[zip], '') = ISNULL(b.[zip], '')
JOIN [dbo].[pavotehistory_221226] e
ON a.paid = e.paid
WHERE e.ElectionDate = '11/8/2022'
AND a.apt_num IS NULL;  -- 28,313 records
```

```
/*
****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
****************************************************************
USA-PA2-10-02-RIA-Registrations_with_Missing_or_Incomplete_Address

Registrants with Invalid Address
Missing or Incomplete Address
****************************************************/
SELECT '10 Registrants with questionable address', '02 Missing or incomplete address',
a.paid, a.last_name, a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd,
a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavotehistory_221226] e
ON a.paid = e.paid
WHERE e.ElectionDate = '11/8/2022'
AND a.house_num IS NULL
AND a.mail_addr1 IS NULL;  -- 3,174 records
```

```
/*
****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
****************************************************************
USA-PA2-10-03-RIA-Different_Street-Same_City_and_House_Number

Registrants with Invalid Address
Only street name changed (city and house number did not)
****************************************************/
SELECT '10 Registrants with questionable address','03 Different Street - Same City and
House number', a.paid, a.last_name, a.first_name, a.middle_name, a.name_suffix_lbl,
a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavoter_240115] b
on b.paid = a.paid
JOIN [dbo].[pavotehistory_221226] e
ON a.paid = e.paid
WHERE e.ElectionDate = '11/8/2022'
AND ISNULL(a.[house_num], '') = ISNULL(b.[house_num], '')
AND ISNULL(a.[house_num_suffix], '') = ISNULL(b.[house_num_suffix], '')
AND ISNULL(a.[street_name], '') <> ISNULL(b.[street_name], '')
AND ISNULL(a.[address_line2], '') = ISNULL(b.[address_line2], '')
AND ISNULL(a.[city], '') = ISNULL(b.[city], '')
AND ISNULL(a.[state], '') = ISNULL(b.[state], '')
AND ISNULL(a.[zip], '') = ISNULL(b.[zip], '');  -- 20,161 records
```

```
/*
************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
************************************************************
USA-PA2-10-04-RIA-Different_House_Number-Same_City_and_Street

Registrants with Invalid Address
Only house number changed (city and street name did not)
************************************************************/
SELECT '10 Registrants with questionable address','04 Different house number - Same City
and Street', a.paid, a.last_name, a.first_name, a.middle_name, a.name_suffix_lbl,
a.status_cd, a.county
FROM [dbo].[pavoter_221226] a
JOIN [dbo].[pavoter_240115] b
on b.paid = a.paid
JOIN [dbo].[pavotehistory_221226] e
ON a.paid = e.paid
WHERE e.ElectionDate = '11/8/2022'
AND ISNULL(a.[house_num], '') <> ISNULL(b.[house_num], '')
AND ISNULL(a.[house_num_suffix], '') = ISNULL(b.[house_num_suffix], '')
AND ISNULL(a.[street_name], '') = ISNULL(b.[street_name], '')
AND ISNULL(a.[address_line2], '') = ISNULL(b.[address_line2], '')
AND ISNULL(a.[city], '') = ISNULL(b.[city], '')
AND ISNULL(a.[state], '') = ISNULL(b.[state], '')
AND ISNULL(a.[zip], '') = ISNULL(b.[zip], '');  -- 7,961 records
```

```
/*
****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
****************************************************************
USA-PA2-11-01-RAV-Voters_and_Votes_Deleted

Registrants with Altered Votes
Voters and Votes Deleted
***************************************************/
WITH CTE1a AS (SELECT *
FROM [dbo].[pavotehistory_221226]
WHERE ElectionDate = '2022-11-08')
, CTE1b AS (SELECT *
FROM [dbo].[pavotehistory_240115]
WHERE ElectionDate = '2022-11-08')
, CTE1c AS (SELECT b.*
FROM CTE1b a
JOIN [dbo].[pavoter_240115] b
ON a.PAID = b.PAID)
, CTE1 AS (SELECT a.PAID, a.ElectionDate, b.PAID as PreviousregID02, b.ElectionDate as
PreviousElecDate
FROM CTE1a a
FULL OUTER JOIN CTE1b b
ON a.PAID = b.PAID
AND a.ElectionDate = b.ElectionDate)
, CTE2 AS (
SELECT a.PAID, b.PAID as PreviousregID01
FROM CTE1a a
FULL OUTER JOIN CTE1b b
ON a.PAID = b.PAID)
, CTE3 AS (
SELECT a.paid, b.last_name, b.first_name, b.dob
FROM CTE2 a
LEFT JOIN [dbo].[pavoter_221226] b
ON a.PAID = b.PAID
WHERE a.PreviousregID01 IS NULL) --SELECT * FROM CTE3
, CTE4 AS (
SELECT a.*
FROM CTE3 a
LEFT JOIN CTE1c b
ON a.last_name = b.last_name
AND a.first_name = b.first_name
AND a.dob = b.dob
WHERE b.PAID IS NULL)
```

```
SELECT '11 Registrations with Altered Votes','01 Voters and Votes Deleted', a.paid,
b.last_name, b.first_name, b.middle_name, b.name_suffix_lbl, b.status_cd, b.county
FROM CTE4 a
JOIN [dbo].[pavoter_221226] b
ON a.PAID = b.PAID;  -- 138,291 records
```

```
/*
****************************************************************
United Sovereign Americans
Query built on MS SQL Server 2017 - v14.0.1000.169
Data Snapshot from Pennsylvania Department of State, Dated 12/26/2022 with
comparative reference snapshot dated 1/15/2024 when applicable
Legal citation/reference:
Federal Prosecution of Election Offenses, Eighth Edition, 2017
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.1.A & B
H.R. 3295-43 Help America Vote Act of 2002, Section 303 paragraph a.4
Public Law 103-31 National Voter Registration Act of 1993, Section 5 c
Public Law 103-31 National Voter Registration Act of 1993, Section 8 c.2.A
52 U.S. Code § 20701 Retention and preservation of records and papers by officers of
elections
U.S Constitution, 14th Amendment
Title 25 P.S. Pennsylvania Election Code
****************************************************************
USA-PA2-12-01-VAL-Votes_Added_in_2024

Votes Added Later
Votes added in 2024
****************************************************/
WITH CTE1a AS (SELECT *
FROM [dbo].[pavotehistory_221226]
WHERE ElectionDate = '2022-11-08')
, CTE1b AS (SELECT *
FROM [dbo].[pavotehistory_240115]
WHERE ElectionDate = '2022-11-08')
, CTE1 AS (SELECT a.PAID, a.ElectionDate, b.PAID as PreviousregID02, b.ElectionDate as
PreviousElecDate
FROM CTE1a a
FULL OUTER JOIN CTE1b b
ON a.PAID = b.PAID
AND a.ElectionDate = b.ElectionDate)
, CTE2 AS (
SELECT a.PAID, b.PAID as PreviousregID01
FROM CTE1a a
FULL OUTER JOIN CTE1b b
ON a.PAID = b.PAID)
, CTE3 AS (SELECT a.PreviousElecDate, b.paid, b.last_name, b.first_name, b.middle_name,
b.name_suffix_lbl, b.status_cd, b.county, b.dob
FROM CTE1 a
JOIN [dbo].[pavoter_240115] b
ON a.PreviousregID02 = b.paid
WHERE a.paid IS NULL)
SELECT '12 Votes moved to Registration that did not exist*','01 Votes Added in 2024',
a.paid, a.last_name, a.first_name, a.middle_name, a.name_suffix_lbl, a.status_cd,
a.county
FROM CTE3 a
LEFT JOIN [dbo].[pavoter_221226] b
ON a.last_name = b.last_name
AND a.first_name = b.first_name
AND a.dob = b.dob
WHERE b.last_name IS NULL
ORDER BY a.paid;  -- 232 - Not included in total these are later registrations that do
not exist in 12/26/2022 data set
```

End of Scorecard Queries

EXHIBIT "H"


**United Sovereign Americans**

# Pennsylvania's 2022 General Election Validity Scorecard

## ⭐ 1. Were the voter rolls accurate, as required by the National Voter Registration Act of 1993?

| Ineligible or Uncertain Registration Type | Number of Instances* |
|---|---|
| Illegal duplicates | 20,097 |
| Vote history invalid or illogical | 43,083 |
| Questionable inactive status | 10,298 |
| Voted while inactive | 194 |
| Backdated registrations | 28,256 |
| Modified date prior to registration date | 268,493 |
| Invalid or illogical registration date | 448,335 |
| Illegal or invalid registration changes | 633,508 |
| Age discrepant registrants | 4,142 |
| Registrants with questionable address | 154,913 |
| Registrations with altered votes | 1,580,750 |
| **APPARENT REGISTRATION VIOLATIONS** | **3,192,069** |

## ⭐ 2. Were the votes counted from eligible voters, as required by the US Constitution?

| Ineligible or Uncertain Registration Type that Voted in 2022 GE | Votes cast in 2022 GE* |
|---|---|
| Illegal duplicates | 8,026 |
| Vote history invalid or illogical | 15,674 |
| Questionable inactive status | 1,996 |
| Voted while inactive | 118 |
| Modified date prior to registration date | 196 |
| Invalid or illogical registration date | 340,266 |
| Illegal or invalid registration changes | 632,215 |
| Age discrepant registrants | 2,207 |
| Registrants with questionable address | 59,609 |
| Registrations with altered votes | 138,291 |
| Votes added in 2024** | 232 |
| **APPARENT VOTING VIOLATIONS:** | **1,198,598** |
| **UNIQUE VOTES IMPACTED BY APPARENT VOTING VIOLATIONS:** | **1,089,750** |

## ⭐ 3. Was the number of votes counted equal to the number of voters who voted?

| Official Source | Reported Total |
|---|---|
| Official Canvass | **Ballots counted: 5,410,022** |
| Total Votes in the Data* | **Voters who actually voted: 5,400,869** |
| **DIFFERENCE:** | **9,153 more votes counted than voters who voted** |

## ⭐ 4. Was the number of ballots in error valid according to the Help America Vote Act of 2002?

| | |
|---|---|
| Ballots with apparent voting violations in the 2022 GE | 1,089,750 |
| Allowable machine error rate is 1/10,000,000 ballot positions or 1/125,000 ballots | 44 |
| **Unresolved vote errors: Provable accuracy fails to meet any protective legal standard** | **1,089,706** |

*"Congress seeks. . . .to guard the election of members of Congress against any possible unfairness by compelling, under its pains and penalties, everyone concerned in holding the election to a strict and scrupulous observance of every duty devolved upon him while so engaged. . . . The evil intent consists in disobedience to the law." —In re Coy, 127 U.S. 731 (1888)*

*\* Extracted from an official copy of the Pennsylvania Voter database provided by Pennsylvania Department of State, dated December 26, 2022.*

*\*\* Total for 'Votes added in 2024' is not included in the Section 2 total since the votes do not exist in the 12/26/2022 PA Election data set which the scorecard is based on.*

EXHIBIT "I"

# Pennsylvania's 2022 General Election Validity Reconciliation

| GROUP | DESCRIPTION | REGISTRATIONS | 2022 GENERAL ELECTION VOTES |
|---|---|---|---|
| Eligible | Records appear valid so voters are presumed **eligible** to vote. Results can be certified. | 4,739,544 | 4,311,119 |
| Uncertain | Records contain illogical and/or invalid information, so it is **uncertain** whether voters are eligible to vote. Investigation is required before results can be certified. | 1,370,573 | 132,897 |
| Ineligible | Records appear to violate black letter election laws, so voters are presumed **ineligible** to vote. Investigation is required before results can be certified. | 1,440,667 | 956,853 |
| Deadwood* | | 1,204,674 | 0 |
| **Total** | | 8,755,458 | 5,400,869 |
| | Total Database Records/Total Votes Counted per official published tallies | 8,755,458 | 5,410,022 |
| **DIFFERENCE:** | | | 9,153 ** |

Registration Error Rate ............................................. 32%
Vote Error Rate ......................................................... 20%
Margin of Victory in PA Congressional District 7 (151,364 / 145,527) ......... 2%
Legal Standard of Allowable Error for Federal Elections*** .............. 0.0008%

United Sovereign Americans ©2024 All Rights Reserved.      05282024



**Unite4Freedom.com** ★ info@Unite4Freedom.com

# Pennsylvania's 2022 General Election Validity Reconciliation

**The measured error rate of the electoral process in Pennsylvania, from registration through certification, makes it impossible to legally certify any election in Pennsylvania.** Whether due to ignorance, arrogance or malice, the error rate simply outstrips the margins of victory. Countless unique investigations were required by law before certification could proceed. Election officials may never be able to prove that those granted the privilege of writing laws for the nation legitimately represented the will of eligible citizen voters.

The registration and voting error rates reported here represent minimums. We have ample reason for concern, after two years of careful study, that the actual error rates are higher.

## 2022 Federal Elections in which the error rate exceeded the margin of victory:

**US Senate, Pennsylvania Congressional Districts 1, 6, 8, 12, 17.**

**Every race in Pennsylvania's 2022 GE was irretrievably impacted by an error rate 10,000 times the legal standard for system accuracy.**

* "Deadwood" allows for fraudulent ballots, which can be used to stuff the ballot box." Federal Prosecution of Election Offenses, Eighth Edition, 2017, US Department of Justice Public Integrity Section, Chapter 2 Corruption of the Election Process (B)/(5)/(a), Richard C. Pilger, ed., p. 28.

** "9,153 votes counted are completely unaccounted for in the system. They are not associated with any voter.

*** "This rate is set at a sufficiently stringent level such that the likelihood of voting system errors affecting the outcome of an election is exceptionally remote even in the closest of elections." Voting System Standards, Volume I: Performance Standards, April, 2002, Federal Election Commission, United States of America. The accuracy requirement of the voting system is predicated on the voter rolls being accurate as required by the National Voter Registration Act, 1993.

**** Extracted from an official copy of the Pennsylvania Voter database provided by Pennsylvania Department of State, dated December 26, 2022.



UNITED
SOVEREIGN
AMERICANS

United Sovereign Americans ©2024 All Rights Reserved.    05282024

EXHIBIT "J"

| ScorecardLabel | County | CountyQuantity | StateQuantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 01 Illegal Duplicate Registrations | PHILADELPHIA | 5481 | 20097 | 27.2727 | 1073663 | 0.5105 |
| 01 Illegal Duplicate Registrations | ALLEGHENY | 2392 | 20097 | 11.9023 | 939491 | 0.2546 |
| 01 Illegal Duplicate Registrations | BUCKS | 1120 | 20097 | 5.573 | 482425 | 0.2322 |
| 01 Illegal Duplicate Registrations | DELAWARE | 916 | 20097 | 4.5579 | 415024 | 0.2207 |
| 01 Illegal Duplicate Registrations | MONTGOMERY | 846 | 20097 | 4.2096 | 597606 | 0.1416 |
| 01 Illegal Duplicate Registrations | DAUPHIN | 778 | 20097 | 3.8712 | 189128 | 0.4114 |
| 01 Illegal Duplicate Registrations | CHESTER | 684 | 20097 | 3.4035 | 382662 | 0.1787 |
| 01 Illegal Duplicate Registrations | LANCASTER | 608 | 20097 | 3.0253 | 343838 | 0.1768 |
| 01 Illegal Duplicate Registrations | YORK | 425 | 20097 | 2.1147 | 311457 | 0.1365 |
| 01 Illegal Duplicate Registrations | NORTHAMPTON | 397 | 20097 | 1.9754 | 216704 | 0.1832 |
| 01 Illegal Duplicate Registrations | ERIE | 333 | 20097 | 1.657 | 172630 | 0.1929 |
| 01 Illegal Duplicate Registrations | CUMBERLAND | 333 | 20097 | 1.657 | 186679 | 0.1784 |
| 01 Illegal Duplicate Registrations | WESTMORELAND | 316 | 20097 | 1.5724 | 243635 | 0.1297 |
| 01 Illegal Duplicate Registrations | LUZERNE | 303 | 20097 | 1.5077 | 194953 | 0.1554 |
| 01 Illegal Duplicate Registrations | BERKS | 293 | 20097 | 1.4579 | 258217 | 0.1135 |
| 01 Illegal Duplicate Registrations | LEHIGH | 286 | 20097 | 1.4231 | 239432 | 0.1194 |
| 01 Illegal Duplicate Registrations | WASHINGTON | 272 | 20097 | 1.3534 | 141049 | 0.1928 |
| 01 Illegal Duplicate Registrations | NORTHUMBERLAND | 255 | 20097 | 1.2688 | 58661 | 0.4347 |
| 01 Illegal Duplicate Registrations | BUTLER | 246 | 20097 | 1.2241 | 136301 | 0.1805 |
| 01 Illegal Duplicate Registrations | INDIANA | 245 | 20097 | 1.2191 | 44041 | 0.5563 |
| 01 Illegal Duplicate Registrations | CAMBRIA | 186 | 20097 | 0.9255 | 86070 | 0.2161 |
| 01 Illegal Duplicate Registrations | CRAWFORD | 182 | 20097 | 0.9056 | 52093 | 0.3494 |
| 01 Illegal Duplicate Registrations | BEAVER | 175 | 20097 | 0.8708 | 111043 | 0.1576 |
| 01 Illegal Duplicate Registrations | LACKAWANNA | 171 | 20097 | 0.8509 | 141573 | 0.1208 |
| 01 Illegal Duplicate Registrations | CENTRE | 167 | 20097 | 0.831 | 99841 | 0.1673 |
| 01 Illegal Duplicate Registrations | UNION | 165 | 20097 | 0.821 | 26285 | 0.6277 |
| 01 Illegal Duplicate Registrations | ARMSTRONG | 159 | 20097 | 0.7912 | 40369 | 0.3939 |
| 01 Illegal Duplicate Registrations | MONROE | 142 | 20097 | 0.7066 | 110487 | 0.1285 |
| 01 Illegal Duplicate Registrations | MONTOUR | 120 | 20097 | 0.5971 | 12318 | 0.9742 |
| 01 Illegal Duplicate Registrations | MERCER | 118 | 20097 | 0.5872 | 72358 | 0.1631 |
| 01 Illegal Duplicate Registrations | ADAMS | 113 | 20097 | 0.5623 | 70225 | 0.1609 |
| 01 Illegal Duplicate Registrations | BLAIR | 109 | 20097 | 0.5424 | 78217 | 0.1394 |
| 01 Illegal Duplicate Registrations | SCHUYLKILL | 104 | 20097 | 0.5175 | 88640 | 0.1173 |
| 01 Illegal Duplicate Registrations | SUSQUEHANNA | 103 | 20097 | 0.5125 | 26993 | 0.3816 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 01 Illegal Duplicate Registrations | FAYETTE | 99 | 20097 | 0.4926 | 79473 | 0.1246 |
| 01 Illegal Duplicate Registrations | LAWRENCE | 93 | 20097 | 0.4628 | 56442 | 0.1648 |
| 01 Illegal Duplicate Registrations | LEBANON | 93 | 20097 | 0.4628 | 91681 | 0.1014 |
| 01 Illegal Duplicate Registrations | PIKE | 92 | 20097 | 0.4578 | 43274 | 0.2126 |
| 01 Illegal Duplicate Registrations | LYCOMING | 91 | 20097 | 0.4528 | 69876 | 0.1302 |
| 01 Illegal Duplicate Registrations | FRANKLIN | 86 | 20097 | 0.4279 | 100048 | 0.086 |
| 01 Illegal Duplicate Registrations | SOMERSET | 83 | 20097 | 0.413 | 48708 | 0.1704 |
| 01 Illegal Duplicate Registrations | JEFFERSON | 80 | 20097 | 0.3981 | 27275 | 0.2933 |
| 01 Illegal Duplicate Registrations | CLEARFIELD | 77 | 20097 | 0.3831 | 47420 | 0.1624 |
| 01 Illegal Duplicate Registrations | COLUMBIA | 66 | 20097 | 0.3284 | 39249 | 0.1682 |
| 01 Illegal Duplicate Registrations | SNYDER | 64 | 20097 | 0.3185 | 22716 | 0.2817 |
| 01 Illegal Duplicate Registrations | MIFFLIN | 62 | 20097 | 0.3085 | 26653 | 0.2326 |
| 01 Illegal Duplicate Registrations | HUNTINGDON | 62 | 20097 | 0.3085 | 28426 | 0.2181 |
| 01 Illegal Duplicate Registrations | PERRY | 59 | 20097 | 0.2936 | 29959 | 0.1969 |
| 01 Illegal Duplicate Registrations | VENANGO | 55 | 20097 | 0.2737 | 31730 | 0.1733 |
| 01 Illegal Duplicate Registrations | WARREN | 46 | 20097 | 0.2289 | 25507 | 0.1803 |
| 01 Illegal Duplicate Registrations | BEDFORD | 42 | 20097 | 0.209 | 32976 | 0.1274 |
| 01 Illegal Duplicate Registrations | CARBON | 41 | 20097 | 0.204 | 42326 | 0.0969 |
