# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED SOVEREIGN AMERICANS, INC., *et al.*, | : | |
| | : | Case No. 1:24-cv-01003-DFB |
| Plaintiffs, | : | |
| | : | (Hon. Daryl F. Bloom) |
| v. | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

# BRIEF IN SUPPORT OF
# SECRETARY SCHMIDT'S
# MOTION TO DISMISS

---

Date: September 23, 2024

JENNIFER C. SELBER
GENERAL COUNSEL

By: STEPHEN R. KOVATIS
Deputy General Counsel
Attorney ID No. 209495
Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA  17101
Phone: 717-602-0943
Email: skovatis@pa.gov

*Counsel for the Department of State Defendants*

## Table of Contents

I.     INTRODUCTION................................................................1

II.    PROCEDURAL HISTORY ..................................................3

III.   STATEMENT OF FACTS ...................................................3

IV.    STATEMENT OF QUESTIONS INVOLVED .......................5

V.     ARGUMENT ...................................................................6

   A.   The Standard for a Motion to Dismiss .................................6

   B.   The Amended Petition Is Untimely .....................................7

   C.   Plaintiffs Lack Article III Standing....................................9

   D.   The Complaint Is Barred by Eleventh Amendment Immunity...........13

   E.   Plaintiffs Lack a Valid Cause of Action .................................15

     1.   The All Writs Act Does Not Create a Private Right of Action..................15

     2.   Secretary Schmidt Is Not a Federal Official Subject to Jurisdiction Under the Mandamus Act ....................................16

     3.   There Is No Private Right of Action Under the Help America Vote Act ...17

     4.   Plaintiffs Do Not Satisfy the Prerequisites for, and Expressly Disclaim, an Action Under the National Voter Registration Act .....................................18

   F.   Plaintiffs Have Not Plausibly Stated a Violation of Federal Law ........18

     1.   Plaintiffs Have Not Averred a Claim Under HAVA ...................................18

     2.   Plaintiffs Have Not Plausibly Alleged a Violation of the NVRA .............20

VI.    CONCLUSION................................................................22

## Table of Authorities

**Cases**

*Alden v. Maine*, 527 U.S. 706 (1999) .......................................................14

*Am. Civil Rights Union v. Phila. City Commissioners*, 872 F.3d 175 (3d Cir. 2017). ...................................................................................... 17, 20, 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................4

*Berg v. Obama*, 586 F.3d 234 (3d Cir. 2009) ................................... 10, 13

*Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690 (3d Cir. 1996)...........6

*Church of Scientology of Georgia, Inc. v. City of Sandy Springs, Ga.*, 843 F.Supp.2d 1328 (N.D. Ga. 2012) .......................................................17

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ...............................13

*Clingman v. Beaver*, 544 U.S. 581 (2005).............................................17

*Cummings v. McGinley*, No. 1:23-cv-937, 2023 WL 8935060 (M.D. Pa. Dec. 27, 2023).......................................................................................8

*Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ...............9

*Gould Electronics Inc. v. United States*, 220 F.3d 169 (3d Cir. 2000).....................6

*Haggard v. State of Tenn.*, 421 F.2d 1384 (6th Cir. 1970)....................16

*Hans v. Louisiana*, 134 U.S. 1 (1890) ...................................................14

*Hazzouri v. W. Pittston Borough, Luzerne Cnty., Pa.*, 3:18-cv-1982, 2019 WL 194368 (M.D. Pa. Jan. 15, 2019)..........................................................8

*James v. City of Wilkes-Barre*, 700 F.3d 675 (3d Cir. 2012) ..................7

*Karns v. Shanahan*, 879 F.3d 504 (3d Cir. 2018)..................................13

*Keefer v. Biden*, ___ F. Supp. 3d ___, No. 1:24-cv-00147, 2024 WL 1285538 (M.D. Pa. Mar. 26, 2024) ................................................................11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ........12

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........................................9

*Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, 805 F.3d 98 (3d Cir. 2015) ..12

*Mancini v. Del. Cty., Pa.*, No. 24-cv-2425, 2024 WL 4123785 (E.D. Pa. Sept. 9, 2024).............................................................................10

