## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED SOVEREIGN
AMERICANS, INC., *et al*.

*Petitioners,*

CIVIL ACTION

v.

No. 24-1003

AL SCHMIDT, IN HIS OFFICIAL
CAPACITY AS THE SECRETARY
OF THE COMMONWEALTH, *et al*.

*Respondents.*

## BRIEF OF PETITIONERS IN OPPOSITION TO RESPONDENT AL SCHMIDT'S MOTION TO DISMISS

## **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

TABLE OF AUTHORITIES        iii

MEMORANDUM OF LAW

| | | |
|---|---|---|
| I. | Introduction | 1 |
| II. | Counterstatement of Facts | 1 |
| III. | Legal Argument | 1 |
| | a. Petitioners Amended Writ was timely filed. | 1 |
| | b. Motion of Dismiss Pursuant to Rule 12(b)(1) | 4 |
| |    i. Petitioners possess adequate standing to bring these claims. | 5 |
| |       a. Petitioner Diane Houser | 6 |
| |       b. Petitioners Ruth Moton and Bernard Selker | 8 |
| |       c. United Sovereign Americans | 10 |
| |    ii. Petitioners' claims are not barred by the Eleventh Amendment. | 11 |
| | c. Motion to Dismiss Pursuant to Rule 12(b)(6) | 12 |
| |    i. Petitioners plausibly set forth a claim for relief under the All Writs Act for violations of Federal Law. | 13 |
| |    ii. Mandamus Act | 21 |
| IV. | Conclusion | 21 |

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                                    **Page(s)**

*Anderson v. United States*,
    417 U.S. 211 (1974)……………………………………………………..………15

*Baker v. Carr*,
    369 U.S. 186 (1962)……………………………………………………….6, 7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)………………………………………………….……13

*Cheney v. United States Dist. Ct.*,
    542 U.S. 367 (2004)…………………………………………………….…18

*Constitution Party of PA v. Aichele*,
    757 F.3d 347 (3d Cir. 2014)…………………………………………………5

*Ex parte Young*,
    209 U.S. 123 (1908)…………………………………………………….11

*Federal Election Comm'n v. Akins*,
    524 U.S. 11 (1998)……………………………………………………...…6

*Gray v. Sanders*,
    372 U.S. 368 (1963)……………………………………………………6, 15

*Hollingsworth v. Perry*,
    558 U.S. 183 (2010)………………………………………………...…..18

*Horne v. Flores*,
    557 U.S. 422 (2009)………………………………………………...5, 10

*In re Coy*,
    127 U.S. 731 (1888)……………………………………………………15

*In re Schering Plough Corp.*,
    678 F.3d 235 (3d Cir. 2012)……………………………………………4, 5

*Jordan v. Fox, Rothschild, O'Brien & Frankel*,
    20 F.3d 1250 (3d Cir. 1994)…………………………………………….…13

*Keefer v. Biden*,
    ___ F.Supp.3d ___ (M.D.Pa. Mar. 26, 2024)………………………………...…….10

*Koslow v. Commonwealth of Pennsylvania*,
  302 F.3d 161 (3d Cir. 2002)…………………………………………..…..………11

*Lewis v. Clarke*,
  137 S.Ct. 1285 (2017)……………………………………………….………11

*Lujan v. Defenders of Wildlife.*,
  504 U.S. 555 (1992)……………………………………………………………5, 7

*McTernan v. City of York, PA*,
  564 F.3d. 636 (3d Cir. 2009)…………………………………………..………13

*Oregon v. Mitchell*,
  400 U.S. 112 (1970)……………………………………………………...…15

*Reynolds v. Sims*,
  377 U.S. 533 (1964)……………………………………………………...…15

*Robb v. City of Philadelphia*,
  733 F.2d 286 (3d Cir. 1984)…………………………………………………13

*Rolon v. Lackawanna County*,
  1 F.Supp.3d 300 (M.D.Pa. 2014)……………………………………….………4

