IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

UNITED SOVEREIGN AMERICANS, INC., *et al.*,

    Plaintiffs,

    v.

COMMONWEALTH OF PENNSYLVANIA, *et al.*,

    Defendants.
_____

Case No. 1:24-cv-01003-DFB

(Hon. Daryl F. Bloom)

---

**REPLY BRIEF IN FURTHER SUPPORT OF
SECRETARY SCHMIDT'S MOTION TO DISMISS**

---

Date: October 29, 2024

JENNIFER C. SELBER
GENERAL COUNSEL

By: STEPHEN R. KOVATIS
Deputy General Counsel
Attorney ID No. 209495
GOVERNOR'S OFFICE OF GENERAL COUNSEL
333 Market Street, 17th Floor
Harrisburg, PA  17101
Phone: 717-602-0943
Email: skovatis@pa.gov

*Counsel for the Secretary Al Schmidt*

# Table of Contents

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT..........................................................................................................2

   A.   **No Plaintiff Can Establish Standing** ........................................................2

      1.   The Amended Complaint Does Not Plead a Valid Vote Dilution Theory...................................................................................................2

      2.   Candidates Do Not Have Article III Standing Based on Subjective, Speculative Beliefs ...................................................................................4

      3.   Plaintiffs Concede that United Sovereign Americans Lacks Organizational Standing ...........................................................................6

   B.   **Plaintiffs Agree That They Lack a Statutory Cause of Action**...............7

   C.   **The Amended Complaint Does Not Allege a Substantive Violation of Federal Law** ................................................................................................9

   D.   **Eleventh Amendment Immunity Bars Mandamus Relief**.....................10

   E.   **The Amended Complaint Was Not Properly Filed Under Rule 15** .....12

III. **CONCLUSION** ..................................................................................................13

# Table of Authorities

**Cases**

*Alexander v. Sandoval*, 532 U.S. 275 (2001)..............................................................8

*Bolus v. Boockvar*, No. 3:20-cv-01882, 2020 WL 6880960 (M.D. Pa. Oct. 27, 2020), *report and recommendation adopted*, 2020 WL 6882623 (M.D. Pa. Nov. 23, 2020) ...............................................................................................................3

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ...................................................4

*Huertas v. City of Camden*, 245 Fed. Appx. 168 (3d Cir. 2007)...............................3

*Kegerise v. Delgrande*, 646 Pa. 180, 183 A.3d 997 (2018)....................................10

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)............................1

*M.M.V. v. Garland*, 1 F.4th 1100 (D.C. Cir. 2021) ....................................................6

*Merritts v. Richards*, 62 F.4th 764 (3d Cir. 2023) .....................................................5

*Reschenthaler v. Schmidt*, No. 1:24-cv-01671, slip op. (M.D. Pa. Oct. 29, 2024)5, 8

*Rife v. Borough of Dauphin*, 647 F. Supp. 2d 431 (M.D. Pa. 2009) .........................2

*Schneller v. WCAU Channel 10*, 413 Fed. Appx. 424 (3d Cir. 2011).......................8

*Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011)..................11

*Waterfront Comm'n of New York Harbor v. Governor of New Jersey*, 961 F.3d 234 (3d Cir. 2020) .......................................................................................................11

*Ziglar v. Abbasi*, 582 U.S. 120 (2017)........................................................................8

**Statutes**

52 U.S.C. § 20507.......................................................................................................9

52 U.S.C. § 21083.....................................................................................................10

**Rules**

Fed. R. Civ. P. 15 .....................................................................................................12

Defendant Al Schmidt, in his official capacity ("Secretary Schmidt"), by counsel, respectfully submits this Reply Brief in Further Support of his Motion to Dismiss.

## I. INTRODUCTION

A foundational principle of our system is that "[f]ederal courts are courts of limited jurisdiction" possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Here, this principle manifests itself in three ways: the standing requirement in Article III, the rule that Congress must expressly authorize a private cause of action before a federal court may exercise jurisdiction, and the limitation of federal authority over the states under the Eleventh Amendment.

