## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED SOVEREIGN AMERICANS, INC., *et al.*, | Case No.  1:24-CV-01003 |
| Petitioners, | Hon. Daryl F. Bloom, Chief Magistrate Judge |
| v. | |
| AL SCHMIDT, IN HIS OFFICIAL CAPACITY AS THE SECRETARY OF THE COMMONWEALTH, *et al.*, | |
| Respondents. | |

## BRIEF IN SUPPORT OF RESPONDENT GARLAND'S MOTION TO DISMISS

GERARD M. KARAM
United States Attorney

*/s/ Gerard T. Donahue*
GERARD T. DONAHUE
Assistant U.S. Attorney
Atty. I.D. #PA 331508
235 N. Washington Ave, Ste. 311
Scranton, PA 18503
Phone: (570) 348-2800
Fax: (570) 348-2830
Gerard.Donahue@usdoj.gov

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................1

II.   PROCEDURAL BACKGROUND ........................................2

III.  STATEMENT OF FACTS ...................................................3

    A.   The Petitioners and claims of election errors ........................3

IV.  QUESTIONS PRESENTED ................................................4

    A.   Whether the Court should dismiss Petitioners' Amended Petition for lack of standing when they merely request that the Government enforce the law, and they cannot establish an injury-in-fact, traceability, or redressability. ....................4

    B.   Whether the Court should dismiss the Amended Petition because Petitioners are not entitled to relief under the All Writs Act or 28 U.S.C. § 1361. ................................................4

V.   LEGAL STANDARD ............................................................4

    A.   Fed. R. Civ. P. 12(b)(1) ...........................................................4

    B.   Fed. R. Civ. P. 12(b)(6) ...........................................................6

VI.  ARGUMENT .........................................................................7

    A.   The Court should dismiss this matter because the Petitioners lack standing to proceed.......................................7

        1.   Petitioners have not suffered an injury-in-fact. ...........9

            i.    Petitioner Bernard "Marty" Selker, Jr. ..............11

            ii.   Petitioner Diane Houser .....................................13

            iii.  Petitioner Ruth Moton ........................................15

            iv.  Petitioner Dean Dreibelbis ..................................16

            v.   Petitioner United Sovereign Americans, Inc......17

        2.   Petitioners do not meet causation or redressability. ..19

    B.   This Court lacks jurisdiction over Petitioners' Mandamus Claim. ........................................................................................22

    C.   Petitioners' All Writs Act claim must be dismissed. ............26

VII. CONCLUSION ...................................................................28

i

## TABLE OF AUTHORITIES

Page(s)

## Cases

*Allied Chem. Corp. v. Daiflon, Inc.*,
  449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980) ..............................23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................6

*Bailey v. Brandler*,
  726 Fed.Appx. 108 (3d Cir. 2018) ........................................................24

*Banks v. U.S. Attorney*,
  318 Fed.Appx. 56 (3d Cir. 2009) ...........................................................24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................6, 7

*Bognet v. Se'y Commonwealth of Pennsylvania*,
  980 F.3d 336 (3d Cir. 2020) ....................................................................14

*CAN v. United States*,
  535 F.3d 132 (3d Cir. 2008) ......................................................................6

*Clapper v. Amnesty Intern. USA*,
  568 U.S. 398, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) ........ 9, 11, 13, 19

*Clemens v. ExecuPharm Inc.*,
  48 F.4th 146 (3d Cir. 2022) .....................................................................20

*Constitution Party of Pennsylvania v. Aichele*,
  757 F.3d 347 (3d Cir. 2014) ..................................................................5, 6

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332, 126 S.Ct. 1854 (2006) ...............................................14, 17

*Demasi v. Weiss*,
  669 F.2d 114 (3d Cir. 1982) ....................................................................23

*Food and Drug Administration v. Alliance for Hippocratic Medicine*,
  602 U.S. 367, 144 S.Ct. 1540, 219 L.Ed.2d 121 (2024) ..........................7

*Grant v. Hogan*,
  505 F.2d 1220 (3d Cir. 1974) ...........................................................23, 24

*Heckler v. Ringer*,
466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) ......................... 23

*Horne v. Flores*,
557 U.S. 433, 129 S.Ct. 2579, 174 L.Ed.2d 406 (2009) ....................... 18

*In re Nwanze*,
242 F.3d 521 (3d Cir. 2001) ................................................................... 23

*In re Schering Plough Corp. Intron*,
678 F,3d 235 (3d Cir. 2012) ..................................................................... 6

*Keefer v. Biden*,
725 F.Supp.3d 491 (M.D. Pa. Mar. 26, 2024) ................................ 12, 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .................................................................................. 5

