IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED SOVEREIGN AMERICANS, INC., *et al*. | |
| *Petitioners,* | CIVIL ACTION |
| v. | No. 24-1003 |
| AL SCHMIDT, IN HIS OFFICIAL CAPACITY AS THE SECRETARY OF THE COMMONWEALTH, *et al*. | |
| *Respondents.* | |

**BRIEF OF PETITIONERS IN OPPOSITION TO RESPONDENT MERRICK GARLAND'S MOTION TO DISMISS**

i

**Tables of Contents**

I.    Introduction ................................................................................................................. iii
II.   Factual and Procedural History .................................................................................... 1
III.  Legal Argument ........................................................................................................... 2
   a.  Legal Standard ......................................................................................................... 2
   b.  Petitioners possess adequate standing to bring these claims. ................................. 3
      i.   Petitioner Diane Houser ...................................................................................... 5
      ii.  Petitioners Ruth Moton and Bernard Selker ...................................................... 6
   c.  Petitioners' claims do not lack jurisdiction. ............................................................ 7
IV.   Conclusion ................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases** Page(s)

*Anderson v. United States*,
    417 U.S. 211 (1974)……………………………………………………..……………..9

*Baker v. Carr*,
    369 U.S. 186 (1962)……………………………………………………………….…..4, 5, 6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)………………………………………………………………….…..2

*Cheney v. United States Dist. Ct.*,
    542 U.S. 367 (2004)……………………………………………………………..…11

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)……………………………………………………………….…4

*Constitution Party of PA v. Aichele*,
    757 F.3d 347 (3d Cir. 2014)………………………………………………….……2

*Federal Election Comm'n v. Akins*,
    524 U.S. 11 (1998)……………………………………………………..……...………4

*Food & Drug Admin. v. All. For Hippocratic Med.*,
    602 U.S. 367 (2024)………………………………………………………….…3

*Gray v. Sanders*,
    372 U.S. 368 (1963)…………………………………………..……………….…8

*Hollingsworth v. Perry*,
    558 U.S. 183 (2010)……………………………………………………….…11

*Horne v. Flores*,
    447 U.S. 443 (2009)………………………………………………………...…….5

*In re: Coy*,
    127 U.S. 731 (1888)…………………………………………….……………….8

*In re Schering Plough Corp.*,
    678 F.3d 235 (3d Cir. 2012)……………………………………………………2

*Jordan v. Fox, Rothschild, O'Brien & Frankel*,
    20 F.3d 1250 (3d Cir. 1994)……………………………………….……………3

*Lujan v. Defenders of Wildlife*,

504 U.S. 555 (1992)............................................................................... 4, 5, 6

*McTernan v. City of York PA*,
    564 F.3d 636 (3d Cir. 2009).............................................................3

*Oregon v. Mitchell*,
    400 U.S. 112 (1970)........................................................................9

*Reynolds v. Sims*,
    377 U.S. 533 (1964)........................................................................8

*Robb v. City of Philadelphia*,
    733 F.2d 286 (3d Cir. 1984).............................................................3

*Rolon v. Lackawanna County*,
    1 F.Supp.3d 300 (M.D.Pa. 2014).....................................................1

*Wilbur v. United States*,
    281 U.S. 206 (1930)......................................................................11

**Statutes**                                                                                    **Page(s)**

28 U.S.C. § 1331...................................................................................11

28 U.S.C. § 1367(a)..............................................................................11

28 U.S.C. § 1651(a)..............................................................................11

52 U.S.C. § 20501..........................................................................10, 11

52 U.S.C. §§ 20507..............................................................................10

52 U.S.C. §§ 21081..........................................................................9, 10

52 U.S.C. § 21083.................................................................................10

52 U.S.C. § 21111.................................................................................10

**Other Authorities**                                                                         **Page(s)**

U.S. Const. art. I, § 4....................................................................7, 9, 12

U.S. Const. art. I, § 8, cl. 18.................................................................9