| 01 Illegal Duplicate Registrations | TIOGA | 36 | 20097 | 0.1791 | 25568 | 0.1408 |
| 01 Illegal Duplicate Registrations | WAYNE | 36 | 20097 | 0.1791 | 34607 | 0.104 |
| 01 Illegal Duplicate Registrations | BRADFORD | 35 | 20097 | 0.1742 | 35054 | 0.0998 |
| 01 Illegal Duplicate Registrations | CLINTON | 29 | 20097 | 0.1443 | 21968 | 0.132 |
| 01 Illegal Duplicate Registrations | CLARION | 26 | 20097 | 0.1294 | 23332 | 0.1114 |
| 01 Illegal Duplicate Registrations | WYOMING | 21 | 20097 | 0.1045 | 17602 | 0.1193 |
| 01 Illegal Duplicate Registrations | McKEAN | 17 | 20097 | 0.0846 | 24252 | 0.0701 |
| 01 Illegal Duplicate Registrations | GREENE | 13 | 20097 | 0.0647 | 21402 | 0.0607 |
| 01 Illegal Duplicate Registrations | FOREST | 12 | 20097 | 0.0597 | 3328 | 0.3606 |
| 01 Illegal Duplicate Registrations | FULTON | 10 | 20097 | 0.0498 | 9147 | 0.1093 |
| 01 Illegal Duplicate Registrations | JUNIATA | 8 | 20097 | 0.0398 | 13796 | 0.058 |
| 01 Illegal Duplicate Registrations | ELK | 8 | 20097 | 0.0398 | 19841 | 0.0403 |
| 01 Illegal Duplicate Registrations | CAMERON | 4 | 20097 | 0.0199 | 2906 | 0.1376 |
| 01 Illegal Duplicate Registrations | SULLIVAN | 4 | 20097 | 0.0199 | 4359 | 0.0918 |
| 01 Illegal Duplicate Registrations | POTTER | 4 | 20097 | 0.0199 | 10449 | 0.0383 |

| ScorecardLabel | County | CountyQuantity | StateQuantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 02 Vote History Invalid or Illogical | PHILADELPHIA | 12013 | 43083 | 27.8834 | 1073663 | 1.1189 |
| 02 Vote History Invalid or Illogical | MONTGOMERY | 3235 | 43083 | 7.5088 | 597606 | 0.5413 |
| 02 Vote History Invalid or Illogical | NORTHAMPTON | 3168 | 43083 | 7.3532 | 216704 | 1.4619 |
| 02 Vote History Invalid or Illogical | ALLEGHENY | 1817 | 43083 | 4.2174 | 939491 | 0.1934 |
| 02 Vote History Invalid or Illogical | CHESTER | 1759 | 43083 | 4.0828 | 382662 | 0.4597 |
| 02 Vote History Invalid or Illogical | BUCKS | 1756 | 43083 | 4.0759 | 482425 | 0.364 |
| 02 Vote History Invalid or Illogical | YORK | 1744 | 43083 | 4.048 | 311457 | 0.5599 |
| 02 Vote History Invalid or Illogical | DELAWARE | 1622 | 43083 | 3.7648 | 415024 | 0.3908 |
| 02 Vote History Invalid or Illogical | LAWRENCE | 1486 | 43083 | 3.4492 | 56442 | 2.6328 |
| 02 Vote History Invalid or Illogical | LANCASTER | 1065 | 43083 | 2.472 | 343838 | 0.3097 |
| 02 Vote History Invalid or Illogical | LEHIGH | 1051 | 43083 | 2.4395 | 239432 | 0.439 |
| 02 Vote History Invalid or Illogical | DAUPHIN | 848 | 43083 | 1.9683 | 189128 | 0.4484 |
| 02 Vote History Invalid or Illogical | CUMBERLAND | 815 | 43083 | 1.8917 | 186679 | 0.4366 |
| 02 Vote History Invalid or Illogical | WESTMORELAND | 777 | 43083 | 1.8035 | 243635 | 0.3189 |
| 02 Vote History Invalid or Illogical | BERKS | 685 | 43083 | 1.59 | 258217 | 0.2653 |
| 02 Vote History Invalid or Illogical | WASHINGTON | 623 | 43083 | 1.446 | 141049 | 0.4417 |
| 02 Vote History Invalid or Illogical | BUTLER | 486 | 43083 | 1.1281 | 136301 | 0.3566 |
| 02 Vote History Invalid or Illogical | CENTRE | 437 | 43083 | 1.0143 | 99841 | 0.4377 |
| 02 Vote History Invalid or Illogical | LUZERNE | 423 | 43083 | 0.9818 | 194953 | 0.217 |
| 02 Vote History Invalid or Illogical | LACKAWANNA | 418 | 43083 | 0.9702 | 141573 | 0.2953 |
| 02 Vote History Invalid or Illogical | FAYETTE | 407 | 43083 | 0.9447 | 79473 | 0.5121 |
| 02 Vote History Invalid or Illogical | ERIE | 367 | 43083 | 0.8518 | 172630 | 0.2126 |
| 02 Vote History Invalid or Illogical | LEBANON | 365 | 43083 | 0.8472 | 91681 | 0.3981 |
| 02 Vote History Invalid or Illogical | BEAVER | 361 | 43083 | 0.8379 | 111043 | 0.3251 |
| 02 Vote History Invalid or Illogical | FRANKLIN | 291 | 43083 | 0.6754 | 100048 | 0.2909 |
| 02 Vote History Invalid or Illogical | BLAIR | 269 | 43083 | 0.6244 | 78217 | 0.3439 |
| 02 Vote History Invalid or Illogical | CAMBRIA | 265 | 43083 | 0.6151 | 86070 | 0.3079 |
| 02 Vote History Invalid or Illogical | MONROE | 263 | 43083 | 0.6104 | 110487 | 0.238 |
| 02 Vote History Invalid or Illogical | ADAMS | 259 | 43083 | 0.6012 | 70225 | 0.3688 |
| 02 Vote History Invalid or Illogical | NORTHUMBERLAND | 238 | 43083 | 0.5524 | 58661 | 0.4057 |
| 02 Vote History Invalid or Illogical | SCHUYLKILL | 221 | 43083 | 0.513 | 88640 | 0.2493 |
| 02 Vote History Invalid or Illogical | MERCER | 214 | 43083 | 0.4967 | 72358 | 0.2958 |

| | | | | | |
|---|---|---|---|---|---|
| 02 Vote History Invalid or Illogical | CRAWFORD | 208 | 43083 | 0.4828 | 52093 | 0.3993 |
| 02 Vote History Invalid or Illogical | LYCOMING | 207 | 43083 | 0.4805 | 69876 | 0.2962 |
| 02 Vote History Invalid or Illogical | CLEARFIELD | 179 | 43083 | 0.4155 | 47420 | 0.3775 |
| 02 Vote History Invalid or Illogical | CARBON | 169 | 43083 | 0.3923 | 42326 | 0.3993 |
| 02 Vote History Invalid or Illogical | COLUMBIA | 163 | 43083 | 0.3783 | 39249 | 0.4153 |
| 02 Vote History Invalid or Illogical | INDIANA | 157 | 43083 | 0.3644 | 44041 | 0.3565 |
| 02 Vote History Invalid or Illogical | VENANGO | 154 | 43083 | 0.3574 | 31730 | 0.4853 |
| 02 Vote History Invalid or Illogical | ARMSTRONG | 151 | 43083 | 0.3505 | 40369 | 0.374 |
| 02 Vote History Invalid or Illogical | MIFFLIN | 138 | 43083 | 0.3203 | 26653 | 0.5178 |
| 02 Vote History Invalid or Illogical | CLARION | 137 | 43083 | 0.318 | 23332 | 0.5872 |
| 02 Vote History Invalid or Illogical | PIKE | 122 | 43083 | 0.2832 | 43274 | 0.2819 |
| 02 Vote History Invalid or Illogical | SOMERSET | 118 | 43083 | 0.2739 | 48708 | 0.2423 |
| 02 Vote History Invalid or Illogical | PERRY | 115 | 43083 | 0.2669 | 29959 | 0.3839 |
| 02 Vote History Invalid or Illogical | WAYNE | 97 | 43083 | 0.2251 | 34607 | 0.2803 |
| 02 Vote History Invalid or Illogical | TIOGA | 90 | 43083 | 0.2089 | 25568 | 0.352 |
| 02 Vote History Invalid or Illogical | JEFFERSON | 90 | 43083 | 0.2089 | 27275 | 0.33 |
| 02 Vote History Invalid or Illogical | BRADFORD | 89 | 43083 | 0.2066 | 35054 | 0.2539 |
| 02 Vote History Invalid or Illogical | HUNTINGDON | 86 | 43083 | 0.1996 | 28426 | 0.3025 |
| 02 Vote History Invalid or Illogical | SUSQUEHANNA | 84 | 43083 | 0.195 | 26993 | 0.3112 |
| 02 Vote History Invalid or Illogical | BEDFORD | 79 | 43083 | 0.1834 | 32976 | 0.2396 |
| 02 Vote History Invalid or Illogical | McKEAN | 76 | 43083 | 0.1764 | 24252 | 0.3134 |
| 02 Vote History Invalid or Illogical | SNYDER | 73 | 43083 | 0.1694 | 22716 | 0.3214 |
| 02 Vote History Invalid or Illogical | WARREN | 71 | 43083 | 0.1648 | 25507 | 0.2784 |
| 02 Vote History Invalid or Illogical | CLINTON | 70 | 43083 | 0.1625 | 21968 | 0.3186 |
| 02 Vote History Invalid or Illogical | UNION | 65 | 43083 | 0.1509 | 26285 | 0.2473 |
| 02 Vote History Invalid or Illogical | MONTOUR | 61 | 43083 | 0.1416 | 12318 | 0.4952 |
| 02 Vote History Invalid or Illogical | GREENE | 57 | 43083 | 0.1323 | 21402 | 0.2663 |
| 02 Vote History Invalid or Illogical | ELK | 50 | 43083 | 0.1161 | 19841 | 0.252 |
| 02 Vote History Invalid or Illogical | WYOMING | 48 | 43083 | 0.1114 | 17602 | 0.2727 |
| 02 Vote History Invalid or Illogical | JUNIATA | 42 | 43083 | 0.0975 | 13796 | 0.3044 |
| 02 Vote History Invalid or Illogical | POTTER | 29 | 43083 | 0.0673 | 10449 | 0.2775 |
| 02 Vote History Invalid or Illogical | FULTON | 24 | 43083 | 0.0557 | 9147 | 0.2624 |
| 02 Vote History Invalid or Illogical | SULLIVAN | 17 | 43083 | 0.0395 | 4359 | 0.39 |

| | | | | | |
|---|---|---|---|---|---|
| 02 Vote History Invalid or Illogical | FOREST | 13 | 43083 | 0.0302 | 3328 | 0.3906 |
| 02 Vote History Invalid or Illogical | CAMERON | 6 | 43083 | 0.0139 | 2906 | 0.2065 |

| ScorecardLabel | County | CountyQuantity | StateQuantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 03 Questionable inactive status | VENANGO | 1005 | 10298 | 9.7592 | 31730 | 3.1673 |
| 03 Questionable inactive status | CHESTER | 795 | 10298 | 7.7199 | 382662 | 0.2078 |
| 03 Questionable inactive status | ALLEGHENY | 779 | 10298 | 7.5646 | 939491 | 0.0829 |
| 03 Questionable inactive status | MONTGOMERY | 747 | 10298 | 7.2538 | 597606 | 0.125 |
| 03 Questionable inactive status | YORK | 686 | 10298 | 6.6615 | 311457 | 0.2203 |
| 03 Questionable inactive status | DELAWARE | 500 | 10298 | 4.8553 | 415024 | 0.1205 |
| 03 Questionable inactive status | PHILADELPHIA | 441 | 10298 | 4.2824 | 1073663 | 0.0411 |
| 03 Questionable inactive status | CUMBERLAND | 426 | 10298 | 4.1367 | 186679 | 0.2282 |
| 03 Questionable inactive status | BERKS | 411 | 10298 | 3.9911 | 258217 | 0.1592 |
| 03 Questionable inactive status | DAUPHIN | 389 | 10298 | 3.7774 | 189128 | 0.2057 |
| 03 Questionable inactive status | ERIE | 307 | 10298 | 2.9812 | 172630 | 0.1778 |
| 03 Questionable inactive status | BEAVER | 276 | 10298 | 2.6801 | 111043 | 0.2486 |
| 03 Questionable inactive status | LEHIGH | 264 | 10298 | 2.5636 | 239432 | 0.1103 |
| 03 Questionable inactive status | BUCKS | 257 | 10298 | 2.4956 | 482425 | 0.0533 |
| 03 Questionable inactive status | LANCASTER | 235 | 10298 | 2.282 | 343838 | 0.0683 |
| 03 Questionable inactive status | CRAWFORD | 211 | 10298 | 2.0489 | 52093 | 0.405 |
| 03 Questionable inactive status | MONROE | 210 | 10298 | 2.0392 | 110487 | 0.1901 |
| 03 Questionable inactive status | WASHINGTON | 209 | 10298 | 2.0295 | 141049 | 0.1482 |
| 03 Questionable inactive status | NORTHAMPTON | 148 | 10298 | 1.4372 | 216704 | 0.0683 |
| 03 Questionable inactive status | NORTHUMBERLAND | 120 | 10298 | 1.1653 | 58661 | 0.2046 |
| 03 Questionable inactive status | ADAMS | 119 | 10298 | 1.1556 | 70225 | 0.1695 |
| 03 Questionable inactive status | WESTMORELAND | 114 | 10298 | 1.107 | 243635 | 0.0468 |
| 03 Questionable inactive status | FRANKLIN | 93 | 10298 | 0.9031 | 100048 | 0.093 |
| 03 Questionable inactive status | LACKAWANNA | 92 | 10298 | 0.8934 | 141573 | 0.065 |
| 03 Questionable inactive status | FAYETTE | 88 | 10298 | 0.8545 | 79473 | 0.1107 |
| 03 Questionable inactive status | CENTRE | 85 | 10298 | 0.8254 | 99841 | 0.0851 |
| 03 Questionable inactive status | PIKE | 79 | 10298 | 0.7671 | 43274 | 0.1826 |
| 03 Questionable inactive status | CAMBRIA | 73 | 10298 | 0.7089 | 86070 | 0.0848 |
| 03 Questionable inactive status | LYCOMING | 70 | 10298 | 0.6797 | 69876 | 0.1002 |
| 03 Questionable inactive status | BUTLER | 69 | 10298 | 0.67 | 136301 | 0.0506 |
| 03 Questionable inactive status | LUZERNE | 61 | 10298 | 0.5923 | 194953 | 0.0313 |
| 03 Questionable inactive status | BLAIR | 58 | 10298 | 0.5632 | 78217 | 0.0742 |

| | | | | | |
|---|---|---|---|---|---|
| 03 Questionable inactive status | BRADFORD | 57 | 10298 | 0.5535 | 35054 | 0.1626 |
| 03 Questionable inactive status | CARBON | 56 | 10298 | 0.5438 | 42326 | 0.1323 |
| 03 Questionable inactive status | SOMERSET | 56 | 10298 | 0.5438 | 48708 | 0.115 |
| 03 Questionable inactive status | WAYNE | 54 | 10298 | 0.5244 | 34607 | 0.156 |
| 03 Questionable inactive status | UNION | 52 | 10298 | 0.505 | 26285 | 0.1978 |
| 03 Questionable inactive status | MERCER | 45 | 10298 | 0.437 | 72358 | 0.0622 |
| 03 Questionable inactive status | COLUMBIA | 43 | 10298 | 0.4176 | 39249 | 0.1096 |
| 03 Questionable inactive status | BEDFORD | 42 | 10298 | 0.4078 | 32976 | 0.1274 |
| 03 Questionable inactive status | WARREN | 41 | 10298 | 0.3981 | 25507 | 0.1607 |
| 03 Questionable inactive status | GREENE | 40 | 10298 | 0.3884 | 21402 | 0.1869 |
| 03 Questionable inactive status | SCHUYLKILL | 39 | 10298 | 0.3787 | 88640 | 0.044 |
| 03 Questionable inactive status | HUNTINGDON | 37 | 10298 | 0.3593 | 28426 | 0.1302 |
| 03 Questionable inactive status | TIOGA | 34 | 10298 | 0.3302 | 25568 | 0.133 |
| 03 Questionable inactive status | WYOMING | 29 | 10298 | 0.2816 | 17602 | 0.1648 |
| 03 Questionable inactive status | McKEAN | 29 | 10298 | 0.2816 | 24252 | 0.1196 |
| 03 Questionable inactive status | PERRY | 28 | 10298 | 0.2719 | 29959 | 0.0935 |
| 03 Questionable inactive status | LEBANON | 28 | 10298 | 0.2719 | 91681 | 0.0305 |
| 03 Questionable inactive status | CLEARFIELD | 21 | 10298 | 0.2039 | 47420 | 0.0443 |
| 03 Questionable inactive status | CLARION | 20 | 10298 | 0.1942 | 23332 | 0.0857 |
| 03 Questionable inactive status | LAWRENCE | 20 | 10298 | 0.1942 | 56442 | 0.0354 |
| 03 Questionable inactive status | MIFFLIN | 19 | 10298 | 0.1845 | 26653 | 0.0713 |
| 03 Questionable inactive status | SUSQUEHANNA | 17 | 10298 | 0.1651 | 26993 | 0.063 |
| 03 Questionable inactive status | CLINTON | 13 | 10298 | 0.1262 | 21968 | 0.0592 |
| 03 Questionable inactive status | SULLIVAN | 12 | 10298 | 0.1165 | 4359 | 0.2753 |
| 03 Questionable inactive status | MONTOUR | 12 | 10298 | 0.1165 | 12318 | 0.0974 |
| 03 Questionable inactive status | JUNIATA | 11 | 10298 | 0.1068 | 13796 | 0.0797 |
| 03 Questionable inactive status | ELK | 9 | 10298 | 0.0874 | 19841 | 0.0454 |
| 03 Questionable inactive status | INDIANA | 7 | 10298 | 0.068 | 44041 | 0.0159 |
| 03 Questionable inactive status | JEFFERSON | 6 | 10298 | 0.0583 | 27275 | 0.022 |
| 03 Questionable inactive status | SNYDER | 3 | 10298 | 0.0291 | 22716 | 0.0132 |
| 03 Questionable inactive status | CAMERON | 1 | 10298 | 0.0097 | 2906 | 0.0344 |

| ScorecardLabel | County | CountyQuantity | StateQuantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 04 Voted while Inactive | ALLEGHENY | 71 | 194 | 36.5979 | 939491 | 0.0076 |
| 04 Voted while Inactive | CUMBERLAND | 47 | 194 | 24.2268 | 186679 | 0.0252 |
| 04 Voted while Inactive | YORK | 21 | 194 | 10.8247 | 311457 | 0.0067 |
| 04 Voted while Inactive | LEHIGH | 12 | 194 | 6.1856 | 239432 | 0.005 |
| 04 Voted while Inactive | LANCASTER | 10 | 194 | 5.1546 | 343838 | 0.0029 |
| 04 Voted while Inactive | BUCKS | 7 | 194 | 3.6082 | 482425 | 0.0015 |
| 04 Voted while Inactive | PHILADELPHIA | 4 | 194 | 2.0619 | 1073663 | 0.0004 |
| 04 Voted while Inactive | LACKAWANNA | 3 | 194 | 1.5464 | 141573 | 0.0021 |
| 04 Voted while Inactive | WASHINGTON | 3 | 194 | 1.5464 | 141049 | 0.0021 |
| 04 Voted while Inactive | BERKS | 3 | 194 | 1.5464 | 258217 | 0.0012 |
| 04 Voted while Inactive | NORTHUMBERLAND | 2 | 194 | 1.0309 | 58661 | 0.0034 |
| 04 Voted while Inactive | ERIE | 2 | 194 | 1.0309 | 172630 | 0.0012 |
| 04 Voted while Inactive | DELAWARE | 2 | 194 | 1.0309 | 415024 | 0.0005 |
| 04 Voted while Inactive | MONTOUR | 1 | 194 | 0.5155 | 12318 | 0.0081 |
| 04 Voted while Inactive | CARBON | 1 | 194 | 0.5155 | 42326 | 0.0024 |
| 04 Voted while Inactive | FAYETTE | 1 | 194 | 0.5155 | 79473 | 0.0013 |
| 04 Voted while Inactive | CAMBRIA | 1 | 194 | 0.5155 | 86070 | 0.0012 |
| 04 Voted while Inactive | BEAVER | 1 | 194 | 0.5155 | 111043 | 0.0009 |
| 04 Voted while Inactive | WESTMORELAND | 1 | 194 | 0.5155 | 243635 | 0.0004 |
| 04 Voted while Inactive | CHESTER | 1 | 194 | 0.5155 | 382662 | 0.0003 |

| ScorecardLabel | County | CountyQuantity | StateQuantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 05 Backdated Registrations | INDIANA | 4168 | 28256 | 14.7508 | 44041 | 9.4639 |
| 05 Backdated Registrations | MONTGOMERY | 1858 | 28256 | 6.5756 | 597606 | 0.3109 |
| 05 Backdated Registrations | ARMSTRONG | 1762 | 28256 | 6.2358 | 40369 | 4.3647 |
| 05 Backdated Registrations | ALLEGHENY | 1646 | 28256 | 5.8253 | 939491 | 0.1752 |
| 05 Backdated Registrations | BRADFORD | 1551 | 28256 | 5.4891 | 35054 | 4.4246 |
| 05 Backdated Registrations | CHESTER | 1424 | 28256 | 5.0396 | 382662 | 0.3721 |
| 05 Backdated Registrations | BUCKS | 1374 | 28256 | 4.8627 | 482425 | 0.2848 |
| 05 Backdated Registrations | BERKS | 1281 | 28256 | 4.5336 | 258217 | 0.4961 |
| 05 Backdated Registrations | YORK | 1162 | 28256 | 4.1124 | 311457 | 0.3731 |
| 05 Backdated Registrations | LEHIGH | 1108 | 28256 | 3.9213 | 239432 | 0.4628 |
| 05 Backdated Registrations | DAUPHIN | 985 | 28256 | 3.486 | 189128 | 0.5208 |
| 05 Backdated Registrations | PHILADELPHIA | 797 | 28256 | 2.8206 | 1073663 | 0.0742 |
| 05 Backdated Registrations | WESTMORELAND | 765 | 28256 | 2.7074 | 243635 | 0.314 |
| 05 Backdated Registrations | ERIE | 661 | 28256 | 2.3393 | 172630 | 0.3829 |
| 05 Backdated Registrations | CUMBERLAND | 566 | 28256 | 2.0031 | 186679 | 0.3032 |
| 05 Backdated Registrations | LANCASTER | 511 | 28256 | 1.8085 | 343838 | 0.1486 |
| 05 Backdated Registrations | LUZERNE | 482 | 28256 | 1.7058 | 194953 | 0.2472 |
| 05 Backdated Registrations | BEAVER | 463 | 28256 | 1.6386 | 111043 | 0.417 |
| 05 Backdated Registrations | SCHUYLKILL | 432 | 28256 | 1.5289 | 88640 | 0.4874 |
| 05 Backdated Registrations | POTTER | 396 | 28256 | 1.4015 | 10449 | 3.7898 |
| 05 Backdated Registrations | LACKAWANNA | 378 | 28256 | 1.3378 | 141573 | 0.267 |
| 05 Backdated Registrations | MERCER | 356 | 28256 | 1.2599 | 72358 | 0.492 |
| 05 Backdated Registrations | BUTLER | 324 | 28256 | 1.1467 | 136301 | 0.2377 |
| 05 Backdated Registrations | FAYETTE | 318 | 28256 | 1.1254 | 79473 | 0.4001 |
| 05 Backdated Registrations | NORTHAMPTON | 280 | 28256 | 0.9909 | 216704 | 0.1292 |
| 05 Backdated Registrations | MONROE | 279 | 28256 | 0.9874 | 110487 | 0.2525 |
| 05 Backdated Registrations | CENTRE | 276 | 28256 | 0.9768 | 99841 | 0.2764 |
| 05 Backdated Registrations | LYCOMING | 274 | 28256 | 0.9697 | 69876 | 0.3921 |
| 05 Backdated Registrations | CAMBRIA | 270 | 28256 | 0.9555 | 86070 | 0.3137 |
| 05 Backdated Registrations | PIKE | 155 | 28256 | 0.5486 | 43274 | 0.3582 |
| 05 Backdated Registrations | FRANKLIN | 149 | 28256 | 0.5273 | 100048 | 0.1489 |
| 05 Backdated Registrations | LEBANON | 136 | 28256 | 0.4813 | 91681 | 0.1483 |

| | | | | | |
|---|---|---|---|---|---|
| 05 Backdated Registrations | DELAWARE | 125 | 28256 | 0.4424 | 415024 | 0.0301 |
| 05 Backdated Registrations | WAYNE | 121 | 28256 | 0.4282 | 34607 | 0.3496 |
| 05 Backdated Registrations | CARBON | 114 | 28256 | 0.4035 | 42326 | 0.2693 |
| 05 Backdated Registrations | CLARION | 113 | 28256 | 0.3999 | 23332 | 0.4843 |
| 05 Backdated Registrations | PERRY | 110 | 28256 | 0.3893 | 29959 | 0.3672 |
| 05 Backdated Registrations | BLAIR | 98 | 28256 | 0.3468 | 78217 | 0.1253 |
| 05 Backdated Registrations | SOMERSET | 90 | 28256 | 0.3185 | 48708 | 0.1848 |