*Maryland Election Integrity, LLC v. Maryland State Bd. of Elections*, No. 24-cv-672, 2024 WL 2053773 (D. Md. May 8, 2024) ..................................10

*Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892 (3d Cir. 2021) ..................................7

*Pa. Prison Soc. v. Cortes*, 508 F.3d 156 (3d Cir. 2007) ..........................................13

*Pennsylvania v. New Jersey*, 426 U.S. 660 (1976) ..................................................13

*Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993)..........................................................................................14

*United States v. Apple MacPro Computer*, 851 F.3d 238 (3d Cir. 2017)...............15

*United States v. Denedo*, 556 U.S. 904 (2009) ........................................................15

*United States v. N.Y. Tel. Co.*, 434 U.S. 159 (1977).................................................15

*Weaver v. Wilcox*, 650 F.2d 22 (3d Cir. 1981) ........................................................16

*Williams v. Rapid Pallet, Inc.*, No. 3:22-cv-177, 2024 WL 2057372 (M.D. Pa. May 6, 2024)................................................................................8

*Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa.*, 103 F.3d 294 (3d Cir. 1996) ................................................................................................4

**Statutes**

28 U.S.C. § 1361 ........................................................................................16

28 U.S.C. § 1651 ........................................................................................15

52 U.S.C. § 20501 ................................................................................ 12, 20

52 U.S.C. § 20510 ........................................................................................18

52 U.S.C. § 21081 ........................................................................................... 18, 19

**Other Authorities**

H.R. REP. No. 107-329 (2001) ................................................................................12

**Rules**

Fed. R. Civ. P. 11 ........................................................................................ 4, 11

Fed. R. Civ. P. 12 .............................................................................................6

Fed. R. Civ. P. 15 ...................................................................................... 2, 7, 8

Defendant Al Schmidt, in his official capacity, ("Secretary Schmidt"), by counsel, respectfully submits this Brief in Support of his Motion to Dismiss.

## I.     INTRODUCTION

This case raises long debunked theories from 2020 and 2022 designed to undermine public confidence in the integrity of Pennsylvania's elections. Plaintiffs, who do not allege any personal harm to their own civil rights and do not base any significant allegation on facts actually known to them, have instead filed this federal civil complaint containing a litany of believed (but false) problems with Pennsylvania's elections and Pennsylvania's voters. Plaintiffs expressly refuse to allege that there has been or will be any fraud in any Pennsylvania election. Instead, they base this civil action on hypothetical and speculative accusations that it is "possible" that there "could" be circumstances in which ineligible voters "might" attempt to cast ballots. They do not know whether this has actually happened, or on what scale it might happen in the future, or how it might affect them. In doing so, Plaintiffs attempt to substitute their limited factual knowledge and poor judgment in place of those who carefully monitor Pennsylvania's elections.

Simply put, this is not a civil action; it is an attempt to subvert the regulatory process. This Court should not allow it to proceed.

1

Plaintiffs, a Missouri nonprofit and four individual Pennsylvania residents, seek a writ of mandamus under the All Writs Act and/or the Mandamus Act against Pennsylvania's Secretary of the Commonwealth, the Pennsylvania Attorney General, and the Attorney General of the United States. They baldly assert, based solely on limited facts and groundless speculation, that Pennsylvania and the federal government operated elections unlawfully in 2020 and 2022 and might do so again in 2024. Their complaint should be dismissed for multiple reasons.

*First*, the amended pleading was not filed in accordance with Rule 15 of the Federal Rules of Civil Procedure, because it was filed more than 21 days after Secretary Schmidt's motion to dismiss and without consent of the parties or leave of court. *Second*, Plaintiffs lack standing. No Plaintiff alleges that he or she has been personally harmed and seeks to remedy that harm. *Third*, Eleventh Amendment immunity bars a mandamus claim against state officials. *Fourth*, the All Writs Act plainly does not provide an independent federal cause of action. *Fifth*, Secretary Schmidt is not subject to the Mandamus Act because he is not a federal official. *Sixth*, even if there were a justiciable claim, the Amended Petition does not allege facts showing a violation of either the Help America Vote Act ("HAVA") or the National Voter Registration Act ("NVRA").