*Verizon Md., Inc. v. Pub. Serv. Com'n of Md*,
  535 U.S. 635 (2002)…………………………………………………………11

*Wilbur v. United States*,
  281 U.S. 206 (1930)…………………………………………………………18

**Statutes**                                                                                          **Page(s)**

28 U.S.C. § 1361………………………………………………………………21

28 U.S.C. § 1651………………………………………….…………………..17

52 U.S.C. §§ 20501……………………………………………………………17

52 U.S.C. § 20507………………………………………...……………………16, 18

52 U.S.C. § 21081……………………………………………………....………16

52 U.S.C. § 21083………………………………………………………17, 19

25 Pa.C.S. §3503………………………………………………………………17

**Other Authorities**

**Page(s)**

U.S. Const. art. I, § 4………………………………………………………………14, 16

U.S. Const. art. I, § 8, cl. 18……………………………………………………...…..16

*F.R.C.P.* 8……………………………………………………………………………12

## I.      Introduction

Petitioners United Sovereign Americans, Inc., Bernard "Marty" Selker, Jr., Diane Houser, Ruth Moton, and Dean Dreibelbis (hereinafter, collectively, "Petitioners") are concerned Pennsylvania citizens, voters, and political candidates who seek to hold their elective and appointed officials accountable for their disregard of their responsibilities under Federal laws enacted to ensure that election results are held to a certain degree of accuracy.  Petitioners do not seek monetary relief, or any relief regarding past conduct, merely that this Honorable Court intervene and require the named State and Federal officials to comply with their statutorily mandated obligations under Federal law.

## II.      Counterstatement of Facts

Petitioners rely upon the factual averments set forth in its Amended Writ of Mandamus filed on August 26, 2024.  *See*, Doc. 12.

## III.      Legal Argument

### a.  Petitioners Amended Writ was timely filed.

Respondent Schmidt first argues that Petitioners' Amended Writ should be dismissed as untimely.  However, this argument is premised on an unintentional misalignment between the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure applicable to the Middle District.  Rule 15 provides that a party may amend its pleading once as a matter of course within twenty one (21) days of service

of a motion filed under Rule 12(b).  Advisory Committee Notes from 2009, when this amendment went into place, stated that this provision would "force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion."  The Committee Notes further stated that allowing a responsive amendment would avoid the need for the court to decide the motion or reduce the number of issues that would need to be decided, thereby expediting the pretrial proceedings.  Stated differently, complainants are entitled to consider the arguments raised in the opposing party's motion to dismiss and, if those arguments have merit, amend accordingly to prevent the trial court from having to unnecessarily rule on the motion.

Generally, the calculation as to when a party may amend as a matter of right is fairly simple, given that almost all federal jurisdictions require that motions to dismiss be filed concurrently with a supporting brief.  However, the Middle District Local Rules make this determination more complicated.  Local Rule 7.5 permits a party filing a motion to dismiss to file their supporting brief up to fourteen days after filing the initial motion.  The original "motion" provides no substantive information regarding the movant's basis for requesting dismissal.  Thus, the complainant lacks the ability to consider the merits of the filing party's motion until the brief is filed two weeks later.  As such, the relevant question becomes whether the time period to

amend as of right begins to run at the time the form motion is filed, or when the supporting brief is filed.