Plaintiffs' brief in opposition to Secretary Schmidt's Motion to Dismiss, ECF No. 26 ("Pl. Br."), rests on the flawed assumption that federal courts have general jurisdiction to fashion rights and remedies notwithstanding these limits of federal court power. But if there were any doubt, the Supreme Court has directed that federal court power cannot "be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377. Plaintiffs had the burden to show both that they have a case and that this Court has the authority to adjudicate it. They have failed to do so.

As set forth in Secretary Schmidt's previous brief, ECF No. 20 ("Def. Br."), this case should be dismissed.

## II. ARGUMENT

### A. No Plaintiff Can Establish Standing

Remarkably, Plaintiffs' brief makes no reference to either *Maryland Election Integrity* or *Mancini*, in which district courts dismissed nearly identical election challenges (including one by a Plaintiff here) for lack of standing. *See* Def. Br. at 9-10. There is no effort to distinguish or explain why Plaintiffs' claim can survive when those other cases did not. Instead, Plaintiffs advance various standing arguments that lack any factual basis or legal support.

    1. The Amended Complaint Does Not Plead a Valid Vote Dilution Theory

Plaintiff Houser contends that she does not present a generalized grievance because she "is an active Pennsylvania voter who raised serious, well-pled concerns regarding whether her individual vote was improperly diluted, or even counted at all."[1] Pl. Br. at 7. But vague beliefs that one's vote might be diluted due to the manner in which an election is conducted does not afford standing.

In *Bolus v. Boockvar*, the plaintiff sought to enjoin the use of ballot drop boxes, alleging that the use of these drop boxes meant that "his vote could be

---

[1] Plaintiff's brief makes no mention of the standing of Plaintiff Dreibelbis. His claim should thus be deemed withdrawn and dismissed. *Rife v. Borough of Dauphin*, 647 F. Supp. 2d 431, 442 (M.D. Pa. 2009) (failure of a plaintiff to brief an issue constitutes a waiver of that claim, entitling a defendant to judgment). Alternatively, it should be dismissed for the same reason that Plaintiff Houser's claim should be dismissed for lack of standing. *See* Def. Br. at 10.

diluted due to voter fraud." No. 3:20-cv-01882, 2020 WL 6880960, at *3 (M.D. Pa. Oct. 27, 2020), *report and recommendation adopted*, 2020 WL 6882623 (M.D. Pa. Nov. 23, 2020). The Court held first that this claim did not meet the basic requirements for standing, first because it raised a generalized grievance that "could conceivably be raised by any voter in the Commonwealth." *Id.* at *4. Second, the alleged injury to voting was "speculative and hypothetical" because "[w]holly lacking" from the complaint was "any allegation that collecting ballots in locations other than the office of the County Election Board results in fraudulent ballots." *Id.* Similarly, in *Huertas v. City of Camden*, a claim that a city zoning plan would dilute the Hispanic vote was "purely speculative" because it alleged that the plan "*if* approved and implemented, *might* displace some indeterminate number of Hispanics from the city, and thus *might* have the effect of diluting the Hispanic vote." 245 Fed. Appx. 168, 172 (3d Cir. 2007) (emphasis in original).

Plaintiff Houser lacks standing for the same reason as the plaintiffs in *Bolus*, *Huertas*, and the previously cited decision in *Berg*, *see* Def. Br. at 10. The Amended Complaint expressly relies on conditional and speculative allegations of harm. *See* Def. Br. at 3-4 (noting that the Amended Complaint avers that it is "possible" that there "could have" or "might have" been vote fraud). Plaintiff Houser's belief that her vote "was diluted by improper or illegal voting," Pl. Br. at 7, is no different than the plaintiff's speculation in *Bolus*. Unsurprisingly, Plaintiffs

3

cite no case law or facts supporting standing based on the type of assertions or suppositions they allege.

Moreover, Plaintiff Hauser's reliance on the theory that her vote was not recorded in the SURE system, Pl. Mem. at 7, is more than just speculative; it is nonsensical. The Amended Complaint admits that she "voted in person." Am. Compl. ¶ 79. That means her *vote* was recorded and counted on Election Day, regardless of whether there was an error or delay in recording the *fact that she voted* in the SURE system. Even if it is true that there was an error in the SURE system (which Secretary Schmidt does not believe to be the case), it obviously did not impair her right to vote.