*Lance v. Coffman*,
549 U.S. 437, 127 S.Ct. 1194, 167 L.Ed.2d 29 (2007) ................... 11, 15

*Lujan v. Defenders of Wildlife*,
504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ............... passim

*Maryland Election Integrity, LLC v. Maryland State Board of Elections*,
SAG-24-0067, 2024 WL 2053773 (D. Md. May 8, 2024) ............... 19, 20

*M.M.V. v. Garland*,
1 F.4th 1100 (D.C. Cir. 2021) ............................................................... 18

*Mancini v. Delaware County, PA*,
No. 24-2425, 2024 WL 4123785 (E.D. Pa. September 9, 2024) ..... 14, 15

*Mattern v. Weinberger*,
519 F.2d 150 (3d Cir. 1975) ................................................................... 24

*Mielo v. Steak'n Shake Operations, Inc.*,
897 F.3d 467 (3d Cir. 2018) ............................................................... 8, 10

*Pa. Bureau of Corr. v. U.S. Marshals Serv.*,
474 U.S. 34 (1985) ................................................................................. 27

*Pennsylvania Prison Soc. v. Cortes*,
508 F.3d 156 (3d Cir. 2007) .................................................................. 19

*Reschenthaler v. Schmidt*,
No. 1:24-CV-01671, 2024 WL 4608582 (M.D. Pa. October 29, 2024) .. 15

*Spokeo Inc. v. Robins,*
    578 U.S. 330 (2016)........................................................................8, 10

*Stehney v. Perry,*
    101 F.3d 925 (3d Cir. 1996) ....................................................23

*Syngenta Crop Prot., Inc. v. Henson,*
    537 U.S. 28 (2002) ....................................................................27

*Thulen v. American Federation of State County and Municipal*
    *Employees New Jersey Council,*
    844 Fed.Appx. 515 (3d Cir. 2021)............................................5

*Toll Bros., Inc. v. Township of Readington,*
    555 F.3d 131 (3d Cir. 2009) ..............................................20, 21

*United States v. N.Y. Tel.,*
    434 U.S. 159 (1977).................................................................26

*United States v. Texas,*
    599 U.S. 670, 143 S.Ct. 1964, 216 L.Ed.2d 624 (2023) ..............8, 22, 24

*Warth v. Seldin,*
    422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) .............................8

*Weldon v. U.S. Attorney for the Middle District,*
    No. 1:CV-07-1502, 2007 WL 9760109 (M.D. Pa. Aug. 22, 2007) .........25

*Whitmore v. Arkansas,*
    495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) .........................9

**Statutes**

28 U.S.C. § 1361 ....................................................................23, 24, 27

28 U.S.C. § 1651 ...............................................................................26

52 U.S.C. § 21081(a)(5)......................................................................26

U.S.C. § 1361 ......................................................................................5

**Rules**

Fed. R. Civ. P. 12(b)(1) .......................................................................5

Fed. R. Civ. P. 12(b)(6) .......................................................................6

**Other Authorities**

M.D. Pa.,
    L.R. 7...............................................................................................3

## I.   INTRODUCTION

This is a purported voting rights case brought by a Missouri organization and five individual Pennsylvania residents, grouped as Petitioners.  Broadly speaking, Petitioners allege that Pennsylvania's 2022 federal election did not meet minimum reliability standards, as they define them, so the results should not have been certified.  Using this premise as their baseline, they extrapolate that "[i]f the 2022 election performance is repeated in 2024, Petitioners and all Pennsylvania voters will suffer damages."  Doc. 12 at 3, ¶ 2.  Petitioners ask this Court to step in and take extraordinary action—to issue a writ of mandamus that orders the Attorney General of the United States ("Respondent Garland") to halt Pennsylvania's 2024 federal election—so that Petitioners' allegations could be investigated and the 2024 election could proceed on Petitioners' terms.

Petitioners' claims against the Attorney General are flawed from all angles.  First and foremost, this Court does not have jurisdiction to entertain Petitioners' claims.  No Petitioner has Article III standing, as Petitioners assert only speculative injuries and generalized grievances that are not fairly traceable to the Attorney General or

redressable by this Court. Petitioners' mandamus claim is also jurisdictionally deficient, as Petitioners cannot establish that Respondent Garland has a clear, nondiscretionary duty to act. Beyond these fatal jurisdictional issues, Petitioners' claims are not well-pleaded. Accordingly, Respondent Garland seeks dismissal for lack of jurisdiction and failure to state a claim.