F.R.C.P. 8...............................................................................................2

F.R.C.P. 12.............................................................................................2

## I.  Introduction

Petitioners United Sovereign Americans, Inc., Bernard "Marty" Selker, Jr., Diane Houser, Ruth Moton, and Dean Dreibelbis (hereinafter, collectively, "Petitioners") are concerned Pennsylvania citizens, voters, and political candidates who seek to hold their elective and appointed officials accountable for wanton disregard of their responsibilities under Federal laws designed to ensure that election results are held to a certain degree of accuracy. Petitioners have brought before this Court in their Amended Writ numerous documented deficiencies and errors within the Pennsylvania active voter registration rolls, which should have been identified and rectified by the responsible officials. Petitioners do not seek monetary relief, or any relief regarding past conduct, merely that this Honorable Court intervene and require the named State and Federal officials to comply with their statutorily mandated obligations under Federal law.

## II.  Factual and Procedural History

Petitioners filed for a Writ of *Mandamus* in this matter on June 18, 2024. In their filing, Petitioners raised numerous concerns regarding the integrity of the election process in Pennsylvania, along with many election integrity issues on the national level. Specifically, Petitioners point to violations of the Help America Vote Act ("HAVA") and the National Voter Registration Act ("NVRA"). Petitioners requested relief pursuant to the All Writs Act, 28 U.S.C. §1651, and an Action to Compel an Officer of the United States to Perform his Duty, pursuant to 28 U.S.C. §1361. Petitioners filed an Amended Writ of Mandamus on August 26, 2024, narrowing in on the important issues relevant to their claims.

Respondent Merrick Garland (hereinafter, "Respondent Garland") filed a Motion to Dismiss on November 8, 2024, supported by a brief filed November 22, 2024. Respondent Garland argued in his brief that Petitioners lack standing to bring these claims, and that this suit

must be dismissed because Petitioners are not entitled to relief under the All Writs Act or 28 U.S.C. §1361.

### III. Legal Argument

#### a. Legal Standard

Rule 12(b)(1) permits dismissal of a complaint for lack of subject-matter jurisdiction. As such, a motion to dismiss under this subsection "challenges the power of a federal court to hear a claim or case." *Rolon v. Lackawanna County*, 1 F.Supp.3d 300, 303 (M.D.Pa. 2014). This includes challenges regarding lack of standing. *In re Schering Plough Corp.*, 678 F.3d 235, 243 (3d Cir. 2012). When assessing challenges to standing, the Court "must first determine whether the movant presents a facial or factual attack." *Id*. Facial attacks assert that the facts as pled by the complaining party fail to satisfy the requirements for standing and therefore, these attacks are assessed under the same standards applicable to a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the facts alleged in the complaint in favor of the nonmoving party. *Constitution Party of PA v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). By contrast, factual attacks challenge the veracity of the averments set forth in the pleadings, and in such an instance the facts set forth are not entitled to any presumption of truthfulness. *Id*.

Under the Rule 12(b)(6) analysis, "[p]leadings must be construed as to do justice." *F.C.R.P.* 8(e). Except under certain limited circumstances, a complaint need only comply with Rule 8(a)(2), which merely requires "a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quotations omitted). When reviewing pleadings for legal sufficiency under Rule 12(b)(6), the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after

2

construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). Courts "should not affirm a dismissal at the pleadings stage, ***especially in a civil rights action***, unless it appears ***beyond doubt*** that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Robb v. City of Philadelphia*, 733 F.2d 286, 290 (3d Cir. 1984)(emphasis added). A complaint should not be dismissed merely because it appears unlikely that the plaintiff will be able to prove the facts asserted or prevail on the merits. *McTernan v. City of York, PA,* 564 F.3d. 636, 646 (3d Cir. 2009).