| 05 Backdated Registrations | SNYDER | 87 | 28256 | 0.3079 | 22716 | 0.383 |
| 05 Backdated Registrations | MIFFLIN | 80 | 28256 | 0.2831 | 26653 | 0.3002 |
| 05 Backdated Registrations | WYOMING | 67 | 28256 | 0.2371 | 17602 | 0.3806 |
| 05 Backdated Registrations | COLUMBIA | 57 | 28256 | 0.2017 | 39249 | 0.1452 |
| 05 Backdated Registrations | SUSQUEHANNA | 55 | 28256 | 0.1946 | 26993 | 0.2038 |
| 05 Backdated Registrations | WASHINGTON | 54 | 28256 | 0.1911 | 141049 | 0.0383 |
| 05 Backdated Registrations | WARREN | 46 | 28256 | 0.1628 | 25507 | 0.1803 |
| 05 Backdated Registrations | BEDFORD | 44 | 28256 | 0.1557 | 32976 | 0.1334 |
| 05 Backdated Registrations | CRAWFORD | 39 | 28256 | 0.138 | 52093 | 0.0749 |
| 05 Backdated Registrations | NORTHUMBERLAND | 36 | 28256 | 0.1274 | 58661 | 0.0614 |
| 05 Backdated Registrations | GREENE | 32 | 28256 | 0.1133 | 21402 | 0.1495 |
| 05 Backdated Registrations | CLEARFIELD | 32 | 28256 | 0.1133 | 47420 | 0.0675 |
| 05 Backdated Registrations | JEFFERSON | 30 | 28256 | 0.1062 | 27275 | 0.11 |
| 05 Backdated Registrations | VENANGO | 30 | 28256 | 0.1062 | 31730 | 0.0945 |
| 05 Backdated Registrations | CLINTON | 26 | 28256 | 0.092 | 21968 | 0.1184 |
| 05 Backdated Registrations | MONTOUR | 25 | 28256 | 0.0885 | 12318 | 0.203 |
| 05 Backdated Registrations | ADAMS | 25 | 28256 | 0.0885 | 70225 | 0.0356 |
| 05 Backdated Registrations | TIOGA | 21 | 28256 | 0.0743 | 25568 | 0.0821 |
| 05 Backdated Registrations | HUNTINGDON | 20 | 28256 | 0.0708 | 28426 | 0.0704 |
| 05 Backdated Registrations | CAMERON | 13 | 28256 | 0.046 | 2906 | 0.4474 |
| 05 Backdated Registrations | McKEAN | 13 | 28256 | 0.046 | 24252 | 0.0536 |
| 05 Backdated Registrations | LAWRENCE | 13 | 28256 | 0.046 | 56442 | 0.023 |
| 05 Backdated Registrations | SULLIVAN | 11 | 28256 | 0.0389 | 4359 | 0.2524 |
| 05 Backdated Registrations | FULTON | 10 | 28256 | 0.0354 | 9147 | 0.1093 |
| 05 Backdated Registrations | UNION | 10 | 28256 | 0.0354 | 26285 | 0.038 |
| 05 Backdated Registrations | JUNIATA | 8 | 28256 | 0.0283 | 13796 | 0.058 |

| | | | | | |
|---|---|---|---|---|---|
| 05 Backdated Registrations | ELK | 8 | 28256 | 0.0283 | 19841 | 0.0403 |
| 05 Backdated Registrations | FOREST | 6 | 28256 | 0.0212 | 3328 | 0.1803 |

| ScorecardLabel | County | CountyQuantity | StateQuantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 06 Modified Date Prior to Registration Date | PHILADELPHIA | 58374 | 268493 | 21.7413 | 1073663 | 5.4369 |
| 06 Modified Date Prior to Registration Date | ALLEGHENY | 34210 | 268493 | 12.7415 | 939491 | 3.6413 |
| 06 Modified Date Prior to Registration Date | DELAWARE | 13803 | 268493 | 5.1409 | 415024 | 3.3258 |
| 06 Modified Date Prior to Registration Date | BUCKS | 12854 | 268493 | 4.7875 | 482425 | 2.6645 |
| 06 Modified Date Prior to Registration Date | CHESTER | 9716 | 268493 | 3.6187 | 382662 | 2.5391 |
| 06 Modified Date Prior to Registration Date | MONTGOMERY | 8983 | 268493 | 3.3457 | 597606 | 1.5032 |
| 06 Modified Date Prior to Registration Date | YORK | 8464 | 268493 | 3.1524 | 311457 | 2.7176 |
| 06 Modified Date Prior to Registration Date | LANCASTER | 8012 | 268493 | 2.9841 | 343838 | 2.3302 |
| 06 Modified Date Prior to Registration Date | LEHIGH | 7896 | 268493 | 2.9409 | 239432 | 3.2978 |
| 06 Modified Date Prior to Registration Date | NORTHAMPTON | 6633 | 268493 | 2.4705 | 216704 | 3.0609 |
| 06 Modified Date Prior to Registration Date | CUMBERLAND | 6304 | 268493 | 2.3479 | 186679 | 3.3769 |
| 06 Modified Date Prior to Registration Date | BERKS | 6083 | 268493 | 2.2656 | 258217 | 2.3558 |
| 06 Modified Date Prior to Registration Date | LUZERNE | 6023 | 268493 | 2.2433 | 194953 | 3.0895 |
| 06 Modified Date Prior to Registration Date | ERIE | 5124 | 268493 | 1.9084 | 172630 | 2.9682 |
| 06 Modified Date Prior to Registration Date | MONROE | 4859 | 268493 | 1.8097 | 110487 | 4.3978 |
| 06 Modified Date Prior to Registration Date | DAUPHIN | 4850 | 268493 | 1.8064 | 189128 | 2.5644 |
| 06 Modified Date Prior to Registration Date | CENTRE | 3768 | 268493 | 1.4034 | 99841 | 3.774 |
| 06 Modified Date Prior to Registration Date | FRANKLIN | 3577 | 268493 | 1.3323 | 100048 | 3.5753 |
| 06 Modified Date Prior to Registration Date | LACKAWANNA | 3549 | 268493 | 1.3218 | 141573 | 2.5068 |
| 06 Modified Date Prior to Registration Date | WESTMORELAND | 3505 | 268493 | 1.3054 | 243635 | 1.4386 |
| 06 Modified Date Prior to Registration Date | BUTLER | 3089 | 268493 | 1.1505 | 136301 | 2.2663 |
| 06 Modified Date Prior to Registration Date | LEBANON | 2945 | 268493 | 1.0969 | 91681 | 3.2122 |
| 06 Modified Date Prior to Registration Date | WASHINGTON | 2842 | 268493 | 1.0585 | 141049 | 2.0149 |
| 06 Modified Date Prior to Registration Date | ADAMS | 2559 | 268493 | 0.9531 | 70225 | 3.644 |
| 06 Modified Date Prior to Registration Date | NORTHUMBERLAND | 2494 | 268493 | 0.9289 | 58661 | 4.2515 |
| 06 Modified Date Prior to Registration Date | FAYETTE | 2306 | 268493 | 0.8589 | 79473 | 2.9016 |
| 06 Modified Date Prior to Registration Date | CAMBRIA | 2153 | 268493 | 0.8019 | 86070 | 2.5015 |
| 06 Modified Date Prior to Registration Date | SCHUYLKILL | 2068 | 268493 | 0.7702 | 88640 | 2.333 |
| 06 Modified Date Prior to Registration Date | BEAVER | 1986 | 268493 | 0.7397 | 111043 | 1.7885 |
| 06 Modified Date Prior to Registration Date | BLAIR | 1903 | 268493 | 0.7088 | 78217 | 2.433 |
| 06 Modified Date Prior to Registration Date | LAWRENCE | 1855 | 268493 | 0.6909 | 56442 | 3.2866 |
| 06 Modified Date Prior to Registration Date | PIKE | 1803 | 268493 | 0.6715 | 43274 | 4.1665 |

| | | | | | |
|---|---|---|---|---|---|
| 06 Modified Date Prior to Registration Date  MERCER | 1729 | 268493 | 0.644 | 72358 | 2.3895 |
| 06 Modified Date Prior to Registration Date  COLUMBIA | 1597 | 268493 | 0.5948 | 39249 | 4.0689 |
| 06 Modified Date Prior to Registration Date  CRAWFORD | 1432 | 268493 | 0.5333 | 52093 | 2.7489 |
| 06 Modified Date Prior to Registration Date  LYCOMING | 1314 | 268493 | 0.4894 | 69876 | 1.8805 |
| 06 Modified Date Prior to Registration Date  HUNTINGDON | 1230 | 268493 | 0.4581 | 28426 | 4.327 |
| 06 Modified Date Prior to Registration Date  SOMERSET | 1201 | 268493 | 0.4473 | 48708 | 2.4657 |
| 06 Modified Date Prior to Registration Date  UNION | 1197 | 268493 | 0.4458 | 26285 | 4.5539 |
| 06 Modified Date Prior to Registration Date  CARBON | 1005 | 268493 | 0.3743 | 42326 | 2.3744 |
| 06 Modified Date Prior to Registration Date  SUSQUEHANNA | 932 | 268493 | 0.3471 | 26993 | 3.4527 |
| 06 Modified Date Prior to Registration Date  WAYNE | 930 | 268493 | 0.3464 | 34607 | 2.6873 |
| 06 Modified Date Prior to Registration Date  CLEARFIELD | 926 | 268493 | 0.3449 | 47420 | 1.9528 |
| 06 Modified Date Prior to Registration Date  BEDFORD | 817 | 268493 | 0.3043 | 32976 | 2.4776 |
| 06 Modified Date Prior to Registration Date  McKEAN | 715 | 268493 | 0.2663 | 24252 | 2.9482 |
| 06 Modified Date Prior to Registration Date  CLINTON | 709 | 268493 | 0.2641 | 21968 | 3.2274 |
| 06 Modified Date Prior to Registration Date  SNYDER | 708 | 268493 | 0.2637 | 22716 | 3.1167 |
| 06 Modified Date Prior to Registration Date  MIFFLIN | 699 | 268493 | 0.2603 | 26653 | 2.6226 |
| 06 Modified Date Prior to Registration Date  GREENE | 676 | 268493 | 0.2518 | 21402 | 3.1586 |
| 06 Modified Date Prior to Registration Date  CLARION | 623 | 268493 | 0.232 | 23332 | 2.6702 |
| 06 Modified Date Prior to Registration Date  TIOGA | 619 | 268493 | 0.2305 | 25568 | 2.421 |
| 06 Modified Date Prior to Registration Date  JEFFERSON | 598 | 268493 | 0.2227 | 27275 | 2.1925 |
| 06 Modified Date Prior to Registration Date  PERRY | 564 | 268493 | 0.2101 | 29959 | 1.8826 |
| 06 Modified Date Prior to Registration Date  WARREN | 542 | 268493 | 0.2019 | 25507 | 2.1249 |
| 06 Modified Date Prior to Registration Date  VENANGO | 518 | 268493 | 0.1929 | 31730 | 1.6325 |
| 06 Modified Date Prior to Registration Date  WYOMING | 369 | 268493 | 0.1374 | 17602 | 2.0964 |
| 06 Modified Date Prior to Registration Date  BRADFORD | 357 | 268493 | 0.133 | 35054 | 1.0184 |
| 06 Modified Date Prior to Registration Date  MONTOUR | 332 | 268493 | 0.1237 | 12318 | 2.6952 |
| 06 Modified Date Prior to Registration Date  ELK | 309 | 268493 | 0.1151 | 19841 | 1.5574 |
| 06 Modified Date Prior to Registration Date  ARMSTRONG | 308 | 268493 | 0.1147 | 40369 | 0.763 |
| 06 Modified Date Prior to Registration Date  JUNIATA | 238 | 268493 | 0.0886 | 13796 | 1.7251 |
| 06 Modified Date Prior to Registration Date  INDIANA | 174 | 268493 | 0.0648 | 44041 | 0.3951 |
| 06 Modified Date Prior to Registration Date  FULTON | 170 | 268493 | 0.0633 | 9147 | 1.8585 |
| 06 Modified Date Prior to Registration Date  POTTER | 117 | 268493 | 0.0436 | 10449 | 1.1197 |
| 06 Modified Date Prior to Registration Date  FOREST | 97 | 268493 | 0.0361 | 3328 | 2.9147 |

| | | | | | |
|---|---|---|---|---|---|
| 06 Modified Date Prior to Registration Date | SULLIVAN | 92 | 268493 | 0.0343 | 4359 | 2.1106 |
| 06 Modified Date Prior to Registration Date | CAMERON | 59 | 268493 | 0.022 | 2906 | 2.0303 |

| ScorecardLabel | County | CountyQuantity | StateQuantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 07 Invalid or Illogical Registration Date | YORK | 90067 | 448335 | 20.0892 | 311457 | 28.918 |
| 07 Invalid or Illogical Registration Date | CUMBERLAND | 46359 | 448335 | 10.3403 | 186679 | 24.8335 |
| 07 Invalid or Illogical Registration Date | ALLEGHENY | 33912 | 448335 | 7.564 | 939491 | 3.6096 |
| 07 Invalid or Illogical Registration Date | DAUPHIN | 27977 | 448335 | 6.2402 | 189128 | 14.7926 |
| 07 Invalid or Illogical Registration Date | NORTHUMBERLAND | 25113 | 448335 | 5.6014 | 58661 | 42.8104 |
| 07 Invalid or Illogical Registration Date | FRANKLIN | 24365 | 448335 | 5.4346 | 100048 | 24.3533 |
| 07 Invalid or Illogical Registration Date | CHESTER | 24138 | 448335 | 5.3839 | 382662 | 6.3079 |
| 07 Invalid or Illogical Registration Date | LEBANON | 22094 | 448335 | 4.928 | 91681 | 24.0988 |
| 07 Invalid or Illogical Registration Date | DELAWARE | 20194 | 448335 | 4.5042 | 415024 | 4.8657 |
| 07 Invalid or Illogical Registration Date | PHILADELPHIA | 12347 | 448335 | 2.754 | 1073663 | 1.15 |
| 07 Invalid or Illogical Registration Date | SNYDER | 10365 | 448335 | 2.3119 | 22716 | 45.6286 |
| 07 Invalid or Illogical Registration Date | BLAIR | 10031 | 448335 | 2.2374 | 78217 | 12.8246 |
| 07 Invalid or Illogical Registration Date | VENANGO | 8017 | 448335 | 1.7882 | 31730 | 25.2663 |
| 07 Invalid or Illogical Registration Date | ERIE | 7802 | 448335 | 1.7402 | 172630 | 4.5195 |
| 07 Invalid or Illogical Registration Date | MONTGOMERY | 7230 | 448335 | 1.6126 | 597606 | 1.2098 |
| 07 Invalid or Illogical Registration Date | BUCKS | 6760 | 448335 | 1.5078 | 482425 | 1.4013 |
| 07 Invalid or Illogical Registration Date | LANCASTER | 6696 | 448335 | 1.4935 | 343838 | 1.9474 |
| 07 Invalid or Illogical Registration Date | LUZERNE | 4249 | 448335 | 0.9477 | 194953 | 2.1795 |
| 07 Invalid or Illogical Registration Date | BERKS | 3988 | 448335 | 0.8895 | 258217 | 1.5444 |
| 07 Invalid or Illogical Registration Date | WESTMORELAND | 3825 | 448335 | 0.8532 | 243635 | 1.57 |
| 07 Invalid or Illogical Registration Date | LEHIGH | 3305 | 448335 | 0.7372 | 239432 | 1.3804 |
| 07 Invalid or Illogical Registration Date | ARMSTRONG | 3181 | 448335 | 0.7095 | 40369 | 7.8798 |
| 07 Invalid or Illogical Registration Date | NORTHAMPTON | 3171 | 448335 | 0.7073 | 216704 | 1.4633 |
| 07 Invalid or Illogical Registration Date | LACKAWANNA | 2964 | 448335 | 0.6611 | 141573 | 2.0936 |
| 07 Invalid or Illogical Registration Date | BUTLER | 2585 | 448335 | 0.5766 | 136301 | 1.8965 |
| 07 Invalid or Illogical Registration Date | ADAMS | 2511 | 448335 | 0.5601 | 70225 | 3.5756 |
| 07 Invalid or Illogical Registration Date | SCHUYLKILL | 2173 | 448335 | 0.4847 | 88640 | 2.4515 |
| 07 Invalid or Illogical Registration Date | WASHINGTON | 2154 | 448335 | 0.4804 | 141049 | 1.5271 |
| 07 Invalid or Illogical Registration Date | MONROE | 2115 | 448335 | 0.4717 | 110487 | 1.9143 |
| 07 Invalid or Illogical Registration Date | MERCER | 1940 | 448335 | 0.4327 | 72358 | 2.6811 |
| 07 Invalid or Illogical Registration Date | CENTRE | 1747 | 448335 | 0.3897 | 99841 | 1.7498 |
| 07 Invalid or Illogical Registration Date | BEAVER | 1578 | 448335 | 0.352 | 111043 | 1.4211 |

| | | | | | |
|---|---|---|---|---|---|
| 07 Invalid or Illogical Registration Date | LYCOMING | 1516 | 448335 | 0.3381 | 69876 | 2.1696 |
| 07 Invalid or Illogical Registration Date | UNION | 1490 | 448335 | 0.3323 | 26285 | 5.6686 |
| 07 Invalid or Illogical Registration Date | PERRY | 1310 | 448335 | 0.2922 | 29959 | 4.3726 |
| 07 Invalid or Illogical Registration Date | FAYETTE | 1264 | 448335 | 0.2819 | 79473 | 1.5905 |
| 07 Invalid or Illogical Registration Date | CAMBRIA | 1229 | 448335 | 0.2741 | 86070 | 1.4279 |
| 07 Invalid or Illogical Registration Date | CRAWFORD | 1124 | 448335 | 0.2507 | 52093 | 2.1577 |
| 07 Invalid or Illogical Registration Date | SOMERSET | 1088 | 448335 | 0.2427 | 48708 | 2.2337 |
| 07 Invalid or Illogical Registration Date | COLUMBIA | 1019 | 448335 | 0.2273 | 39249 | 2.5962 |
| 07 Invalid or Illogical Registration Date | CLEARFIELD | 917 | 448335 | 0.2045 | 47420 | 1.9338 |
| 07 Invalid or Illogical Registration Date | CARBON | 909 | 448335 | 0.2028 | 42326 | 2.1476 |
| 07 Invalid or Illogical Registration Date | LAWRENCE | 847 | 448335 | 0.1889 | 56442 | 1.5007 |
| 07 Invalid or Illogical Registration Date | BEDFORD | 766 | 448335 | 0.1709 | 32976 | 2.3229 |
| 07 Invalid or Illogical Registration Date | WARREN | 735 | 448335 | 0.1639 | 25507 | 2.8816 |
| 07 Invalid or Illogical Registration Date | ELK | 690 | 448335 | 0.1539 | 19841 | 3.4776 |
| 07 Invalid or Illogical Registration Date | MONTOUR | 679 | 448335 | 0.1514 | 12318 | 5.5123 |
| 07 Invalid or Illogical Registration Date | TIOGA | 673 | 448335 | 0.1501 | 25568 | 2.6322 |
| 07 Invalid or Illogical Registration Date | PIKE | 624 | 448335 | 0.1392 | 43274 | 1.442 |
| 07 Invalid or Illogical Registration Date | HUNTINGDON | 574 | 448335 | 0.128 | 28426 | 2.0193 |
| 07 Invalid or Illogical Registration Date | INDIANA | 557 | 448335 | 0.1242 | 44041 | 1.2647 |
| 07 Invalid or Illogical Registration Date | McKEAN | 529 | 448335 | 0.118 | 24252 | 2.1813 |
| 07 Invalid or Illogical Registration Date | CLARION | 481 | 448335 | 0.1073 | 23332 | 2.0615 |
| 07 Invalid or Illogical Registration Date | WAYNE | 478 | 448335 | 0.1066 | 34607 | 1.3812 |
| 07 Invalid or Illogical Registration Date | MIFFLIN | 436 | 448335 | 0.0972 | 26653 | 1.6358 |
| 07 Invalid or Illogical Registration Date | JUNIATA | 421 | 448335 | 0.0939 | 13796 | 3.0516 |
| 07 Invalid or Illogical Registration Date | CLINTON | 399 | 448335 | 0.089 | 21968 | 1.8163 |
| 07 Invalid or Illogical Registration Date | JEFFERSON | 383 | 448335 | 0.0854 | 27275 | 1.4042 |
| 07 Invalid or Illogical Registration Date | BRADFORD | 379 | 448335 | 0.0845 | 35054 | 1.0812 |
| 07 Invalid or Illogical Registration Date | WYOMING | 355 | 448335 | 0.0792 | 17602 | 2.0168 |
| 07 Invalid or Illogical Registration Date | SUSQUEHANNA | 339 | 448335 | 0.0756 | 26993 | 1.2559 |
| 07 Invalid or Illogical Registration Date | GREENE | 287 | 448335 | 0.064 | 21402 | 1.341 |
| 07 Invalid or Illogical Registration Date | FULTON | 285 | 448335 | 0.0636 | 9147 | 3.1158 |
| 07 Invalid or Illogical Registration Date | POTTER | 235 | 448335 | 0.0524 | 10449 | 2.249 |
| 07 Invalid or Illogical Registration Date | CAMERON | 180 | 448335 | 0.0401 | 2906 | 6.1941 |

| | | | | | |
|---|---|---|---|---|---|
| 07 Invalid or Illogical Registration Date | SULLIVAN | 113 | 448335 | 0.0252 | 4359 | 2.5923 |
| 07 Invalid or Illogical Registration Date | FOREST | 71 | 448335 | 0.0158 | 3328 | 2.1334 |

| ScorecardLabel | County | CountyQuantity | StateQuantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 08 Illegal or Invalid Registration Changes | PHILADELPHIA | 104217 | 633508 | 16.4508 | 1073663 | 9.7067 |
| 08 Illegal or Invalid Registration Changes | MONTGOMERY | 65450 | 633508 | 10.3314 | 597606 | 10.952 |
| 08 Illegal or Invalid Registration Changes | ALLEGHENY | 64095 | 633508 | 10.1175 | 939491 | 6.8223 |
| 08 Illegal or Invalid Registration Changes | CHESTER | 42971 | 633508 | 6.783 | 382662 | 11.2295 |
| 08 Illegal or Invalid Registration Changes | BUCKS | 37284 | 633508 | 5.8853 | 482425 | 7.7285 |
| 08 Illegal or Invalid Registration Changes | DELAWARE | 36846 | 633508 | 5.8162 | 415024 | 8.878 |
| 08 Illegal or Invalid Registration Changes | LEHIGH | 22358 | 633508 | 3.5292 | 239432 | 9.3379 |
| 08 Illegal or Invalid Registration Changes | BUTLER | 16897 | 633508 | 2.6672 | 136301 | 12.3968 |
| 08 Illegal or Invalid Registration Changes | BERKS | 16839 | 633508 | 2.6581 | 258217 | 6.5213 |
| 08 Illegal or Invalid Registration Changes | YORK | 15875 | 633508 | 2.5059 | 311457 | 5.097 |
| 08 Illegal or Invalid Registration Changes | LANCASTER | 15452 | 633508 | 2.4391 | 343838 | 4.494 |
| 08 Illegal or Invalid Registration Changes | NORTHAMPTON | 14740 | 633508 | 2.3267 | 216704 | 6.8019 |
| 08 Illegal or Invalid Registration Changes | WESTMORELAND | 14398 | 633508 | 2.2727 | 243635 | 5.9097 |
| 08 Illegal or Invalid Registration Changes | LUZERNE | 13236 | 633508 | 2.0893 | 194953 | 6.7893 |
| 08 Illegal or Invalid Registration Changes | CENTRE | 10745 | 633508 | 1.6961 | 99841 | 10.7621 |
| 08 Illegal or Invalid Registration Changes | LEBANON | 10310 | 633508 | 1.6274 | 91681 | 11.2455 |
| 08 Illegal or Invalid Registration Changes | ERIE | 9909 | 633508 | 1.5641 | 172630 | 5.74 |
| 08 Illegal or Invalid Registration Changes | CUMBERLAND | 9775 | 633508 | 1.543 | 186679 | 5.2363 |
| 08 Illegal or Invalid Registration Changes | WASHINGTON | 9161 | 633508 | 1.4461 | 141049 | 6.4949 |
| 08 Illegal or Invalid Registration Changes | DAUPHIN | 8438 | 633508 | 1.3319 | 189128 | 4.4615 |
| 08 Illegal or Invalid Registration Changes | MONROE | 7954 | 633508 | 1.2555 | 110487 | 7.199 |
| 08 Illegal or Invalid Registration Changes | LACKAWANNA | 7150 | 633508 | 1.1286 | 141573 | 5.0504 |