For any or all of these reasons, this action should be dismissed.

2

## II.    PROCEDURAL HISTORY

Plaintiffs commenced this civil action by filing a document entitled "Petition for Relief in the Form of a Writ of Mandamus" ("Petition"). ECF No. 1. On July 22, 2024, the Department of State Defendants moved to dismiss the Petition pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or 12(b)(1). ECF No. 6. On August 26, 2024, Plaintiffs responded to the motion to dismiss by filing a "Petition for Relief in the Form of an Amended Writ of Mandamus" ("Amended Petition"). ECF No. 12. Secretary Schmidt filed a motion to dismiss the Amended Petition on September 9, 2024. ECF No. 13.

In accordance with Local Rule 7.5, Secretary Schmidt now file this brief in support of his motion to dismiss.

## III.    STATEMENT OF FACTS

Reciting the facts in this case proves difficult because, despite its length, the Amended Petition contains very few averments that are valid allegations of fact. Instead, it contains many (often erroneous) legal assertions, coupled with speculative beliefs about things that Plaintiffs think *might conceivably be* true but are unable to aver with reasonable certainty *are* true. For example, the Amended Petition avers that "[i]t is *possible* for election officials . . . to commit election fraud," Am. Pet. ¶ 150 (emphasis in original); that "[q]uestions" about "recorded vote totals . . . *could have* affected the awarding of electoral votes" which "*might*

3

*have* affected the determination of the 'winner'" of the presidential election," Am. Pet. ¶ 97 (emphasis added); and that six current United States Representatives "*might* hold their seats owing to legally unreliable election results," Am. Pet. ¶ 197 (emphasis in original). Consequently, only a small number of averments constitute facts that are entitled to any presumption of truth under the Federal Rules. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."); *cf.* Fed. R. Civ. P. 11(b)(3) (factual contentions in a pleading must either "have evidentiary support" or "will likely have evidentiary support" after discovery).[1]

*   *   *

After the 2020 election, Plaintiffs claim, there were "[d]iscussions and/or litigation" surrounding "[q]uestions" about whether reported vote totals were accurate. Am. Pet. ¶¶ 95-97. However, no court found these questions credible and no court found any election results to be unreliable. Am. Pet. ¶ 98.

---

[1]   This approach to pleading in federal court, which relies on allegations that amount to "just asking questions" instead of well-researched and good faith averments, would be rejected out of hand in any other context. *See, e.g.*, *Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa.*, 103 F.3d 294, 299 (3d Cir. 1996) (finding that a plaintiff violated Rule 11 by making an allegation with "no evidence whatsoever, other than conjecture"). A plaintiff cannot simply posit that something *could* be true and then demand discovery—Rule 11 "stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule." Fed. R. Civ. P. 11, Notes of Advisory Committee on Rules – 1983 Amendment. That prefiling inquiry here appears woefully insufficient.

4

Nevertheless, Plaintiff United Sovereign Americans alleges that it has "performed a series of SQL database queries" on Pennsylvania voter registration data, which it contends "revealed hundreds of thousands of voter registration apparent errors." Am. Pet. ¶¶ 161-68. In fact, according to Plaintiffs' analysis, more than 3.1 million out of 8.7 million total voter registrations contain "apparent registration violations," with most (about 2.9 million) of these alleged errors concerning either the registration date or an unspecified issue with registration changes. Am. Pet. ¶ 169, Ex. H. Plaintiffs argue that these "apparent" issues might violate HAVA or the NVRA. However, Plaintiffs expressly note that they "do not accuse any person or entity of engaging in election fraud in 2022, nor propose any person or entity will engage in such fraud in 2024 or in subsequent federal elections in Pennsylvania." Am. Pet. ¶ 145. Further, no Plaintiff alleges that his or her individual right to vote has been or will be infringed.

## IV.   STATEMENT OF QUESTIONS INVOLVED

1.   Did Plaintiffs timely exercise their right to amend their pleading as a matter of course?

**SUGGESTED ANSWER**: No.

2.   Do Plaintiffs who have alleged no harm to their individual rights have standing to pursue claims related to voter registration and election processes?