Petitioners contend that the obvious answer is that the time period to amend as of right begins to run when the moving party files its supporting brief, as to find otherwise would frustrate the purpose of Rule 15. It is standard practice in almost all federal jurisdictions to require a motion to dismiss to be filed together with a supporting motion and, as such, there was no need for the federal rule to differentiate between the filing of a form motion and the filing of a supporting brief. However, based on the Advisory Committee Notes, it is clear that the intent was for the time period to run from when the supporting brief was filed because that is the first opportunity that the defending party has to consider the merits of the arguments of the filing party. The applicable subsection allows complainants first to consider the merits of the arguments raised by the opposing party and determine whether it would be appropriate to amend their complaint accordingly, as opposed to wasting the court's time and unnecessarily delaying the process. This purpose would not be served by starting the clock when a party files their motion, which merely sets forth one paragraph indicating that the filing party asks for the complaint to be dismissed. *See, e.g.*, Doc. 6. Petitioners further contend that a motion to dismiss should not be considered "filed" for purposes of Rule 15 until it is perfected, which requires the filing of a brief in support. *See*, Local Rule 7.5. Should the filing of a supportive

brief be optional, Respondent Schmidt's position have arguable merit, but since he is required to file a supporting brief, the motion is not truly complete without the brief, and therefore the time period does not begin to run until the movant has filed his brief.

Respondent Schmidt attempts to avoid the clear intent of Rule 15 by seeking to capitalize on a clearly unintentional misalignment between the Federal Rules and the Local Rules.  Respondent Schmidt does not provide any substantive argument as to why it would have been the intent of the drafters for the time to begin running from the one-page filing, as opposed to the filing of movant's substantive brief. Instead, Respondent Schmidt is relying exclusively on a technicality that could not have been anticipated by the drafters of Rule 15. Petitioners also note that neither of the *unpublished* decisions cited by Respondent Schmidt in support of his position address this argument.

### b.  Motion to Dismiss Pursuant to Rule 12(b)(1)

Rule 12(b)(1) permits dismissal of a complaint for lack of subject-matter jurisdiction.  As such, a motion to dismiss under this subsection "challenges the power of a federal court to hear a claim or case." *Rolon v. Lackawanna County*, 1 F.Supp.3d 300, 303 (M.D.Pa. 2014).  This includes challenges regarding lack of standing. *In re Schering Plough Corp.*, 678 F.3d 235, 243 (3d Cir. 2012).  When assessing challenges to standing, the Court "must first determine whether the movant

presents a facial or factual attack." *Id*.  Facial attacks assert that the facts as pled by the complaining party fail to satisfy the requirements for standing and, therefore, these attacks are assessed under the same standards applicable to a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the facts alleged in the complaint in favor of the nonmoving party.  *Constitution Party of PA v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).  By contrast, factual attacks challenge the veracity of the averments set forth in the pleadings, and in such instance the facts set forth are not entitled to any presumption of truthfulness.  *Id*.

### i.  Petitioners possess adequate standing to bring these claims.

Respondent Schmidt presents a facial attack to Petitioners claims of standing, arguing that the allegations as presented fail to meet the requirements for standing. As such, Respondent Schmidt's attack must be considered under the same standard applicable to motions filed pursuant to Rule 12(b)(6). Standing requires that a plaintiff present "an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling." *Horne v. Flores*, 557 U.S. 433, 445 (2009).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)(quotations omitted).

It is well-settled that any person who's right to vote has been impaired has standing to sue. *Gray v. Sanders*, 372 U.S. 368, 375 (1963). Qualified voters have a constitutionally protected right to cast their ballots and have their votes counted and reported correctly, undiluted by illegal ballots. *Id.* at 380. Impairment may result from, among other things, dilution from false tally, refusal to count votes from arbitrarily selected precincts, or stuffing of the ballot box. *Baker v. Carr*, 369 U.S. 186, 208 (1962). As stated by the Supreme Court regarding voting rights, "the most basic of political rights, [are] sufficiently concrete and specific" to establish standing. *Federal Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998).