All claims by Plaintiffs Houser and Dreibelbis should be dismissed.

2.   Candidates Do Not Have Article III Standing Based on Subjective, Speculative Beliefs

Plaintiffs Moton and Selker argue that, because they "are or were candidates for office," they have standing whenever "their faith in the reliability and accuracy of the Pennsylvania electoral process as candidates has been violated." Pl. Mem. at 9. That is not so. A subjective feeling based on speculation is still speculation. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (injury must be "certainly impending" to confer standing).

*Keefer* is on point. See Def. Br. at 11. Plaintiffs attempt to distinguish *Keefer* on the grounds that it concerned legislative standing, while this case concerns

4

candidate standing. Pl. Mem. at 10. That analysis ignores an entire section of the opinion. While *Keefer* did address legislative standing in one part, it devoted a separate section to rejecting standing based on the plaintiffs' status ***as candidates***. *See Keefer*, 2024 WL 1285538, at *10 (holding that "Plaintiffs do not have standing as candidates").[2] Plaintiffs do not, and cannot, make any other attempt to distinguish *Keefer* or express disagreement with its reasoning. This Court should follow it.

Further, in *Reschenthaler v. Schmidt*, a court in this district held earlier today that legislative candidates lacked standing to challenge the handling of overseas votes because "[t]he hypothetical concerns the individual plaintiffs raise about the impact of [possibly fraudulent] UOCAVA votes in their individual elections are purely speculative." No. 1:24-cv-01671, slip op. at 17 (M.D. Pa. Oct. 29, 2024). The court in *Reschenthaler* pointed out that the plaintiffs' "concerns" about vote fraud was based on "phantom fears" rather than researched, well-pled facts. *Id.* at 14. Plaintiffs' "concerns" here, *see* Am. Compl. ¶ 50, are no different.

Finally, Moton's status as a *previous* candidate is irrelevant to her standing here. Standing requires redressability, *see* Def. Br. at 9, and no relief can be given for prior elections. *See Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023)

---

[2] Although Secretary Schmidt's opening brief noted that a petition for certiorari was pending in *Keefer*, the Supreme Court has since denied it. 2024 WL 4427541 (Oct. 7, 2024).

("[A]n injunction to cure past injuries" is not permitted under the Eleventh Amendment because it "cannot be fairly characterized as prospective."). The same will be true of Plaintiff Selker after November 5, at which point—win or lose—he will no longer be a candidate, and no relief will be available to him.

Thus, all claims by Plaintiffs Moton and Selker should be dismissed.

### 3. Plaintiffs Concede that United Sovereign Americans Lacks Organizational Standing

Plaintiffs argue that United Sovereign Americans need not have organizational standing, because "if one party to a lawsuit has standing, other entities can join as parties without having to independently satisfy the demands of Article III." Pl. Br. at 10. This effectively concedes that United Sovereign Americans does not have standing in its own right, and thus a decision finding the individuals lack standing means that all claims should be dismissed.

United Sovereign Americans can also be dismissed as a plaintiff separately. The principle Plaintiffs cite, which allows courts to proceed to the merits as long as at least one plaintiff has standing for each claim and type of relief, is not a legal rule but rather a matter of judicial economy confined to a court's discretion. *See M.M.V. v. Garland*, 1 F.4th 1100, 1110-11 (D.C. Cir. 2021) (this principle "does not *prohibit* the court from paring down a case by eliminating plaintiffs who lack standing or otherwise fail to meet the governing jurisdictional requirements" (emphasis in original)). That principle makes more sense in an appellate posture

6

than it does at the trial level. This Court need not, and should not, allow any number of plaintiffs to join any lawsuit in which one individual has standing.

Plaintiff United Sovereign Americans can, and should, be dismissed.

### B.     Plaintiffs Agree That They Lack a Statutory Cause of Action

Plaintiffs "agree" that "the All Writs Act does not itself provide a private cause of action or basis of jurisdiction." Pl. Br. at 13. That alone should be the end of the matter, warranting dismissal of the Amended Complaint.