## II.    PROCEDURAL BACKGROUND

Petitioners filed their Petition for Relief in the form of a Writ of Mandamus on June 18, 2024. *See* Doc. 1. Respondent Garland was never served with this initial Petition. In response, Respondents Al Schmidt, the Pennsylvania Bureau of Elections, the Pennsylvania Bureau of Election Security and Technology, the Pennsylvania Department of State, the Commonwealth of Pennsylvania, and Pennsylvania Attorney General Michelle Henry filed Motions to Dismiss and Briefs in Support. *See* Docs. 6, 7, 10, and 11.

On August 26, 2024, Petitioners filed a Petition for Relief in the Form of an Amended Writ of *Mandamus. See* Doc. 12. Respondents Al Schmidt and Pennsylvania Attorney General Michelle Henry again filed Motions to Dismiss and Briefs in Support. *See* Docs. 13, 14, 19 & 20.

Petitioners served the United States Attorney for the Middle District of Pennsylvania with an Amended Petition on September 9, 2024. Respondent filed a Motion to Dismiss on November 8, 2024. As such, this Brief in Support is timely. *See* M.D. Pa. L.R. 7.5.

## III. STATEMENT OF FACTS

### A. The Petitioners and claims of election errors

Petitioners are United Sovereign Americans, Inc., Bernard "Marty" Selker, Jr., Diane Houser, Ruth Moton, and Dean Dreibelbis. *See generally* Doc. 12. Generally, Petitioners claim that through their analysis of election data from Pennsylvania's elections in 2020 and 2022, they have identified "apparent errors," and they seek to compel Respondents to enforce the National Voter Registration Act (NVRA), Help America Vote Act (HAVA), and Pennsylvania election law in order to avoid similar errors in 2024. *Id.* at ¶¶ 1-2, 45, 58.

More specifically, Petitioner United Sovereign Americans alleges that it performed an analysis of Pennsylvania voter registration data, and it found "hundreds of thousands of voter registration apparent errors." *Id.* at ¶¶ 161-68. United Sovereign Americans alleges that in excess of 3.1 million out of 8.7 million total voter registrations contain

3

"apparent registration violations," with most concerning the registration date or an unspecified issue with registration changes. *Id.* at ¶ 169. Petitioners argue that these violations could violate the NVRA or HAVA.

## IV.    QUESTIONS PRESENTED

**A.    Whether the Court should dismiss Petitioners' Amended Petition for lack of standing when they merely request that the Government enforce the law, and they cannot establish an injury-in-fact, traceability, or redressability.**

**B.    Whether the Court should dismiss the Amended Petition because Petitioners are not entitled to relief under the All Writs Act or 28 U.S.C. § 1361.**

## V.    LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(1)

Motions filed under Rule 12(b)(1) allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," only possessing the power authorized by the Constitution and statutes. *Thulen v. American Federation of State County and Municipal Employees New Jersey Council*, 844 Fed.Appx. 515, 518 (3d Cir. 2021) (*quoting Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). As a starting point for this analysis, a district court should

4

assume that it lacks subject matter jurisdiction, and the party asserting

the claim bears the burden of establishing that subject matter

jurisdiction exists. *See Kokkonen*, 511 U.S. at 377.

A motion to dismiss for lack of subject matter jurisdiction may be

either facial or factual. *See Constitution Party of Pennsylvania v.

Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A facial challenge to subject

matter jurisdiction presumes that the complaint contains insufficient

allegations to invoke federal jurisdiction. *Id.* at 358. A factual

challenge is "an argument that there is no subject matter jurisdiction

because the facts of the case… do not support the asserted jurisdiction."

*Id.* Under the latter theory, the district court must not accept the facts

in the complaint as true and may consider extrinsic evidence. *Id.* "In

sum, a facial attack 'contests the sufficiency of the pleadings,' 'whereas

a factual attack concerns the actual failure of a [plaintiff's] claims to

comport [factually] with the jurisdictional prerequisites.'" *Id.* (*quoting

In re Schering Plough Corp. Intron*, 678 F,3d 235, 243 (3d Cir. 2012)

and *CAN v. United States*, 535 F.3d 132, 139 (3d Cir. 2008),

respectively).

B.    Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) governs dismissal of a case for failure to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under this standard, the complaint must do more than plead facts that are "'merely consistent with' a defendant's liability." *Id*. (quoting *Twombly*, 550 U.S. at 557).  To avoid dismissal, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In evaluating a complaint, although a court must accept factual allegations as true, a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" or asserts simply "an unadorned, the defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555, 557).  Additionally, a court may disregard a complaint's legal assertions—"[a] pleading that offers 'labels

and conclusions' or a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## VI. ARGUMENT

### A. The Court should dismiss this matter because the Petitioners lack standing to proceed.

Petitioners fail to satisfy the most basic requirement for any suit to proceed in federal court—Article III standing to sue. "Article III of the Constitution confines the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 378, 144 S.Ct. 1540, 219 L.Ed.2d 121 (2024). "Under Article III, a case or controversy can exist only if a plaintiff has standing to sue—a bedrock constitutional requirement that [the Supreme Court] has applied to all manner of disputes." *United States v. Texas*, 599 U.S. 670, 675, 143 S.Ct. 1964, 216 L.Ed.2d 624 (2023) (listing cases touching on standing in several different areas of law).