### b. Petitioners possess adequate standing to bring these claims.

Respondent Garland first asserts that Petitioners lack standing because they merely demand that the Government act in accordance with the law. First and foremost, the manner in which Respondent Garland sets forth this proposition is misleading. A more accurate proposition would be that "[f]ederal courts do not operate as an open forum for citizens to press general complaints about the way in which government goes about its business." *Food & Drug Admin. v. All. For Hippocratic Med.*, 602 U.S. 367, 368 (2024)(quotations omitted). To obtain a judicial determination, a plaintiff must establish a personal stake in the outcome of the dispute. *Id*. Petitioners are not merely claiming standing due to their status as concerned citizens, as discussed further below, rendering this argument moot.

Respondent Garland further asserts that Petitioners do not meet the standing requirements as they have not suffered an injury-in-fact that is fairly traceable to Respondent Garland. "To establish standing, a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the required judicial relief." *Food & Drug Admin.*, 602 U.S. at 367. "At the pleading stage, general factual allegations of injury resulting from the

3

defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)(quotations omitted).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)). Stated differently, the injury must affect the "plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560; *see also*, *Gill v. Whitford*, 585 U.S. 48, 65 (2018)(holding that "a person's right to vote is individual and personal in nature")(internal citation and quotation marks omitted). The injury must also be actual or imminent, not speculative, meaning the injury must have already occurred or be likely to occur in the near future. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)(internal citation and quotation marks omitted).

It is well-settled that any person who's right to vote has been impaired has standing to sue. *Gray v. Sanders*, 372 U.S. 368, 375 (1963). Qualified voters have a constitutionally protected right to cast their ballots and have their votes be counted and reported correctly, undiluted by illegal ballots. *Id.* at 380. Impairment may result from, among other things, dilution from false tally, refusal to count votes from arbitrarily selected precincts, or stuffing of the ballot box. *Baker v. Carr*, 369 U.S. 186, 208 (1962). As stated by the Supreme Court regarding voting rights, "the most basic of political rights, [are] sufficiently concrete and specific" to establish standing. *Federal Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998). Respondent argues that Petitioners' claims amount to mere generalized grievances concerning improper government conduct and therefore have failed to establish Article III standing. Generalized grievances in the context of

4

standing refer to instances where a plaintiff's harm concerns "his and every citizen's interest in proper application of the Constitution and laws and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan*, 504 U.S. at 573. However, the Supreme Court has previously held that a group of qualified voters alleging that a state's action diminished the effectiveness of their vote *did not* amount to a generalized grievance. *Baker v. Carr*, 369 U.S. 186, 208 (1962).

It is further important to note that where one petitioner possesses standing to pursue a lawsuit, other entities may join as petitioners without having to independently satisfy the demands of independent standing, provided those additional petitioners do not seek a distinct form of relief from the party with standing. *Horne v. Flores*, 557 U.S. 443, 445-46 (2009); *see also*, *Children's Health Defense, Inc. v. Rutgers, the State University of New Jersey*, 93 F.4th 66, 75 ("When multiple plaintiffs sue, at least one plaintiff must have standing to assert each claim."). As such, Petitioners are not required to demonstrate that they each possess independent standing in order to pursue this suit, as they are pursuing identical forms of relief. Petitioners are merely required to establish that *one* Petitioner possesses independent standing for this matter to be justiciable.

### i. Petitioner Diane Houser

Petitioner Diane Houser is a Chester County, Pennsylvania resident registered to vote who voted in the 2020 and 2022 elections. *See*, Doc. 12, ¶76. Petitioner Houser raised significant concerns regarding whether her right to vote has been impaired and demonstrated that she has made various efforts to bring these concerns to the attention of the appropriate officials and been repeatedly dismissed or ignored. *See*, Doc. 12, ¶77. Petitioner Houser further asserts that her vote in 2022 was not recorded under Pennsylvania's Statewide Uniform Registry of Electors ("SURE") system, even though she voted in person. *See*, Doc. 12, ¶76. Respondent Garland's attempts to

5

categorize Petitioner Houser's allegations as generalized grievances misses the mark. Generalized grievances in the context of standing refer to instances where the plaintiff's *only* harm concerns "his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 (1992). Our United States Supreme Court has specifically held that a group of qualified voters alleging that the state's action diminished the effectiveness of their vote *did not* state a generalized grievance. *Baker*, 369 U.S. at 208.