| 08 Illegal or Invalid Registration Changes | BEAVER | 5125 | 633508 | 0.809 | 111043 | 4.6153 |
| 08 Illegal or Invalid Registration Changes | BLAIR | 4831 | 633508 | 0.7626 | 78217 | 6.1764 |
| 08 Illegal or Invalid Registration Changes | SCHUYLKILL | 4645 | 633508 | 0.7332 | 88640 | 5.2403 |
| 08 Illegal or Invalid Registration Changes | FRANKLIN | 4515 | 633508 | 0.7127 | 100048 | 4.5128 |
| 08 Illegal or Invalid Registration Changes | ADAMS | 4002 | 633508 | 0.6317 | 70225 | 5.6988 |
| 08 Illegal or Invalid Registration Changes | FAYETTE | 3826 | 633508 | 0.6039 | 79473 | 4.8142 |
| 08 Illegal or Invalid Registration Changes | MERCER | 3342 | 633508 | 0.5275 | 72358 | 4.6187 |
| 08 Illegal or Invalid Registration Changes | CAMBRIA | 3189 | 633508 | 0.5034 | 86070 | 3.7051 |
| 08 Illegal or Invalid Registration Changes | PIKE | 2662 | 633508 | 0.4202 | 43274 | 6.1515 |
| 08 Illegal or Invalid Registration Changes | NORTHUMBERLAND | 2494 | 633508 | 0.3937 | 58661 | 4.2515 |

| | | | | | |
|---|---|---|---|---|---|
| 08 Illegal or Invalid Registration Changes | LAWRENCE | 2366 | 633508 | 0.3735 | 56442 | 4.1919 |
| 08 Illegal or Invalid Registration Changes | LYCOMING | 2329 | 633508 | 0.3676 | 69876 | 3.333 |
| 08 Illegal or Invalid Registration Changes | CRAWFORD | 2129 | 633508 | 0.3361 | 52093 | 4.0869 |
| 08 Illegal or Invalid Registration Changes | SOMERSET | 2035 | 633508 | 0.3212 | 48708 | 4.178 |
| 08 Illegal or Invalid Registration Changes | INDIANA | 1938 | 633508 | 0.3059 | 44041 | 4.4004 |
| 08 Illegal or Invalid Registration Changes | SUSQUEHANNA | 1740 | 633508 | 0.2747 | 26993 | 6.4461 |
| 08 Illegal or Invalid Registration Changes | UNION | 1737 | 633508 | 0.2742 | 26285 | 6.6083 |
| 08 Illegal or Invalid Registration Changes | ARMSTRONG | 1707 | 633508 | 0.2695 | 40369 | 4.2285 |
| 08 Illegal or Invalid Registration Changes | HUNTINGDON | 1669 | 633508 | 0.2635 | 28426 | 5.8714 |
| 08 Illegal or Invalid Registration Changes | CLEARFIELD | 1668 | 633508 | 0.2633 | 47420 | 3.5175 |
| 08 Illegal or Invalid Registration Changes | CARBON | 1665 | 633508 | 0.2628 | 42326 | 3.9338 |
| 08 Illegal or Invalid Registration Changes | COLUMBIA | 1648 | 633508 | 0.2601 | 39249 | 4.1988 |
| 08 Illegal or Invalid Registration Changes | WAYNE | 1563 | 633508 | 0.2467 | 34607 | 4.5164 |
| 08 Illegal or Invalid Registration Changes | BEDFORD | 1480 | 633508 | 0.2336 | 32976 | 4.4881 |
| 08 Illegal or Invalid Registration Changes | VENANGO | 1225 | 633508 | 0.1934 | 31730 | 3.8607 |
| 08 Illegal or Invalid Registration Changes | PERRY | 1165 | 633508 | 0.1839 | 29959 | 3.8886 |
| 08 Illegal or Invalid Registration Changes | WARREN | 1094 | 633508 | 0.1727 | 25507 | 4.289 |
| 08 Illegal or Invalid Registration Changes | BRADFORD | 1029 | 633508 | 0.1624 | 35054 | 2.9355 |
| 08 Illegal or Invalid Registration Changes | MIFFLIN | 1008 | 633508 | 0.1591 | 26653 | 3.7819 |
| 08 Illegal or Invalid Registration Changes | SNYDER | 968 | 633508 | 0.1528 | 22716 | 4.2613 |
| 08 Illegal or Invalid Registration Changes | JEFFERSON | 959 | 633508 | 0.1514 | 27275 | 3.516 |
| 08 Illegal or Invalid Registration Changes | CLINTON | 878 | 633508 | 0.1386 | 21968 | 3.9967 |
| 08 Illegal or Invalid Registration Changes | TIOGA | 811 | 633508 | 0.128 | 25568 | 3.1719 |
| 08 Illegal or Invalid Registration Changes | CLARION | 744 | 633508 | 0.1174 | 23332 | 3.1888 |
| 08 Illegal or Invalid Registration Changes | GREENE | 741 | 633508 | 0.117 | 21402 | 3.4623 |
| 08 Illegal or Invalid Registration Changes | McKEAN | 724 | 633508 | 0.1143 | 24252 | 2.9853 |
| 08 Illegal or Invalid Registration Changes | MONTOUR | 721 | 633508 | 0.1138 | 12318 | 5.8532 |
| 08 Illegal or Invalid Registration Changes | FULTON | 598 | 633508 | 0.0944 | 9147 | 6.5377 |
| 08 Illegal or Invalid Registration Changes | ELK | 578 | 633508 | 0.0912 | 19841 | 2.9132 |
| 08 Illegal or Invalid Registration Changes | WYOMING | 563 | 633508 | 0.0889 | 17602 | 3.1985 |
| 08 Illegal or Invalid Registration Changes | JUNIATA | 501 | 633508 | 0.0791 | 13796 | 3.6315 |
| 08 Illegal or Invalid Registration Changes | POTTER | 260 | 633508 | 0.041 | 10449 | 2.4883 |
| 08 Illegal or Invalid Registration Changes | FOREST | 209 | 633508 | 0.033 | 3328 | 6.28 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 08 Illegal or Invalid Registration Changes | CAMERON | 176 | 633508 | 0.0278 | 2906 | 6.0564 |
| 08 Illegal or Invalid Registration Changes | SULLIVAN | 151 | 633508 | 0.0238 | 4359 | 3.4641 |

| ScorecardLabel | County | CountyQuantity | StateQuantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 09 Age Discrepant Registrants | ALLEGHENY | 1078 | 4142 | 26.0261 | 939491 | 0.1147 |
| 09 Age Discrepant Registrants | PHILADELPHIA | 941 | 4142 | 22.7185 | 1073663 | 0.0876 |
| 09 Age Discrepant Registrants | DELAWARE | 216 | 4142 | 5.2149 | 415024 | 0.052 |
| 09 Age Discrepant Registrants | BUCKS | 144 | 4142 | 3.4766 | 482425 | 0.0298 |
| 09 Age Discrepant Registrants | YORK | 121 | 4142 | 2.9213 | 311457 | 0.0388 |
| 09 Age Discrepant Registrants | LANCASTER | 121 | 4142 | 2.9213 | 343838 | 0.0352 |
| 09 Age Discrepant Registrants | MONTGOMERY | 118 | 4142 | 2.8489 | 597606 | 0.0197 |
| 09 Age Discrepant Registrants | DAUPHIN | 98 | 4142 | 2.366 | 189128 | 0.0518 |
| 09 Age Discrepant Registrants | BERKS | 84 | 4142 | 2.028 | 258217 | 0.0325 |
| 09 Age Discrepant Registrants | CHESTER | 77 | 4142 | 1.859 | 382662 | 0.0201 |
| 09 Age Discrepant Registrants | BLAIR | 72 | 4142 | 1.7383 | 78217 | 0.0921 |
| 09 Age Discrepant Registrants | LEHIGH | 72 | 4142 | 1.7383 | 239432 | 0.0301 |
| 09 Age Discrepant Registrants | WESTMORELAND | 70 | 4142 | 1.69 | 243635 | 0.0287 |
| 09 Age Discrepant Registrants | BEAVER | 65 | 4142 | 1.5693 | 111043 | 0.0585 |
| 09 Age Discrepant Registrants | CAMBRIA | 51 | 4142 | 1.2313 | 86070 | 0.0593 |
| 09 Age Discrepant Registrants | ERIE | 46 | 4142 | 1.1106 | 172630 | 0.0266 |
| 09 Age Discrepant Registrants | LUZERNE | 46 | 4142 | 1.1106 | 194953 | 0.0236 |
| 09 Age Discrepant Registrants | CUMBERLAND | 44 | 4142 | 1.0623 | 186679 | 0.0236 |
| 09 Age Discrepant Registrants | NORTHAMPTON | 44 | 4142 | 1.0623 | 216704 | 0.0203 |
| 09 Age Discrepant Registrants | BUTLER | 41 | 4142 | 0.9899 | 136301 | 0.0301 |
| 09 Age Discrepant Registrants | WASHINGTON | 41 | 4142 | 0.9899 | 141049 | 0.0291 |
| 09 Age Discrepant Registrants | LACKAWANNA | 40 | 4142 | 0.9657 | 141573 | 0.0283 |
| 09 Age Discrepant Registrants | CENTRE | 33 | 4142 | 0.7967 | 99841 | 0.0331 |
| 09 Age Discrepant Registrants | SCHUYLKILL | 31 | 4142 | 0.7484 | 88640 | 0.035 |
| 09 Age Discrepant Registrants | LEBANON | 30 | 4142 | 0.7243 | 91681 | 0.0327 |
| 09 Age Discrepant Registrants | LYCOMING | 24 | 4142 | 0.5794 | 69876 | 0.0343 |
| 09 Age Discrepant Registrants | MERCER | 23 | 4142 | 0.5553 | 72358 | 0.0318 |
| 09 Age Discrepant Registrants | MONROE | 23 | 4142 | 0.5553 | 110487 | 0.0208 |
| 09 Age Discrepant Registrants | LAWRENCE | 22 | 4142 | 0.5311 | 56442 | 0.039 |
| 09 Age Discrepant Registrants | BEDFORD | 20 | 4142 | 0.4829 | 32976 | 0.0607 |
| 09 Age Discrepant Registrants | SOMERSET | 20 | 4142 | 0.4829 | 48708 | 0.0411 |
| 09 Age Discrepant Registrants | NORTHUMBERLAND | 17 | 4142 | 0.4104 | 58661 | 0.029 |

| | | | | | |
|---|---|---|---|---|---|
| 09 Age Discrepant Registrants CLEARFIELD | 15 | 4142 | 0.3621 | 47420 | 0.0316 |
| 09 Age Discrepant Registrants ADAMS | 15 | 4142 | 0.3621 | 70225 | 0.0214 |
| 09 Age Discrepant Registrants SUSQUEHANNA | 14 | 4142 | 0.338 | 26993 | 0.0519 |
| 09 Age Discrepant Registrants ARMSTRONG | 14 | 4142 | 0.338 | 40369 | 0.0347 |
| 09 Age Discrepant Registrants INDIANA | 14 | 4142 | 0.338 | 44041 | 0.0318 |
| 09 Age Discrepant Registrants FAYETTE | 14 | 4142 | 0.338 | 79473 | 0.0176 |
| 09 Age Discrepant Registrants VENANGO | 13 | 4142 | 0.3139 | 31730 | 0.041 |
| 09 Age Discrepant Registrants FRANKLIN | 13 | 4142 | 0.3139 | 100048 | 0.013 |
| 09 Age Discrepant Registrants JEFFERSON | 12 | 4142 | 0.2897 | 27275 | 0.044 |
| 09 Age Discrepant Registrants COLUMBIA | 12 | 4142 | 0.2897 | 39249 | 0.0306 |
| 09 Age Discrepant Registrants PIKE | 12 | 4142 | 0.2897 | 43274 | 0.0277 |
| 09 Age Discrepant Registrants CARBON | 11 | 4142 | 0.2656 | 42326 | 0.026 |
| 09 Age Discrepant Registrants MIFFLIN | 10 | 4142 | 0.2414 | 26653 | 0.0375 |
| 09 Age Discrepant Registrants PERRY | 10 | 4142 | 0.2414 | 29959 | 0.0334 |
| 09 Age Discrepant Registrants WARREN | 9 | 4142 | 0.2173 | 25507 | 0.0353 |
| 09 Age Discrepant Registrants BRADFORD | 9 | 4142 | 0.2173 | 35054 | 0.0257 |
| 09 Age Discrepant Registrants CRAWFORD | 9 | 4142 | 0.2173 | 52093 | 0.0173 |
| 09 Age Discrepant Registrants WYOMING | 8 | 4142 | 0.1931 | 17602 | 0.0454 |
| 09 Age Discrepant Registrants CLINTON | 8 | 4142 | 0.1931 | 21968 | 0.0364 |
| 09 Age Discrepant Registrants HUNTINGDON | 8 | 4142 | 0.1931 | 28426 | 0.0281 |
| 09 Age Discrepant Registrants MONTOUR | 5 | 4142 | 0.1207 | 12318 | 0.0406 |
| 09 Age Discrepant Registrants ELK | 4 | 4142 | 0.0966 | 19841 | 0.0202 |
| 09 Age Discrepant Registrants SNYDER | 4 | 4142 | 0.0966 | 22716 | 0.0176 |
| 09 Age Discrepant Registrants McKEAN | 4 | 4142 | 0.0966 | 24252 | 0.0165 |
| 09 Age Discrepant Registrants WAYNE | 4 | 4142 | 0.0966 | 34607 | 0.0116 |
| 09 Age Discrepant Registrants JUNIATA | 3 | 4142 | 0.0724 | 13796 | 0.0217 |
| 09 Age Discrepant Registrants GREENE | 3 | 4142 | 0.0724 | 21402 | 0.014 |
| 09 Age Discrepant Registrants CLARION | 3 | 4142 | 0.0724 | 23332 | 0.0129 |
| 09 Age Discrepant Registrants UNION | 3 | 4142 | 0.0724 | 26285 | 0.0114 |
| 09 Age Discrepant Registrants CAMERON | 2 | 4142 | 0.0483 | 2906 | 0.0688 |
| 09 Age Discrepant Registrants TIOGA | 2 | 4142 | 0.0483 | 25568 | 0.0078 |
| 09 Age Discrepant Registrants FULTON | 1 | 4142 | 0.0241 | 9147 | 0.0109 |
| 09 Age Discrepant Registrants POTTER | 1 | 4142 | 0.0241 | 10449 | 0.0096 |

| ScorecardLabel | County | CountyQuantity | StateQuantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 10 Registrants with questionable address | PHILADELPHIA | 30399 | 154913 | 19.6233 | 1073663 | 2.8313 |
| 10 Registrants with questionable address | MONTGOMERY | 27883 | 154913 | 17.9991 | 597606 | 4.6658 |
| 10 Registrants with questionable address | ALLEGHENY | 18861 | 154913 | 12.1752 | 939491 | 2.0076 |
| 10 Registrants with questionable address | DELAWARE | 9006 | 154913 | 5.8136 | 415024 | 2.17 |
| 10 Registrants with questionable address | LANCASTER | 5960 | 154913 | 3.8473 | 343838 | 1.7334 |
| 10 Registrants with questionable address | MONROE | 5677 | 154913 | 3.6646 | 110487 | 5.1382 |
| 10 Registrants with questionable address | CHESTER | 4702 | 154913 | 3.0353 | 382662 | 1.2288 |
| 10 Registrants with questionable address | LEHIGH | 4667 | 154913 | 3.0127 | 239432 | 1.9492 |
| 10 Registrants with questionable address | CENTRE | 3460 | 154913 | 2.2335 | 99841 | 3.4655 |
| 10 Registrants with questionable address | BERKS | 3056 | 154913 | 1.9727 | 258217 | 1.1835 |
| 10 Registrants with questionable address | BUCKS | 3046 | 154913 | 1.9663 | 482425 | 0.6314 |
| 10 Registrants with questionable address | NORTHAMPTON | 2999 | 154913 | 1.9359 | 216704 | 1.3839 |
| 10 Registrants with questionable address | YORK | 2641 | 154913 | 1.7048 | 311457 | 0.848 |
| 10 Registrants with questionable address | ERIE | 2425 | 154913 | 1.5654 | 172630 | 1.4047 |
| 10 Registrants with questionable address | LUZERNE | 2383 | 154913 | 1.5383 | 194953 | 1.2223 |
| 10 Registrants with questionable address | CUMBERLAND | 2320 | 154913 | 1.4976 | 186679 | 1.2428 |
| 10 Registrants with questionable address | DAUPHIN | 2276 | 154913 | 1.4692 | 189128 | 1.2034 |
| 10 Registrants with questionable address | LACKAWANNA | 1820 | 154913 | 1.1749 | 141573 | 1.2856 |
| 10 Registrants with questionable address | WESTMORELAND | 1723 | 154913 | 1.1122 | 243635 | 0.7072 |
| 10 Registrants with questionable address | BUTLER | 1545 | 154913 | 0.9973 | 136301 | 1.1335 |
| 10 Registrants with questionable address | LEBANON | 1430 | 154913 | 0.9231 | 91681 | 1.5598 |
| 10 Registrants with questionable address | BEAVER | 977 | 154913 | 0.6307 | 111043 | 0.8798 |
| 10 Registrants with questionable address | BLAIR | 873 | 154913 | 0.5635 | 78217 | 1.1161 |
| 10 Registrants with questionable address | MERCER | 797 | 154913 | 0.5145 | 72358 | 1.1015 |
| 10 Registrants with questionable address | ADAMS | 758 | 154913 | 0.4893 | 70225 | 1.0794 |
| 10 Registrants with questionable address | WASHINGTON | 743 | 154913 | 0.4796 | 141049 | 0.5268 |
| 10 Registrants with questionable address | CRAWFORD | 720 | 154913 | 0.4648 | 52093 | 1.3821 |
| 10 Registrants with questionable address | CAMBRIA | 689 | 154913 | 0.4448 | 86070 | 0.8005 |
| 10 Registrants with questionable address | LYCOMING | 670 | 154913 | 0.4325 | 69876 | 0.9588 |
| 10 Registrants with questionable address | INDIANA | 588 | 154913 | 0.3796 | 44041 | 1.3351 |
| 10 Registrants with questionable address | SCHUYLKILL | 583 | 154913 | 0.3763 | 88640 | 0.6577 |
| 10 Registrants with questionable address | FRANKLIN | 541 | 154913 | 0.3492 | 100048 | 0.5407 |

| | | | | | |
|---|---|---|---|---|---|
| 10 Registrants with questionable address | NORTHUMBERLAND | 534 | 154913 | 0.3447 | 58661 | 0.9103 |
| 10 Registrants with questionable address | LAWRENCE | 505 | 154913 | 0.326 | 56442 | 0.8947 |
| 10 Registrants with questionable address | FAYETTE | 504 | 154913 | 0.3253 | 79473 | 0.6342 |
| 10 Registrants with questionable address | SNYDER | 465 | 154913 | 0.3002 | 22716 | 2.047 |
| 10 Registrants with questionable address | SOMERSET | 464 | 154913 | 0.2995 | 48708 | 0.9526 |
| 10 Registrants with questionable address | COLUMBIA | 421 | 154913 | 0.2718 | 39249 | 1.0726 |
| 10 Registrants with questionable address | UNION | 373 | 154913 | 0.2408 | 26285 | 1.4191 |
| 10 Registrants with questionable address | HUNTINGDON | 330 | 154913 | 0.213 | 28426 | 1.1609 |
| 10 Registrants with questionable address | CLEARFIELD | 295 | 154913 | 0.1904 | 47420 | 0.6221 |
| 10 Registrants with questionable address | WAYNE | 292 | 154913 | 0.1885 | 34607 | 0.8438 |
| 10 Registrants with questionable address | PIKE | 286 | 154913 | 0.1846 | 43274 | 0.6609 |
| 10 Registrants with questionable address | BRADFORD | 278 | 154913 | 0.1795 | 35054 | 0.7931 |
| 10 Registrants with questionable address | CARBON | 270 | 154913 | 0.1743 | 42326 | 0.6379 |
| 10 Registrants with questionable address | CLINTON | 263 | 154913 | 0.1698 | 21968 | 1.1972 |
| 10 Registrants with questionable address | BEDFORD | 260 | 154913 | 0.1678 | 32976 | 0.7885 |
| 10 Registrants with questionable address | TIOGA | 259 | 154913 | 0.1672 | 25568 | 1.013 |
| 10 Registrants with questionable address | ARMSTRONG | 255 | 154913 | 0.1646 | 40369 | 0.6317 |
| 10 Registrants with questionable address | McKEAN | 244 | 154913 | 0.1575 | 24252 | 1.0061 |
| 10 Registrants with questionable address | MIFFLIN | 243 | 154913 | 0.1569 | 26653 | 0.9117 |
| 10 Registrants with questionable address | SUSQUEHANNA | 224 | 154913 | 0.1446 | 26993 | 0.8298 |
| 10 Registrants with questionable address | VENANGO | 214 | 154913 | 0.1381 | 31730 | 0.6744 |
| 10 Registrants with questionable address | JEFFERSON | 203 | 154913 | 0.131 | 27275 | 0.7443 |
| 10 Registrants with questionable address | CLARION | 196 | 154913 | 0.1265 | 23332 | 0.84 |
| 10 Registrants with questionable address | JUNIATA | 183 | 154913 | 0.1181 | 13796 | 1.3265 |
| 10 Registrants with questionable address | WARREN | 177 | 154913 | 0.1143 | 25507 | 0.6939 |
| 10 Registrants with questionable address | SULLIVAN | 157 | 154913 | 0.1013 | 4359 | 3.6017 |
| 10 Registrants with questionable address | PERRY | 154 | 154913 | 0.0994 | 29959 | 0.514 |
| 10 Registrants with questionable address | MONTOUR | 141 | 154913 | 0.091 | 12318 | 1.1447 |
| 10 Registrants with questionable address | WYOMING | 104 | 154913 | 0.0671 | 17602 | 0.5908 |
| 10 Registrants with questionable address | GREENE | 91 | 154913 | 0.0587 | 21402 | 0.4252 |
| 10 Registrants with questionable address | FULTON | 83 | 154913 | 0.0536 | 9147 | 0.9074 |
| 10 Registrants with questionable address | FOREST | 75 | 154913 | 0.0484 | 3328 | 2.2536 |
| 10 Registrants with questionable address | ELK | 66 | 154913 | 0.0426 | 19841 | 0.3326 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 10 Registrants with questionable address | POTTER | 65 | 154913 | 0.042 | 10449 | 0.6221 |
| 10 Registrants with questionable address | CAMERON | 21 | 154913 | 0.0136 | 2906 | 0.7226 |

| ScorecardLabel | County | CountyQuantity | StateQuantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 11 Registrations with Altered Votes | ALLEGHENY | 420173 | 1580750 | 26.5806 | 939491 | 44.7235 |
| 11 Registrations with Altered Votes | PHILADELPHIA | 254310 | 1580750 | 16.0879 | 1073663 | 23.6862 |
| 11 Registrations with Altered Votes | BUCKS | 171363 | 1580750 | 10.8406 | 482425 | 35.5212 |
| 11 Registrations with Altered Votes | WESTMORELAND | 100099 | 1580750 | 6.3324 | 243635 | 41.0856 |
| 11 Registrations with Altered Votes | BERKS | 93582 | 1580750 | 5.9201 | 258217 | 36.2416 |
| 11 Registrations with Altered Votes | LUZERNE | 75837 | 1580750 | 4.7975 | 194953 | 38.9001 |
| 11 Registrations with Altered Votes | DELAWARE | 52665 | 1580750 | 3.3316 | 415024 | 12.6896 |
| 11 Registrations with Altered Votes | WASHINGTON | 49105 | 1580750 | 3.1064 | 141049 | 34.8141 |
| 11 Registrations with Altered Votes | BUTLER | 47378 | 1580750 | 2.9972 | 136301 | 34.7598 |
| 11 Registrations with Altered Votes | CHESTER | 43060 | 1580750 | 2.724 | 382662 | 11.2528 |
| 11 Registrations with Altered Votes | CUMBERLAND | 29655 | 1580750 | 1.876 | 186679 | 15.8856 |
| 11 Registrations with Altered Votes | DAUPHIN | 24797 | 1580750 | 1.5687 | 189128 | 13.1112 |
| 11 Registrations with Altered Votes | BEAVER | 24061 | 1580750 | 1.5221 | 111043 | 21.6682 |
| 11 Registrations with Altered Votes | LEHIGH | 17920 | 1580750 | 1.1336 | 239432 | 7.4844 |
| 11 Registrations with Altered Votes | MONROE | 17673 | 1580750 | 1.118 | 110487 | 15.9955 |