**SUGGESTED ANSWER**: No.

3.      Have Plaintiffs brought a claim under any recognized exception to Eleventh Amendment immunity?

**SUGGESTED ANSWER**: No.

4.      Does the All Writs Act create a private right of action to seek a writ of mandamus against a state official?

**SUGGESTED ANSWER**: No.

5.      Is Secretary Schmidt a federal official subject to the Mandamus Act?

**SUGGESTED ANSWER**: No.

6.      Have Plaintiffs alleged facts showing a violation of either HAVA or the NVRA?

**SUGGESTED ANSWER**: No.

## V.      ARGUMENT

### A.      The Standard for a Motion to Dismiss

A defendant may move to dismiss a complaint under Rule 12(b)(1) where the district court lacks subject-matter jurisdiction over a claim. Fed. R. Civ. P. 12(b)(1). The assertion of immunity under the Eleventh Amendment challenges the court's subject matter jurisdiction, and thus is properly raised under Rule 12(b)(1). *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996).

A defendant may also move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Analyzing the

6

sufficiency of a complaint is a three-step process. First, the Court must "take note of the elements a plaintiff must plead to state a claim." *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)) (cleaned up). Second, the Court should "identify allegations that are not entitled to the assumption of truth because those allegations are no more than conclusions." *Id.* (cleaned up). That requires the Court to "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012). Third, assuming the veracity of "well-pleaded factual allegations" along with "all reasonable inferences that can be drawn from those allegations" in the light most favorable to the nonmoving party, the Court determines "whether they plausibly give rise to an entitlement to relief." *Oakwood Labs.*, 999 F.3d at 904 (cleaned up).

## B.   The Amended Petition Is Untimely

Federal Rule of Civil Procedure 15 governs amended pleadings. Under Rule 15, a party may amend a pleading as a matter of course within 21 days of filing it or within 21 days of a responsive pleading or motions under Rule 12. Fed. R. Civ. P. 15(a)(1). Otherwise, a party must obtain either leave of court or consent of the parties to file an amended pleading. Fed. R. Civ. P. 15(a)(2).

Here, the initial pleading was filed on June 18, 2024, and Secretary Schmidt filed a motion to dismiss on July 22, 2024. ECF Nos. 1 & 6. Plaintiffs filed the

Amended Petition on August 26, 2024, ECF No. 12, well over the 21-day limit for doing so without consent or leave. The Amended Petition is therefore improper under Rule 15, and it should be dismissed without prejudice. *See Williams v. Rapid Pallet, Inc.*, No. 3:22-cv-177, 2024 WL 2057372, at *2 (M.D. Pa. May 6, 2024).

Plaintiffs likely filed the Amended Petition on August 26 because that was 21 days after Secretary Schmidt filed his brief in support of his motion to dismiss. ECF No. 11. However, under the plain language of the rule, the 21-day time period to file ran from the filing of the ***motion***, not the ***brief***. *See* Fed. R. Civ. P. 15(a)(1)(B); *see also Hazzouri v. W. Pittston Borough, Luzerne Cnty., Pa.*, 3:18-cv-1982, 2019 WL 194368, at *2 (M.D. Pa. Jan. 15, 2019) (dismissing amended complaint filed 23 days after a motion to dismiss and 9 days after the brief in support of the motion to dismiss). Moreover, it would be improper for the Court to grant Plaintiffs leave *nunc pro tunc* to file the Amended Petition, because "a motion for *nunc pro tunc* is not the proper vehicle for Plaintiff to correct or in actuality further amend his own amended complaint." *Cummings v. McGinley*, No. 1:23-cv-937, 2023 WL 8935060 (M.D. Pa. Dec. 27, 2023).

Therefore, the Court should dismiss the Amended Petition, albeit without prejudice.

### C.     Plaintiffs Lack Article III Standing

This Court should apply the well-established standing principles under Article III that have been repeatedly emphasized by the United States Supreme Court and that have been applied in recent voting cases. In short, Plaintiffs have not suffered personal harm for which they seek redress.