### a. Petitioner Diane Houser

Petitioner Diane Houser is a Chester County, Pennsylvania resident registered to vote who voted in the 2020 and 2022 elections. *See*, Doc. 12, ¶76. Petitioner Houser raised significant concerns regarding whether her right to vote has been impaired and demonstrated that she has made various efforts to bring these concerns to the attention of the appropriate officials and been repeatedly dismissed or ignored. *See*, Doc. 12, ¶77. Petitioner Houser further asserts that her vote was not recorded under Pennsylvania's Statewide Uniform Registry of Electors ("SURE") system, even though she voted in person. *See*, Doc. 12, ¶76.[1] Respondent Schmidt's

---

[1] Respondent has asserted that ¶76 of the Amended Writ is factually in error. Undersigned counsel is in the process of verifying the accuracy of this allegation and will promptly alert the Court should this allegation need to be withdrawn. Undersigned counsel certainly believed in the accuracy of the claim at the time of filing, but considers it appropriate to engage in further investigation given the position taken by Respondent.

attempts to categorize Petitioner Houser's allegations as generalized grievances misses the mark.  Generalized grievances in the context of standing refer to instances where the plaintiff's only harm concerns "his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 (1992).  However, the United States Supreme Court has held that a group of qualified voters alleging that the state's action diminished the effectiveness of their vote *did not* state a generalized grievance. *Baker*, 369 U.S. at 208.

Petitioner Houser is an active Pennsylvania voter who raised serious, well-pled concerns regarding whether her individual vote was improperly diluted, or even counted at all, in the most recent elections.  First, Petitioner Houser contends that her vote was not recorded in the Pennsylvania SURE system, which was established to allow voters to track the status of their ballots.  Second, Petitioner Houser identified through the Amended Petition numerous issues on a Statewide level that would indicate that her vote was diluted by improper or illegal voting, as well as issues in her own county which would suggest her vote was diluted.  For example, Audit the Vote PA found that Chester County kept active 3,500 out of state voter registrations during the 2022 election.  *See*, Doc. 12, Exhibit D.  These factual averments are more than sufficient to establish that Petitioner Houser set forth an

adequate injury in fact. Standing cannot be denied merely because a particular injury is widespread. Instead problems with standing under such circumstances arise only when the individual asserting standing cannot show adequate connection to said widespread injury.

### b. Petitioners Ruth Moton and Bernard Selker

Petitioner Ruth Moton was a candidate for Pennsylvania State Representative in 2018, 2020, and 2022 election seasons. *See*, Doc. 12, ¶78. Petitioner Moton spent over $32,000 on her election campaigns and contends that due to the identified discrepancies in voting process, she had to expend these funds without knowing the location and identity of the voters she attempted to canvas. Because of the identified errors and anomalies detailed in the Amended Petition, Petitioner Moton has no confidence that she targeted the people she hoped to target, and therefore wasted her money on account of making strategic decisions based on flawed information. This flawed information existed because Respondent Schmidt failed to carry out his duties as required by federal law. *See*, Doc. 12, ¶79.

Petitioner Bernard Selker is a Pennsylvania citizen and a candidate on the ballot for United States Senator for Pennsylvania in 2024. *See*, Doc. 12, ¶75. Based on the allegations set forth in the Amended Petition, Petitioner Selker reasonably contends that Respondents' failure to enforce election laws will adversely affect the integrity of his 2024 Pennsylvania senatorial election. *See*, Doc. 12, ¶75. The

identified errors in 2022, as brought to the attention of Respondents as detailed in the Amended Petition, make it difficult for Mr. Selker to make strategic decisions on where to focus his limited election resources when he saw that Respondent Schmidt did nothing to address those errors from 2022-- the most recent federal election supervised by Respondent Schmidt.

Both Petitioner Moton and Petitioner Selker are or were candidates for office who placed their trust, money, and time into the Pennsylvania electoral process. They believe that based on the significant discrepancies and irregularities in the voting process identified in the Amended Petition, their faith in the reliability and accuracy of the Pennsylvania electoral process as candidates has been violated. Petitioner Selker, as a current candidate in the 2024 election, avers that it is foreseeable that these irregularities and discrepancies could have a tangible effect on the election results and directly affect his candidacy and by extension the candidacies of all other candidates for United States Senate in Pennsylvania.[2]   Based on this representation, Petitioner Selker requests redress in the form of this Honorable Court requiring the appropriate State and Federal officials to comply with the laws they are sworn to uphold.