But Plaintiffs attempt to salvage the case by asking the Court to create a private cause of action where Congress did not. They argue that their claims under the All Writs Act "seek relief based upon federal law within the district court's purview," citing various constitutional principles that give the federal government some oversight role over the states in administering elections, as well as certain provisions of HAVA and the NVRA that control state authority. Pl. Br. at 14-17. Plaintiffs then return to the All Writs Act, concluding that, if these constitutional and statutory obligations exist, then the All Writs Act should be read to establish a private cause of action to issue writs of mandamus against the states to enforce these requirements. Pl. Br. at 18. But Plaintiffs' circular reasoning self-evidently still does not get them past the starting block—they lack a private right of action because they do not invoke a federal statute that authorizes their private suit asking federal courts to monitor and enforce federal election law.

7

The Supreme Court has been unambiguous: "[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Where a federal statute does not create both a right and remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87. Determining whether a statute provides for a private cause of action is an exercise of statutory interpretation; where Congress has not created one, "a private cause of action will not be created through judicial mandate." *Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017).

Plaintiffs here make no argument that the All Writs Act creates a private cause of action. In fact, they concede that it does not. Pl. Br. at 13. They also do not argue that they are pursuing their claim under a cause of action created by HAVA or the NVRA. Finally, they concede that the Mandamus Act does not apply to Secretary Schmidt. Pl. Br. at 21. Because they cannot point to any federal statute that authorizes their private cause of action, this case should be dismissed. *See Schneller v. WCAU Channel 10*, 413 Fed. Appx. 424, 426 (3d Cir. 2011) (affirming dismissal of alleged violation of federal Communications Act because the statute lacked a private cause of action); *Reschenthaler*, slip op. at 19-20 (dismissing election procedure challenge under federal law because "[t]he absence of a cause of action deprives this court of jurisdiction over plaintiffs' case").

8

### C. The Amended Complaint Does Not Allege a Substantive Violation of Federal Law

Even if this Court were to reach the issue of whether Pennsylvania complies with HAVA and the NVRA—which it need not do, for multiple reasons cited above—Plaintiffs' allegations fail to show the existence of a violation.

For their alleged federal law violation, Plaintiffs point to a section of the NVRA which requires the Department of State to make a "reasonable effort to remove the names of ineligible voters" who have died or moved. Pl. Br. at 18 (citing 52 U.S.C. § 20507(a)(4)). But then Plaintiffs point to allegations from the Amended Complaint that have nothing to do with a failure to remove registrations of those who have died or moved. Instead, to describe registrations they question, Plaintiffs rely on vague and conclusory terms like "illegal or invalid vote history," "questionable designations," and "invalid or illogical registration dates." Pl. Br. at 19. Noticeably absent from Plaintiffs' argument is (i) an allegation that some number of individuals have either died or moved, and (ii) a corresponding allegation that the Department failed to take reasonable steps to remove those registrations from the voter rolls. They do not make this simple and direct allegation because they cannot; the Department complies with the NVRA.

The alleged HAVA violation is equally tenuous. Plaintiffs' argument is confined to a single sentence of their brief, contending that HAVA requires the Department to "perform regular list maintenance in conformance with NVRA." Pl.

9

Br. at 19 (citing 52 U.S.C. § 21083(a)(2)). But this subsection of HAVA does not create any obligations or duties that the NVRA does not. Rather, it describes *how* the list maintenance under the NVRA is to be executed. For example, HAVA requires the Department to create a computerized registration list and that it "shall coordinate the computerized list with State agency records on death." 52 U.S.C. § 21083(a)(2)(A)(ii)(II). At bottom, HAVA and the NVRA establish a balance— the Department is required "to ensure that voter registration records in the State are accurate and are updated regularly" while also providing "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." 52 U.S.C. § 21083(a)(4). Nothing in the Amended Complaint shows that the Department violated federal law in how it maintains that balance. The Amended Complaint does not plead a plausible violation of either HAVA or the NVRA.