"To establish Article III standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Mielo v. Steak'n Shake Operations, Inc.*,

897 F.3d 467, 478 (3d Cir. 2018) (internal quotations and citation

omitted).  "The party invoking federal jurisdiction bears the burden of

establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).  When standing is

challenged at the pleading stage, "the plaintiff must 'clearly… allege

facts demonstrating' each element." *Spokeo Inc. v. Robins*, 578 U.S.

330, 338 (2016) (citing *Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct.

2197, 45 L.Ed.2d 343 (1975)).

Additionally, a plaintiff needs to establish that a "threatened

injury must be certainly impending to constitute injury in fact," and a

plaintiff may not establish standing through "'[a]llegations of possible

future injury.'" *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409,

133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) (quoting *Whitmore v. Arkansas*,

495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)).  And the

Supreme Court has stated that it is "reluctant to endorse standing

theories that require guesswork." *Id.* at 413.

Each of the Petitioners here lack standing.  Boiled down, the

Petitioners' lawsuit requests that this Court require Respondent

Garland to enforce federal law, but the Supreme Court has found

standing does not exist where a plaintiff asserts a "right to have the Government act in accordance with law." *Whitmore*, 495 U.S. at 160 ("This Court has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court."). This general principle is enough to dismiss the Amended Petition.

But the Petitioners also do not meet the standing requirements because they have not suffered an injury-in-fact that is fairly traceable to Respondent Garland, and the Court is unable to provide redress with a favorable decision. The individual Petitioners rely on vague allegations of generalized grievances that could be brought by any Pennsylvania voter. Moreover, Petitioners' alleged potential injury in the conduct of future elections is too far attenuated to justify the grant of standing here and now. As such, the Court should dismiss this action in its entirety.

### 1.    Petitioners have not suffered an injury-in-fact.

This Court should dismiss the Amended Petition because none of the Petitioners have suffered an injury-in-fact to establish standing. In order to demonstrate an injury-in-fact, a plaintiff must establish (1) "he

or she suffered 'an invasion of a legally protected interest'"; (2) "the injury is both 'concrete and particularized'"; and (3) "his or her injury is 'actual or imminent, not conjectural or hypothetical.'" *Mielo*, 897 F.3d at 478 (quoting *Spokeo*, 578 U.S. at 339). Notably, a plaintiff cannot establish standing by raising a general "grievance about government— claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lance v. Coffman*, 549 U.S. 437, 439, 127 S.Ct. 1194, 167 L.Ed.2d 29 (2007).

Here, rather than being "concrete and particularized," Petitioners' injuries are textbook generalized grievances. *See Lujan*, 504 U.S. at 573-74 ("We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."). Petitioners do not allege that anything real or personal is at stake for them if the 2024 election proceeds without

interruption (as it has). *Clapper*, 568 U.S. at 411. Petitioners argue only that the "voting systems" generally caused them harm. Doc. 12 at ¶ 85.

### i.    Petitioner Bernard "Marty" Selker, Jr.

Petitioner Bernard "Marty" Selker, Jr. has not suffered an injury-in-fact. Selker, a candidate for U.S. Senate in the 2024 General Election, alleged that after reviewing the "within petition"[1] he had a "reasonable belief that Respondents' failure to address and enforce state and federal election law in 2022 upon notice of voting and registration irregularities occurring during that federal election in Pennsylvania will adversely affect the integrity of the 2024 Pennsylvania senatorial election." Doc. 12 at 14-15, ¶ 75. Therefore, Selker's attempt to establish standing is limited to his candidacy in the 2024 General Election.

Selker bases his standing on other allegations within the Amended Petition about "apparent" errors from elections in 2020 and 2022, which he claims forms his "reasonable belief." *Id.* Unfortunately

---

[1] Based on the allegations in the Amended Petition, Petitioner Selker does not appear to have reviewed the "2022 election data" and has no personalized knowledge of any harm.

for Selker, this is not sufficient to establish Article III standing.