Petitioner Houser is an active Pennsylvania voter who raised serious, well-pled concerns regarding whether her individual vote was improperly diluted, or even counted at all, in the 2022 election. First, Petitioner Houser avers that her vote was not recorded in the Pennsylvania SURE system, which was established to allow voters to track the status of their ballots. Second, Petitioner Houser identified through the Amended Writ numerous issues on a Statewide level that would indicate that her vote was diluted by improper or illegal voting, as well as issues in her own county which would suggest her vote was diluted. For example, Audit the Vote PA found that Chester County kept active 3,500 out of state voter registrations during the 2022 election. *See*, Doc. 12, Exhibit D. These factual averments are more than sufficient to establish that Petitioner Houser set forth an adequate injury in fact. Standing cannot be denied merely because a particular injury is widespread, only when an individual asserting standing does not have an adequate connection to said injury.

### ii. Petitioners Ruth Moton and Bernard Selker

Petitioner Ruth Moton was a candidate for Pennsylvania State Representative in 2018, 2020, and 2022 election seasons. *See*, Doc. 12, ¶78. Petitioner Moton spent over $32,000 on her election campaigns and contends that due to the identified discrepancies in voting process, she

feels that she has expended these funds without knowing the location and identity of the voters she attempted to canvas. *See*, Doc. 12, ¶79. Petitioner Bernard Selker is a Pennsylvania citizen and recently a candidate on the ballot for United States Senator for Pennsylvania in the 2024 election. *See*, Doc. 12, ¶75. Based on the allegations set forth in the Amended Writ, Petitioner Selker contends that Respondents' failure to enforce election laws will adversely affect the integrity of the 2024 Pennsylvania senatorial election. *See*, Doc. 12, ¶75. Both Petitioner Moton and Petitioner Selker are individuals who have placed their trust, money, and time into the Pennsylvania electoral process. They believe that based on the significant discrepancies and irregularities in the voting process identified in the Amended Writ, their faith in the reliability and accuracy of the Pennsylvania electoral process has been violated.

    **c. Petitioners' claims do not lack jurisdiction.**

Despite Respondent Garland's assertions otherwise, Petitioners have clearly established federal jurisdiction for their *mandamus* claim and for Respondent Garland to refuse the relief sought is to discount Petitioners' right to vote. Under the Elections Clause, Congress conferred to individual state legislatures the authority to conduct statewide federal elections. U.S. Const. art. I, § 4. The Constitution's Framers' intent is clear upon a plain reading of the Constitution. The various states have *presumptive* authority to regulate and administer the election of all federal officers. However, by including the language "…but the Congress may at any time by Law make or alter such Regulations," the Framers unambiguously intended Congress retain the *ultimate* authority under the Constitution to regulate federal elections. U.S. Const. art. I, § 4. Thus, the Constitution spells out that the default authority to regulate federal elections lies with the several states in the absence of acts of Congress. However, the Constitution makes the states subordinate to Congress when Congress from time to time chooses to act. When Congress chooses to do so, it

7

becomes the duty of the Attorney General of the United States to carry out Congress' will. The Framers intentionally intertwined the powers of the various states with those of Congress in the conducting of federal elections, while making certain Congress maintained the ultimate power over the selection of its own members, thereby carving out a narrow exception to the principles of dual sovereignty and federalism. The Constitution reserves to Congress the ultimate power to regulate federal elections, while simultaneously delegating the presumptive power to individual state legislatures. The Pennsylvania General Assembly has further delegated the state's power to regulate federal elections to the Office of the Secretary of State.  These State Officials, thus, act as a quasi-federal officers when mandated to carry out the will of Congress. Should State and County Officials fail or refuse to carry out Congress' intent, it falls to Respondent Garland to require those officers acting as quasi-federal officials to adhere to federal law. Only Respondent is empowered to enforce and execute the will of Congress in this regard.