| 11 Registrations with Altered Votes | BLAIR | 16048 | 1580750 | 1.0152 | 78217 | 20.5173 |
| 11 Registrations with Altered Votes | BEDFORD | 13157 | 1580750 | 0.8323 | 32976 | 39.8987 |
| 11 Registrations with Altered Votes | CARBON | 12663 | 1580750 | 0.8011 | 42326 | 29.9178 |
| 11 Registrations with Altered Votes | FRANKLIN | 12032 | 1580750 | 0.7612 | 100048 | 12.0262 |
| 11 Registrations with Altered Votes | LAWRENCE | 11712 | 1580750 | 0.7409 | 56442 | 20.7505 |
| 11 Registrations with Altered Votes | LEBANON | 11711 | 1580750 | 0.7409 | 91681 | 12.7736 |
| 11 Registrations with Altered Votes | HUNTINGDON | 10254 | 1580750 | 0.6487 | 28426 | 36.0726 |
| 11 Registrations with Altered Votes | ADAMS | 10057 | 1580750 | 0.6362 | 70225 | 14.3211 |
| 11 Registrations with Altered Votes | ARMSTRONG | 9732 | 1580750 | 0.6157 | 40369 | 24.1076 |
| 11 Registrations with Altered Votes | SNYDER | 8498 | 1580750 | 0.5376 | 22716 | 37.4098 |
| 11 Registrations with Altered Votes | ELK | 8366 | 1580750 | 0.5292 | 19841 | 42.1652 |
| 11 Registrations with Altered Votes | MERCER | 8138 | 1580750 | 0.5148 | 72358 | 11.2469 |
| 11 Registrations with Altered Votes | NORTHUMBERLAND | 7859 | 1580750 | 0.4972 | 58661 | 13.3973 |
| 11 Registrations with Altered Votes | GREENE | 5703 | 1580750 | 0.3608 | 21402 | 26.647 |
| 11 Registrations with Altered Votes | COLUMBIA | 5667 | 1580750 | 0.3585 | 39249 | 14.4386 |
| 11 Registrations with Altered Votes | UNION | 2917 | 1580750 | 0.1845 | 26285 | 11.0976 |
| 11 Registrations with Altered Votes | MONTOUR | 1528 | 1580750 | 0.0967 | 12318 | 12.4046 |

| | | | | | |
|---|---|---|---|---|---|
| 11 Registrations with Altered Votes | PIKE | 1507 | 1580750 | 0.0953 | 43274 | 3.4825 |
| 11 Registrations with Altered Votes | FULTON | 1342 | 1580750 | 0.0849 | 9147 | 14.6715 |
| 11 Registrations with Altered Votes | WARREN | 111 | 1580750 | 0.007 | 25507 | 0.4352 |
| 11 Registrations with Altered Votes | JUNIATA | 27 | 1580750 | 0.0017 | 13796 | 0.1957 |
| 11 Registrations with Altered Votes | INDIANA | 16 | 1580750 | 0.001 | 44041 | 0.0363 |
| 11 Registrations with Altered Votes | CLEARFIELD | 9 | 1580750 | 0.0006 | 47420 | 0.019 |
| 11 Registrations with Altered Votes | CAMBRIA | 7 | 1580750 | 0.0004 | 86070 | 0.0081 |
| 11 Registrations with Altered Votes | CENTRE | 7 | 1580750 | 0.0004 | 99841 | 0.007 |
| 11 Registrations with Altered Votes | FOREST | 2 | 1580750 | 0.0001 | 3328 | 0.0601 |
| 11 Registrations with Altered Votes | CRAWFORD | 1 | 1580750 | 0.0001 | 52093 | 0.0019 |
| 11 Registrations with Altered Votes | YORK | 1 | 1580750 | 0.0001 | 311457 | 0.0003 |

| ScorecardLabel | County | CountyQuantity | StateQuantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 12 Total Registration Violations | ALLEGHENY | 579034 | 3192069 | 18.1398 | 939491 | 61.6327 |
| 12 Total Registration Violations | PHILADELPHIA | 479324 | 3192069 | 15.0161 | 1073663 | 44.6438 |
| 12 Total Registration Violations | BUCKS | 235965 | 3192069 | 7.3922 | 482425 | 48.9123 |
| 12 Total Registration Violations | DELAWARE | 135895 | 3192069 | 4.2573 | 415024 | 32.7439 |
| 12 Total Registration Violations | CHESTER | 129327 | 3192069 | 4.0515 | 382662 | 33.7967 |
| 12 Total Registration Violations | BERKS | 126305 | 3192069 | 3.9568 | 258217 | 48.9143 |
| 12 Total Registration Violations | WESTMORELAND | 125593 | 3192069 | 3.9345 | 243635 | 51.5497 |
| 12 Total Registration Violations | YORK | 121207 | 3192069 | 3.7971 | 311457 | 38.9161 |
| 12 Total Registration Violations | MONTGOMERY | 116350 | 3192069 | 3.645 | 597606 | 19.4693 |
| 12 Total Registration Violations | LUZERNE | 103043 | 3192069 | 3.2281 | 194953 | 52.8553 |
| 12 Total Registration Violations | CUMBERLAND | 96644 | 3192069 | 3.0276 | 186679 | 51.7702 |
| 12 Total Registration Violations | BUTLER | 72660 | 3192069 | 2.2763 | 136301 | 53.3085 |
| 12 Total Registration Violations | DAUPHIN | 71436 | 3192069 | 2.2379 | 189128 | 37.7712 |
| 12 Total Registration Violations | WASHINGTON | 65207 | 3192069 | 2.0428 | 141049 | 46.23 |
| 12 Total Registration Violations | LEHIGH | 58939 | 3192069 | 1.8464 | 239432 | 24.6162 |
| 12 Total Registration Violations | LEBANON | 49142 | 3192069 | 1.5395 | 91681 | 53.6011 |
| 12 Total Registration Violations | FRANKLIN | 45662 | 3192069 | 1.4305 | 100048 | 45.6401 |
| 12 Total Registration Violations | MONROE | 39195 | 3192069 | 1.2279 | 110487 | 35.4748 |
| 12 Total Registration Violations | NORTHUMBERLAND | 39162 | 3192069 | 1.2269 | 58661 | 66.7599 |
| 12 Total Registration Violations | LANCASTER | 38670 | 3192069 | 1.2114 | 343838 | 11.2466 |
| 12 Total Registration Violations | BEAVER | 35068 | 3192069 | 1.0986 | 111043 | 31.5806 |
| 12 Total Registration Violations | BLAIR | 34292 | 3192069 | 1.0743 | 78217 | 43.8421 |
| 12 Total Registration Violations | NORTHAMPTON | 31580 | 3192069 | 0.9893 | 216704 | 14.5729 |
| 12 Total Registration Violations | ERIE | 26976 | 3192069 | 0.8451 | 172630 | 15.6265 |
| 12 Total Registration Violations | SNYDER | 21235 | 3192069 | 0.6652 | 22716 | 93.4804 |
| 12 Total Registration Violations | CENTRE | 20725 | 3192069 | 0.6493 | 99841 | 20.758 |
| 12 Total Registration Violations | ADAMS | 20418 | 3192069 | 0.6396 | 70225 | 29.0751 |
| 12 Total Registration Violations | LAWRENCE | 18919 | 3192069 | 0.5927 | 56442 | 33.5194 |
| 12 Total Registration Violations | ARMSTRONG | 17269 | 3192069 | 0.541 | 40369 | 42.7779 |
| 12 Total Registration Violations | CARBON | 16904 | 3192069 | 0.5296 | 42326 | 39.9376 |
| 12 Total Registration Violations | BEDFORD | 16707 | 3192069 | 0.5234 | 32976 | 50.6641 |
| 12 Total Registration Violations | MERCER | 16702 | 3192069 | 0.5232 | 72358 | 23.0825 |

| | | | | | |
|---|---|---|---|---|---|
| 12 Total Registration Violations | LACKAWANNA | 16585 | 3192069 | 0.5196 | 141573 | 11.7148 |
| 12 Total Registration Violations | HUNTINGDON | 14270 | 3192069 | 0.447 | 28426 | 50.2005 |
| 12 Total Registration Violations | VENANGO | 11231 | 3192069 | 0.3518 | 31730 | 35.3955 |
| 12 Total Registration Violations | COLUMBIA | 10693 | 3192069 | 0.335 | 39249 | 27.244 |
| 12 Total Registration Violations | SCHUYLKILL | 10296 | 3192069 | 0.3225 | 88640 | 11.6155 |
| 12 Total Registration Violations | ELK | 10088 | 3192069 | 0.316 | 19841 | 50.8442 |
| 12 Total Registration Violations | FAYETTE | 8827 | 3192069 | 0.2765 | 79473 | 11.1069 |
| 12 Total Registration Violations | CAMBRIA | 8113 | 3192069 | 0.2542 | 86070 | 9.426 |
| 12 Total Registration Violations | UNION | 8009 | 3192069 | 0.2509 | 26285 | 30.4698 |
| 12 Total Registration Violations | INDIANA | 7864 | 3192069 | 0.2464 | 44041 | 17.8561 |
| 12 Total Registration Violations | GREENE | 7643 | 3192069 | 0.2394 | 21402 | 35.7116 |
| 12 Total Registration Violations | PIKE | 7342 | 3192069 | 0.23 | 43274 | 16.9663 |
| 12 Total Registration Violations | LYCOMING | 6495 | 3192069 | 0.2035 | 69876 | 9.295 |
| 12 Total Registration Violations | CRAWFORD | 6055 | 3192069 | 0.1897 | 52093 | 11.6234 |
| 12 Total Registration Violations | SOMERSET | 5155 | 3192069 | 0.1615 | 48708 | 10.5835 |
| 12 Total Registration Violations | CLEARFIELD | 4139 | 3192069 | 0.1297 | 47420 | 8.7284 |
| 12 Total Registration Violations | BRADFORD | 3784 | 3192069 | 0.1185 | 35054 | 10.7948 |
| 12 Total Registration Violations | MONTOUR | 3625 | 3192069 | 0.1136 | 12318 | 29.4285 |
| 12 Total Registration Violations | WAYNE | 3575 | 3192069 | 0.112 | 34607 | 10.3303 |
| 12 Total Registration Violations | PERRY | 3515 | 3192069 | 0.1101 | 29959 | 11.7327 |
| 12 Total Registration Violations | SUSQUEHANNA | 3508 | 3192069 | 0.1099 | 26993 | 12.996 |
| 12 Total Registration Violations | WARREN | 2872 | 3192069 | 0.09 | 25507 | 11.2597 |
| 12 Total Registration Violations | MIFFLIN | 2695 | 3192069 | 0.0844 | 26653 | 10.1114 |
| 12 Total Registration Violations | TIOGA | 2545 | 3192069 | 0.0797 | 25568 | 9.9538 |
| 12 Total Registration Violations | FULTON | 2523 | 3192069 | 0.079 | 9147 | 27.5828 |
| 12 Total Registration Violations | CLINTON | 2395 | 3192069 | 0.075 | 21968 | 10.9022 |
| 12 Total Registration Violations | JEFFERSON | 2361 | 3192069 | 0.074 | 27275 | 8.6563 |
| 12 Total Registration Violations | McKEAN | 2351 | 3192069 | 0.0737 | 24252 | 9.694 |
| 12 Total Registration Violations | CLARION | 2343 | 3192069 | 0.0734 | 23332 | 10.042 |
| 12 Total Registration Violations | WYOMING | 1564 | 3192069 | 0.049 | 17602 | 8.8854 |
| 12 Total Registration Violations | JUNIATA | 1442 | 3192069 | 0.0452 | 13796 | 10.4523 |
| 12 Total Registration Violations | POTTER | 1107 | 3192069 | 0.0347 | 10449 | 10.5943 |
| 12 Total Registration Violations | SULLIVAN | 557 | 3192069 | 0.0174 | 4359 | 12.7782 |

| 12 Total Registration Violations | FOREST | 485 | 3192069 | 0.0152 | 3328 | 14.5733 |
|---|---|---|---|---|---|---|
| 12 Total Registration Violations | CAMERON | 462 | 3192069 | 0.0145 | 2906 | 15.8981 |

| ScorecardLabel | County | CountyQuantity | Quantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 01 Illegal Duplicate Registrations | PHILADELPHIA | 1479 | 8026 | 18.4276 | 1073663 | 0.1378 |
| 01 Illegal Duplicate Registrations | ALLEGHENY | 846 | 8026 | 10.5407 | 939491 | 0.09 |
| 01 Illegal Duplicate Registrations | BUCKS | 585 | 8026 | 7.2888 | 482425 | 0.1213 |
| 01 Illegal Duplicate Registrations | MONTGOMERY | 475 | 8026 | 5.9183 | 597606 | 0.0795 |
| 01 Illegal Duplicate Registrations | DAUPHIN | 428 | 8026 | 5.3327 | 189128 | 0.2263 |
| 01 Illegal Duplicate Registrations | DELAWARE | 351 | 8026 | 4.3733 | 415024 | 0.0846 |
| 01 Illegal Duplicate Registrations | CHESTER | 319 | 8026 | 3.9746 | 382662 | 0.0834 |
| 01 Illegal Duplicate Registrations | LANCASTER | 275 | 8026 | 3.4264 | 343838 | 0.08 |
| 01 Illegal Duplicate Registrations | NORTHAMPTON | 239 | 8026 | 2.9778 | 216704 | 0.1103 |
| 01 Illegal Duplicate Registrations | YORK | 186 | 8026 | 2.3175 | 311457 | 0.0597 |
| 01 Illegal Duplicate Registrations | ERIE | 174 | 8026 | 2.168 | 172630 | 0.1008 |
| 01 Illegal Duplicate Registrations | WASHINGTON | 152 | 8026 | 1.8938 | 141049 | 0.1078 |
| 01 Illegal Duplicate Registrations | INDIANA | 148 | 8026 | 1.844 | 44041 | 0.3361 |
| 01 Illegal Duplicate Registrations | LUZERNE | 145 | 8026 | 1.8066 | 194953 | 0.0744 |
| 01 Illegal Duplicate Registrations | WESTMORELAND | 136 | 8026 | 1.6945 | 243635 | 0.0558 |
| 01 Illegal Duplicate Registrations | BERKS | 129 | 8026 | 1.6073 | 258217 | 0.05 |
| 01 Illegal Duplicate Registrations | CUMBERLAND | 117 | 8026 | 1.4578 | 186679 | 0.0627 |
| 01 Illegal Duplicate Registrations | CRAWFORD | 111 | 8026 | 1.383 | 52093 | 0.2131 |
| 01 Illegal Duplicate Registrations | LEHIGH | 105 | 8026 | 1.3082 | 239432 | 0.0439 |
| 01 Illegal Duplicate Registrations | BEAVER | 103 | 8026 | 1.2833 | 111043 | 0.0928 |
| 01 Illegal Duplicate Registrations | BUTLER | 99 | 8026 | 1.2335 | 136301 | 0.0726 |
| 01 Illegal Duplicate Registrations | UNION | 87 | 8026 | 1.084 | 26285 | 0.331 |
| 01 Illegal Duplicate Registrations | ARMSTRONG | 77 | 8026 | 0.9594 | 40369 | 0.1907 |
| 01 Illegal Duplicate Registrations | MONROE | 75 | 8026 | 0.9345 | 110487 | 0.0679 |
| 01 Illegal Duplicate Registrations | LACKAWANNA | 75 | 8026 | 0.9345 | 141573 | 0.053 |
| 01 Illegal Duplicate Registrations | NORTHUMBERLAND | 68 | 8026 | 0.8472 | 58661 | 0.1159 |
| 01 Illegal Duplicate Registrations | CAMBRIA | 65 | 8026 | 0.8099 | 86070 | 0.0755 |
| 01 Illegal Duplicate Registrations | ADAMS | 61 | 8026 | 0.76 | 70225 | 0.0869 |
| 01 Illegal Duplicate Registrations | CENTRE | 59 | 8026 | 0.7351 | 99841 | 0.0591 |
| 01 Illegal Duplicate Registrations | LAWRENCE | 54 | 8026 | 0.6728 | 56442 | 0.0957 |
| 01 Illegal Duplicate Registrations | MERCER | 54 | 8026 | 0.6728 | 72358 | 0.0746 |
| 01 Illegal Duplicate Registrations | COLUMBIA | 46 | 8026 | 0.5731 | 39249 | 0.1172 |
| 01 Illegal Duplicate Registrations | SUSQUEHANNA | 44 | 8026 | 0.5482 | 26993 | 0.163 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 01 Illegal Duplicate Registrations | BLAIR | 43 | 8026 | 0.5358 | 78217 | 0.055 |
| 01 Illegal Duplicate Registrations | PIKE | 42 | 8026 | 0.5233 | 43274 | 0.0971 |
| 01 Illegal Duplicate Registrations | SCHUYLKILL | 42 | 8026 | 0.5233 | 88640 | 0.0474 |
| 01 Illegal Duplicate Registrations | CLEARFIELD | 40 | 8026 | 0.4984 | 47420 | 0.0844 |
| 01 Illegal Duplicate Registrations | FRANKLIN | 40 | 8026 | 0.4984 | 100048 | 0.04 |
| 01 Illegal Duplicate Registrations | MONTOUR | 35 | 8026 | 0.4361 | 12318 | 0.2841 |
| 01 Illegal Duplicate Registrations | LYCOMING | 34 | 8026 | 0.4236 | 69876 | 0.0487 |
| 01 Illegal Duplicate Registrations | LEBANON | 31 | 8026 | 0.3862 | 91681 | 0.0338 |
| 01 Illegal Duplicate Registrations | SOMERSET | 30 | 8026 | 0.3738 | 48708 | 0.0616 |
| 01 Illegal Duplicate Registrations | FAYETTE | 30 | 8026 | 0.3738 | 79473 | 0.0377 |
| 01 Illegal Duplicate Registrations | JEFFERSON | 29 | 8026 | 0.3613 | 27275 | 0.1063 |
| 01 Illegal Duplicate Registrations | PERRY | 26 | 8026 | 0.3239 | 29959 | 0.0868 |
| 01 Illegal Duplicate Registrations | WAYNE | 21 | 8026 | 0.2616 | 34607 | 0.0607 |
| 01 Illegal Duplicate Registrations | MIFFLIN | 19 | 8026 | 0.2367 | 26653 | 0.0713 |
| 01 Illegal Duplicate Registrations | BRADFORD | 19 | 8026 | 0.2367 | 35054 | 0.0542 |
| 01 Illegal Duplicate Registrations | TIOGA | 18 | 8026 | 0.2243 | 25568 | 0.0704 |
| 01 Illegal Duplicate Registrations | VENANGO | 18 | 8026 | 0.2243 | 31730 | 0.0567 |
| 01 Illegal Duplicate Registrations | CLARION | 17 | 8026 | 0.2118 | 23332 | 0.0729 |
| 01 Illegal Duplicate Registrations | WARREN | 14 | 8026 | 0.1744 | 25507 | 0.0549 |
| 01 Illegal Duplicate Registrations | BEDFORD | 14 | 8026 | 0.1744 | 32976 | 0.0425 |
| 01 Illegal Duplicate Registrations | WYOMING | 13 | 8026 | 0.162 | 17602 | 0.0739 |
| 01 Illegal Duplicate Registrations | CARBON | 13 | 8026 | 0.162 | 42326 | 0.0307 |
| 01 Illegal Duplicate Registrations | GREENE | 10 | 8026 | 0.1246 | 21402 | 0.0467 |
| 01 Illegal Duplicate Registrations | HUNTINGDON | 10 | 8026 | 0.1246 | 28426 | 0.0352 |
| 01 Illegal Duplicate Registrations | CLINTON | 8 | 8026 | 0.0997 | 21968 | 0.0364 |
| 01 Illegal Duplicate Registrations | SNYDER | 8 | 8026 | 0.0997 | 22716 | 0.0352 |
| 01 Illegal Duplicate Registrations | McKEAN | 7 | 8026 | 0.0872 | 24252 | 0.0289 |
| 01 Illegal Duplicate Registrations | FOREST | 6 | 8026 | 0.0748 | 3328 | 0.1803 |
| 01 Illegal Duplicate Registrations | JUNIATA | 5 | 8026 | 0.0623 | 13796 | 0.0362 |
| 01 Illegal Duplicate Registrations | ELK | 5 | 8026 | 0.0623 | 19841 | 0.0252 |
| 01 Illegal Duplicate Registrations | CAMERON | 4 | 8026 | 0.0498 | 2906 | 0.1376 |
| 01 Illegal Duplicate Registrations | SULLIVAN | 3 | 8026 | 0.0374 | 4359 | 0.0688 |
| 01 Illegal Duplicate Registrations | FULTON | 3 | 8026 | 0.0374 | 9147 | 0.0328 |
| 01 Illegal Duplicate Registrations | POTTER | 2 | 8026 | 0.0249 | 10449 | 0.0191 |

| ScorecardLabel | County | CountyQuantity | Quantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 02 Vote History Invalid or Illogical | PHILADELPHIA | 3853 | 15674 | 24.5821 | 1073663 | 0.3589 |
| 02 Vote History Invalid or Illogical | MONTGOMERY | 1339 | 15674 | 8.5428 | 597606 | 0.2241 |
| 02 Vote History Invalid or Illogical | LAWRENCE | 1263 | 15674 | 8.0579 | 56442 | 2.2377 |
| 02 Vote History Invalid or Illogical | BUCKS | 722 | 15674 | 4.6064 | 482425 | 0.1497 |
| 02 Vote History Invalid or Illogical | CHESTER | 675 | 15674 | 4.3065 | 382662 | 0.1764 |
| 02 Vote History Invalid or Illogical | YORK | 612 | 15674 | 3.9046 | 311457 | 0.1965 |
| 02 Vote History Invalid or Illogical | NORTHAMPTON | 567 | 15674 | 3.6175 | 216704 | 0.2616 |
| 02 Vote History Invalid or Illogical | LANCASTER | 560 | 15674 | 3.5728 | 343838 | 0.1629 |
| 02 Vote History Invalid or Illogical | DELAWARE | 440 | 15674 | 2.8072 | 415024 | 0.106 |
| 02 Vote History Invalid or Illogical | ALLEGHENY | 395 | 15674 | 2.5201 | 939491 | 0.042 |
| 02 Vote History Invalid or Illogical | LEHIGH | 358 | 15674 | 2.284 | 239432 | 0.1495 |
| 02 Vote History Invalid or Illogical | DAUPHIN | 328 | 15674 | 2.0926 | 189128 | 0.1734 |
| 02 Vote History Invalid or Illogical | CUMBERLAND | 305 | 15674 | 1.9459 | 186679 | 0.1634 |
| 02 Vote History Invalid or Illogical | WESTMORELAND | 297 | 15674 | 1.8949 | 243635 | 0.1219 |
| 02 Vote History Invalid or Illogical | CENTRE | 241 | 15674 | 1.5376 | 99841 | 0.2414 |
| 02 Vote History Invalid or Illogical | WASHINGTON | 229 | 15674 | 1.461 | 141049 | 0.1624 |
| 02 Vote History Invalid or Illogical | ERIE | 210 | 15674 | 1.3398 | 172630 | 0.1216 |
| 02 Vote History Invalid or Illogical | BUTLER | 199 | 15674 | 1.2696 | 136301 | 0.146 |
| 02 Vote History Invalid or Illogical | FAYETTE | 189 | 15674 | 1.2058 | 79473 | 0.2378 |
| 02 Vote History Invalid or Illogical | LACKAWANNA | 184 | 15674 | 1.1739 | 141573 | 0.13 |
| 02 Vote History Invalid or Illogical | BEAVER | 155 | 15674 | 0.9889 | 111043 | 0.1396 |
| 02 Vote History Invalid or Illogical | FRANKLIN | 142 | 15674 | 0.906 | 100048 | 0.1419 |
| 02 Vote History Invalid or Illogical | BERKS | 140 | 15674 | 0.8932 | 258217 | 0.0542 |
| 02 Vote History Invalid or Illogical | BLAIR | 127 | 15674 | 0.8103 | 78217 | 0.1624 |
| 02 Vote History Invalid or Illogical | LEBANON | 123 | 15674 | 0.7847 | 91681 | 0.1342 |
| 02 Vote History Invalid or Illogical | SCHUYLKILL | 103 | 15674 | 0.6571 | 88640 | 0.1162 |
| 02 Vote History Invalid or Illogical | ADAMS | 100 | 15674 | 0.638 | 70225 | 0.1424 |
| 02 Vote History Invalid or Illogical | CAMBRIA | 97 | 15674 | 0.6189 | 86070 | 0.1127 |
| 02 Vote History Invalid or Illogical | LUZERNE | 97 | 15674 | 0.6189 | 194953 | 0.0498 |
| 02 Vote History Invalid or Illogical | LYCOMING | 91 | 15674 | 0.5806 | 69876 | 0.1302 |
| 02 Vote History Invalid or Illogical | NORTHUMBERLAND | 89 | 15674 | 0.5678 | 58661 | 0.1517 |
| 02 Vote History Invalid or Illogical | MERCER | 87 | 15674 | 0.5551 | 72358 | 0.1202 |

| | | | | | |
|---|---|---|---|---|---|
| 02 Vote History Invalid or Illogical | INDIANA | 81 | 15674 | 0.5168 | 44041 | 0.1839 |