"Article III of the Constitution confines the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024). Constitutional standing requires a plaintiff to establish "(i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Id.* at 380. Moreover, a plaintiff lacks Article III standing when he or she raises "only a generally available grievance about government," which is a claim alleging "only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573-74 (1992).

Plaintiffs' standing argument is not a particularly close call. In fact, a federal district court in Maryland recently held that a Plaintiff here—United Sovereign Americans, Inc.—lacked standing to raise the same claims it asserts here. *Maryland Election Integrity, LLC v. Maryland State Bd. of Elections*, No. 24-cv-

9

672, 2024 WL 2053773 (D. Md. May 8, 2024). And even more recently, an Eastern District court dismissed a case challenging the use of certain election machines for lack of standing. *Mancini v. Del. Cty., Pa.*, No. 24-cv-2425, 2024 WL 4123785 (E.D. Pa. Sept. 9, 2024).

As did the Maryland district court, this Court should "begin and end its analysis with Plaintiffs' standing." *Maryland Election Integrity,* 2024 WL 2053773, at *2.

Both Plaintiff Dreibelbis and Plaintiff Houser raise nothing more than a generalized grievance, averring that they made complaints about the manner in which elections are conducted in Pennsylvania, and that those complaints were ignored. Am. Pet. ¶¶ 77, 80. An elector's general complaint about the manner in which elections are conducted, which does not assert any personalized injury, presents a straightforward type of generalized grievance that is not cognizable under Article III. *See Berg v. Obama*, 586 F.3d 234, 239-40 (3d Cir. 2009) (voter lacked standing to challenge Barack Obama's candidacy based on allegations related to Obama's citizenship).

Additionally, Plaintiff Houser alleges that "her vote was not recorded in Pennsylvania's Statewide Uniform Registry of Electors ('SURE') system." Am. Pet. ¶ 76. It is unclear, though, why this causes her harm. She admits that she was

eligible to vote, registered to vote, and did vote in the 2020 and 2022 elections. *Id.* That means she suffered no infringement of her rights.[2]

The Amended Petition adds Plaintiff Selker, a candidate for Senate on the November 2024 ballot, who believes that a "failure to address and enforce state and federal election law . . . will adversely affect the integrity of the 2024 Pennsylvania senatorial election." Am. Pet. ¶ 75. But a Middle District court recently held that candidates lacked Article III standing in a challenge to a voter registration process because those candidates presented nothing more than "vague, generalized allegation that elections, generally, will be undermined" by the registration process changes. *Keefer v. Biden*, __ F. Supp. 3d __, No. 1:24-cv-00147, 2024 WL 1285538, at *10 (M.D. Pa. Mar. 26, 2024), *pet. for cert. pending*. Plaintiff Selker here presents nothing no more concrete allegation of harm than the candidates in *Keefer*.

Plaintiff Moton's standing theory is unrelated to voting and electoral integrity. Instead, she contends that her campaign was harmed because it "could not be certain of the location and identity of the voters she was attempting to

---

[2]    As Secretary Schmidt previously pointed out, the SURE system actually does reflect that Plaintiff Hauser voted in the primary and general elections in 2022. ECF No. 11 at 10 n.3. The Amended Petition does not reveal what reasonable inquiry was done to verify this allegation either in the initial complaint or before repeating it again here. *See* Fed. R. Civ. P. 11(b).

canvas." Am. Pet. ¶ 79. This theory fails primarily because, as she has not averred that she intends to use the voter rolls in future campaigns, the forward-looking relief sought in the Amended Petition will not benefit her. And, like standing for current candidates, this theory also fails because it relies on vague, speculative allegations of harm.

Plaintiff Moton's theory also fails the "zone of interest" test.[3] Congress has declared that the purpose of the NVRA is to "increase the number of eligible citizens who register to vote," "enhance[ ] the participation of eligible citizens as voters," "protect the integrity of the electoral process," and ensure "accurate and current voter registration rolls." 52 U.S.C. § 20501(b). Similarly, Congress declared that HAVA's intent following the 2000 election was "to improve our country's election system." H.R. REP. No. 107-329, at 31 (2001). In both cases, Congress clearly intended to protect **voting** and **elections**, not help political campaigns engage in microtargeting. Thus, Plaintiff Moton's standing theory falls outside the "zone of interest" protected by either the NVRA or HAVA.