---

[2] With the current make-up of the United States Senate almost equally divided between those members who identify as Republicans and those who identify as Democrats or Independents caucusing with the Democrats, a relatively small number of votes in any contested election for U. S. Senator could easily have a tremendous impact on the governing of the Nation – not just in one-on-one contests, but in elections where so-called third party candidates receive votes that would otherwise go to one of the major party candidates, enough perhaps, to change the overall outcome of, say, Pennsylvania's plurality election.

It is clear that Petitioner Selker possesses an individualized, personal interest in these issues concerning Pennsylvania election integrity and should be permitted to bring these matters before the Court.  Respondent Schmidt offers no substantive argument regarding these undeniable points, but instead cites to a recent case that is entirely inapposite.  *See*, *Keefer v. Biden*, ___ F.Supp.3d. _,  2024  WL  1285538 (M.D.Pa. Mar. 26, 2024).  This Court in *Keefer* held that the plaintiffs, a group of twenty-six Pennsylvania State Representatives and one Pennsylvania Senator, lacked *legislative* standing regarding injury to their legislature as a whole.  *Id*. at 7. This holding bears no relevance to the instant matter, as Petitioner Selker contends that he will be individually affected should Pennsylvania and Federal officials continue to disregard their obligations under federal law.

### c.  United Sovereign Americans

Finally, Respondent Schmidt attempts to argue that United Sovereign Americans failed to establish that it possessed organizational standing, while ignoring that such standing is not necessary as United Sovereign Americans does not seek a distinct form of relief.  The Supreme Court has indicated that if one party to a lawsuit has standing, other entities can join as parties without having to independently satisfy the demands of Article III, provided those parties do not seek a distinct form of relief from the party with standing.  *See*, *Horne v. Flores*, 557 U.S. 433, 446-47 (2009).  This is precisely the case here.  As set forth at length above, the

remaining Petitioners have standing to bring this action and United Sovereign Americans aver that they seek no distinct form of relief.

### ii. Petitioners' claims are not barred by the Eleventh Amendment

Respondent Schmidt further incorrectly contends that Petitioners' suit against him in his official capacity is barred under the Eleventh Amendment.   It is undisputed that the Eleventh Amendment generally bars suits against states, including suits against state actors in their official capacities.  *See*, *Lewis v. Clarke*, 137 S.Ct. 1285, 1290-91 (2017).  However, this prohibition is not without exception. Respondent Schmidt acknowledges that one such exception exists under the "legal fiction" created by *Ex parte Young*, 209 U.S. 123 (1908), wherein a person seeks prospective relief against state officials for ongoing violations of federal law. *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002).  To determine whether the *Ex parte Young* exception applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief property characterized as prospective."  *Verizon Md., Inc. v. Pub. Serv. Com'n of Md.*, 535 U.S. 635, 645 (2002)(quotations omitted).

Respondent Schmidt baldly argues that the relief sought by Petitioners through their Amended Petition for Writ of *Mandamus does not* constitute prospective relief, citing no authority whatsoever in support, while completely ignoring the nature of *mandamus* relief.  Petitioners argue that *mandamus* relief and

injunctive relief are functionally equivalent in the *Young* context, as both are forms of equitable relief and each form of relief is prospective in nature.  The Supreme Court, through *Young* and its progeny, did not intend to apply the exception to plaintiffs seeking declaratory and/or injunctive relief to the exclusion of those requesting other equitable relief such as that Petitioners seek here through *mandamus*.