### D. Eleventh Amendment Immunity Bars Mandamus Relief

Plaintiffs argue—without citing any legal authority—that "mandamus relief and injunctive relief are functionally equivalent" for purposes of Eleventh Amendment immunity. Pl. Br. at 11-12. They are not. Mandamus, by its very nature, "compel[s] official performance of a ministerial act or mandatory duty." *Kegerise v. Delgrande*, 646 Pa. 180, 192, 183 A.3d 997, 1004 (2018) (citation omitted). But an attempt to compel a **state government** to perform official duties generally falls outside the narrow *Ex parte Young* exception to Eleventh

Amendment immunity. *Ex parte Young* is based on the assumption that "a state official is stripped of his official or representative character when he commits an ongoing violation of federal law and thereby deprived of the State's immunity." *Waterfront Comm'n of New York Harbor v. Governor of New Jersey*, 961 F.3d 234, 238 (3d Cir. 2020) (citing *Ex parte Young*) (cleaned up). The exception "applies only to the 'precise situation' of 'a federal court command[ing] a state official to do nothing more than refrain from violating federal law.'" *Id.* (quoting *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011)). When relief would effectively operate against the state (rather than the official), "we forego the fiction of *Ex parte Young* in favor of the bedrock principle of state sovereign immunity." *Id.* Generally, relief operates against the state when it forces a state to spend money or to engage in a specific type of conduct. *Id.* at 239 (listing examples). In other words, the *Ex parte Young* exception allowing injunctive relief stops where most types of actions compelled by mandamus begin.

      An order compelling a state to take specific actions with respect to its voter rolls is an action directing state **government** conduct that falls outside the *Ex parte Young* exception. This case is not simply an attempt to stop an official from violating a person's rights, but rather it seeks to affirmatively compel programmatic action by the Department of State. Because the Eleventh Amendment bars such relief, this case should be dismissed.

### E.   The Amended Complaint Was Not Properly Filed Under Rule 15

Finally, beyond the myriad defects which deprive this Court of jurisdiction and fail to state a claim for relief, the Court should dismiss the Amended Complaint because it was not properly filed under the Federal Rules of Civil Procedure.

Plaintiff argues that there is an "unintentional misalignment" between the Federal Rules and this Court's rules. Pl. Br. at 4. First, this argument ignores that the Local Rules require the movant to seek concurrence on the motion ***before filing the motion itself***. *See* LR 7.1. That happened here, and so Plaintiff knew the reasons for the defects in the initial Complaint before the motion to dismiss was filed, *see* ECF No. 6. Plaintiff had ample time to decide whether to amend or defend the initial Complaint. Second, this argument ignores other pathways for amendment under Rule 15, including by leave of court or consent of the parties. *See* Fed. R. Civ. P. 15(a)(2). Plaintiffs elected not to pursue this route. Third, there is no exception within Rule 15 when there is "unintentional misalignment," and Plaintiffs point to no legal authority authorizing their pleading. By contrast, at least one court in this district has indicated that it considers the motion, not the brief, to be the "motion" referenced in Rule 15. *See* Def. Br. at 8 (citing *Hazzouri*).

## III. CONCLUSION

Wherefore, Secretary Schmidt respectfully request that the Court dismiss the Petition for Relief in the Form of an Amended Writ of Mandamus for lack of subject matter jurisdiction and/or for failure to state a claim under Rule 12.

Date: October 29, 2024    Respectfully submitted,

JENNIFER C. SELBER
GENERAL COUNSEL

By: /s/ Stephen R. Kovatis_____
STEPHEN R. KOVATIS
Deputy General Counsel
Attorney ID No. 209495
GOVERNOR'S OFFICE OF GENERAL COUNSEL
333 Market Street, 17th Floor
Harrisburg, PA  17101
Phone: 717-602-0943
Email: skovatis@pa.gov

*Counsel for Secretary Al Schmidt*

## **CERTIFICATE OF SERVICE**

I, Stephen R. Kovatis, hereby certify that I have caused all parties to be served on this day with the foregoing Brief via the Court's ECF system.

Date: October 29, 2024          By:  /s/ Stephen R. Kovatis
                                     STEPHEN R. KOVATIS