Another court in this district recently found that Pennsylvania

candidates' "vague, generalized allegations" that their candidacies

would be undermined by executive actions related to election integrity

within the Commonwealth were "not the type of case or controversy

that this Court may rule on under Article III." *Keefer v. Biden*, 725

F.Supp.3d 491, 504 (M.D. Pa. Mar. 26, 2024).  Here, Selker relies on

similar generalized grievances regarding apparent election errors in

2020 and 2022 to justify his concerns in 2024 and his standing.  As in

*Keefer*, this Court should dismiss Petitioner Selker for lack of standing.

Additionally, the *Keefer* court noted that, in order to establish an

injury-in-fact, a petitioner must show that the threatened injury was

"certainly impending."  *Id.* at 500 (quoting *Clapper*, 568 U.S. at 409)).

Here, Petitioner Selker cannot claim that his injury is "certainly

impending"; rather, here the 2024 General Election already has

occurred and therefore his injury cannot be "certainly impending."

Thus, Selker should be found to lack an injury-in-fact.

ii.    Petitioner Diane Houser

Petitioner Diane Houser has not suffered an injury-in-fact. Houser, who indicates that she voted in the 2020 and 2022 elections, claims that she discovered her vote in 2022 was not recorded in Pennsylvania's Statewide Uniform Registry of Elections (SURE) system, and Petitioner "reported numerous issues to authorities and was ignored numerous times." Doc. 12 at 15, ¶¶ 76-77.

Petitioner Houser makes only generalized grievances about the nature of the election process, which could be made by any member of the Pennsylvania voting population, and which is insufficient to establish Article III standing. *See Lujan*, 504 U.S. at 573-74 ("We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344, 126 S.Ct. 1854, 1862 (2006) (rejecting taxpayer standing "because the alleged injury is not 'concrete and particularized,' but instead a

13

grievance the taxpayer 'suffers in some indefinite way in common with people generally'") (citation omitted)); *Bognet v. Se'y Commonwealth of Pennsylvania*, 980 F.3d 336, 356 (3d Cir. 2020), *cert, granted, judgment vacated as moot sub nom. Bognet v. Degraffenreid*, 141 S.Ct. 2508 (2021); *Mancini v. Delaware County, PA*, No. 24-2425, 2024 WL 4123785 (E.D. Pa. September 9, 2024) (finding plaintiffs lacked standing because they were not prevented from voting and they could not assert with particularity election machines were tampered with).

Similar allegations brought by six members of Congress recently were dismissed by another court in this district for lack of standing. *Reschenthaler v. Schmidt*, No. 1:24-CV-01671, 2024 WL 4608582 (M.D. Pa. October 29, 2024). In finding that plaintiffs there failed to adequately allege how the Commonwealth's implementation of election guidance harmed their electoral prospects, the court stated, "[a]t bottom, plaintiffs claim that 'the law . . . has not been followed,' which 'is precisely the kind of undifferentiated, generalized grievance' that the Supreme Court has 'refused to countenance.'" *Id.* at *7 (quoting *Lance v. Coffman*, 549 U.S. 437, 442, 127 S.Ct. 1194, 167 L.Ed.2d 29 (2007).

To the extent Petitioner Houser argues that she has standing based on a disputed claim of a recorded vote, it is unclear how this would assist her in establishing standing or is in anyway related to the claims in the Amended Petition.  Houser acknowledges that she was able to exercise her right to vote in 2020 and 2022.  Doc. 12 at ¶ 76.  In their Prayer for Relief, Petitioners' requests are directed towards the proper management of voter registration rolls and their upkeep, not the recording of particular votes.  *Id.* at 54-56.  As such, Houser's disputed allegation regarding her vote in 2022 cannot establish standing.

### iii.    Petitioner Ruth Moton

Petitioner Ruth Moton has not suffered an injury-in-fact.  Moton, a candidate for Pennsylvania State Representative in 2018, 2020, and 2022, claims that she spent approximately $43,459.81 over the course of those three elections, but fears she wasted that investment because "she could not be certain of the location and identity of the voters she was attempting to canvass."  *Id.* at ¶¶ 78-79.  Therefore, Moton's only claim for standing in this case relates to past expenditures on previously held elections.

Again, it is unclear how Petitioner Moton's involvement and financial expenditures provide her standing in this case. While Moton provides her campaign finance expenditures, *see id.* at Exhibit B, she in no way details how she spent those funds in order to try and microtarget registered voters within her district, if at all, or how those funds were thwarted in targeting registered voters based on the alleged inaccuracies. As noted above in Petitioner Selker's section, Moton cannot establish standing as a candidate, and Moton makes no claim that she intends to seek elected office in the future. The Petitioners' Amended Petition disclaims any relief related to prior elections. *See id.* at 3-7, ¶¶ 1-25. Thus, Moton's claims regarding an injury-in-fact have no connection to the forward-looking relief sought herein, and this Court should find she lacks standing.