While a state agency, generally, is insulated from federal judicial review when exercising power within the exclusive domain of a state interest, "such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right." *Gray*, 372 U.S. at 372 (citing *Gomillion v. Lightfoot*, 364 U.S. 339, 347 (1960)). Federal courts regard the right to vote in a fairly conducted election as federally protected, *Reynolds v. Sims*, 377 U.S. 533, 554-55 (1964), and the Supreme Court decreed that Congress has authority under the Constitution's Necessary and Proper Clause to regulate any activity during a mixed federal/state election that exposes the federal election process to potential misuse, whether that harm materializes or not. *In re: Coy*, 127 U.S. 731, 752 (1888). "Every voter in a federal…election…whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted, without its being distorted by fraudulently cast votes.

*Anderson v. United States*, 417 U.S. 211, 227 (1974). "[T]he right to vote freely for a candidate of one's choice is of the essence of a democratic society," *Oregan v. Mitchell*, 400 U.S. 112, 138-39 (1970). Congress chose to exercise its powers under the Elections Clause and the Necessary and Proper Clause to intervene in Pennsylvania's otherwise absolute constitutional authority to regulate federal elections by enacting federal election laws including HAVA and NVRA. U.S. Const. art. I, § 4; U.S. Const. art. I, § 8, cl. 18. In doing so, Congress effectively, has deputized the legislature in Pennsylvania to carry out its will. The Pennsylvania legislature then delegated that responsibility from the Constitution and Congress to the Secretary of State thus here making the Secretary directly answerable to the will of Congress. The will of Congress is executed by the Executive Branch outlined generally in Article II of the Constitution and the Department of Justice is tasked to enforce the law. Respondent Garland, as Attorney General, is the federal official responsible for the Department of Justice.

Congress chose to exercise its powers under the Elections Clause and the Necessary and Proper Clause to intervene in Pennsylvania's otherwise default absolute constitutional authority to regulate federal elections by enacting federal election laws including HAVA and NVRA. U.S. Const. art. I, § 4; U.S. Const. art. I, § 8, cl. 18. Respondent Garland is the only existing enforcement authority available to hold the State and County Officials accountable. Without this Honorable Court enforcing such accountability, States are free to actively ignore federal law and regulations in any federal election.

Under HAVA, the two (2) provisions at issue impose mandatory language on election officials. For example, 52 U.S.C. § 21081(a)(5) states that the "error rate of [a] voting system in counting ballots…shall comply with the error rate standards established under section 3.2.1. of the voting systems standards issued by the Federal Election Commission[.]" Use of the word "shall"

9

constitutes mandatory language. Furthermore, 52 U.S.C. § 21081(a)(1)(A)(ii) states voting systems "shall…provide the voter with the opportunity (in a private and independent manner) to change the ballot or correct any error before the ballot is cast and counted (including the opportunity to correct the error through the issuance of a replacement ballot if the voter was otherwise unable to change the ballot or correct any error.)" The use of "shall," again, constitutes mandatory language. HAVA states "[the] Attorney General may bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief ... as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, and 21083 of this title." 52 U.S.C. § 21111. Here, the requirement is for voting systems, but election officials subject to judicial authority are responsible for configuring and managing voting machines. NVRA likewise contains mandatory language. For example, "each State shall…conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of death of the registrant; or a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4).

NVRA exists in part "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. §§ 20501(b)(3)-(4). Similarly, HAVA mandates that voter roll databases contain only registrations of qualified citizen voters residing in that state. 52 U.S.C. § 21083(a)(1)(A). Maintaining the accuracy of voter rolls and voting systems, therefore, is required under the Constitution to uphold the right of the people to choose their representatives. The requirements of NVRA and HAVA are mirrored in Pennsylvania's election laws. The NVRA states "[t]he Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out

10

this chapter." 52 U.S.C. §§ 20501(a). A writ of *mandamus* is the enforcement mechanism through which the Respondent Garland can be held accountable to Congress for refusing to enforce Congressional legislation.