| 02 Vote History Invalid or Illogical | CRAWFORD | 81 | 15674 | 0.5168 | 52093 | 0.1555 |
| 02 Vote History Invalid or Illogical | CARBON | 76 | 15674 | 0.4849 | 42326 | 0.1796 |
| 02 Vote History Invalid or Illogical | MONROE | 75 | 15674 | 0.4785 | 110487 | 0.0679 |
| 02 Vote History Invalid or Illogical | PIKE | 68 | 15674 | 0.4338 | 43274 | 0.1571 |
| 02 Vote History Invalid or Illogical | CLEARFIELD | 65 | 15674 | 0.4147 | 47420 | 0.1371 |
| 02 Vote History Invalid or Illogical | MIFFLIN | 64 | 15674 | 0.4083 | 26653 | 0.2401 |
| 02 Vote History Invalid or Illogical | VENANGO | 64 | 15674 | 0.4083 | 31730 | 0.2017 |
| 02 Vote History Invalid or Illogical | WAYNE | 57 | 15674 | 0.3637 | 34607 | 0.1647 |
| 02 Vote History Invalid or Illogical | BRADFORD | 54 | 15674 | 0.3445 | 35054 | 0.154 |
| 02 Vote History Invalid or Illogical | TIOGA | 53 | 15674 | 0.3381 | 25568 | 0.2073 |
| 02 Vote History Invalid or Illogical | ARMSTRONG | 51 | 15674 | 0.3254 | 40369 | 0.1263 |
| 02 Vote History Invalid or Illogical | COLUMBIA | 49 | 15674 | 0.3126 | 39249 | 0.1248 |
| 02 Vote History Invalid or Illogical | PERRY | 44 | 15674 | 0.2807 | 29959 | 0.1469 |
| 02 Vote History Invalid or Illogical | WARREN | 42 | 15674 | 0.268 | 25507 | 0.1647 |
| 02 Vote History Invalid or Illogical | McKEAN | 40 | 15674 | 0.2552 | 24252 | 0.1649 |
| 02 Vote History Invalid or Illogical | HUNTINGDON | 38 | 15674 | 0.2424 | 28426 | 0.1337 |
| 02 Vote History Invalid or Illogical | CLINTON | 34 | 15674 | 0.2169 | 21968 | 0.1548 |
| 02 Vote History Invalid or Illogical | SUSQUEHANNA | 33 | 15674 | 0.2105 | 26993 | 0.1223 |
| 02 Vote History Invalid or Illogical | ELK | 28 | 15674 | 0.1786 | 19841 | 0.1411 |
| 02 Vote History Invalid or Illogical | GREENE | 28 | 15674 | 0.1786 | 21402 | 0.1308 |
| 02 Vote History Invalid or Illogical | BEDFORD | 28 | 15674 | 0.1786 | 32976 | 0.0849 |
| 02 Vote History Invalid or Illogical | SOMERSET | 26 | 15674 | 0.1659 | 48708 | 0.0534 |
| 02 Vote History Invalid or Illogical | JEFFERSON | 25 | 15674 | 0.1595 | 27275 | 0.0917 |
| 02 Vote History Invalid or Illogical | WYOMING | 24 | 15674 | 0.1531 | 17602 | 0.1363 |
| 02 Vote History Invalid or Illogical | CLARION | 24 | 15674 | 0.1531 | 23332 | 0.1029 |
| 02 Vote History Invalid or Illogical | SNYDER | 23 | 15674 | 0.1467 | 22716 | 0.1013 |
| 02 Vote History Invalid or Illogical | MONTOUR | 18 | 15674 | 0.1148 | 12318 | 0.1461 |
| 02 Vote History Invalid or Illogical | JUNIATA | 17 | 15674 | 0.1085 | 13796 | 0.1232 |
| 02 Vote History Invalid or Illogical | FULTON | 14 | 15674 | 0.0893 | 9147 | 0.1531 |
| 02 Vote History Invalid or Illogical | UNION | 13 | 15674 | 0.0829 | 26285 | 0.0495 |
| 02 Vote History Invalid or Illogical | POTTER | 12 | 15674 | 0.0766 | 10449 | 0.1148 |
| 02 Vote History Invalid or Illogical | FOREST | 3 | 15674 | 0.0191 | 3328 | 0.0901 |

| | | | | | |
|---|---|---|---|---|---|
| 02 Vote History Invalid or Illogical | SULLIVAN | 3 | 15674 | 0.0191 | 4359 | 0.0688 |
| 02 Vote History Invalid or Illogical | CAMERON | 2 | 15674 | 0.0128 | 2906 | 0.0688 |

| ScorecardLabel | County | CountyQuantity | Quantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 03 Questionable inactive status | VENANGO | 954 | 1996 | 47.7956 | 31730 | 3.0066 |
| 03 Questionable inactive status | CRAWFORD | 130 | 1996 | 6.513 | 52093 | 0.2496 |
| 03 Questionable inactive status | ALLEGHENY | 114 | 1996 | 5.7114 | 939491 | 0.0121 |
| 03 Questionable inactive status | NORTHAMPTON | 113 | 1996 | 5.6613 | 216704 | 0.0521 |
| 03 Questionable inactive status | CUMBERLAND | 106 | 1996 | 5.3106 | 186679 | 0.0568 |
| 03 Questionable inactive status | BEAVER | 103 | 1996 | 5.1603 | 111043 | 0.0928 |
| 03 Questionable inactive status | LANCASTER | 67 | 1996 | 3.3567 | 343838 | 0.0195 |
| 03 Questionable inactive status | LEHIGH | 42 | 1996 | 2.1042 | 239432 | 0.0175 |
| 03 Questionable inactive status | BLAIR | 40 | 1996 | 2.004 | 78217 | 0.0511 |
| 03 Questionable inactive status | NORTHUMBERLAND | 36 | 1996 | 1.8036 | 58661 | 0.0614 |
| 03 Questionable inactive status | DAUPHIN | 35 | 1996 | 1.7535 | 189128 | 0.0185 |
| 03 Questionable inactive status | WASHINGTON | 28 | 1996 | 1.4028 | 141049 | 0.0199 |
| 03 Questionable inactive status | YORK | 24 | 1996 | 1.2024 | 311457 | 0.0077 |
| 03 Questionable inactive status | BUCKS | 24 | 1996 | 1.2024 | 482425 | 0.005 |
| 03 Questionable inactive status | BUTLER | 23 | 1996 | 1.1523 | 136301 | 0.0169 |
| 03 Questionable inactive status | MONROE | 18 | 1996 | 0.9018 | 110487 | 0.0163 |
| 03 Questionable inactive status | UNION | 16 | 1996 | 0.8016 | 26285 | 0.0609 |
| 03 Questionable inactive status | WESTMORELAND | 14 | 1996 | 0.7014 | 243635 | 0.0057 |
| 03 Questionable inactive status | BRADFORD | 11 | 1996 | 0.5511 | 35054 | 0.0314 |
| 03 Questionable inactive status | ERIE | 11 | 1996 | 0.5511 | 172630 | 0.0064 |
| 03 Questionable inactive status | LAWRENCE | 10 | 1996 | 0.501 | 56442 | 0.0177 |
| 03 Questionable inactive status | SULLIVAN | 7 | 1996 | 0.3507 | 4359 | 0.1606 |
| 03 Questionable inactive status | TIOGA | 6 | 1996 | 0.3006 | 25568 | 0.0235 |
| 03 Questionable inactive status | LACKAWANNA | 6 | 1996 | 0.3006 | 141573 | 0.0042 |
| 03 Questionable inactive status | CLEARFIELD | 5 | 1996 | 0.2505 | 47420 | 0.0105 |
| 03 Questionable inactive status | ADAMS | 5 | 1996 | 0.2505 | 70225 | 0.0071 |
| 03 Questionable inactive status | MONTOUR | 4 | 1996 | 0.2004 | 12318 | 0.0325 |
| 03 Questionable inactive status | LYCOMING | 4 | 1996 | 0.2004 | 69876 | 0.0057 |
| 03 Questionable inactive status | CLINTON | 3 | 1996 | 0.1503 | 21968 | 0.0137 |
| 03 Questionable inactive status | PIKE | 3 | 1996 | 0.1503 | 43274 | 0.0069 |
| 03 Questionable inactive status | MERCER | 3 | 1996 | 0.1503 | 72358 | 0.0041 |
| 03 Questionable inactive status | FAYETTE | 3 | 1996 | 0.1503 | 79473 | 0.0038 |

| | | | | | |
|---|---|---|---|---|---|
| 03 Questionable inactive status | BERKS | 3 | 1996 | 0.1503 | 258217 | 0.0012 |
| 03 Questionable inactive status | PHILADELPHIA | 3 | 1996 | 0.1503 | 1073663 | 0.0003 |
| 03 Questionable inactive status | WYOMING | 2 | 1996 | 0.1002 | 17602 | 0.0114 |
| 03 Questionable inactive status | WARREN | 2 | 1996 | 0.1002 | 25507 | 0.0078 |
| 03 Questionable inactive status | MIFFLIN | 2 | 1996 | 0.1002 | 26653 | 0.0075 |
| 03 Questionable inactive status | SUSQUEHANNA | 2 | 1996 | 0.1002 | 26993 | 0.0074 |
| 03 Questionable inactive status | JEFFERSON | 2 | 1996 | 0.1002 | 27275 | 0.0073 |
| 03 Questionable inactive status | HUNTINGDON | 2 | 1996 | 0.1002 | 28426 | 0.007 |
| 03 Questionable inactive status | PERRY | 2 | 1996 | 0.1002 | 29959 | 0.0067 |
| 03 Questionable inactive status | MONTGOMERY | 2 | 1996 | 0.1002 | 597606 | 0.0003 |
| 03 Questionable inactive status | GREENE | 1 | 1996 | 0.0501 | 21402 | 0.0047 |
| 03 Questionable inactive status | McKEAN | 1 | 1996 | 0.0501 | 24252 | 0.0041 |
| 03 Questionable inactive status | WAYNE | 1 | 1996 | 0.0501 | 34607 | 0.0029 |
| 03 Questionable inactive status | CARBON | 1 | 1996 | 0.0501 | 42326 | 0.0024 |
| 03 Questionable inactive status | SOMERSET | 1 | 1996 | 0.0501 | 48708 | 0.0021 |
| 03 Questionable inactive status | CENTRE | 1 | 1996 | 0.0501 | 99841 | 0.001 |

| ScorecardLabel | County | CountyQuantity | Quantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 04 Voted while Inactive | CUMBERLAND | 47 | 118 | 39.8305 | 186679 | 0.0252 |
| 04 Voted while Inactive | ALLEGHENY | 22 | 118 | 18.6441 | 939491 | 0.0023 |
| 04 Voted while Inactive | LEHIGH | 12 | 118 | 10.1695 | 239432 | 0.005 |
| 04 Voted while Inactive | LANCASTER | 10 | 118 | 8.4746 | 343838 | 0.0029 |
| 04 Voted while Inactive | YORK | 8 | 118 | 6.7797 | 311457 | 0.0026 |
| 04 Voted while Inactive | BUCKS | 4 | 118 | 3.3898 | 482425 | 0.0008 |
| 04 Voted while Inactive | LACKAWANNA | 3 | 118 | 2.5424 | 141573 | 0.0021 |
| 04 Voted while Inactive | WASHINGTON | 3 | 118 | 2.5424 | 141049 | 0.0021 |
| 04 Voted while Inactive | BERKS | 3 | 118 | 2.5424 | 258217 | 0.0012 |
| 04 Voted while Inactive | ERIE | 2 | 118 | 1.6949 | 172630 | 0.0012 |
| 04 Voted while Inactive | FAYETTE | 1 | 118 | 0.8475 | 79473 | 0.0013 |
| 04 Voted while Inactive | BEAVER | 1 | 118 | 0.8475 | 111043 | 0.0009 |
| 04 Voted while Inactive | WESTMORELAND | 1 | 118 | 0.8475 | 243635 | 0.0004 |
| 04 Voted while Inactive | PHILADELPHIA | 1 | 118 | 0.8475 | 1073663 | 0.0001 |

| ScorecardLabel | County | CountyQuantity | Quantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 06 Modified Date Prior to Registration Date | PHILADELPHIA | 76 | 196 | 38.7755 | 1073663 | 0.0071 |
| 06 Modified Date Prior to Registration Date | ALLEGHENY | 38 | 196 | 19.3878 | 939491 | 0.004 |
| 06 Modified Date Prior to Registration Date | BUCKS | 14 | 196 | 7.1429 | 482425 | 0.0029 |
| 06 Modified Date Prior to Registration Date | YORK | 8 | 196 | 4.0816 | 311457 | 0.0026 |
| 06 Modified Date Prior to Registration Date | LANCASTER | 8 | 196 | 4.0816 | 343838 | 0.0023 |
| 06 Modified Date Prior to Registration Date | MONROE | 7 | 196 | 3.5714 | 110487 | 0.0063 |
| 06 Modified Date Prior to Registration Date | BERKS | 7 | 196 | 3.5714 | 258217 | 0.0027 |
| 06 Modified Date Prior to Registration Date | LEHIGH | 6 | 196 | 3.0612 | 239432 | 0.0025 |
| 06 Modified Date Prior to Registration Date | CHESTER | 4 | 196 | 2.0408 | 382662 | 0.001 |
| 06 Modified Date Prior to Registration Date | DELAWARE | 4 | 196 | 2.0408 | 415024 | 0.001 |
| 06 Modified Date Prior to Registration Date | MONTGOMERY | 4 | 196 | 2.0408 | 597606 | 0.0007 |
| 06 Modified Date Prior to Registration Date | LACKAWANNA | 3 | 196 | 1.5306 | 141573 | 0.0021 |
| 06 Modified Date Prior to Registration Date | ERIE | 3 | 196 | 1.5306 | 172630 | 0.0017 |
| 06 Modified Date Prior to Registration Date | NORTHAMPTON | 2 | 196 | 1.0204 | 216704 | 0.0009 |
| 06 Modified Date Prior to Registration Date | JUNIATA | 1 | 196 | 0.5102 | 13796 | 0.0072 |
| 06 Modified Date Prior to Registration Date | McKEAN | 1 | 196 | 0.5102 | 24252 | 0.0041 |
| 06 Modified Date Prior to Registration Date | MIFFLIN | 1 | 196 | 0.5102 | 26653 | 0.0038 |
| 06 Modified Date Prior to Registration Date | SOMERSET | 1 | 196 | 0.5102 | 48708 | 0.0021 |
| 06 Modified Date Prior to Registration Date | ADAMS | 1 | 196 | 0.5102 | 70225 | 0.0014 |
| 06 Modified Date Prior to Registration Date | BLAIR | 1 | 196 | 0.5102 | 78217 | 0.0013 |
| 06 Modified Date Prior to Registration Date | BUTLER | 1 | 196 | 0.5102 | 136301 | 0.0007 |
| 06 Modified Date Prior to Registration Date | WASHINGTON | 1 | 196 | 0.5102 | 141049 | 0.0007 |
| 06 Modified Date Prior to Registration Date | CUMBERLAND | 1 | 196 | 0.5102 | 186679 | 0.0005 |
| 06 Modified Date Prior to Registration Date | DAUPHIN | 1 | 196 | 0.5102 | 189128 | 0.0005 |
| 06 Modified Date Prior to Registration Date | LUZERNE | 1 | 196 | 0.5102 | 194953 | 0.0005 |
| 06 Modified Date Prior to Registration Date | WESTMORELAND | 1 | 196 | 0.5102 | 243635 | 0.0004 |

| ScorecardLabel | County | CountyQuantity | Quantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 07 Invalid or Illogical Registration Date | YORK | 70433 | 340266 | 20.6994 | 311457 | 22.614 |
| 07 Invalid or Illogical Registration Date | CUMBERLAND | 37854 | 340266 | 11.1248 | 186679 | 20.2776 |
| 07 Invalid or Illogical Registration Date | DAUPHIN | 23730 | 340266 | 6.974 | 189128 | 12.5471 |
| 07 Invalid or Illogical Registration Date | ALLEGHENY | 23459 | 340266 | 6.8943 | 939491 | 2.497 |
| 07 Invalid or Illogical Registration Date | FRANKLIN | 20664 | 340266 | 6.0729 | 100048 | 20.6541 |
| 07 Invalid or Illogical Registration Date | CHESTER | 19754 | 340266 | 5.8055 | 382662 | 5.1623 |
| 07 Invalid or Illogical Registration Date | LEBANON | 18138 | 340266 | 5.3305 | 91681 | 19.7838 |
| 07 Invalid or Illogical Registration Date | NORTHUMBERLAND | 17988 | 340266 | 5.2865 | 58661 | 30.6643 |
| 07 Invalid or Illogical Registration Date | DELAWARE | 15224 | 340266 | 4.4741 | 415024 | 3.6682 |
| 07 Invalid or Illogical Registration Date | SNYDER | 8428 | 340266 | 2.4769 | 22716 | 37.1016 |
| 07 Invalid or Illogical Registration Date | BLAIR | 7780 | 340266 | 2.2864 | 78217 | 9.9467 |
| 07 Invalid or Illogical Registration Date | VENANGO | 7133 | 340266 | 2.0963 | 31730 | 22.4803 |
| 07 Invalid or Illogical Registration Date | PHILADELPHIA | 5736 | 340266 | 1.6857 | 1073663 | 0.5342 |
| 07 Invalid or Illogical Registration Date | ERIE | 5422 | 340266 | 1.5935 | 172630 | 3.1408 |
| 07 Invalid or Illogical Registration Date | MONTGOMERY | 5036 | 340266 | 1.48 | 597606 | 0.8427 |
| 07 Invalid or Illogical Registration Date | LANCASTER | 4902 | 340266 | 1.4406 | 343838 | 1.4257 |
| 07 Invalid or Illogical Registration Date | BUCKS | 4457 | 340266 | 1.3099 | 482425 | 0.9239 |
| 07 Invalid or Illogical Registration Date | WESTMORELAND | 2606 | 340266 | 0.7659 | 243635 | 1.0696 |
| 07 Invalid or Illogical Registration Date | LUZERNE | 2574 | 340266 | 0.7565 | 194953 | 1.3203 |
| 07 Invalid or Illogical Registration Date | ARMSTRONG | 2546 | 340266 | 0.7482 | 40369 | 6.3068 |
| 07 Invalid or Illogical Registration Date | BERKS | 2425 | 340266 | 0.7127 | 258217 | 0.9391 |
| 07 Invalid or Illogical Registration Date | NORTHAMPTON | 2129 | 340266 | 0.6257 | 216704 | 0.9824 |
| 07 Invalid or Illogical Registration Date | LEHIGH | 1944 | 340266 | 0.5713 | 239432 | 0.8119 |
| 07 Invalid or Illogical Registration Date | LACKAWANNA | 1928 | 340266 | 0.5666 | 141573 | 1.3618 |
| 07 Invalid or Illogical Registration Date | BUTLER | 1888 | 340266 | 0.5549 | 136301 | 1.3852 |
| 07 Invalid or Illogical Registration Date | ADAMS | 1860 | 340266 | 0.5466 | 70225 | 2.6486 |
| 07 Invalid or Illogical Registration Date | SCHUYLKILL | 1551 | 340266 | 0.4558 | 88640 | 1.7498 |
| 07 Invalid or Illogical Registration Date | WASHINGTON | 1467 | 340266 | 0.4311 | 141049 | 1.0401 |
| 07 Invalid or Illogical Registration Date | CENTRE | 1293 | 340266 | 0.38 | 99841 | 1.2951 |
| 07 Invalid or Illogical Registration Date | MERCER | 1260 | 340266 | 0.3703 | 72358 | 1.7413 |
| 07 Invalid or Illogical Registration Date | MONROE | 1201 | 340266 | 0.353 | 110487 | 1.087 |
| 07 Invalid or Illogical Registration Date | LYCOMING | 1062 | 340266 | 0.3121 | 69876 | 1.5198 |

| | | | | | |
|---|---|---|---|---|---|
| 07 Invalid or Illogical Registration Date | UNION | 1038 | 340266 | 0.3051 | 26285 | 3.949 |
| 07 Invalid or Illogical Registration Date | BEAVER | 1009 | 340266 | 0.2965 | 111043 | 0.9087 |
| 07 Invalid or Illogical Registration Date | PERRY | 986 | 340266 | 0.2898 | 29959 | 3.2912 |
| 07 Invalid or Illogical Registration Date | SOMERSET | 829 | 340266 | 0.2436 | 48708 | 1.702 |
| 07 Invalid or Illogical Registration Date | FAYETTE | 811 | 340266 | 0.2383 | 79473 | 1.0205 |
| 07 Invalid or Illogical Registration Date | CAMBRIA | 779 | 340266 | 0.2289 | 86070 | 0.9051 |
| 07 Invalid or Illogical Registration Date | CRAWFORD | 727 | 340266 | 0.2137 | 52093 | 1.3956 |
| 07 Invalid or Illogical Registration Date | CLEARFIELD | 696 | 340266 | 0.2045 | 47420 | 1.4677 |
| 07 Invalid or Illogical Registration Date | COLUMBIA | 692 | 340266 | 0.2034 | 39249 | 1.7631 |
| 07 Invalid or Illogical Registration Date | CARBON | 616 | 340266 | 0.181 | 42326 | 1.4554 |
| 07 Invalid or Illogical Registration Date | ELK | 568 | 340266 | 0.1669 | 19841 | 2.8628 |
| 07 Invalid or Illogical Registration Date | LAWRENCE | 567 | 340266 | 0.1666 | 56442 | 1.0046 |
| 07 Invalid or Illogical Registration Date | WARREN | 542 | 340266 | 0.1593 | 25507 | 2.1249 |
| 07 Invalid or Illogical Registration Date | BEDFORD | 532 | 340266 | 0.1563 | 32976 | 1.6133 |
| 07 Invalid or Illogical Registration Date | TIOGA | 513 | 340266 | 0.1508 | 25568 | 2.0064 |
| 07 Invalid or Illogical Registration Date | MONTOUR | 476 | 340266 | 0.1399 | 12318 | 3.8643 |
| 07 Invalid or Illogical Registration Date | HUNTINGDON | 430 | 340266 | 0.1264 | 28426 | 1.5127 |
| 07 Invalid or Illogical Registration Date | INDIANA | 423 | 340266 | 0.1243 | 44041 | 0.9605 |
| 07 Invalid or Illogical Registration Date | PIKE | 399 | 340266 | 0.1173 | 43274 | 0.922 |
| 07 Invalid or Illogical Registration Date | CLARION | 365 | 340266 | 0.1073 | 23332 | 1.5644 |
| 07 Invalid or Illogical Registration Date | McKEAN | 356 | 340266 | 0.1046 | 24252 | 1.4679 |
| 07 Invalid or Illogical Registration Date | JUNIATA | 323 | 340266 | 0.0949 | 13796 | 2.3413 |
| 07 Invalid or Illogical Registration Date | WAYNE | 297 | 340266 | 0.0873 | 34607 | 0.8582 |
| 07 Invalid or Illogical Registration Date | CLINTON | 280 | 340266 | 0.0823 | 21968 | 1.2746 |
| 07 Invalid or Illogical Registration Date | MIFFLIN | 278 | 340266 | 0.0817 | 26653 | 1.043 |
| 07 Invalid or Illogical Registration Date | BRADFORD | 264 | 340266 | 0.0776 | 35054 | 0.7531 |
| 07 Invalid or Illogical Registration Date | JEFFERSON | 257 | 340266 | 0.0755 | 27275 | 0.9423 |
| 07 Invalid or Illogical Registration Date | WYOMING | 243 | 340266 | 0.0714 | 17602 | 1.3805 |
| 07 Invalid or Illogical Registration Date | FULTON | 228 | 340266 | 0.067 | 9147 | 2.4926 |
| 07 Invalid or Illogical Registration Date | SUSQUEHANNA | 219 | 340266 | 0.0644 | 26993 | 0.8113 |
| 07 Invalid or Illogical Registration Date | GREENE | 193 | 340266 | 0.0567 | 21402 | 0.9018 |
| 07 Invalid or Illogical Registration Date | POTTER | 182 | 340266 | 0.0535 | 10449 | 1.7418 |
| 07 Invalid or Illogical Registration Date | CAMERON | 139 | 340266 | 0.0409 | 2906 | 4.7832 |

| | | | | | |
|---|---|---|---|---|---|
| 07 Invalid or Illogical Registration Date | SULLIVAN | 83 | 340266 | 0.0244 | 4359 | 1.9041 |
| 07 Invalid or Illogical Registration Date | FOREST | 54 | 340266 | 0.0159 | 3328 | 1.6226 |

| ScorecardLabel | County | CountyQuantity | Quantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 08 Illegal or Invalid Registration Changes | PHILADELPHIA | 103479 | 632215 | 16.3677 | 1073663 | 9.6379 |
| 08 Illegal or Invalid Registration Changes | MONTGOMERY | 65443 | 632215 | 10.3514 | 597606 | 10.9509 |
| 08 Illegal or Invalid Registration Changes | ALLEGHENY | 64065 | 632215 | 10.1334 | 939491 | 6.8191 |