---

[3]     Although long considered in the context of the doctrine of prudential standing, a "zone of interest" challenge is more properly considered as a failure to state a statutory claim. *See Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, 805 F.3d 98, 105 (3d Cir. 2015) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). But whether considered as a jurisdictional issue or a statutory one, it supports dismissal of Moton's claims here.

Finally, Plaintiff United Sovereign Americans believes it has organizational standing because "is not seeking a distinct form of relief" compared to the other plaintiffs. Am. Compl. ¶ 89. This is not a basis for organizational standing. *See Pa. Prison Soc. v. Cortes*, 508 F.3d 156, 162-63 (3d Cir. 2007) (describing the two possible bases for organizational standing: direct harm to the organization's interest and associational standing based on its members). Further, the organization's decision to analyze state voter registration records does not give it standing to challenge those records. *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976). Rather, it presents both a generalized grievance, *see Berg*, 586 F.3d at 239-40, and a type of self-inflicted harm that does not create standing, *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013). Derivative standing fails because those other plaintiffs also lack standing. And finally, organizational standing fails because there is no allegation that any individual plaintiff is actually a member of United Sovereign Americans.

Because no plaintiff has standing, this claim should be dismissed on that basis alone.

### D.    The Complaint Is Barred by Eleventh Amendment Immunity

It has been long established that the Eleventh Amendment of the United States Constitution bars all private lawsuits against non-consenting states in federal court. *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018) (citing *Hans v.*

*Louisiana*, 134 U.S. 1 (1890)). Eleventh Amendment immunity "is designed to preserve the delicate and 'proper balance between the supremacy of federal law and the separate sovereignty of the States.'" *Id.* (quoting *Alden v. Maine*, 527 U.S. 706, 757 (1999)). This immunity bars suits against the states and state agencies "regardless of the relief sought." *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). A plaintiff can overcome Eleventh Amendment immunity in a few ways. Relevant here, a plaintiff may, under the *Ex parte Young* doctrine, pursue certain kinds of forward-looking injunctive relief against state officials. *Id.* This judicially created doctrine provides a "narrow exception" to a state's immunity. *Id.* at 76.

Here, Plaintiffs bring claims against Secretary Schmidt in his official capacity, but those claims do not satisfy the criteria of *Ex parte Young*. Simply put, *Ex parte Young* is a limited exception allowing only forward-looking injunctive relief against state officials, but Plaintiffs expressly disclaim that they seek injunctive relief. *See* Am. Pet. ¶ 213 ("[Plaintiffs] argue that injunctive and/or declaratory relief is inapplicable or inappropriate in this issue"). The particular type of relief that Plaintiffs seek—in the nature of mandamus—does not fit into the "narrow" *Ex parte Young* exception to Eleventh Amendment immunity. *See Seminole Tribe*, 517 U.S. at 76.

Because no exception to Eleventh Amendment immunity applies here, the claims against Secretary Schmidt should be dismissed.

### E.     Plaintiffs Lack a Valid Cause of Action

1.     The All Writs Act Does Not Create a Private Right of Action

The All Writs Act grants this Court the power to "issue all writs necessary or appropriate *in aid of their respective jurisdictions* and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (emphasis added). As is evident from the text, the All Writs Act cannot alone establish a federal cause of action. Under the act, "a court's power to issue any form of relief—extraordinary or otherwise—is contingent on that court's subject-matter jurisdiction over the case or controversy." *United States v. Denedo*, 556 U.S. 904, 911 (2009). In other words, "a court has subject matter jurisdiction over an application for an All Writs Act order *only when* it has subject matter jurisdiction over the underlying order that the All Writs Act order is intended to effectuate." *United States v. Apple MacPro Computer*, 851 F.3d 238, 244 (3d Cir. 2017) (emphasis added). Relatedly, "a federal court may only issue an All Writs Act order 'as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'" *Id.* (quoting *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977)).