It defies logic that Respondent Schmidt contends, essentially, that since relief in *mandamus* is not the same as relief by injunction, the *Young* exception does not apply.[3] Both injunctive relief and *mandamus* relief in the present context would seek this Court to order Respondent Schmidt to perform his duties without alleging monetary damages. Respondent Schmidt premises his argument on injunctive relief being a different form of relief than *mandamus* relief, but his argument fails because under the current factual pattern, the two (2) forms of equitable relief are functionally the same. Accordingly, by application of the *Young* exception, Respondent Schmidt is not afforded Eleventh Amendment sovereign immunity in this matter.

c.   **Motion to Dismiss Pursuant to Rule 12(b)(6)**

"Pleadings must be construed as to do justice."  *F.R.C.P.* 8(e).  Except under certain limited circumstances, a complaint need only comply with Rule 8(a)(2),

---

[3] This is not to suggest that Petitioners might not later seek injunctive relief, but by pursuing an ultimately successful action in *mandamus* now, Petitioners hope to avoid having to seek an injunction later during the short time window between General Election day and the date by which Pennsylvania must certify its results.

which merely requires "a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quotations omitted).   When reviewing pleadings for legal sufficiency under Rule 12(b)(6), the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).  Courts "should not affirm a dismissal at the pleadings stage, ***especially in a civil rights action***, unless it appears ***beyond doubt*** that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Robb v. City of Philadelphia*, 733 F.2d 286, 290 (3d Cir. 1984)(emphasis added).  A complaint should not be dismissed merely because it appears unlikely that the plaintiff will be able to prove the facts asserted or prevail on the merits.  *McTernan v. City of York, PA,* 564 F.3d. 636, 646 (3d Cir. 2009).

### i.  Petitioners plausibly set forth a claim for relief under the All Writs Act for violations of Federal Law.

Respondent Schmidt asserts that the All Writs Act does not itself provide a private cause of action or basis of jurisdiction, and on those points Petitioners agree. That being said, Respondent Schmidt ignores that Petitioners claims under the All Writs Act seek relief based upon federal law within the district court's purview. Under the Elections Clause, Congress conferred to individual state legislatures the

presumptive (and default) authority to conduct statewide federal elections. U.S. Const. art. I, § 4. The Constitution's Framers' intent is clear upon a plain reading of the Constitution. The various states have *presumptive* authority to regulate and administer the election of all federal officers. However, by including the language "…but the Congress may at any time by Law make or alter such Regulations," the Framers clearly and unambiguously intended Congress retains the ultimate authority under the Constitution to regulate federal elections. U.S. Const. art. I, § 4. Thus, the Constitution spells out that the *default* authority to regulate federal elections lies with the several states in the absence of acts of Congress. This makes the states subordinate to Congress. The Framers *intentionally* intertwined the powers of the various states with those of Congress in the conducting of federal elections, while making certain Congress maintained the ultimate power over the selection of its own members, thereby carving out a narrow exception to the principles of dual sovereignty and federalism. Accordingly, since the Constitution reserves to Congress the *ultimate* power to regulate federal elections, while simultaneously delegating the *presumptive* power to individual state legislatures. The Pennsylvania General Assembly has further delegated the state's power to regulate federal elections to the Office of the Secretary of State. Respondent Schmidt, though not a federal officer *per se*, Constitutionally and by necessity, becomes a quasi-federal officer as an agent of the Pennsylvania General Assembly. He thus is required to carry out federal

election statutes passed by Congress, including HAVA and NVRA. In fact, he has no choice but to do so.

While a state official, generally, is insulated from federal judicial review when exercising power within the exclusive domain of a state interest, "such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right." *Gray*, 372 U.S. at 372 (citing *Gomillion v. Lightfoot*, 364 U.S. 339, 347 (1960)). Federal courts regard the right to vote in a fairly conducted election as federally protected, *Reynolds v. Sims*, 377 U.S. 533, 554-55 (1964), and the Supreme Court decreed that Congress has authority under the Constitution's Necessary and Proper Clause to regulate any activity during a mixed federal/state election that exposes the federal election process to potential misuse, whether that harm materializes or not. *In re: Coy*, 127 U.S. 731, 752 (1888). "Every voter in a federal…election…whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted, without its being distorted by fraudulently cast votes. *Anderson v. United States*, 417 U.S. 211, 227 (1974). "[T]he right to vote freely for a candidate of one's choice is of the essence of a democratic society," *Oregan v. Mitchell*, 400 U.S. 112, 138-39 (1970). Congress chose to exercise its powers under the Elections Clause and the Necessary and Proper Clause to intervene in Pennsylvania's otherwise absolute constitutional authority to regulate federal elections by enacting