### iv.    Petitioner Dean Dreibelbis

Petitioner Dean Dreibelbis has not suffered an injury-in-fact. In the Amended Petition, Dreibelbis is listed as a resident of Delaware County who "observed and reported numerous election issues." *Id.* at 15-16, ¶ 80. *See also id.* at Exhibit C. Similar to Petitioner Houser, Dreibelbis makes only generalized grievances about the nature of the

election process, which could be made by any of the Pennsylvania population, and which is insufficient to establish Article III standing. *See Lujan*, 504 U.S. at 573-74; *DaimlerChrysler Corp.*, 547 U.S. at 344.

### v.    Petitioner United Sovereign Americans, Inc.

Petitioner United Sovereign Americans, Inc. has not suffered an injury-in-fact. Indeed, United Sovereign Americans, a non-profit corporation incorporated in Missouri, *see id.* 12-13, ¶ 61, has no ties to the Commonwealth of Pennsylvania, and Petitioners do not claim that the individual Petitioners are connected to United Sovereign Americans. Rather, United Sovereign Americans' only claim to standing is that it does not seek "a distinct form of relief from the other Petitioners and therefore has standing." *Id.* at ¶ 89. In other words, the group appears to rely on the fact that, because one of the above-discussed Petitioners allegedly has standing, United Sovereign Americans is not required to show standing for itself. *See Horne v. Flores*, 557 U.S. 433, 445-46, 129 S.Ct. 2579, 174 L.Ed.2d 406 (2009) (finding all Petitioners could proceed because at least one Petitioner had standing). *Cf. M.M.V. v. Garland*, 1 F.4th 1100, 1110-11 (D.C. Cir. 2021) (this principle "does not *prohibit* the court from pairing down a

case by eliminating plaintiffs who lack standing or otherwise fail to meet the governing jurisdictional requirements") (emphasis in original). In relying on this argument, United Sovereign Americans has essentially acknowledged that it itself does not have standing to proceed.

Nevertheless, to the extent the Petitioners' Amended Petition can be read as an attempt to obtain organizational standing for United Sovereign Americans, it also fails. Organizational standing may exist in two circumstances: (1) when the organization itself has been injured, or (2) when the organization asserts "claims on behalf of its members, but only where the record shows that the organization's *individual members themselves have standing to bring those claims.*" *Pennsylvania Prison Soc. v. Cortes*, 508 F.3d 156, 163 (3d Cir. 2007) (emphasis in original). As noted above, United Sovereign Americans does not allege that it has been injured, and the Amended Petition is devoid of any averment suggesting that any of the individual Petitioners are members of the organization. Moreover, United Sovereign Americans' decision to analyze election data is a self-inflicted choice that does not establish standing. *Clapper*, 568 U.S. at 418.

18

In *Maryland Election Integrity, LLC v. Maryland State Board of Elections*, the United States District Court for the District of Maryland found that United Sovereign Americans lacked standing to bring a similar claim.  SAG-24-0067, 2024 WL 2053773 (D. Md. May 8, 2024). There, United Sovereign Americans alleged that the Maryland State Board of Elections violated certain provisions of the NVRA and HAVA. *Id.* at *1.  As here, the group argued that it did not seek a "distinct form of relief."  *Id.*  The District of Maryland found that its analysis could "begin and end… with [p]laintiffs' standing," *id.* at *2, as United Sovereign Americans did not establish standing as an organization or as a representative of its members.  *Id.* at *3.  Because the remaining petitioners also lacked standing, the District of Maryland dismissed the matter.  *Id.* at *4.  This Court should do the same.

### 2.    Petitioners do not meet causation or redressability.

Beyond failing to allege injury in fact, Petitioners cannot establish the remaining elements of standing: causation and redressability.  For causation, the injury alleged "has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party before the court."  *Lujan*, 504

U.S. at 560 (cleaned up); *see also Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 158 (3d Cir. 2022) ("Traceability means that the injury was caused by the challenged action of the defendant as opposed to an independent act of a third party."). For redressability, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560; *see also Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131, 142 (3d Cir. 2009) (while traceability looks backwards, "redressability looks forward.").

Here, Petitioners' alleged injuries from Respondent Garland are that the Department of Justice has various enforcement, policing, and prosecution powers that have not been employed, or have not worked, to Petitioners' satisfaction. Doc. 12, ¶ 172. Petitioners believe that Respondents "have dismissed, and continue to dismiss," their concerns about the voter rolls in Pennsylvania. *Id.* But Petitioners do not allege that their alleged injuries—fears that the 2024 election results will be unreliable—can be traced to Respondent Garland in any specific way. No Department of Justice enforcement guidelines, policies, or directives are mentioned in the complaint, nor do Petitioners provide examples of supposed actions that the Respondent has taken or mandatory duties

20

that the Respondent has failed to fulfill.  Without such allegations—or anything like them—Petitioners' alleged injury is not "fairly traceable" to Respondent Garland.