The All Writs Act grants this Court the power to "issue all writs necessary or appropriate in the aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). A writ of *mandamus* is warranted where the moving party establishes that "(1) no other adequate means [exist] to attain the relief he desires, (2) the party's right to issuance of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (quoting *Cheney v. United States Dist. Ct.*, 542 U.S. 367, 380-381 (2004)) (internal quotation marks omitted). Writs of *mandamus* apply to ministerial actions. A "ministerial action" is a duty in a particular situation so plainly prescribed, as is the case with respect to the mandatory HAVA and NVRA language cited above, as to be free from doubt and equivalent to a positive command. *Wilbur v. United States*, 281 U.S. 206, 218 (1930). *Mandamus* under the All Writs Act is a remedy reserved for extraordinary circumstances where no other form of relief can adequately provide redress. *Cheney*, 542 U.S. at 369. Refusing to comply with federal election laws, in defiance of Congress, constitutes an extraordinary circumstance.

Here, Respondent Garland argues that *mandamus* is not "necessary or appropriate" to the resolution of Petitioners' claims and is not agreeable to the usages and principles of law because the requested relief exceeds the permissible scope of a writ of *mandamus*.[1] Respondent Garland cannot dispute that Congress delegated the power to regulate and enforce the administration of

---

[1] Petitioners have established standing in this matter, as outlined above and under 28 U.S.C. §§ 1331 and 1367(a), and therefore the requested writ of *mandamus* is "in aid of" a matter over which this Court has jurisdiction.

11

elections under HAVA and NVRA to the Attorney General. Respondent Garland cannot dispute Congress' ultimate authority to regulate federal elections under the Elections Clause. U.S. Const. art. I, § 4. Respondent Garland cannot dispute that Congressional mandates under HAVA and NVRA are plainly within the scope of his duties as Attorney General. It follows, then, that Respondent Garland cannot dispute that he is required to enforce HAVA and NVRA in Pennsylvania's federal elections, by coming to this court to require Pennsylvania to conduct such elections in accordance with federal law.

The very purpose of the All Writs Act is to provide a remedy by which federal courts may rectify extraordinary circumstances such as those at issue here where the Attorney General of the United States refuses to enforce federal election law. But Respondent Garland argues, despite Congress' undisputed and superseding power to regulate federal elections, he is *not* required to comply with Congressional election legislation and therefore Petitioners cannot be afforded *mandamus* relief under the All Writs Act against Pennsylvania election officials on the basis that they are not a *federal* officials. In other words, according to Respondent Garland, no Constitutional mechanism exists by which the U.S. Attorney General may hold *state* election officers accountable for violating *federal* law. Accepting Respondent Garland's contention as true would lead to an absurd result, as Respondent Garland advances the ridiculous notion that state officials are thus effectively empowered to regulate and administer federal elections *without any Congressional oversight or enforcement whatsoever* in direct contradiction of the plain language of, *inter alia*, Article I, sec. 4 of the Constitution. The language of the Elections Clause clearly precludes this outcome, as the Constitution states that Congress retains the *ultimate* authority to regulate federal elections. The All Writs Act exists as an enforcement mechanism through which the will of

Congress, imposed through Respondent Garland, may enjoin state election officials from violating federal election legislation, including HAVA and NVRA.

Here, *mandamus* relief is not merely "necessary or appropriate" to this Court's resolution of Petitioners' claims, it is the *only* remedy available to compel Respondent state officials' subservience to Congress' ultimate authority to regulate the federal election processes. Petitioners are asking this Court to aid in addressing systemic issues raised in the Complaint by requiring Respondent Garland to demand state officials follow federal election legislation. Only federal courts are empowered to resolve the whole of Petitioners' claims, and the only available remedy for purposes of adjudicating Petitioners' claims is the requested writ of *mandamus*.

### IV. Conclusion

Based on the foregoing, Petitioners respectfully request that this Court deny Respondent Garland's Motion to Dismiss in the above-captioned matter.

Respectfully submitted,

Date: December 6, 2024    By:    */s/ Bruce L. Castor, Jr.*
                                  Bruce L. Castor, Jr.