| 08 Illegal or Invalid Registration Changes | CHESTER | 42969 | 632215 | 6.7966 | 382662 | 11.229 |
| 08 Illegal or Invalid Registration Changes | BUCKS | 37283 | 632215 | 5.8972 | 482425 | 7.7282 |
| 08 Illegal or Invalid Registration Changes | DELAWARE | 36843 | 632215 | 5.8276 | 415024 | 8.8773 |
| 08 Illegal or Invalid Registration Changes | LEHIGH | 22358 | 632215 | 3.5365 | 239432 | 9.3379 |
| 08 Illegal or Invalid Registration Changes | BUTLER | 16857 | 632215 | 2.6663 | 136301 | 12.3675 |
| 08 Illegal or Invalid Registration Changes | BERKS | 16838 | 632215 | 2.6633 | 258217 | 6.5209 |
| 08 Illegal or Invalid Registration Changes | YORK | 15873 | 632215 | 2.5107 | 311457 | 5.0964 |
| 08 Illegal or Invalid Registration Changes | LANCASTER | 15450 | 632215 | 2.4438 | 343838 | 4.4934 |
| 08 Illegal or Invalid Registration Changes | NORTHAMPTON | 14734 | 632215 | 2.3305 | 216704 | 6.7991 |
| 08 Illegal or Invalid Registration Changes | WESTMORELAND | 14396 | 632215 | 2.2771 | 243635 | 5.9088 |
| 08 Illegal or Invalid Registration Changes | LUZERNE | 13231 | 632215 | 2.0928 | 194953 | 6.7868 |
| 08 Illegal or Invalid Registration Changes | CENTRE | 10745 | 632215 | 1.6996 | 99841 | 10.7621 |
| 08 Illegal or Invalid Registration Changes | LEBANON | 10310 | 632215 | 1.6308 | 91681 | 11.2455 |
| 08 Illegal or Invalid Registration Changes | ERIE | 9908 | 632215 | 1.5672 | 172630 | 5.7394 |
| 08 Illegal or Invalid Registration Changes | CUMBERLAND | 9744 | 632215 | 1.5412 | 186679 | 5.2197 |
| 08 Illegal or Invalid Registration Changes | WASHINGTON | 9161 | 632215 | 1.449 | 141049 | 6.4949 |
| 08 Illegal or Invalid Registration Changes | DAUPHIN | 8431 | 632215 | 1.3336 | 189128 | 4.4578 |
| 08 Illegal or Invalid Registration Changes | MONROE | 7704 | 632215 | 1.2186 | 110487 | 6.9728 |
| 08 Illegal or Invalid Registration Changes | LACKAWANNA | 7149 | 632215 | 1.1308 | 141573 | 5.0497 |
| 08 Illegal or Invalid Registration Changes | BEAVER | 5119 | 632215 | 0.8097 | 111043 | 4.6099 |
| 08 Illegal or Invalid Registration Changes | BLAIR | 4831 | 632215 | 0.7641 | 78217 | 6.1764 |
| 08 Illegal or Invalid Registration Changes | SCHUYLKILL | 4645 | 632215 | 0.7347 | 88640 | 5.2403 |
| 08 Illegal or Invalid Registration Changes | FRANKLIN | 4512 | 632215 | 0.7137 | 100048 | 4.5098 |
| 08 Illegal or Invalid Registration Changes | ADAMS | 4001 | 632215 | 0.6329 | 70225 | 5.6974 |
| 08 Illegal or Invalid Registration Changes | FAYETTE | 3826 | 632215 | 0.6052 | 79473 | 4.8142 |
| 08 Illegal or Invalid Registration Changes | MERCER | 3341 | 632215 | 0.5285 | 72358 | 4.6173 |
| 08 Illegal or Invalid Registration Changes | CAMBRIA | 3189 | 632215 | 0.5044 | 86070 | 3.7051 |
| 08 Illegal or Invalid Registration Changes | PIKE | 2661 | 632215 | 0.4209 | 43274 | 6.1492 |
| 08 Illegal or Invalid Registration Changes | NORTHUMBERLAND | 2493 | 632215 | 0.3943 | 58661 | 4.2498 |

| | | | | | |
|---|---|---|---|---|---|
| 08 Illegal or Invalid Registration Changes | LAWRENCE | 2366 | 632215 | 0.3742 | 56442 | 4.1919 |
| 08 Illegal or Invalid Registration Changes | LYCOMING | 2324 | 632215 | 0.3676 | 69876 | 3.3259 |
| 08 Illegal or Invalid Registration Changes | CRAWFORD | 2125 | 632215 | 0.3361 | 52093 | 4.0792 |
| 08 Illegal or Invalid Registration Changes | SOMERSET | 1945 | 632215 | 0.3076 | 48708 | 3.9932 |
| 08 Illegal or Invalid Registration Changes | INDIANA | 1936 | 632215 | 0.3062 | 44041 | 4.3959 |
| 08 Illegal or Invalid Registration Changes | SUSQUEHANNA | 1737 | 632215 | 0.2747 | 26993 | 6.435 |
| 08 Illegal or Invalid Registration Changes | UNION | 1725 | 632215 | 0.2729 | 26285 | 6.5627 |
| 08 Illegal or Invalid Registration Changes | ARMSTRONG | 1706 | 632215 | 0.2698 | 40369 | 4.226 |
| 08 Illegal or Invalid Registration Changes | HUNTINGDON | 1669 | 632215 | 0.264 | 28426 | 5.8714 |
| 08 Illegal or Invalid Registration Changes | CLEARFIELD | 1668 | 632215 | 0.2638 | 47420 | 3.5175 |
| 08 Illegal or Invalid Registration Changes | CARBON | 1665 | 632215 | 0.2634 | 42326 | 3.9338 |
| 08 Illegal or Invalid Registration Changes | COLUMBIA | 1647 | 632215 | 0.2605 | 39249 | 4.1963 |
| 08 Illegal or Invalid Registration Changes | WAYNE | 1562 | 632215 | 0.2471 | 34607 | 4.5135 |
| 08 Illegal or Invalid Registration Changes | BEDFORD | 1480 | 632215 | 0.2341 | 32976 | 4.4881 |
| 08 Illegal or Invalid Registration Changes | VENANGO | 1222 | 632215 | 0.1933 | 31730 | 3.8512 |
| 08 Illegal or Invalid Registration Changes | PERRY | 1165 | 632215 | 0.1843 | 29959 | 3.8886 |
| 08 Illegal or Invalid Registration Changes | WARREN | 1094 | 632215 | 0.173 | 25507 | 4.289 |
| 08 Illegal or Invalid Registration Changes | BRADFORD | 1029 | 632215 | 0.1628 | 35054 | 2.9355 |
| 08 Illegal or Invalid Registration Changes | MIFFLIN | 1005 | 632215 | 0.159 | 26653 | 3.7707 |
| 08 Illegal or Invalid Registration Changes | SNYDER | 968 | 632215 | 0.1531 | 22716 | 4.2613 |
| 08 Illegal or Invalid Registration Changes | JEFFERSON | 959 | 632215 | 0.1517 | 27275 | 3.516 |
| 08 Illegal or Invalid Registration Changes | CLINTON | 877 | 632215 | 0.1387 | 21968 | 3.9922 |
| 08 Illegal or Invalid Registration Changes | TIOGA | 811 | 632215 | 0.1283 | 25568 | 3.1719 |
| 08 Illegal or Invalid Registration Changes | CLARION | 742 | 632215 | 0.1174 | 23332 | 3.1802 |
| 08 Illegal or Invalid Registration Changes | GREENE | 738 | 632215 | 0.1167 | 21402 | 3.4483 |
| 08 Illegal or Invalid Registration Changes | MONTOUR | 719 | 632215 | 0.1137 | 12318 | 5.837 |
| 08 Illegal or Invalid Registration Changes | McKEAN | 714 | 632215 | 0.1129 | 24252 | 2.9441 |
| 08 Illegal or Invalid Registration Changes | FULTON | 597 | 632215 | 0.0944 | 9147 | 6.5267 |
| 08 Illegal or Invalid Registration Changes | ELK | 577 | 632215 | 0.0913 | 19841 | 2.9081 |
| 08 Illegal or Invalid Registration Changes | WYOMING | 563 | 632215 | 0.0891 | 17602 | 3.1985 |
| 08 Illegal or Invalid Registration Changes | JUNIATA | 497 | 632215 | 0.0786 | 13796 | 3.6025 |
| 08 Illegal or Invalid Registration Changes | POTTER | 258 | 632215 | 0.0408 | 10449 | 2.4691 |
| 08 Illegal or Invalid Registration Changes | FOREST | 209 | 632215 | 0.0331 | 3328 | 6.28 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 08 Illegal or Invalid Registration Changes | CAMERON | 176 | 632215 | 0.0278 | 2906 | 6.0564 |
| 08 Illegal or Invalid Registration Changes | SULLIVAN | 151 | 632215 | 0.0239 | 4359 | 3.4641 |

| ScorecardLabel | County | CountyQuantity | Quantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 09 Age Discrepant Registrants | ALLEGHENY | 599 | 2207 | 27.1409 | 939491 | 0.0638 |
| 09 Age Discrepant Registrants | PHILADELPHIA | 319 | 2207 | 14.454 | 1073663 | 0.0297 |
| 09 Age Discrepant Registrants | DELAWARE | 121 | 2207 | 5.4826 | 415024 | 0.0292 |
| 09 Age Discrepant Registrants | BUCKS | 105 | 2207 | 4.7576 | 482425 | 0.0218 |
| 09 Age Discrepant Registrants | MONTGOMERY | 83 | 2207 | 3.7608 | 597606 | 0.0139 |
| 09 Age Discrepant Registrants | LANCASTER | 66 | 2207 | 2.9905 | 343838 | 0.0192 |
| 09 Age Discrepant Registrants | YORK | 62 | 2207 | 2.8092 | 311457 | 0.0199 |
| 09 Age Discrepant Registrants | DAUPHIN | 58 | 2207 | 2.628 | 189128 | 0.0307 |
| 09 Age Discrepant Registrants | BEAVER | 52 | 2207 | 2.3561 | 111043 | 0.0468 |
| 09 Age Discrepant Registrants | CHESTER | 47 | 2207 | 2.1296 | 382662 | 0.0123 |
| 09 Age Discrepant Registrants | BERKS | 45 | 2207 | 2.039 | 258217 | 0.0174 |
| 09 Age Discrepant Registrants | WESTMORELAND | 39 | 2207 | 1.7671 | 243635 | 0.016 |
| 09 Age Discrepant Registrants | CAMBRIA | 33 | 2207 | 1.4952 | 86070 | 0.0383 |
| 09 Age Discrepant Registrants | LEHIGH | 32 | 2207 | 1.4499 | 239432 | 0.0134 |
| 09 Age Discrepant Registrants | WASHINGTON | 30 | 2207 | 1.3593 | 141049 | 0.0213 |
| 09 Age Discrepant Registrants | NORTHAMPTON | 29 | 2207 | 1.314 | 216704 | 0.0134 |
| 09 Age Discrepant Registrants | CENTRE | 27 | 2207 | 1.2234 | 99841 | 0.027 |
| 09 Age Discrepant Registrants | BUTLER | 26 | 2207 | 1.1781 | 136301 | 0.0191 |
| 09 Age Discrepant Registrants | BLAIR | 25 | 2207 | 1.1328 | 78217 | 0.032 |
| 09 Age Discrepant Registrants | LUZERNE | 25 | 2207 | 1.1328 | 194953 | 0.0128 |
| 09 Age Discrepant Registrants | LACKAWANNA | 24 | 2207 | 1.0874 | 141573 | 0.017 |
| 09 Age Discrepant Registrants | CUMBERLAND | 24 | 2207 | 1.0874 | 186679 | 0.0129 |
| 09 Age Discrepant Registrants | ERIE | 23 | 2207 | 1.0421 | 172630 | 0.0133 |
| 09 Age Discrepant Registrants | LEBANON | 20 | 2207 | 0.9062 | 91681 | 0.0218 |
| 09 Age Discrepant Registrants | LAWRENCE | 17 | 2207 | 0.7703 | 56442 | 0.0301 |
| 09 Age Discrepant Registrants | LYCOMING | 17 | 2207 | 0.7703 | 69876 | 0.0243 |
| 09 Age Discrepant Registrants | MONROE | 17 | 2207 | 0.7703 | 110487 | 0.0154 |
| 09 Age Discrepant Registrants | SCHUYLKILL | 16 | 2207 | 0.725 | 88640 | 0.0181 |
| 09 Age Discrepant Registrants | ADAMS | 15 | 2207 | 0.6797 | 70225 | 0.0214 |
| 09 Age Discrepant Registrants | INDIANA | 14 | 2207 | 0.6343 | 44041 | 0.0318 |
| 09 Age Discrepant Registrants | SOMERSET | 13 | 2207 | 0.589 | 48708 | 0.0267 |
| 09 Age Discrepant Registrants | BEDFORD | 11 | 2207 | 0.4984 | 32976 | 0.0334 |

| | | | | | |
|---|---|---|---|---|---|
| 09 Age Discrepant Registrants MERCER | 11 | 2207 | 0.4984 | 72358 | 0.0152 |
| 09 Age Discrepant Registrants FRANKLIN | 11 | 2207 | 0.4984 | 100048 | 0.011 |
| 09 Age Discrepant Registrants CLEARFIELD | 10 | 2207 | 0.4531 | 47420 | 0.0211 |
| 09 Age Discrepant Registrants CLINTON | 8 | 2207 | 0.3625 | 21968 | 0.0364 |
| 09 Age Discrepant Registrants MIFFLIN | 8 | 2207 | 0.3625 | 26653 | 0.03 |
| 09 Age Discrepant Registrants SUSQUEHANNA | 8 | 2207 | 0.3625 | 26993 | 0.0296 |
| 09 Age Discrepant Registrants VENANGO | 8 | 2207 | 0.3625 | 31730 | 0.0252 |
| 09 Age Discrepant Registrants PIKE | 8 | 2207 | 0.3625 | 43274 | 0.0185 |
| 09 Age Discrepant Registrants WYOMING | 7 | 2207 | 0.3172 | 17602 | 0.0398 |
| 09 Age Discrepant Registrants HUNTINGDON | 7 | 2207 | 0.3172 | 28426 | 0.0246 |
| 09 Age Discrepant Registrants PERRY | 7 | 2207 | 0.3172 | 29959 | 0.0234 |
| 09 Age Discrepant Registrants COLUMBIA | 7 | 2207 | 0.3172 | 39249 | 0.0178 |
| 09 Age Discrepant Registrants ARMSTRONG | 7 | 2207 | 0.3172 | 40369 | 0.0173 |
| 09 Age Discrepant Registrants CARBON | 7 | 2207 | 0.3172 | 42326 | 0.0165 |
| 09 Age Discrepant Registrants NORTHUMBERLAND | 7 | 2207 | 0.3172 | 58661 | 0.0119 |
| 09 Age Discrepant Registrants JEFFERSON | 6 | 2207 | 0.2719 | 27275 | 0.022 |
| 09 Age Discrepant Registrants WARREN | 5 | 2207 | 0.2266 | 25507 | 0.0196 |
| 09 Age Discrepant Registrants CRAWFORD | 5 | 2207 | 0.2266 | 52093 | 0.0096 |
| 09 Age Discrepant Registrants FAYETTE | 5 | 2207 | 0.2266 | 79473 | 0.0063 |
| 09 Age Discrepant Registrants WAYNE | 4 | 2207 | 0.1812 | 34607 | 0.0116 |
| 09 Age Discrepant Registrants BRADFORD | 4 | 2207 | 0.1812 | 35054 | 0.0114 |
| 09 Age Discrepant Registrants MONTOUR | 3 | 2207 | 0.1359 | 12318 | 0.0244 |
| 09 Age Discrepant Registrants JUNIATA | 3 | 2207 | 0.1359 | 13796 | 0.0217 |
| 09 Age Discrepant Registrants ELK | 3 | 2207 | 0.1359 | 19841 | 0.0151 |
| 09 Age Discrepant Registrants SNYDER | 3 | 2207 | 0.1359 | 22716 | 0.0132 |
| 09 Age Discrepant Registrants McKEAN | 3 | 2207 | 0.1359 | 24252 | 0.0124 |
| 09 Age Discrepant Registrants GREENE | 2 | 2207 | 0.0906 | 21402 | 0.0093 |
| 09 Age Discrepant Registrants TIOGA | 2 | 2207 | 0.0906 | 25568 | 0.0078 |
| 09 Age Discrepant Registrants CAMERON | 1 | 2207 | 0.0453 | 2906 | 0.0344 |
| 09 Age Discrepant Registrants POTTER | 1 | 2207 | 0.0453 | 10449 | 0.0096 |
| 09 Age Discrepant Registrants CLARION | 1 | 2207 | 0.0453 | 23332 | 0.0043 |
| 09 Age Discrepant Registrants UNION | 1 | 2207 | 0.0453 | 26285 | 0.0038 |

| ScorecardLabel | County | CountyQuantity | Quantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 10 Registrants with questionable address | MONTGOMERY | 15490 | 59609 | 25.986 | 597606 | 2.592 |
| 10 Registrants with questionable address | PHILADELPHIA | 8514 | 59609 | 14.2831 | 1073663 | 0.793 |
| 10 Registrants with questionable address | ALLEGHENY | 6515 | 59609 | 10.9296 | 939491 | 0.6935 |
| 10 Registrants with questionable address | MONROE | 3051 | 59609 | 5.1184 | 110487 | 2.7614 |
| 10 Registrants with questionable address | DELAWARE | 2478 | 59609 | 4.1571 | 415024 | 0.5971 |
| 10 Registrants with questionable address | LANCASTER | 2476 | 59609 | 4.1537 | 343838 | 0.7201 |
| 10 Registrants with questionable address | CHESTER | 1495 | 59609 | 2.508 | 382662 | 0.3907 |
| 10 Registrants with questionable address | BUCKS | 1275 | 59609 | 2.1389 | 482425 | 0.2643 |
| 10 Registrants with questionable address | LEHIGH | 1254 | 59609 | 2.1037 | 239432 | 0.5237 |
| 10 Registrants with questionable address | NORTHAMPTON | 1250 | 59609 | 2.097 | 216704 | 0.5768 |
| 10 Registrants with questionable address | LUZERNE | 997 | 59609 | 1.6726 | 194953 | 0.5114 |
| 10 Registrants with questionable address | BUTLER | 900 | 59609 | 1.5098 | 136301 | 0.6603 |
| 10 Registrants with questionable address | YORK | 889 | 59609 | 1.4914 | 311457 | 0.2854 |
| 10 Registrants with questionable address | WESTMORELAND | 863 | 59609 | 1.4478 | 243635 | 0.3542 |
| 10 Registrants with questionable address | BERKS | 813 | 59609 | 1.3639 | 258217 | 0.3149 |
| 10 Registrants with questionable address | ERIE | 772 | 59609 | 1.2951 | 172630 | 0.4472 |
| 10 Registrants with questionable address | LACKAWANNA | 771 | 59609 | 1.2934 | 141573 | 0.5446 |
| 10 Registrants with questionable address | DAUPHIN | 716 | 59609 | 1.2012 | 189128 | 0.3786 |
| 10 Registrants with questionable address | CUMBERLAND | 708 | 59609 | 1.1877 | 186679 | 0.3793 |
| 10 Registrants with questionable address | LEBANON | 627 | 59609 | 1.0519 | 91681 | 0.6839 |
| 10 Registrants with questionable address | BEAVER | 418 | 59609 | 0.7012 | 111043 | 0.3764 |
| 10 Registrants with questionable address | BLAIR | 390 | 59609 | 0.6543 | 78217 | 0.4986 |
| 10 Registrants with questionable address | CENTRE | 349 | 59609 | 0.5855 | 99841 | 0.3496 |
| 10 Registrants with questionable address | INDIANA | 331 | 59609 | 0.5553 | 44041 | 0.7516 |
| 10 Registrants with questionable address | WASHINGTON | 317 | 59609 | 0.5318 | 141049 | 0.2247 |
| 10 Registrants with questionable address | MERCER | 305 | 59609 | 0.5117 | 72358 | 0.4215 |
| 10 Registrants with questionable address | CRAWFORD | 279 | 59609 | 0.4681 | 52093 | 0.5356 |
| 10 Registrants with questionable address | LYCOMING | 275 | 59609 | 0.4613 | 69876 | 0.3936 |
| 10 Registrants with questionable address | SOMERSET | 269 | 59609 | 0.4513 | 48708 | 0.5523 |
| 10 Registrants with questionable address | ADAMS | 267 | 59609 | 0.4479 | 70225 | 0.3802 |
| 10 Registrants with questionable address | CAMBRIA | 263 | 59609 | 0.4412 | 86070 | 0.3056 |
| 10 Registrants with questionable address | SCHUYLKILL | 254 | 59609 | 0.4261 | 88640 | 0.2866 |

| | | | | | |
|---|---|---|---|---|---|
| 10 Registrants with questionable address | FRANKLIN | 248 | 59609 | 0.416 | 100048 | 0.2479 |
| 10 Registrants with questionable address | FAYETTE | 238 | 59609 | 0.3993 | 79473 | 0.2995 |
| 10 Registrants with questionable address | LAWRENCE | 224 | 59609 | 0.3758 | 56442 | 0.3969 |
| 10 Registrants with questionable address | NORTHUMBERLAND | 213 | 59609 | 0.3573 | 58661 | 0.3631 |
| 10 Registrants with questionable address | COLUMBIA | 167 | 59609 | 0.2802 | 39249 | 0.4255 |
| 10 Registrants with questionable address | PIKE | 163 | 59609 | 0.2734 | 43274 | 0.3767 |
| 10 Registrants with questionable address | CLEARFIELD | 163 | 59609 | 0.2734 | 47420 | 0.3437 |
| 10 Registrants with questionable address | WAYNE | 159 | 59609 | 0.2667 | 34607 | 0.4594 |
| 10 Registrants with questionable address | ARMSTRONG | 150 | 59609 | 0.2516 | 40369 | 0.3716 |
| 10 Registrants with questionable address | HUNTINGDON | 147 | 59609 | 0.2466 | 28426 | 0.5171 |
| 10 Registrants with questionable address | BRADFORD | 146 | 59609 | 0.2449 | 35054 | 0.4165 |
| 10 Registrants with questionable address | JUNIATA | 145 | 59609 | 0.2433 | 13796 | 1.051 |
| 10 Registrants with questionable address | BEDFORD | 143 | 59609 | 0.2399 | 32976 | 0.4336 |
| 10 Registrants with questionable address | CARBON | 132 | 59609 | 0.2214 | 42326 | 0.3119 |
| 10 Registrants with questionable address | TIOGA | 119 | 59609 | 0.1996 | 25568 | 0.4654 |
| 10 Registrants with questionable address | SUSQUEHANNA | 115 | 59609 | 0.1929 | 26993 | 0.426 |
| 10 Registrants with questionable address | McKEAN | 111 | 59609 | 0.1862 | 24252 | 0.4577 |
| 10 Registrants with questionable address | MIFFLIN | 110 | 59609 | 0.1845 | 26653 | 0.4127 |
| 10 Registrants with questionable address | CLINTON | 104 | 59609 | 0.1745 | 21968 | 0.4734 |
| 10 Registrants with questionable address | UNION | 103 | 59609 | 0.1728 | 26285 | 0.3919 |
| 10 Registrants with questionable address | JEFFERSON | 97 | 59609 | 0.1627 | 27275 | 0.3556 |
| 10 Registrants with questionable address | SNYDER | 94 | 59609 | 0.1577 | 22716 | 0.4138 |
| 10 Registrants with questionable address | SULLIVAN | 91 | 59609 | 0.1527 | 4359 | 2.0876 |
| 10 Registrants with questionable address | VENANGO | 91 | 59609 | 0.1527 | 31730 | 0.2868 |
| 10 Registrants with questionable address | MONTOUR | 79 | 59609 | 0.1325 | 12318 | 0.6413 |
| 10 Registrants with questionable address | WARREN | 72 | 59609 | 0.1208 | 25507 | 0.2823 |
| 10 Registrants with questionable address | CLARION | 70 | 59609 | 0.1174 | 23332 | 0.3 |
| 10 Registrants with questionable address | PERRY | 66 | 59609 | 0.1107 | 29959 | 0.2203 |
| 10 Registrants with questionable address | WYOMING | 60 | 59609 | 0.1007 | 17602 | 0.3409 |
| 10 Registrants with questionable address | FOREST | 52 | 59609 | 0.0872 | 3328 | 1.5625 |
| 10 Registrants with questionable address | FULTON | 51 | 59609 | 0.0856 | 9147 | 0.5576 |
| 10 Registrants with questionable address | ELK | 39 | 59609 | 0.0654 | 19841 | 0.1966 |