Here, Plaintiffs contend that the All Writs Act creates a private cause of action where one would not otherwise exist. This interpretation is contrary to the statute's text and subsequent law. The All Writs Act is not, and was not intended to be, a catch-all for otherwise nonjusticiable claims implicating federal law. It certainly does not give federal courts broad common law mandamus powers over the states. *See Haggard v. State of Tenn.*, 421 F.2d 1384, 1386 (6th Cir. 1970) ("[A] federal court has no general jurisdiction to issue writs of mandamus where that is the only relief sought," nor does a federal court have "authority to issue writs of mandamus to direct state courts or their judicial officers in the performance of their duties.").

Thus, the All Writs Act claim against Secretary Schmidt should be dismissed.

      2.      Secretary Schmidt Is Not a Federal Official Subject to Jurisdiction Under the Mandamus Act

A federal court's mandamus powers derive from the Mandamus Act, which grants jurisdiction to district courts in "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The statutory power to issue writs under the Mandamus Act is limited to *federal* agencies and officials. *Weaver v. Wilcox*, 650 F.2d 22, 25 (3d Cir. 1981); *see also Church of Scientology of Georgia, Inc. v. City of Sandy Springs, Ga.*, 843 F.Supp.2d 1328, 1380 (N.D.

Ga. 2012) ("Federal district courts do not have the authority to issue writs of mandamus to direct state officials in the performance of their duties.").

Secretary Schmidt is not a federal official subject to the Mandamus Act. The Constitution grants states broad power over election processes. *Clingman v. Beaver*, 544 U.S. 581, 586 (2005) (citing U.S. Const. Art. I, § 4, cl. 1). The mere fact that federal law limits states' authority does not convert state election agencies into federal agencies. Being subject to federal law cannot alone convert a state agency into a federal agency; if it did, then *every* state agency would be a federal agency.

Thus, the Mandamus Act claim against Secretary Schmidt should be dismissed.

3.   There Is No Private Right of Action Under the Help America Vote Act

Plaintiffs do not attempt to bring a claim directly under HAVA, because HAVA does not permit a direct, private cause of action in federal court. *Am. Civil Rights Union v. Phila. City Commissioners*, 872 F.3d 175, 184-85 (3d Cir. 2017). Thus, Plaintiffs cannot convert their claim under the All Writs Act or the Mandamus Act into a direct claim under HAVA itself.

4.    Plaintiffs Do Not Satisfy the Prerequisites for, and Expressly
Disclaim, an Action Under the National Voter Registration Act

Although the NVRA allows a private right of action, it requires notice to a

state's election official prior to initiating suit. 52 U.S.C. § 20510(b). Although

Plaintiffs acknowledge this prerequisite, the Amended Petition expressly states that

Plaintiffs have not provided that notice because they do not wish to pursue a claim

directly under the NVRA. Am. Pet. ¶¶ 113-14. Thus, Plaintiffs cannot convert their

claim under the All Writs Act or the Mandamus Act into a direct claim under the

NVRA itself.

**F.    Plaintiffs Have Not Plausibly Stated a Violation of Federal Law**

Even if Plaintiffs could overcome these many threshold deficiencies, the

Amended Petition should be dismissed because it does not plausibly allege a

violation of any relevant law.

1.    Plaintiffs Have Not Averred a Claim Under HAVA

Plaintiffs' primary allegation is that Defendants have violated Section

301(a)(5) of HAVA, 52 U.S.C. § 21081(a)(5), which requires "voting systems"

used in federal elections to comply with standards previously issued by the Federal

Election Commission (FEC). Am. Pet. ¶¶ 118-30. However, this part of HAVA

covers the operation of voting machines, not voter registration. Nothing in the

Amended Petition plausibly asserts that the Department of State does not comply

with HAVA.