federal election laws including HAVA and NVRA. U.S. Const. art. I, § 4; U.S. Const. art. I, § 8, cl. 18.

Under HAVA, the two (2) provisions at issue impose mandatory language on election officials. For example, 52 U.S.C. § 21081(a)(5) states that the "error rate of [a] voting system in counting ballots…shall comply with the error rate standards established under section 3.2.1. of the voting systems standards issued by the Federal Election Commission[.]" Use of the word "shall" constitutes mandatory language. Furthermore, 52 U.S.C. § 21081(a)(1)(A)(ii) states voting systems "shall…provide the voter with the opportunity (in a private and independent manner) to change the ballot or correct any error before the ballot is cast and counted (including the opportunity to correct the error through the issuance of a replacement ballot if the voter was otherwise unable to change the ballot or correct any error.)" The use of "shall," again, constitutes mandatory language. Here, the requirement is for voting systems, but election officials subject to judicial authority are responsible for configuring and managing voting machines. NVRA likewise contains mandatory language. For example, "each State shall…conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of death of the registrant; or a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4).

NVRA exists in part "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. §§ 20501(b)(3)-(4). Similarly, HAVA mandates that voter roll databases contain only registrations of qualified citizen voters residing in that state. 52 U.S.C. § 21083(a)(1)(A). Maintaining the accuracy of voter rolls and voting systems, therefore, is required under the Constitution to uphold the right of the people to choose their representatives. The requirements of NVRA and HAVA are mirrored in Pennsylvania's election laws. Under the Pennsylvania Revised Code, the Secretary of State, as the chief election officer, oversees and regulates voter registration procedures and the conduct of elections throughout the state. 25 Pa.C.S §3503(a). Accordingly, the Secretary of State, acting in his capacity as a quasi-federal officer, must ensure compliance with NVRA and HAVA when regulating and administering federal elections. A writ of *mandamus* is the enforcement mechanism through which the Secretary of State is held accountable to Congress for refusing to comply with Congressional legislation.

The All Writs Act grants this Court the power to "issue all writs necessary or appropriate in the aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). A writ of *mandamus* is warranted where the moving party establishes that "(1) no other adequate means [exist] to attain the relief he desires, (2) the party's right to issuance of the writ is clear and indisputable,

and (3) the writ is appropriate under the circumstances." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (quoting *Cheney v. United States Dist. Ct.*, 542 U.S. 367, 380-381 (2004)) (internal quotation marks omitted). Writs of *mandamus* apply to ministerial actions. A "ministerial action" is a duty in a particular situation so plainly prescribed, as is the case with respect to the mandatory HAVA and NVRA language cited above, as to be free from doubt and equivalent to a positive command. *Wilbur v. United States*, 281 U.S. 206, 218 (1930). *Mandamus* under the All Writs Act is a remedy reserved for extraordinary circumstances where no other form of relief can adequately provide redress. *Cheney*, 542 U.S. at 369. Refusing to comply with federal election laws, in defiance of Congress, constitutes an extraordinary circumstance.