Petitioners also cannot establish that their injuries are redressable by this Court.  The relief they seek against Respondent Garland is a mandamus order that Respondent "perform [] duties as the law intended," to include "investigating, and where warranted in [his] discretion, prosecuting persons or entities."  Doc. 12 at 55-56.  As an initial matter, it is unclear how such an order "would remedy [Petitioners'] alleged injury," as Petitioners have not alleged that they have suffered any specific injury based on Respondent Garland's supposed inaction.  *See Lujan*, 504 U.S. at 569.  It is well-established that "federal courts are generally not the proper forum for resolving claims that the Executive Branch should make more arrests or bring more prosecutions."  *Texas*, 599 U.S. at 680.  Indeed, Article II provides the Executive Branch discretionary authority to decide "how to prioritize and how aggressively to pursue legal actions," and "courts generally lack meaningful standards for assessing the propriety of enforcement choices in this area."  *Id.* at 679.  Because Petitioners

21

cannot establish that their requested relief remedies their alleged injuries, or can even be granted by this Court, they lack redressability.

*    *    *

Petitioners cannot meet their burden of establishing standing to sue Respondent Garland. The Court should dismiss their complaint for lack of jurisdiction accordingly.

## B.    This Court lacks jurisdiction over Petitioners' Mandamus Claim.

Likewise, Petitioners' mandamus claim fails for lack of jurisdiction. The Mandamus Act confers jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. But mandamus is appropriate only in the most extraordinary of circumstances. *In re Nwanze*, 242 F.3d 521, 524 (3d Cir. 2001); *Demasi v. Weiss*, 669 F.2d 114, 117 (3d Cir. 1982).

A petitioner seeking a writ of mandamus under 28 U.S.C. § 1361 must demonstrate that he has "no other means to attain the relief he desires," and he must show that the "right to issuance is clear and indisputable." *Stehney v. Perry*, 101 F.3d 925, 934 n. 6 (3d Cir. 1996) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S.Ct.

188, 66 L.Ed.2d 193 (1980) (citations omitted)).  Moreover, mandamus

"is intended to provide a remedy for a plaintiff only if he has exhausted

all other avenues of relief and only if the defendant owes him a clear

nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616, 104 S.Ct.

2013, 80 L.Ed.2d 622 (1984).  Mandamus will not issue to compel

discretionary functions.  *Id*.

Petitioners fail to meet the high bar that has been set for

mandamus relief.  They do not establish any "duty owed" by

Respondent Garland within the meaning of Section 1361.  *See Grant v.*

*Hogan*, 505 F.2d 1220, 1225 (3d Cir. 1974) (mandamus available where

there is a clear duty "owed [to] the plaintiff.").  Such a duty must be a

"specific, plain ministerial act 'devoid of the exercise of judgment or

discretion.'  An act is ministerial only when its performance is positively

commanded and so plainly prescribed as to be free from doubt." *Clark*

*v. Richardson*, 431 F.Supp.105, 112 (D. N.J. Feb. 24, 1977) (quoting

*Mattern v. Weinberger*, 519 F.2d 150, 156 (3d Cir. 1975), vacated, 425

U.S. 987, 96 S.Ct. 2196, 48 L.Ed.2d 812 (1976)).

Petitioners' Amended Petition contains no such allegations.  The

"duty" they allege is that Respondent "enforce[s] and police[s]" the

NVRA and HAVA in Pennsylvania by "investigating, and where warranted in their discretion, prosecuting persons or entities." Doc. 12 at 56. Petitioners' allegations, therefore, concede that they ask this Court to enforce a discretionary duty, for which there is no mandamus remedy. *See Grant*, 505 F.2d at 1225. Indeed, as explained above, investigating and prosecuting are quintessential discretionary decisions. *See Texas*, 599 U.S. at 680. Accordingly, "mandamus could not lie under 28 U.S.C. § 1361 to compel prosecution." *Banks v. U.S. Attorney*, 318 Fed.Appx. 56, 57 (3d Cir. 2009); *see also Bailey v. Brandler*, 726 Fed.Appx. 108, 109 (3d Cir. 2018) (affirming dismissal of mandamus action to compel U.S. Attorney to investigate and prosecute plaintiff's allegations "because the decision of a United States Attorney to prosecute a person is discretionary"); *Weldon v. U.S. Attorney for the Middle District*, No. 1:CV-07-1502, 2007 WL 9760109, at *1 (M.D. Pa. Aug. 22, 2007) (Caldwell, J.) ("The discretion to investigate and/or prosecute, and what criminal charges to file, are within the sole discretion of the prosecutor and not the Court. Thus, [Plaintiff] is not entitled to mandamus.") (citations omitted)). Petitioners thus cannot

establish that Respondent owes them a clear nondiscretionary duty, so their mandamus claim fails.