| 10 Registrants with questionable address | POTTER | 37 | 59609 | 0.0621 | 10449 | 0.3541 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 10 Registrants with questionable address | GREENE | 29 | 59609 | 0.0487 | 21402 | 0.1355 |
| 10 Registrants with questionable address | CAMERON | 10 | 59609 | 0.0168 | 2906 | 0.3441 |

| ScorecardLabel | County | CountyQuantity | Quantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 11 Registrations with Altered Votes | PHILADELPHIA | 16108 | 138291 | 11.6479 | 1073663 | 1.5003 |
| 11 Registrations with Altered Votes | ALLEGHENY | 13231 | 138291 | 9.5675 | 939491 | 1.4083 |
| 11 Registrations with Altered Votes | MONTGOMERY | 11446 | 138291 | 8.2767 | 597606 | 1.9153 |
| 11 Registrations with Altered Votes | BUCKS | 7945 | 138291 | 5.7451 | 482425 | 1.6469 |
| 11 Registrations with Altered Votes | DELAWARE | 6530 | 138291 | 4.7219 | 415024 | 1.5734 |
| 11 Registrations with Altered Votes | CHESTER | 6140 | 138291 | 4.4399 | 382662 | 1.6045 |
| 11 Registrations with Altered Votes | LANCASTER | 5263 | 138291 | 3.8057 | 343838 | 1.5307 |
| 11 Registrations with Altered Votes | YORK | 4076 | 138291 | 2.9474 | 311457 | 1.3087 |
| 11 Registrations with Altered Votes | WESTMORELAND | 4042 | 138291 | 2.9228 | 243635 | 1.659 |
| 11 Registrations with Altered Votes | LEHIGH | 3795 | 138291 | 2.7442 | 239432 | 1.585 |
| 11 Registrations with Altered Votes | BERKS | 3749 | 138291 | 2.711 | 258217 | 1.4519 |
| 11 Registrations with Altered Votes | DAUPHIN | 3670 | 138291 | 2.6538 | 189128 | 1.9405 |
| 11 Registrations with Altered Votes | NORTHAMPTON | 3421 | 138291 | 2.4738 | 216704 | 1.5787 |
| 11 Registrations with Altered Votes | CUMBERLAND | 3319 | 138291 | 2.4 | 186679 | 1.7779 |
| 11 Registrations with Altered Votes | LUZERNE | 2747 | 138291 | 1.9864 | 194953 | 1.4091 |
| 11 Registrations with Altered Votes | BUTLER | 2439 | 138291 | 1.7637 | 136301 | 1.7894 |
| 11 Registrations with Altered Votes | WASHINGTON | 2411 | 138291 | 1.7434 | 141049 | 1.7093 |
| 11 Registrations with Altered Votes | ERIE | 2146 | 138291 | 1.5518 | 172630 | 1.2431 |
| 11 Registrations with Altered Votes | LACKAWANNA | 2054 | 138291 | 1.4853 | 141573 | 1.4508 |
| 11 Registrations with Altered Votes | BEAVER | 1881 | 138291 | 1.3602 | 111043 | 1.6939 |
| 11 Registrations with Altered Votes | CENTRE | 1677 | 138291 | 1.2127 | 99841 | 1.6797 |
| 11 Registrations with Altered Votes | MONROE | 1611 | 138291 | 1.1649 | 110487 | 1.4581 |
| 11 Registrations with Altered Votes | LEBANON | 1536 | 138291 | 1.1107 | 91681 | 1.6754 |
| 11 Registrations with Altered Votes | PIKE | 1500 | 138291 | 1.0847 | 43274 | 3.4663 |
| 11 Registrations with Altered Votes | FRANKLIN | 1353 | 138291 | 0.9784 | 100048 | 1.3524 |
| 11 Registrations with Altered Votes | SCHUYLKILL | 1339 | 138291 | 0.9682 | 88640 | 1.5106 |
| 11 Registrations with Altered Votes | CAMBRIA | 1326 | 138291 | 0.9588 | 86070 | 1.5406 |
| 11 Registrations with Altered Votes | ADAMS | 1241 | 138291 | 0.8974 | 70225 | 1.7672 |
| 11 Registrations with Altered Votes | MERCER | 1137 | 138291 | 0.8222 | 72358 | 1.5714 |
| 11 Registrations with Altered Votes | LYCOMING | 1063 | 138291 | 0.7687 | 69876 | 1.5213 |
| 11 Registrations with Altered Votes | BLAIR | 1052 | 138291 | 0.7607 | 78217 | 1.345 |
| 11 Registrations with Altered Votes | FAYETTE | 979 | 138291 | 0.7079 | 79473 | 1.2319 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 11 Registrations with Altered Votes | LAWRENCE | 922 | 138291 | 0.6667 | 56442 | 1.6335 |
| 11 Registrations with Altered Votes | NORTHUMBERLAND | 914 | 138291 | 0.6609 | 58661 | 1.5581 |
| 11 Registrations with Altered Votes | INDIANA | 879 | 138291 | 0.6356 | 44041 | 1.9959 |
| 11 Registrations with Altered Votes | CRAWFORD | 799 | 138291 | 0.5778 | 52093 | 1.5338 |
| 11 Registrations with Altered Votes | ARMSTRONG | 757 | 138291 | 0.5474 | 40369 | 1.8752 |
| 11 Registrations with Altered Votes | SOMERSET | 753 | 138291 | 0.5445 | 48708 | 1.5459 |
| 11 Registrations with Altered Votes | CARBON | 728 | 138291 | 0.5264 | 42326 | 1.72 |
| 11 Registrations with Altered Votes | CLEARFIELD | 728 | 138291 | 0.5264 | 47420 | 1.5352 |
| 11 Registrations with Altered Votes | COLUMBIA | 693 | 138291 | 0.5011 | 39249 | 1.7657 |
| 11 Registrations with Altered Votes | WAYNE | 618 | 138291 | 0.4469 | 34607 | 1.7858 |
| 11 Registrations with Altered Votes | PERRY | 554 | 138291 | 0.4006 | 29959 | 1.8492 |
| 11 Registrations with Altered Votes | VENANGO | 529 | 138291 | 0.3825 | 31730 | 1.6672 |
| 11 Registrations with Altered Votes | BEDFORD | 493 | 138291 | 0.3565 | 32976 | 1.495 |
| 11 Registrations with Altered Votes | UNION | 490 | 138291 | 0.3543 | 26285 | 1.8642 |
| 11 Registrations with Altered Votes | BRADFORD | 461 | 138291 | 0.3334 | 35054 | 1.3151 |
| 11 Registrations with Altered Votes | JEFFERSON | 459 | 138291 | 0.3319 | 27275 | 1.6829 |
| 11 Registrations with Altered Votes | SUSQUEHANNA | 423 | 138291 | 0.3059 | 26993 | 1.5671 |
| 11 Registrations with Altered Votes | CLARION | 400 | 138291 | 0.2892 | 23332 | 1.7144 |
| 11 Registrations with Altered Votes | CLINTON | 379 | 138291 | 0.2741 | 21968 | 1.7252 |
| 11 Registrations with Altered Votes | MIFFLIN | 371 | 138291 | 0.2683 | 26653 | 1.392 |
| 11 Registrations with Altered Votes | SNYDER | 369 | 138291 | 0.2668 | 22716 | 1.6244 |
| 11 Registrations with Altered Votes | TIOGA | 367 | 138291 | 0.2654 | 25568 | 1.4354 |
| 11 Registrations with Altered Votes | WARREN | 366 | 138291 | 0.2647 | 25507 | 1.4349 |
| 11 Registrations with Altered Votes | WYOMING | 348 | 138291 | 0.2516 | 17602 | 1.977 |
| 11 Registrations with Altered Votes | HUNTINGDON | 322 | 138291 | 0.2328 | 28426 | 1.1328 |
| 11 Registrations with Altered Votes | MONTOUR | 313 | 138291 | 0.2263 | 12318 | 2.541 |
| 11 Registrations with Altered Votes | McKEAN | 292 | 138291 | 0.2111 | 24252 | 1.204 |
| 11 Registrations with Altered Votes | GREENE | 258 | 138291 | 0.1866 | 21402 | 1.2055 |
| 11 Registrations with Altered Votes | JUNIATA | 254 | 138291 | 0.1837 | 13796 | 1.8411 |
| 11 Registrations with Altered Votes | ELK | 244 | 138291 | 0.1764 | 19841 | 1.2298 |
| 11 Registrations with Altered Votes | POTTER | 197 | 138291 | 0.1425 | 10449 | 1.8853 |
| 11 Registrations with Altered Votes | FULTON | 121 | 138291 | 0.0875 | 9147 | 1.3228 |
| 11 Registrations with Altered Votes | SULLIVAN | 109 | 138291 | 0.0788 | 4359 | 2.5006 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 11 Registrations with Altered Votes | FOREST | 96 | 138291 | 0.0694 | 3328 | 2.8846 |
| 11 Registrations with Altered Votes | CAMERON | 58 | 138291 | 0.0419 | 2906 | 1.9959 |

| ScorecardLabel | County | CountyQuantity | Quantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| 12 Votes moved to Registration that did not exist* | MONTGOMERY | 41 | 232 | 17.6724 | 597606 | 0.0069 |
| 12 Votes moved to Registration that did not exist* | PHILADELPHIA | 37 | 232 | 15.9483 | 1073663 | 0.0034 |
| 12 Votes moved to Registration that did not exist* | DELAWARE | 27 | 232 | 11.6379 | 415024 | 0.0065 |
| 12 Votes moved to Registration that did not exist* | BUCKS | 14 | 232 | 6.0345 | 482425 | 0.0029 |
| 12 Votes moved to Registration that did not exist* | CRAWFORD | 9 | 232 | 3.8793 | 52093 | 0.0173 |
| 12 Votes moved to Registration that did not exist* | LYCOMING | 8 | 232 | 3.4483 | 69876 | 0.0114 |
| 12 Votes moved to Registration that did not exist* | BUTLER | 8 | 232 | 3.4483 | 136301 | 0.0059 |
| 12 Votes moved to Registration that did not exist* | CHESTER | 8 | 232 | 3.4483 | 382662 | 0.0021 |
| 12 Votes moved to Registration that did not exist* | LACKAWANNA | 7 | 232 | 3.0172 | 141573 | 0.0049 |
| 12 Votes moved to Registration that did not exist* | LEHIGH | 7 | 232 | 3.0172 | 239432 | 0.0029 |
| 12 Votes moved to Registration that did not exist* | NORTHAMPTON | 6 | 232 | 2.5862 | 216704 | 0.0028 |
| 12 Votes moved to Registration that did not exist* | CENTRE | 5 | 232 | 2.1552 | 99841 | 0.005 |
| 12 Votes moved to Registration that did not exist* | BERKS | 5 | 232 | 2.1552 | 258217 | 0.0019 |
| 12 Votes moved to Registration that did not exist* | SCHUYLKILL | 4 | 232 | 1.7241 | 88640 | 0.0045 |
| 12 Votes moved to Registration that did not exist* | DAUPHIN | 4 | 232 | 1.7241 | 189128 | 0.0021 |
| 12 Votes moved to Registration that did not exist* | YORK | 4 | 232 | 1.7241 | 311457 | 0.0013 |
| 12 Votes moved to Registration that did not exist* | ERIE | 3 | 232 | 1.2931 | 172630 | 0.0017 |
| 12 Votes moved to Registration that did not exist* | WESTMORELAND | 3 | 232 | 1.2931 | 243635 | 0.0012 |
| 12 Votes moved to Registration that did not exist* | TIOGA | 2 | 232 | 0.8621 | 25568 | 0.0078 |
| 12 Votes moved to Registration that did not exist* | VENANGO | 2 | 232 | 0.8621 | 31730 | 0.0063 |
| 12 Votes moved to Registration that did not exist* | BRADFORD | 2 | 232 | 0.8621 | 35054 | 0.0057 |
| 12 Votes moved to Registration that did not exist* | INDIANA | 2 | 232 | 0.8621 | 44041 | 0.0045 |
| 12 Votes moved to Registration that did not exist* | CLEARFIELD | 2 | 232 | 0.8621 | 47420 | 0.0042 |
| 12 Votes moved to Registration that did not exist* | BLAIR | 2 | 232 | 0.8621 | 78217 | 0.0026 |
| 12 Votes moved to Registration that did not exist* | CAMBRIA | 2 | 232 | 0.8621 | 86070 | 0.0023 |
| 12 Votes moved to Registration that did not exist* | FRANKLIN | 2 | 232 | 0.8621 | 100048 | 0.002 |
| 12 Votes moved to Registration that did not exist* | LUZERNE | 2 | 232 | 0.8621 | 194953 | 0.001 |
| 12 Votes moved to Registration that did not exist* | CAMERON | 1 | 232 | 0.431 | 2906 | 0.0344 |
| 12 Votes moved to Registration that did not exist* | WYOMING | 1 | 232 | 0.431 | 17602 | 0.0057 |
| 12 Votes moved to Registration that did not exist* | CLINTON | 1 | 232 | 0.431 | 21968 | 0.0046 |
| 12 Votes moved to Registration that did not exist* | PERRY | 1 | 232 | 0.431 | 29959 | 0.0033 |
| 12 Votes moved to Registration that did not exist* | WAYNE | 1 | 232 | 0.431 | 34607 | 0.0029 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 12 Votes moved to Registration that did not exist* | ARMSTRONG | 1 | 232 | 0.431 | 40369 | 0.0025 |
| 12 Votes moved to Registration that did not exist* | COLUMBIA | 1 | 232 | 0.431 | 39249 | 0.0025 |
| 12 Votes moved to Registration that did not exist* | CARBON | 1 | 232 | 0.431 | 42326 | 0.0024 |
| 12 Votes moved to Registration that did not exist* | SOMERSET | 1 | 232 | 0.431 | 48708 | 0.0021 |
| 12 Votes moved to Registration that did not exist* | MERCER | 1 | 232 | 0.431 | 72358 | 0.0014 |
| 12 Votes moved to Registration that did not exist* | LEBANON | 1 | 232 | 0.431 | 91681 | 0.0011 |
| 12 Votes moved to Registration that did not exist* | BEAVER | 1 | 232 | 0.431 | 111043 | 0.0009 |
| 12 Votes moved to Registration that did not exist* | WASHINGTON | 1 | 232 | 0.431 | 141049 | 0.0007 |
| 12 Votes moved to Registration that did not exist* | ALLEGHENY | 1 | 232 | 0.431 | 939491 | 0.0001 |

| ScorecardLabel | County | CountyQuantity | Quantity | IssuePercentage | CountyRegCount | VoterPercentage |
|---|---|---|---|---|---|---|
| Total Registration Violations | PHILADELPHIA | 139605 | 1198830 | 11.6451 | 1073663 | 13.0027 |
| Total Registration Violations | ALLEGHENY | 109285 | 1198830 | 9.116 | 939491 | 11.6324 |
| Total Registration Violations | MONTGOMERY | 99359 | 1198830 | 8.288 | 597606 | 16.6262 |
| Total Registration Violations | YORK | 92175 | 1198830 | 7.6887 | 311457 | 29.5948 |
| Total Registration Violations | CHESTER | 71411 | 1198830 | 5.9567 | 382662 | 18.6616 |
| Total Registration Violations | DELAWARE | 62018 | 1198830 | 5.1732 | 415024 | 14.9432 |
| Total Registration Violations | BUCKS | 52428 | 1198830 | 4.3733 | 482425 | 10.8676 |
| Total Registration Violations | CUMBERLAND | 52225 | 1198830 | 4.3563 | 186679 | 27.9758 |
| Total Registration Violations | DAUPHIN | 37401 | 1198830 | 3.1198 | 189128 | 19.7755 |
| Total Registration Violations | LEBANON | 30786 | 1198830 | 2.568 | 91681 | 33.5795 |
| Total Registration Violations | LEHIGH | 29913 | 1198830 | 2.4952 | 239432 | 12.4933 |
| Total Registration Violations | LANCASTER | 29077 | 1198830 | 2.4254 | 343838 | 8.4566 |
| Total Registration Violations | FRANKLIN | 26972 | 1198830 | 2.2499 | 100048 | 26.9591 |
| Total Registration Violations | BERKS | 24157 | 1198830 | 2.015 | 258217 | 9.3553 |
| Total Registration Violations | NORTHAMPTON | 22490 | 1198830 | 1.876 | 216704 | 10.3782 |
| Total Registration Violations | BUTLER | 22440 | 1198830 | 1.8718 | 136301 | 16.4636 |
| Total Registration Violations | WESTMORELAND | 22398 | 1198830 | 1.8683 | 243635 | 9.1933 |
| Total Registration Violations | NORTHUMBERLAND | 21808 | 1198830 | 1.8191 | 58661 | 37.1763 |
| Total Registration Violations | LUZERNE | 19819 | 1198830 | 1.6532 | 194953 | 10.166 |
| Total Registration Violations | ERIE | 18674 | 1198830 | 1.5577 | 172630 | 10.8174 |
| Total Registration Violations | CENTRE | 14397 | 1198830 | 1.2009 | 99841 | 14.4199 |
| Total Registration Violations | BLAIR | 14291 | 1198830 | 1.1921 | 78217 | 18.271 |
| Total Registration Violations | WASHINGTON | 13800 | 1198830 | 1.1511 | 141049 | 9.7838 |
| Total Registration Violations | MONROE | 13759 | 1198830 | 1.1477 | 110487 | 12.453 |
| Total Registration Violations | LACKAWANNA | 12204 | 1198830 | 1.018 | 141573 | 8.6203 |
| Total Registration Violations | VENANGO | 10021 | 1198830 | 0.8359 | 31730 | 31.5821 |
| Total Registration Violations | SNYDER | 9893 | 1198830 | 0.8252 | 22716 | 43.5508 |
| Total Registration Violations | BEAVER | 8842 | 1198830 | 0.7376 | 111043 | 7.9627 |
| Total Registration Violations | SCHUYLKILL | 7954 | 1198830 | 0.6635 | 88640 | 8.9734 |
| Total Registration Violations | ADAMS | 7551 | 1198830 | 0.6299 | 70225 | 10.7526 |
| Total Registration Violations | MERCER | 6199 | 1198830 | 0.5171 | 72358 | 8.5671 |
| Total Registration Violations | FAYETTE | 6082 | 1198830 | 0.5073 | 79473 | 7.6529 |

| | | | | | |
|---|---|---|---|---|---|
| Total Registration Violations | CAMBRIA | 5754 | 1198830 | 0.48 | 86070 | 6.6853 |
| Total Registration Violations | LAWRENCE | 5423 | 1198830 | 0.4524 | 56442 | 9.6081 |
| Total Registration Violations | ARMSTRONG | 5295 | 1198830 | 0.4417 | 40369 | 13.1165 |
| Total Registration Violations | LYCOMING | 4878 | 1198830 | 0.4069 | 69876 | 6.9809 |
| Total Registration Violations | PIKE | 4844 | 1198830 | 0.4041 | 43274 | 11.1938 |
| Total Registration Violations | CRAWFORD | 4266 | 1198830 | 0.3558 | 52093 | 8.1892 |
| Total Registration Violations | SOMERSET | 3868 | 1198830 | 0.3226 | 48708 | 7.9412 |
| Total Registration Violations | INDIANA | 3814 | 1198830 | 0.3181 | 44041 | 8.6601 |
| Total Registration Violations | UNION | 3473 | 1198830 | 0.2897 | 26285 | 13.2129 |
| Total Registration Violations | CLEARFIELD | 3377 | 1198830 | 0.2817 | 47420 | 7.1215 |
| Total Registration Violations | COLUMBIA | 3302 | 1198830 | 0.2754 | 39249 | 8.413 |
| Total Registration Violations | CARBON | 3239 | 1198830 | 0.2702 | 42326 | 7.6525 |
| Total Registration Violations | PERRY | 2851 | 1198830 | 0.2378 | 29959 | 9.5163 |
| Total Registration Violations | WAYNE | 2720 | 1198830 | 0.2269 | 34607 | 7.8597 |
| Total Registration Violations | BEDFORD | 2701 | 1198830 | 0.2253 | 32976 | 8.1908 |
| Total Registration Violations | HUNTINGDON | 2625 | 1198830 | 0.219 | 28426 | 9.2345 |
| Total Registration Violations | SUSQUEHANNA | 2581 | 1198830 | 0.2153 | 26993 | 9.5617 |
| Total Registration Violations | WARREN | 2137 | 1198830 | 0.1783 | 25507 | 8.3781 |
| Total Registration Violations | BRADFORD | 1990 | 1198830 | 0.166 | 35054 | 5.677 |
| Total Registration Violations | TIOGA | 1891 | 1198830 | 0.1577 | 25568 | 7.396 |
| Total Registration Violations | MIFFLIN | 1858 | 1198830 | 0.155 | 26653 | 6.9711 |
| Total Registration Violations | JEFFERSON | 1834 | 1198830 | 0.153 | 27275 | 6.7241 |
| Total Registration Violations | CLINTON | 1694 | 1198830 | 0.1413 | 21968 | 7.7112 |
| Total Registration Violations | MONTOUR | 1647 | 1198830 | 0.1374 | 12318 | 13.3707 |
| Total Registration Violations | CLARION | 1619 | 1198830 | 0.135 | 23332 | 6.939 |
| Total Registration Violations | McKEAN | 1525 | 1198830 | 0.1272 | 24252 | 6.2881 |
| Total Registration Violations | ELK | 1464 | 1198830 | 0.1221 | 19841 | 7.3787 |
| Total Registration Violations | WYOMING | 1261 | 1198830 | 0.1052 | 17602 | 7.164 |
| Total Registration Violations | GREENE | 1259 | 1198830 | 0.105 | 21402 | 5.8826 |
| Total Registration Violations | JUNIATA | 1245 | 1198830 | 0.1039 | 13796 | 9.0244 |
| Total Registration Violations | FULTON | 1014 | 1198830 | 0.0846 | 9147 | 11.0856 |
| Total Registration Violations | POTTER | 689 | 1198830 | 0.0575 | 10449 | 6.5939 |
| Total Registration Violations | SULLIVAN | 447 | 1198830 | 0.0373 | 4359 | 10.2546 |

| | | | | | |
|---|---|---|---|---|---|
| Total Registration Violations | FOREST | 420 | 1198830 | 0.035 | 3328 | 12.6202 |
| Total Registration Violations | CAMERON | 391 | 1198830 | 0.0326 | 2906 | 13.4549 |

## VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that I have reviewed the foregoing Petition and that the factual allegations are true and correct.

8-26-2024
_____
Date

Bernard M. Selker, Jr.

## VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that I have reviewed the

foregoing Petition and that the factual allegations are true and correct.

_06/12/2024_
Date

_Dean W. Dreibelbis_
Dean Dreibelbis

## VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that I have reviewed the foregoing Petition and that the factual allegations are true and correct.

_June 11, 2024_
Date

_Diane Houser_
Diane Houser

**VERIFICATION**

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that I have reviewed the

foregoing Petition and that the factual allegations are true and correct.


June 12, 2024
_____
Date

_____
Marly Hornik
*On Behalf of United Sovereign Americans*

**VERIFICATION**

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that I have reviewed the

foregoing Petition and that the factual allegations are true and correct.

June 11, 2024
_____

Date                                                           Ruth Moton