Section 301(a)(5) requires "voting systems" to comply with standards that had been previously issued by the Federal Election Commission. The term "voting systems" is defined as "equipment" that is used for specific purposes relating to elections, including casting and counting votes, as well as related "practices" and "documentation." 52 U.S.C. § 21081(b). Under Section 301(a)(5), the "error rate of the voting system" includes "only those errors which are attributable to the voting system and not attributable to an act of the voter." 52 U.S.C. §§ 21081(a)(5). The relevant FEC standards that were incorporated by this provision further define "accuracy" of a voting system to mean "the ability of the system to capture, record, store, consolidate and report the specific selections and absence of selections, made by the voter for each ballot position without error." Federal Election Commission, Voting System Standards Volume I: Performance Standards § 3.2.1 (April 2002) (emphasis added).[4]

Plaintiffs purport to have performed an analysis of the Commonwealth's registration data and identified what they describe as "potential errors" with certain registrations. In addition to their conclusions being speculative and baseless, these "potential errors" in registrations have nothing to do with HAVA's requirements for accurate voting systems. HAVA's standards relate solely to the counting of

---

[4]     Available at https://www.eac.gov/sites/default/files/eac_assets/1/28/Voting_System_Standards_Volume_I.pdf, at 3-51 to 3-52

ballots by machines that are manufactured for that express purpose and are subject to rigorous testing to ensure that they exhibit an exceptionally low error rate. The Amended Petition, however, does not mention a single "voting system" used by any county in Pennsylvania, much less allege that any such voting system exceeds the error rates set by Section 301(a)(5) and the FEC guidelines. In fact, it does not allege a **single error** in the counting of votes by **any voting system** in use of Pennsylvania.

2. <u>Plaintiffs Have Not Plausibly Alleged a Violation of the NVRA</u>

Although Plaintiffs claim that Defendants have violated the NVRA, they never explain how they have done so. The NVRA provides that a state must make a "reasonable effort" to remove from the voter registration rolls the names of voters who have died or who have changed residence. 52 U.S.C. § 20501(b)(4). A state may only remove a registration in "very limited circumstances." *Am. Civil Rights Union*, 872 F.3d at 182.

Plaintiffs do not rely on the actual text of the NVRA, instead asserting Pennsylvania fails to comply with the broad the purpose of the NVRA because, they believe, "the voter rolls in Pennsylvania are not accurate and current." Am. Pet. ¶ 175 (citing 52 U.S.C. § 20501(b)(4)). But Plaintiffs' vague and speculative conclusions about "apparent errors" does not plausibly aver that the Department of State Defendants fail to make reasonable efforts to removed voters who have died

20

or moved. Their questions about dates on paperwork, for example, are both factually baseless and irrelevant to the NVRA. At bottom, they have alleged nothing to dispute that Pennsylvania maintains its voter rolls consistent with the NVRA, a statute "intended as a shield to protect the right to vote, not as a sword to pierce it." *Am. Civil Rights Union*, 872 F.3d at 182.

## VI.   CONCLUSION

Wherefore, the Department of State Defendants respectfully request that the Court dismiss the Petition for Relief in the Form of an Amended Writ of Mandamus for lack of subject matter jurisdiction and/or for failure to state a claim under Rule 12.


Date: September 23, 2024                    Respectfully submitted,

                                            JENNIFER C. SELBER
                                            GENERAL COUNSEL

                                            By:  /s/ Stephen R. Kovatis_____
                                            STEPHEN R. KOVATIS
                                            Deputy General Counsel
                                            Attorney ID No. 209495
                                            Office of General Counsel
                                            333 Market Street, 17th Floor
                                            Harrisburg, PA  17101
                                            Phone: 717-602-0943
                                            Email: skovatis@pa.gov

                                            *Counsel for Secretary Schmidt*

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 7.8(b)(2)</u>

I, Stephen R. Kovatis, hereby certify that this brief does not exceed 5,000 words. Using the word count feature of Microsoft Word, this brief contains 4,748 words, not including captions, tables, and attachments.


Date: September 23, 2024           By:  /s/ Stephen R. Kovatis_____
                                   STEPHEN R. KOVATIS

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen R. Kovatis, hereby certify that I have caused all parties to be
served on this day with the foregoing Brief via the Court's ECF system.


Date: September 23, 2024          By:  /s/ Stephen R. Kovatis_____
                                  STEPHEN R. KOVATIS