Respondent Schmidt further attempts to argue that even if Petitioners could bring their claims under the All Writs Act, the violations alleged do not fit within the confines of HAVA or NVRA.  Petitioners disagree.  NVRA requires that the State election official, in this case Respondent Schmidt, conduct a program which makes a reasonable effort to remove the names of ineligible voters from the official registration lists.  52 U.S.C. §20507(a)(4).  This program shall be completed no later than ninety (90) days prior to the date of a primary or general election for Federal office.  52 U.S.C. §20507(c).  While there are certainly restrictions and limitations on removing individuals from the voting rolls, these restrictions should not limit a

state's ability to ensure that its voter rolls are current as long as it takes the appropriate steps to verify its voting registration lists and timely removes individuals who fail to respond within the prescribed period.  HAVA similarly requires that the appropriate State or local election official perform regular list maintenance in conformance with NVRA.  52 U.S.C. § 21083(a)(2).

Petitioners' Amended Petition outlines numerous egregious discrepancies within the Pennsylvania active voter registration that clearly would have been remedied should Respondent Schmidt have taken his upheld his responsibilities under NVRA and HAVA, including:

- 20,097 illegal duplicate registrations (same voter with multiple registrations)
- 43,083 voters with an illegal or invalid vote history[4]
- 10,298 questionable designations of "Inactive Status"
- 194 votes while inactive
- 28,256 backdated registrations
- 268,493 registrations where the period of active registration conflicts with the registration participation
- 448,335 invalid or illogical registration dates[5]
- 633,508 illegal or invalid registration changes
- 4,142 age discrepant registrants[6]
- 154,913 registrants with questionable addresses
- 1,580,750 registrations with records altered after certification

¶169.

---

[4] Voter history exists prior to the voter's birth or prior to the voter attaining the age of majority.
[5] Registrations on federal holidays, before eligibility, etc.
[6] Registrants before age of majority or older than the age of one hundred fifteen.

Respondent Schmidt will likely attempt to argue the veracity of these statistics; however, that matter is not appropriately before the Court at this early pleading stage. Petitioners offered well-pled factual averments regarding egregious and obvious errors within the Pennsylvania active voter registration rolls which one could reasonably conclude should have been identified and rectified through the *required* list maintenance under NVRA and HAVA.  Respondent Schmidt either failed to perform any voter registration list maintenance or performed such deficient list maintenance that he failed to identify the more than 20,000 duplicate voter registrations.  As such, Petitioners have sufficiently alleged violations of federal law.

Further, Petitioners' frequent reference to the standard for voting machine accuracy is not intended to serve as a technical benchmark with respect to the voter registration problems outlined above, but instead to reflect what Congress considered an acceptable error rate with respect to discrepancies in election results. The stringent standards outlined by HAVA demonstrate that Congress intended for there to be little to no discrepancy in election accuracy, and that it sought to hold States to an extremely high standard with respect to the results reported.  The voter registration discrepancies outlined above indicate that Pennsylvania, namely Respondent Schmidt, have failed to uphold these standards in violation of Federal law.

### ii.  Mandamus Act

Petitioners do not assert a cause of action against Respondent Schmidt under the Mandamus Act, 28 U.S.C. § 1361, only Respondent Merrick Garland.  As such, this argument is moot.

## IV.   Conclusion

Based on the foregoing, Petitioners respectfully request that this Court deny Respondent Schmidt's Motion to Dismiss in the above-captioned matter.

Respectfully submitted,

**VAN DER VEEN, HARTSHORN, LEVIN & LINDHEIM**

Date: October 15, 2024           By:     */s/ Bruce L. Castor, Jr.*
                                         Bruce L. Castor, Jr.
                                         1219 Spruce St.
                                         Philadelphia, PA 19107
                                         (215) 546-1000
                                         bcastor@mtvlaw.com

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 7.8(b)(2)</u>

  I, Bruce L. Castor, Jr., hereby certify that this brief does not exceed 5,000 words.  Microsoft Word reflects that this brief contains 4,982 words, excluding captions and tables.


Date: October 15, 2024    By: *<u>/s/ Bruce L. Castor, Jr.</u>*
                Bruce L. Castor, Jr.