Nor can Petitioners establish a clear right to relief, specifically for their allegations that HAVA has been violated.  Petitioners allege violations of HAVA based on the error rate computed by United Sovereign Americans' "expert analysists" that Petitioners claim exceeds HAVA's acceptable error rate.  Doc. 12 at 35-41.  Yet, as Petitioners acknowledge, HAVA's error rate pertains to "voting systems," which refers to the "hardware-related errors," not the registration issues Petitioners' Amended Petition identifies.  *See* U.S. Election Assistance Comm'n, 2015 Voluntary Voting System Guidelines, 79–80, A-20–A-21, https://www.eac.gov/sites/default/files/eac_assets/1/28/VVSG.1.1.VOL.1. FINAL1.pdf. (2015); Doc. 12 at 8; *see also* 52 U.S.C. § 21081(a)(5) (discussing the "error rate of the voting system in counting ballots" while excluding errors "attributable to an act of the voter").  The factual errors Petitioners allege are thus inapposite to the HAVA violations alleged, so Petitioners cannot establish a "clear right to relief" under HAVA.  Thus, Petitioners' mandamus claim also fails on this point.

### C.   Petitioners' All Writs Act claim must be dismissed.

Last, to the extent Petitioners bring their All Writs Act claim against Respondent Garland,[2] it must be dismissed.  The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651.  The Act enables federal courts to issue such commands "as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained."  *United States v. N.Y. Tel.*, 434 U.S. 159, 172 (1977).  It does not authorize courts "to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate."  *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985).  "Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling."  *Id.*

---

[2] This claim is generally brought against "Respondents," but as pleaded it seems more directed towards the State Respondents.

Petitioners' All Writs Act claim mirrors their mandamus claim against Respondent Garland. *See* Doc. 12 at 44-51. Petitioners seek the same writ of mandamus under both statutes—one compelling Respondent Garland to enforce and police the NVRA and HAVA. *Id.* But the All Writs Act does not provide an independent source of jurisdiction, so Petitioners are not separately entitled to mandamus relief under it. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002) (noting "the All Writs Act does not confer jurisdiction under federal courts" so jurisdiction does not lie unless "specifically provide[d]" by Congress). As discussed above, Petitioners cannot establish their mandamus claim under 28 U.S.C. § 1361 because they do not allege a clear, nondiscretionary duty to act. Without jurisdiction under the Mandamus Act, their All Writs Act claim necessarily fails, too, as Petitioners do not assert any other claims in their complaint and, in fact, expressly disclaim other statutory authority for their claims. *See* Doc. 12 at 53-54 (alleging Petitioners have no remedy other than mandamus so that Respondents will enforce HAVA and NVRA, but they are not bringing a "private cause of action" under those statutes). The

27

Court should therefore dismiss Petitioners' All Writs Act claim against the Respondent.

## VII.    CONCLUSION

For these reasons, Respondents respectfully request that this Court dismiss Petitioners' Amended Petition.

Respectfully submitted,

GERARD M. KARAM
United States Attorney

/s/ Gerard T. Donahue
GERARD T. DONAHUE
Assistant U.S. Attorney
235 N. Washington Ave
Suite 311
Scranton, PA 18503
Tel: (570) 348-0379
Fax: (570) 348-2830
Gerard.Donahue@usdoj.gov

Date:        November 22, 2024        *Attorneys for Respondent*

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED SOVEREIGN AMERICANS, INC., *et al.*, <br><br> Petitioners, <br><br> v. <br><br> AL SCHMIDT, IN HIS OFFICIAL CAPACITY AS THE SECRETARY OF THE COMMONWEALTH, *et al.*, <br><br> Respondents. | Case No.  1:24-CV-01003 <br><br> Hon. Daryl F. Bloom, Chief Magistrate Judge |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.  That on October 18, 2024, he served a copy of the foregoing

## BRIEF IN SUPPORT OF RESPONDENT GARLAND'S MOTION TO DISMISS

by electronic service pursuant to Local Rule 5.7 and Standing Order 05-6 & 12.2 to all counsel of record in the above-captioned matter.

*/s/ Stephanie Kakareka*
STEPHANIE KAKAREKA
Legal Administrative Specialist